# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GALLERIA 2425 OWNER, LLC, | § | CASE NO. 23-34815 |
| | § | |
| DEBTOR. | § | |

### SONDER USA INC.'S MOTION TO MODIFY THE STAY TO ALLOW LIQUIDATION OF CLAIM

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on February 28, 2024, at 9:30 a.m. in courtroom 403, 515 Rusk, Houston, Texas 77002.**

**TO THE HONORABLE JEFFREY P. NORMAN, U.S. BANKRUPTCY JUDGE:**

Sonder USA Inc. ("Sonder"), by and through its undersigned attorneys, files this *Motion to Modify the Stay to Allow Liquidation of Claim* (the "Motion"), and states as follows:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and General Order 2012-6 of the United States District Court for the Southern District of Texas, which refers all bankruptcy-related proceedings to this Court pursuant to 28 U.S.C. § 157(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Sonder consents to this Court's entry of a final order on the relief requested in the Motion.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    BACKGROUND

3. On February 19, 2021, Sonder sued Galleria 2425 Owner, LLC (the "Debtor") and several of its affiliates (the Debtor and its affiliates collectively, the "Choudhri Entities") in Harris County, Texas, District Court (the "State Court").[1] Sonder's lawsuit sought a declaration that it had terminated several leases it entered with the Choudhri Entities, and further asserted affirmative fraud and breach of contract claims against the Choudhri Entities. In response, each of the Choudhri Entities, including the Debtor, filed claims against Sonder for fraud and breach of contract with the American Arbitration Association. Additionally, one of the Choudhri Entities, Jetall Companies, Inc. ("Jetall") filed a motion to compel Sonder to arbitration in the State Court. After the State Court denied Jetall's motion to compel arbitration, all the Choudhri Entities, including the Debtor, appealed.

4. On March 20, 2023, the Court of Appeals for the First District of Texas entered a mandate ordering the State Court to compel Sonder and the Choudhri Entities to arbitration.[2] On December 19, 2023, the State Court stayed the lawsuit and ordered that Sonder and the Choudhri Entities arbitrate "all claims as specified within the arbitration agreement." Since then, both

---

[1]   *See* Cause No. 2021-09675, 61st Judicial District Court, Harris County, Texas.
[2]   *See* Case No. 21-00378-CV, Court of Appeals for the First District of Texas.

Sonder and the Choudhri Entities have been pursuing their claims in the arbitral forum. Arbitration between Sonder and the Choudhri Entities is currently set to begin on March 4, 2024.

5. On July 5, 2023, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition in this Court's Victoria Division (the "First Bankruptcy").[3] The Debtor did not provide any notice to Sonder or to the State Court of the First Bankruptcy. The First Bankruptcy was dismissed on November 1, 2023.

6. About a month later, the Debtor commenced the instant bankruptcy case by filing another Chapter 11 petition in this Court (the "Second Bankruptcy").[4] The Debtor again did not provide any notice to Sonder or to the State Court of the Second Bankruptcy. On February 1, 2024, the Court entered an order appointing a Chapter 11 trustee or, in the event a Chapter 11 trustee cannot be appointed, converting the case to Chapter 7.[5]

7. As of today's date, the United States Trustee's Office has not yet reported on whether a Chapter 11 trustee will be appointed.

8. To the extent the eventual trustee of the Debtor's estate intends to appear at the March 4, 2024, arbitration, Sonder respectfully requests that the Court modify the automatic stay to allow it to liquidate its claim against the Debtor in arbitration.

### III. MOTION

9. The Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of the continuation of an action or proceeding against the debtor. 11 U.S.C. § 362(a). This stay can be terminated, modified, or conditioned "for cause." 11 U.S.C. § 362(d)(1).

10. Bankruptcy courts have elucidated 12 factors particularly relevant to determining

---

[3] Bankr. S.D. Tex. Case No. 23-60036, ECF No. 1.
[4] ECF No. 1.
[5] ECF No. 99.

whether cause exists to modify the stay to allow litigation against a debtor to proceed in another forum. They are:

    (a) Whether the relief will result in a partial or complete resolution of the issues;

    (b) The lack of any connection with or interference with the bankruptcy case;

    (c) Whether the other proceeding involves Debtor as a fiduciary;

    (d) Whether a specialized tribunal has been established to hear the particular cause of action;

    (e) Whether the debtor's insurer has assumed full responsibility;

    (f) Whether the action primarily involves third parties;

    (g) Whether litigation in the other forum would prejudice the interests of other creditors;

    (h) Whether the judgment claim arising from the other action is subject to equitable subordination;

    (i) Whether movant's success would result in a judicial lien avoidable by the debtor;

    (j) Interests of judicial economy and the expeditious and economical resolution of litigation;

    (k) Whether the proceedings have progressed to the point that parties are ready for trial; and

    (l) The impact of the stay on the parties and the balance of harm.

*In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (citing *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014)). Not all the factors will be relevant to every dispute. *Mosher* at 773.

11. To the extent the factors apply here, they support allowing Sonder to proceed in the arbitration against the Debtor.

12. **Allowing Sonder to Arbitrate Its Claim Against the Debtor Will Result in Complete Resolution of the Issue**. The issues between Sonder and the Debtor relate to leases between the parties executed in April 2019. Both Sonder and the Debtor have asserted affirmative

claims in relation to the leases in the arbitration. Before February 1, 2024, the Debtor (as debtor-in-possession) provided Sonder with every indication that it intended to pursue its affirmative claims in the arbitration.

13. Thus, relief from the stay will mean that both Sonder and the Debtor's affirmative claims can be tried together, which will result in complete resolution of the outstanding issues between them. If, on the other hand, stay relief is not granted, the arbitration will not fully resolve the issues. The Debtor will still assert its affirmative claims in the arbitration, but Sonder's affirmative claims against the Debtor will remain unresolved (and likely pending in this Court).[6]

14. Moreover, many of Sonder's claims against the Debtor are interrelated with its claims against the other non-debtor Choudhri Entities and involve the same issues of law and fact. Thus, granting Sonder stay relief will result in a complete resolution of all outstanding issues.

15. This factor supports stay relief.

16. **The Arbitration will Not Significantly Interfere with the Bankruptcy Case**. While allowing Sonder to liquidate its claims in the arbitration will require the Debtor to defend against those claims, the Debtor is also pursuing its affirmative claims in the arbitration. As a result, any interference with the Debtor's case will be minimal. Additionally, Sonder's pursuit of its affirmative claims will not interfere with any property of the bankruptcy estate because Sonder is seeking limited relief only for the purpose of liquidating its damages. Finally, Sonder intends to work closely with the trustee of the Debtor's estate to attempt to consensually resolve the issues regarding the claims, or at least minimize the impact of the arbitration on the estate. This factor supports stay relief.

17. **The Arbitration Does Not Involve the Debtor as a Fiduciary.** This factor is

---

[6] If Sonder is unable to timely liquidate its claims in the arbitration because of the stay, it will need to file a proof of claim in this bankruptcy case.

inapposite because the arbitration does not involve the Debtor as a fiduciary.

18. **The Arbitration Panel Has Been Established to Hear the Issues**. Sonder and the Debtor's arbitration agreement was drafted by the Debtor and included a specific provision for the selection of an arbitration panel. The arbitration was instituted upon the Debtor's request, and a panel has been selected in accordance with the Debtor's wishes. The arbitration panel exists specifically to hear the issues between Sonder and the Debtor. This factor thus counsels in favor of stay relief.

19. **The Debtor's Insurer Has Not Assumed Responsibility**. Sonder is not aware of any insurance held by the Debtor that would cover Sonder's claims. Sonder is not seeking to recover on its claim against the Debtor or try to obtain possession of any property of the Debtor's estate, so this factor is inapposite.

20. **The Action Primarily Concerns Third Parties**. The arbitration involves Sonder, the Debtor, and three other non-debtor Choudri Entities. The arbitration thus primarily concerns third parties and this factor therefore supports stay relief.

21. **The Result of the Arbitration May Prejudice the Interests of Other Creditors**. The arbitration may result in Sonder having a claim against the Debtor, which may prejudice the interest of other creditors. That said, Sonder's filing a proof of claim in this bankruptcy case and requiring the Debtor to contest the claim in this Court in addition to pursuing its affirmative claim against Sonder in the arbitration may also result in prejudice to the Debtor's other creditors. This factor thus does not counsel either for or against stay relief.

22. **Sonder's Claim Arising from the Arbitration is Not Subject to Equitable Subordination.** Sonder does not believe any judgment it receives in the arbitration would be subject to equitable subordination. This factor counsels in favor of stay relief.

23. **Sonder's Success Would Not Result in a Judicial Lien Avoidable by the Debtor**.  By this Motion Sonder is seeking only to liquidate its claim against the Debtor and is not seeking to pursue any property of the Debtor.  Sonder's success in arbitration would, therefore, not result in a judicial lien.  This factor counsels in favor of stay relief.

24. **Stay Relief Supports Judicial Economy and the Expeditious and Economical Resolution of Litigation.**  As mentioned above, the Debtor previously indicated that it intends to pursue its affirmative claims in the arbitration.  If the Debtor still intends to do so, allowing Sonder to pursue its affirmative claims in the arbitration will promote judicial economy and the expeditious and economical resolution of litigation by allowing all the parties' issues to be tried together.

25. If stay relief is granted, Sonder's and the Debtor's claims against each other, which all involve similar issues of fact and law, would be tried in the arbitration.  If stay relief is not granted, however, the Debtor's affirmative claims will proceed in the arbitration forum, while Sonder's affirmative claims would likely need to be tried in this Court.  This would likely require the parties to try the same factual disputes and legal issues twice – once in the arbitration and once in this Court.  Doing so would be inefficient and a waste of this Court's time.

26. This factor thus counsels heavily in favor of stay relief.

27. **The Arbitration Is Currently Scheduled to Begin Within a Month.**  As discussed above, the parties are currently scheduled to begin arbitration on March 4, 2024, which is less than one month away.  This factor weighs in favor of stay relief.

28. **The Impact of the Stay on Sonder and the Balance of Harms Counsels in Favor of Stay Relief.**  As a preliminary matter, the stay has not yet affected the Debtor.  The Debtor has not sought a stay of any proceeding related to Sonder because of its bankruptcy and did not even

inform Sonder, the state court, or the arbitration panel of its bankruptcy cases. It is thus clear that the Debtor intends to use arbitration, and not this Court, to try its affirmative claims against Sonder.

29.  Preventing Sonder from pursuing its claims, however, would prejudice Sonder. If Sonder is required to defend against the Debtor's claim in the arbitration and simultaneously pursue its affirmative claim in this Court, Sonder would suffer excess legal fees and the risk of inconsistent legal outcomes based on the same facts and legal issues.

30.  Furthermore, as a matter of fairness, if the Debtor wishes to pursue its claims against Sonder in the arbitration forum, Sonder should be able to fully defend itself, including by asserting its affirmative claims against the Debtor, in the same forum where the Debtor is electing to proceed. Accordingly, this factor counsels in favor of stay relief.

### IV. CONCLUSION

31.  For the reasons described above, Sonder requests the Motion be granted.

WHEREFORE, Sonder requests the Court grant this Motion, enter an order modifying the stay to allow Sonder to liquidate its claims against the Debtor in the arbitration, waive the 14-day stay provided by Federal Rule of Bankruptcy Procedure 4001(a)(3), and grant Sonder such other and further relief in law or equity to which it is entitled.

[*Remainder of Page Left Intentionally Blank*]

Date: February 9, 2024
Houston, Texas

                Respectfully submitted,

By:   */s/ Broocks M. Wilson*
      Broocks 'Mack' Wilson
      State Bar No. 24102655
      KEAN MILLER LLP
      711 Louisiana Street, Suite 1800
      Houston, TX 77002
      Tel: 713.844.3000
      Fax: 713.844.3030
      Mack.Wilson@KeanMiller.com

      ATTORNEY FOR SONDER USA INC.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that, on February 9, 2024, a copy of the foregoing document was served to all parties required to be served under Federal Rule of Bankruptcy Procedure 4001(a)(1) and Local Rule 4001-1(a)(4) by either the Court's electronic notification system or by first class mail on the parties on the attached service list.

                */s/ Broocks M. Wilson*
                Broocks M. Wilson

## **CERTIFICATE OF CONFERENCE**

      Pursuant to Local Rule 4001-1(a)(1), the undersigned hereby certifies that as of February 9, 2024, he has not attempted to contact the Debtor's representative or counsel as their identity is not yet available. As soon as the trustee for the estate is appointed, he will confer with the trustee or the trustee's counsel regarding the request.

                */s/ Broocks M. Wilson*
                Broocks M. Wilson

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | Galleria 2425 Owner, LLC |
| United States Bankruptcy Court for the: | Southern District of Texas |
| Case number (if known): | 23-34815-H5-11 |

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Caz Creek Lending<br>118 Vintage Park Blvd No. W<br>Houston, TX 77070 | | Tax Lien | | $800,238.37 | $17,500,000.00 | $800,238.37 |
| 2 | Cirro Electric<br>PO Box 60004<br>Dallas, TX 75266 | | Electricity provider | | | | $22,928.00 |
| 3 | City of Houston<br>Po Box 1560<br>Houston, TX 77251-1560 | | | | $544,604.20 | $17,500,000.00 | $544,604.20 |
| 4 | City of Houston Water Department<br>PO Box 1560<br>Houston, TX 77251 | | Water | | | | $6,126.00 |
| 5 | Datawatch Systems<br>4520 East West Highway 200<br>Bethesda, MD 20814 | | Services | Disputed | | | $22,990.00 |
| 6 | Firetron<br>PO Box 1604<br>Stafford, TX 77497 | | Services | | | | $30,040.34 |
| 7 | First Insurance Funding<br>450 Skokie Blvd<br>Northbrook, IL 60062 | | | | | | $5,507.36 |
| 8 | Gulfstream Legal Group<br>1300 Texas St<br>Houston, TX 77002 | | Legal services | Disputed<br>Unliquidated | | | $57,799.06 |

Official Form 204　　Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims　　page 1

| Debtor | Galleria 2425 Owner, LLC | | | Case number *(if known)* | | 23-34815-H5-11 |
|---|---|---|---|---|---|---|
| | Name | | | | | |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Hayward PLLC<br>10501 N Central Expy Ste 106<br>Dallas, TX 75231-2203 | | Legal fees | | | | $97,193.00 |
| 10 | HNB Construction, LLC<br>521 Woodhaven<br>Ingleside, TX 78362 | | Services | Disputed<br>Unliquidated | | | $84,853.00 |
| 11 | Houston Community College System<br>c/o Tara Grundemeier Linebarger, Groggan, Blair & Sampson<br>Po Box 3064<br>Houston, TX 77253-3064 | | Ad Valorem tax lien | | $97,110.05 | $17,500,000.00 | $97,110.05 |
| 12 | Houston Independent School District<br>P.O. Box 4668<br>Houston, TX 77210 | | Ad valorem | | $979,200.35 | $17,500,000.00 | $979,200.35 |
| 13 | Lexitas<br>PO Box Box 734298 Dept 2012<br>Dallas, TX 75373 | | Services | | | | $2,771.75 |
| 14 | National Bank of Kuwait<br>299 Park Ave. 17th Floor<br>New York, NY 10171 | | Deed of Trust | Contingent<br>Disputed<br>Unliquidated | $63,552,988.00 | $17,500,000.00 | $63,552,988.00 |
| 15 | National Bank of Kuwait<br>Charles C. Conrad Pillsbury Winthrop Shaw Pittsman, LLP<br>909 Fannin St, Ste 2000<br>Houston, TX 77010 | | Tax lien assignments - subject to offsets and claims. Tax lien assignments were part of breached settlement agreement. | Contingent<br>Disputed<br>Unliquidated | $1,696,384.00 | $17,500,000.00 | $1,696,384.00 |
| 16 | Nationwide Security<br>2425 W Loop S 300<br>Houston, TX 77027 | | Services | | | | $32,549.70 |
| 17 | Nichamoff Law Firm<br>2444 Times Blvd 270<br>Houston, TX 77005 | | Legal services | | | | $46,984.22 |
| 18 | T&R Mechanical<br>21710 White Oak Dr<br>Conroe, TX 77306-8848 | | | | | | $4,216.34 |
| 19 | TKE<br>3100 Interstate North Cir SE 500<br>Atlanta, GA 30339 | | Elevator maintenance and repair | | | | $76,935.35 |

Official Form 204  Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims  page 2