United States Bankruptcy Court
Southern District of Texas
**ENTERED**
April 05, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 |
| Debtor. | ) |  |
|  | ) |  |

### FINAL ORDER AUTHORIZING THE TRUSTEE TO USE CASH COLLATERAL

Before the Court is the Emergency Motion of the Chapter 11 Trustee for Interim and Final Orders Authorizing the Use of Cash Collateral (the "Motion").[1] In the Motion, the Trustee requested, inter alia, entry of this final order (this "Order") pursuant to sections 105, 361, and 363 of title 11 of the United States Code (the "Bankruptcy Code") and in accordance with Rules 2002, 4001, and 2014 of the Federal Rules of bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to use cash collateral as set forth herein. The Court, having considered the Motion, any objections thereto, and the evidence presented or proffered and the statements and representations of the parties on the record at a hearing on the Motion; and any objections to the motion having been resolved or overruled; and, after due deliberation and consideration, hereby makes the following findings of fact and conclusions of law:

A.    *Chapter 11 Case*. On December 5, 2024, (the "Petition Date"), Galleria 2425 Owner, LLC (the "Debtor") filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code initiating the above-captioned chapter 11 case (the "Chapter 11 Case").

B.    *Appointment of Chapter 11 Trustee*.  On February 9, 2024, the Court entered an order appointing Christopher R. Murray as the chapter 11 trustee (the "Trustee") in this case. The

---

[1]  All capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

Trustee is the sole representative of the bankruptcy estate (the "Estate") created by the commencement of the Chapter 11 Case.

C.  *Cash Collateral*.  The National Bank of Kuwait, S.A.K.P. New York Branch ("NBK"), asserts security interests and liens (the "NBK Liens") in property of the Estate, including without limitation, (a) deposit accounts held by the Estate, (b) any funds received by the Estate on account of rents from the real property located at 2425 West Loop South, Houston, TX 77027 (the "Premises"), and (c) the Premises. To the extent the security interest is valid, such collateral and any proceeds thereof constitute cash collateral as that term is defined by Bankruptcy Code § 363(a) (the "Cash Collateral").

D.  *Immediate Need for Use of Cash Collateral*. The Trustee has an immediate and critical need to use the Cash Collateral in order to preserve and maximize the value of the Estate. Without the use of the Cash Collateral, the Premises would be at risk of losing substantial value to the detriment of the Estate and all claimants against the Estate.

E.  *Conditional Consent to Use Cash Collateral*. Subject to the agreements reflected in this Order, NBK has consented to the Trustee's use of the Cash Collateral set forth in the budget attached to this Order as Exhibit A (the "Budget").

F.  *Good Cause/Fair and Reasonable Terms*. The Trustee has shown good cause for the entry of this Order. Among other things, the entry of this Order will allow the Trustee to preserve the value of the Premises for the benefit of the Estate and claimants thereof. The use of Cash Collateral authorized hereunder is in the best interest of the Estate and will provide the Estate with the necessary liquidity to avoid immediate and irreparable harm and preserve and maximize the value of the Estate. The terms and conditions on the use of Cash Collateral, the security interests,

liens, rights and priorities granted to NBK, and the other agreements of the Trustee on behalf of the Estate provided for under this Order are fair and appropriate under the circumstances.

G.    *Jurisdiction and venue*: This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The Court may enter a final order on the Motion consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

H.    *Notice.* The trustee served copies of the Motion and notice of the hearing thereon to all parties entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Bankruptcy Local Rules for the Southern District of Texas, including: (a) the Office of the United States Trustee for Region 7, (ii) those creditors holding the twenty (20) largest unsecured claims against the Estate, (iii) the secured parties of record, and (iv) each party on the creditor matrix in the Chapter 11 Case. Under the circumstances, such notice of the Motion and the hearing thereon is due, proper, and sufficient and complies with Bankruptcy Rule 4001 and the Bankruptcy Local Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    *Motion Granted*. The motion is GRANTED as set forth herein on a final basis. Any objections to the Motion or the entry of this Order that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.      *Conditional Use of Cash Collateral*. The Trustee is hereby authorized to use Cash Collateral to pay the items set forth in the Budget and up to the respective aggregate amount of disbursements set forth in the Budget for any week, provided that (a) the Budget shall have a permitted variance of 10% per line item and 5% of the overall amount and (b) amounts set out in the Budget shall accumulate such that the Trustee may pay all amounts provided for in the Budget notwithstanding that a budgeted expense becomes due and payable at a different time than is set out in the Budget. The Trustee shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget, absent written agreement of NBK.

3.      *Stipulations and Agreements*. In consideration for the relief granted in this Order, the Trustee, on behalf of the Estate, and NBK stipulate and agree to the following:

     a.  *NBK Claim*. On May 23, 2018, the Debtor issued a note to NBK in the amount of $51,675,000.00 (the "NBK Note"). Subject to any claims, offsets, or affirmative defenses to the NBK Note or the Debtor's obligations thereunder, NBK was entitled to $63,552,988.00 under the NBK Note on the Petition Date (the "NBK Claim"). The Trustee, on behalf of the estate, reserves all rights to challenge the amount or allowance of the NBK Claim, or seek to equitably subordinate that claim, up to ten (10) days before a hearing on any plan of reorganization for the Debtor is first scheduled for hearing with any such challenge to be heard and determined in connection with that hearing.

     b.  *NBK Liens and Security Interests*. The Debtor's obligations to NBK are secured pursuant to the Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture filing (the "NBK Deed of Trust") and Absolute Assignment of Leases and Rents (the "NBK Assignment of Rents"), both of

which were filed in the real property records of Harris County, Texas, prior to the Petition Date. NBK has a valid, enforceable, and properly perfected security interest in the Premises pursuant to the NBK Deed of Trust that has priority over any other lien or security interest, except any lien pursuant to Chapter 32 of the Texas Tax Code. NBK also has a valid, enforceable, and properly perfected security in the rents from leases of the Premises pursuant to the Deed of Trustee and the NBK Assignment of Rents. The value of NBK's collateral does not exceed the amount it is owed.

c.   *Third-Party Management*. The Trustee shall take all appropriate steps to engage Jones Lang LaSalle Americas, Inc. as property manager ("<u>JLL</u>") to oversee the day-to-day operations of the Premises. NBK agrees to JLL's retention as property manager and further agrees to fund, either through the use of Cash Collateral or through separate payment by NBK or advance to the Trustee pursuant to a further order of the court, the fees, costs and expenses owed to JLL under any Management Agreement or similar agreement entered into by JLL and the Trustee relating to the management of the Premises. Any amount paid directly by NBK, or any amount advanced to the Trustee pursuant to a further order of the court, shall be added to the amounts owed to NBK and secured by a first priority lien on the estate's assets (to which NBK consents).

d.   *Post-Petition Financing*. The Trustee and NBK will negotiate in good faith to reach an agreement on post-petition financing to allow the Trustee to administer the Chapter 11 Case (the "<u>Post-Petition Financing</u>"). Notwithstanding the preceding sentence, nothing in the Motion, this Order, or the communications

among the Trustee and NBK to date shall (i) obligate the Trustee or NBK to agree to any Post-Petition Financing or (ii) prevent the Trustee from soliciting or agreeing to Post-Petition Financing from any other party.

e. *Milestones*. The Trustee shall abide by the following case milestones (the "Milestones"):

    i. On or before March 22, 2024, the Trustee shall file a motion for the approval of JLL's retention as property manager for the Premises.

    ii. On or before April 5, 2024, the Trustee shall file a motion seeking the approval of a process to market and sell the Premises pursuant to Bankruptcy Code § 363(b) (the "Sale Motion"). The Sale Motion shall include provisions for an auction of the Premises (the "Auction") no later than July 1, 2024, and a hearing to approve the sale of the Premises (the "Sale Hearing") no later than July 8, 2024. Notwithstanding the preceding sentence, to the extent that the Court approves a date for the Auction or sets the Sale Hearing on a date that is within fourteen (14) days of the date requested, this Milestone shall be deemed met.

f. *Remedies for Failure to Meet Milestones*. To the extent that the Trustee fails to meet the Milestones provided for in this Order, the Trustee's authority to use the Cash Collateral shall immediately terminate; *provided that* (i) the Trustee and NBK may agree to an extension of any Milestone by written agreement (including by email among their respective counsel) without the need for further order of the Court and (ii) the Court may extend any Milestone under the standard applicable to Bankruptcy Rule 9006(b).

g. *NBK Lien Subject to Carve-Out*. Subject to the closing of a sale of the Premises after a Sale Hearing, NBK agrees that the NBK Lien shall be subject to the Carve-Out (defined below).

4.     *Effect of Stipulations and Agreements*. The Trustee's acknowledgments and stipulations in this order shall be binding on the Trustee, the Estate, and their respective representatives, successors, and assigns in all circumstances. The stipulations contained in this Order shall be binding upon all other parties in interest and all of their respective successors and assigns.

5.     *Adequate Protection—Replacement Liens*. As partial adequate protection for any diminution in value of NBK's interest in the Cash Collateral ("Diminution in Value"), NBK is granted a replacement lien (the "Replacement Lien") in all currently owned or hereafter acquired property of the Estate excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code, and all proceeds and products of the foregoing including avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code (collectively, the "Adequate Protection Collateral"). The Replacement Lien granted pursuant to this Order shall have the same priority as NBK's prepetition liens but shall be subject to the Carve-Out (defined below).

6.     *Adequate Protection—Super-Priority Administrative Claim*. As additional partial adequate protection for the Trustee's use of the Cash Collateral, to the extent of any Diminution in Value and a failure of the other adequate protection provided by this Order, NBK shall have an allowed super-priority administrative expense claim against the Estate as provided in and to the fullest extent permitted by sections 503(b) and 507(b) of the Bankruptcy Code or otherwise (the "Adequate Protection Super-Priority Claim"). The Adequate Protection Super-Priority Claim shall be subject to the Carve-Out (defined below).

7.      *Adequate Protection—Information Rights*. As additional partial adequate protection for the Trustee's use of the Cash Collateral, the Trustee agrees that NBK shall be entitled to receive, and shall receive at or around the same time as the Trustee, all reports, summaries, analyses, schedules, invoices, receipts, notices, and all other similar information provided to the Trustee by JLL. The Trustee shall also direct JLL to provide NBK with copies of any letter of intent, term sheet, and/or draft lease the Trustee proposes to enter into with a prospective tenant of the Premises; all such information shall be provided to NBK at least 14 days prior to the Trustee's entry into any such lease.

8.      *Carve-Out*. The NBK Lien, Replacement Lien, Adequate Protection Super-Priority Claim shall be subject to the following (the "Carve-Out"): (a) unpaid fees payable to the Clerk of the Court or the United States Trustee; (b) court-approved administrative expense claims of estate professionals, employed pursuant to an order of this Court (collectively, the "Estate Professionals"), for incurred by unpaid fees, expenses, and other costs in an amount not to exceed $260,000.00, provided such fees, costs, and expenses of counsel are specifically approved by an order of the Court, less any amounts paid by the Estate pursuant to the Budget, provided, further, however, that the Carve-Out related to fees and expenses incurred by Estate Professionals relating to any investigation concerning any claims held or potentially held by the Estate against NBK shall not exceed $50,000 and the Trustee may not otherwise use any Cash Collateral to investigate or pursue any claim against NBK; and (c) court-approved compensation to the Trustee in an amount not to exceed the amounts set forth in Bankruptcy Code § 326(a) less any amounts paid by the Estate pursuant to the Budget.

9.      *Professional Fee Escrow*. The Trustee is authorized to transfer cash on hand from time to time in the amount equal to the total budgeted fees and expenses of Estate Professionals to

be incurred under the Budget and Carve-Out (plus any true-up necessary for prior periods) into a segregated account maintained by the Trustee (the "Professional Fee Escrow"). The Trustee shall be authorized to use funds held in the Professional Fee Escrow to pay Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and any interim or final orders of the Court; *provided that* the Trustee's obligations to allowed compensation and reimbursement to Estate Professionals shall not be limited or deemed limited to the funds held in the Professional Fee Escrow. Funds in the Professional Fee Escrow shall be held in trust and available solely to pay allowed compensation and reimbursement to Estate Professionals. NBK and any other secured party with a lien on the funds transferred to the Professional Fee Escrow shall retain an automatically perfected and continuing security interest in any residual interest in the Professional Fee Escrow available following the satisfaction in full of all obligations to Estate Professionals.

10.     *Ad Valorem Tax Liens:*  Notwithstanding any other provisions included in the Interim Order or the Final Order, or any agreements approved by the Final Order, any prepetition and postpetition ad valorem tax liens under Chapter 32 of the Texas Tax Code (each a "Tax Lien"), specifically including the Tax Liens held by the City of Houston, Houston ISD, and Houston Community College System (collectively, the "Houston Taxing Authorities") and Harris County, Harris County Flood Control District, Port of Houston Authority, Harris County Hospital District, and Harris County Department of Education (collectively, the "Harris County Taxing Authorities", and together with the Houston Taxing Authorities, the "Taxing Authorities"), shall not be primed by nor made subordinate to any liens granted to any party under this order. In the event of a sale of any assets which are encumbered by a Tax Lien, such Tax Lien shall attach to the proceeds of the sale of the assets to the same extent and with the same priority as such Tax Liens attached to

the Debtor's assets immediately prior to the closing of such sale, and the Trustee or any successor to the Trustee shall not pay to NBK any proceeds from the sale of any assets subject to a valid, first priority liens of the Taxing Authorities.

11.     _Modifications to Budget_. Nothing in this Order shall prevent the Trustee and NBK from agreeing to consensual modification to the Budget, provided that such modifications do not reduce the total amount of Cash Collateral that the Estate may use.

12.     _Further Actions_. The Trustee and NBK are hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Trustee to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth in the Budget including, without limitation, fees, costs and expenses owed to JLL.

13.     _Retention of Jurisdiction_. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed:** April 05, 2024

Jeffrey P. Norman
United States Bankruptcy Judge