**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 (JPN) |
| Debtor. | ) |  |
|  | ) |  |

**CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER:
(I) APPROVING PROCEDURES FOR THE SALE OF PROPERTY
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES;
(II) SCHEDULING AN AUCTION; (III) AUTHORIZING ENTRY
INTO THE STALKING HORSE PURCHASE AGREEMENT;
(IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES;
(V) APPROVING FORM OF NOTICE; AND (VI) GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MOTION ON MAY 1, 2024, AT 11:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 403, U.S. BANKRPTCY COURT, 515 RUSK, HOUSTON, TX 77002.

Christopher R. Murray, the chapter 11 trustee (the "Trustee") appointed in the above-referenced case respectfully represents as follows in support of the motion (the "Motion").

## PRELIMINARY STATEMENT

1.      Subject to Court approval, the Trustee has accepted a stalking horse bid for the Debtor's real property, and by this Motion, the Trustee seeks authority to implement, among other things, a process to solicit bids that might create a competitive auction for the property that results in an ultimate sales price that exceeds in value the initial stalking horse bid and matches the certainty of closing represented by the stalking horse bid.

2.      Although the Debtor's secured lender is the stalking horse bidder and intends to propose a plan of liquidation in conjunction with such sale, the Trustee will manage the sale process and decide the prevailing or winning bid without any input from the Debtor's secured lender as long as the lender is bidding for the property.  The Trustee believes that a prompt sale of the property is necessary because the estate otherwise lacks the resources to pay brokers to lease the property up and increase its value.  In short, a sale of the property is in the best interests of the estate and its creditors.

## RELIEF REQUESTED

3.      The Trustee seeks entry of an order in the form attached as Exhibit A (the "Bid Procedures Order") (i) approving the proposed bid procedures attached as Exhibit 1 to the Bid Procedures Order (the "Bid Procedures"); (ii) establishing certain dates and deadlines for the sale process, including scheduling an auction (the "Auction"), if needed; (iii) approving and authorizing entry into an asset purchase agreement (the "Stalking Horse Agreement") attached as Exhibit 2 to the Bid Procedures Order, subject to higher and better offers; (iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases attached as Exhibit 3 to the Bid Procedures Order ("Assumption & Assignment Procedures"); (v)

approving form and manner of notice of the Auction attached as <u>Exhibit 4</u> to the Bid Procedures Order (the "<u>Sale Notice</u>"); and (vi) granting related relief.

**JURISDICTION AND VENUE**

4.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(b)(2) and 1334. Venue is proper under 28 U.S.C. § 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order granting the relief requested. The bases for the relief requested are sections 105(a), 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rule(s)</u>") and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas ("<u>Local Rule(s)</u>").

**BACKGROUND**

5.      On December 5, 2023, Galleria 2425 Owner, LLC (the "<u>Debtor</u>") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On January 31, 2024, the Court entered an order directing the appointment of a chapter 11 trustee to manage the estate. [ECF No. 99].  On February 9, 2024, the Court entered an order appointing Trustee. [ECF Nos. 116].

6.      As of the date of hereof, no examiner or official committee of unsecured creditors has been appointed in this case.

7.      The Trustee has executed the Stalking Horse Agreement with the National Bank of Kuwait, S.A.K.P., New York Branch ("<u>NBK</u>" or the "<u>Stalking Horse Bidder</u>"), for the sale of certain property located at 2425 West Loop South, Houston, Texas 77027 (the "<u>Property</u>") under section 363 of the Bankruptcy Code.

8.      Pursuant to the Stalking Horse Agreement, and subject to higher and better offers through a competitive auction process in which NBK can participate, NBK has agreed to purchase

3

the Property in exchange for a portion of the amount it is owed (a "credit bid"), subject to outstanding claims secured by ad valorem tax liens which will be paid under the chapter 11 plan of liquidation that NBK intends to propose.  The Trustee anticipates that the Stalking Horse Agreement will generate competitive bidding for the sale of the Property.

9.      The Trustee intends to retain a commercial real estate broker (the "<u>Broker</u>") to market the Property for approximately 2 months for sale to potential third-party purchasers.  After the Broker completes the preparation of marketing documents and receives approval from the Trustee, the Broker will contact potential purchasers in the real estate market. All prospective purchasers will receive an executive summary regarding the Property and a confidentiality agreement. Those parties that execute a confidentiality agreement will receive a more detailed descriptive memorandum, access to an online data room containing additional information about the Property, and the opportunity to inspect the Property.

BID PROCEDURES AND SALE NOTICE

10.     The Trustee has designed the Bid Procedures to establish an open process for the solicitation, receipt, and evaluation of bids for the Sale of the Property utilizing the following proposed timeline:

| Event | Description | Deadline |
|---|---|---|
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures. | 5:00 p.m. prevailing Central Time on June 14, 2024. |
| Auction | The date and time of the Auction, if one is needed, which will be held by video conference. | 1:00 p.m. prevailing Central Time, on June 18, 2024, if needed |

| Notice of Successful Bidder | As soon as reasonably practicable after the conclusion of the Auction, the Trustee will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures) (the "Notice of Successful Bidder"), identifying the Successful Bidder and key terms of the agreement. | June 21, 2024 |
|---|---|---|
| Assumption and Assignment Service Deadline | The deadline by which the Trustee shall serve the contract assumption notice informing each recipient of the timing and procedures relating to such assumption and assignment. | June 7, 2024 |
| Cure Amounts Objection Deadline | The deadline by which objections, if any, to the proposed assumption and assignment or the proposed Cure Amounts (as defined in the Assumption & Assignment Procedures) must be received. | July 1, 2024 |
| Sale Objection Deadline | The deadline by which objections, if any, to the Sale must be received. | July 1, 2024 |
| Sale Hearing | The hearing before the Court to consider approval of the Successful Bid, pursuant to which the Trustee and the Successful Bidder consummate the Sale. | __:00 __.m. (Prevailing Central Time) on July __, 2024 (may be combined with hearing on a plan of liquidation) |

11.    Because the Bid Procedures are set forth in detail therein, they are not restated here. In general, the Bid Procedures establish, among other things:[1] (a) the requirements for participation in the Bidding Process, including the criteria for a bid to be designated as a Qualified Bid; (b) the process for the submission and evaluation of bids in connection with the Sale; (c) the requirements for participation in, and rules governing the conduct of, the Auction of the Property; (d) the process for designation of a Successful Bidder and a Backup Bidder; and (e) all related dates and deadlines.

---

[1]  This summary is provided for the convenience of the Court and parties in interest. To the extent there is any conflict between this summary and the Bid Procedures, the Bid Procedures govern in all respects.

12.     The Trustee also seeks approval of the Sale Notice, which in addition to the Bid Procedures Order and the Bid Procedures, will be served upon the following parties or their counsel, if known (collectively, the "Notice Parties"): (a) the Office of the United States Trustee for the Southern District of Texas; (b) Naissance Galleria, LLC; (c) the Debtor; (d) NBK; (e) any parties known or reasonably believed to have expressed an interest in the Property; (f) creditors, interest holders and parties to executory contracts or leases as identified in the Debtor's Schedule found at ECF No. 70; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. After entry of the Bid Procedures Order, the Trustee also will give notice of the Sale in a local Houston, Texas publication of general interest.

13.     The Trustee submits that the providing notice of the sale as outlined above reasonably provides all interested parties with timely and proper notice of the proposed sale of the Property, including: (a) the date, time, and place of the Auction (if one is held); (b) the Bid Procedures and the dates and deadlines related thereto; (c) the dates and deadlines related to the Auction; and (d) instructions for promptly obtaining a copy of the Stalking Horse Agreement and other pleadings.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

14.     The Trustee also seeks approval of the Assumption & Assignment Procedures to facilitate the fair and orderly assumption and assignment of executory contracts and unexpired leases in connection with the Sale.  Because the Assumption & Assumption Procedures are set forth in detail therein, they are not restated herein.[2]  In general, the Assumption & Assignment Procedures (a) outline the process by which the Trustee will serve notice to all counterparties to executory contracts and unexpired leases (the "Assigned Contracts") regarding the proposed

---

[2] The proposed Assumption & Assignment Procedures relate to the proposed mechanism for providing notice of cure amounts to certain executory contract counterparties, entertaining objections, and resolving disputes, if any.

assumption and assignment and related cure amounts, if any, informing such parties of their rights and the procedures to object thereto, and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of certain Assigned Contracts to the extent necessary.

**ARGUMENT**

### A. The Court's Authority to Approve the Bid Procedures

15.     The procedures used in selling estate assets are subject to the Trustee's business judgment, which is entitled to substantial deference, as long as the Trustee articulates an adequate business justification. *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside of the ordinary course of business."). Bankruptcy Rule 6004(f)(1) provides that any such non-ordinary course sale "may be by private sale or public auction." *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("there is no prohibition against a private sale. . . [and] there is no requirement that the sale be by public auction"). Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Trustee has exercised sound business judgment in entering into the Stalking Horse Agreement, deciding on this process for the public auction sale of the Property, and committing to closing with the prevailing bidder on the terms set forth in the Stalking Horse Agreement.

**B.  The Bid Procedures are Reasonably Designed to Maximize Value for the Property**

16.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See, e.g.*, *In re Bigler, LP*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010).  In that regard, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing value and therefore are appropriate for bankruptcy transactions. *See, e.g.*, *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bid procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

17.    Here, the Bid Procedures are designed to attract active bidding from parties potentially interested in the Sale of the Property and to maximize its value.  The Trustee developed the Bid Procedures to solicit offers and conduct a sale process in a controlled, fair, and open fashion that will encourage participation by financially capable bidders. If the Trustee receives competing bids, the Bid Procedures provide the Trustee an opportunity to schedule an Auction with respect to such bids and then select the highest or otherwise best bid. The Bid Procedures also provide the Trustee with the flexibility and opportunity, to assess and compare bids to ensure that the estate receives the best consideration for the Property.

18.    Furthermore, to be clear, the Trustee will exercise his independent discretion in connection with the Sale and proposed Auction.  The Trustee will determine whether a Potential Bidder is a Qualified Bidder.  The Trustee will determine the Successful Bidder.  The Trustee will decide any issues of discretion under the Bidding Procedures.  And for so long as NBK is bidding on the Property, the Trustee will not consult with NBK with respect to any of the foregoing.

19.    Accordingly, the Bid Procedures should be approved.

C. **Entry Into the Stalking Horse Agreement Has a Sound Business Purpose and Should be Approved**

20. The Trustee seeks approval and authority to enter into the Stalking Horse Agreement without any break-up fee and expense reimbursement to NBK if NBK is not the Successful Bidder. The use of a stalking horse in a public auction process for the sale of estate assets is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value by "establish[ing] a framework for competitive bidding and facilitate[ing] a realization of that value." *Off. Comm. Of Unsecured Creditors v. Interforum Holding LLC*, No. 11-CV-219, 2011 WL 2671254, at *1 (E.D. Wis. July 7, 2011). Moreover, entry into the Stalking Horse Agreement sends a strong signal to the market that the Trustee is serious about running a competitive sale process to generate the best result for the estate. Significantly, the absence of any breakup fee or expense reimbursement requirement, in the Trustee's opinion, increases the likelihood of competitive bidding as other bidders will not have to account for any breakup fee or expense reimbursement when deciding their own bid for the Property.

21. Accordingly, the Court should approve and allow the Trustee to enter into the Stalking Horse Agreement in order to preserve the value of the estate.

D. **The Sale of the Property is Authorized by Section 363 as a Sound Exercise of the Trustee's Business Judgement**

22. Section 363(b)(1) of the Bankruptcy Code provides that a "trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of estate assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) ("Under Section 363, the debtor in possession can

sell property of the estate . . . if he has an 'articulated business justification' . . ..."); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc's, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

23.     As long as the sale appears to enhance an estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *See GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D. P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

24.     Here, sound business reasons support the proposed sale.

25.     The monthly revenue being generated by the Property does not exceed expenses sufficiently to fund administrative expenses incurred while in chapter 11, necessary capital expenditures, and interest accruing on tax liens, and the estate lacks the resources to carry the Property or enter into new leases.  The proposed Sale, however, provides an efficient way for the Trustee to shed this underwater asset (both from a leverage and cash-flow perspective) and provides a way for a plan to be confirmed.

26.     Moreover, the Sale achieves these positive results not only through the Stalking Horse Bid but also through a process that is intended to maximize the value of the Property by exposing it to the market as part of a competitive, arms' arms-length process.  The successful bid after being subject to a "market check" in the form of the Auction, will constitute, in the Trustee's business judgment, the highest or otherwise best offer for the Property and will provide a greater

recovery for the estate than any other alternative. Also, because a sale of the Property may result in the assumption of certain of the Debtor's executory contracts and unexpired leases, it could result in payment in full for several creditors.

27.     The Trustee's determination to sell the Property through an Auction process and subsequently to enter into a purchase agreement with the Successful Bidder will be a valid and sound exercise of his business judgment and should be sustained by the Court at the sale hearing. No evidence need be taken on this issue now, in connection with approving the Sale process and Bid Procedures. Any objections to the Stalking Horse Agreement can be raised at the Sale Hearing.

28.     The Trustee is aware that 2425 WL, LLC has filed Adversary Proceeding No. 24-03043 seeking, among other things, the equitable subordination of NBK's claim behind the lien of 2425 WL, LLC. The process set out under the Bid Procedures would allow for adequate time for the resolution of this issue and 2425 WL, LLC or any other party to submit an alternative bid for the Property to be considered at the Sale Hearing. Unless and until NBK's claim or lien are equitably subordinated, however, NBK's lien has the priority over all liens other than those created by Chapter 32 of the Texas Tax Code.

**E.  The Sale Transaction Has Been Proposed in Good Faith Without Collusion, and the Successful Bidder Is a "Good-Faith Successful Bidder."**

29.     At the Sale Hearing, the Trustee will request that the Court find that the Successful Bidder is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code.

30.     Section 363(m) of the Bankruptcy Code provides in relevant part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal,

> unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).

31.     Section 363(m) thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made. *See, e.g.*, *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

32.     The Trustee submits that the Stalking Horse Bidder or any Successful Bidder will be "good faith purchasers" within the meaning of section 363(m) of the Bankruptcy Code, and the Stalking Horse Agreement with the Stalking Horse Bidder is a good-faith, arms'-length agreement entitled to the protections of section 363(m) of the Bankruptcy Code.

33.     As the Trustee will demonstrate at the Sale Hearing: (a) the consideration to be received from a Successful Bidder will be substantial, fair, and reasonable; (b) any sale agreement with a Successful Bidder will presumably be the culmination of a competitive Auction process in which all parties will be represented by counsel and all negotiations will be conducted on an arm's-length, good-faith basis; (c) there will be no "fraud, collusion between the purchaser and other

bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code; and (d) any bids determined to be Successful Bid will have been evaluated and approved by the Trustee as being in the best interests of the estate.

**F.  The Sale Should be Approved "Free and Clear" Under Section 363(f)**

34.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

35.     Section 363(f) is drafted in the disjunctive, meaning satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Property free and clear of all encumbrances, except as to any interests that may be assumed liabilities under the applicable purchase agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *In re Elliot*, 94 B.R. 343, 354 (E.D. Pa. 1988) (holding that a sale "free and clear" may be approved provided the requirements of at least one subsection are met).

36.     The Trustee submits that any interest in the Property that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the estate may possess with respect thereto.

37.     By way of example, any interest in the Property senior to the secured interest held by NBK will be paid or otherwise satisfied in full from the sale proceeds or pursuant to a plan of reorganization and applicable non-bankruptcy law allows the Property to be sold free and clear of any interest junior to NBK in the Property.

**G. Any Sale of the Property Pursuant to a Plan of Liqudiation Is Proper and Will Be Free of Transfer Taxes.**

38.     A condition for the Sale of the Property pursuant to the Stalking Horse Agreement is that an order confirming a plan of liquidation in this chapter 11 case that implements or incorporates by reference the transaction provided for by the Staking Horse Agreement be a final order. Under such an arrangement, the Sale would be an integral and integrated part of the Plan, pursuant to section 1123(b)(4) of the Bankruptcy Code.[3]

39.     For any Sale that is part of a plan of liquidation, Bankruptcy Code section 1146(a) exempts its transfer from stamp taxes, transfer taxes, or similar taxes so long as the transfer is in conjunction with a Chapter 11 plan. *See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008).

**H. The Form and Manner of Notice Should Be Approved**

40.     Bankruptcy Rule 2002(a) requires the Trustee to provide creditors with 21 days' notice of a sale of property out-of-the ordinary course.  Under Bankruptcy Rule 2002(c), such notice must include the time and place of any proposed public sale/auction and the deadline for filing any objections to the proposed sale.

---

[3] Section 1123(b)(4) of the Bankruptcy Code allows for chapter 11 plans of liquidation to "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests . . . ." While the Bidding Procedures provide the Trustee with the flexibility to go forward with a sale that is not part of a plan of liquidation, the Stalking Horse Agreement contemplates a sale incorporated by a plan.

41.     Following entry of the Bid Procedures Order, the Trustee will serve the Sale Notice, the Bid Procedures Order, and the Bid Procedures (the "Sale Notice Package"). The Sale Notice Package, when served on the Notice Parties, constitutes good and adequate notice under Bankruptcy Rule 2002 of the proposed Sale, the Auction and the other relief sought in this Motion and to be sought at the final sale hearing.

42.     Accordingly, the Trustee requests that the Court approve the form of the Sale Notice and manner of service of the Sale Notice Package.

**I.     The Assumption & Assignment Procedures Should Be Approved**

43.     Section 365(a) of the Bankruptcy Code provides that a trustee "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard governing approval of a trustee's decision to assume or reject an executory contract is whether the trustee's reasonable business judgment supports assumption or rejection. *In re Mirant Corp.*, 378 F.3d 511, 524-25, n.5 (5th Cir. 2004).  Under the business judgment test, a court should approve a trustee's proposed assumption if such assumption will benefit the estate. *In re Food City, Inc.*, 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988).

44.     The Assumption & Assignment Procedures are reasonable under the circumstances and are necessary to notify parties to assumed contracts of the potential assumption and assignment of their contracts, the related proposed cure amounts, and the Successful Bidder's adequate assurance of future performance.  Whether the requirements for assumption and assignment of any executory contracts or unexpired leases to a Successful Bidder has been satisfied will be demonstrated at the Sale Hearing.

45.     The Trustee will evaluate the financial wherewithal of potential bidders before designating any such party a Qualified Bidder or Successful Bidder, including as it relates to such

Qualified Bidder's willingness and ability to perform under executory contracts and unexpired leases that it wants assumed and assigned. Indeed, the Bid Procedures provide that all bids must be accompanied by information providing adequate assurance of the bidder's future performance.

46.     Accordingly, the Assumption & Assignment Procedures should be approved as reasonable and necessary measures to (a) adequately notify parties in interest and assume and (b) assign contracts and leases in a fair, efficient, and proper manner.

**J.  Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate**

47.     To maximize the value received for the Property, the Trustee seeks to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Trustee requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

<u>**NOTICE**</u>

48.     Notice of this Motion has been provided to the following parties and their counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) NBK; (c) Naissance Galleria, LLC; (c) the Debtor; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (f) all creditors and interest holders, and executory contract counterparties, identified in the Debtor's Schedules. The Trustee submits that no other or further notice is required.

<u>**CONCLUSION**</u>

WHEREFORE, Trustee respectfully requests that the Court enter the Bid Procedures Order granting (i) the relief requested in the Motion and (iii) other relief as is just and proper.

DATED: April 5, 2024                    SHANNON & LEE LLP

                                        /s/      R. J. Shannon
                                        Kyung S. Lee (TBA No. 12128400)
                                        R. J. Shannon (TBA No. 24108062)
                                        2100 Travis Street, STE 1525
                                        Houston, TX 77002
                                        Telephone: (713) 714-5770
                                        klee@shannonleellp.com
                                        rshannon@shannonleellp.com

                                        *Counsel to the Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing and (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within one (1) business day of the filing.

                                        /s/    R. J. Shannon

```
Label Matrix for local noticing        2425 WL, LLC                            CC2 TX, LLC
0541-4                                  2425 West Loop South 11th floor         c/o Howard Marc Spector
Case 23-34815                           Houston, TX 77027-4304                  Spector & Cox, PLLC
Southern District of Texas                                                      12770 Coit Road Suite 850
Houston                                                                         Dallas, TX 75251-1364
Fri Apr  5 18:30:20 CDT 2024

City of Houston                         Galleria 2425 Owner, LLC                (p)HARRIS COUNTY ATTORNEY'S OFFICE
Linebarger Goggan Blair & Sampson LLP   1001 West Loop South 700                P O BOX 2928
c/o Tara L. Grundemeier                 Houston, TX 77027-9084                  HOUSTON TX 77252-2928
PO Box 3064
Houston, TX 77253-3064

Houston Community College System        Houston ISD                             National Bank of Kuwait, S.A.K.P., New York
Linebarger Goggan Blair & Sampson LLP   Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier                 c/o Tara L. Grundemeier
PO Box 3064                             PO Box 3064
Houston, TX 77253-3064                  Houston, TX 77253-3064

4                                       2425 WL, LLC                            ADT
United States Bankruptcy Court          13498 Pond Springs Rd.                  PO Box 382109
PO Box 61010                            Austin, TX 78729-4422                   Pittsburgh, PA 15251-8109
Houston, TX 77208-1010

Ali Choudhry                            Ash Automated Control Systems, LLC      CFI Mechanical, Inc
1001 West Loop South 700                PO Box 1113                             6109 Brittmoore Rd
Houston, TX 77027-9084                  Fulshear, TX 77441-2013                 Houston, TX 77041-5610

CNA Insurance Co                        Caz Creek Lending                       Cirro Electric
PO Box 74007619                         118 Vintage Park Blvd No. W             PO Box 60004
Chicago, IL 60674-7619                  Houston, TX 77070-4095                  Dallas, TX 75266

City of Houston                         City of Houston                         Comcast
PO Box 1560                             c/o Tara L. Grundemeier                 PO Box 60533
Houston, TX 77251-1560                  Linebarger Goggan Blair & Sampson LLP   City of Industry, CA 91716-0533
                                        PO Box 3064
                                        Houston, TX 77253-3064

Datawatch Systems                       Environmental Coalition Inc             Ferguson Facilities Supplies
4520 East West Highway 200              PO Box 1568                             PO Box 200184
Bethesda, MD 20814-3382                 Stafford, TX 77497-1568                 San Antonio, TX 78220-0184

Firetron                                (p)FIRST INSURANCE FUNDING              Gulfstream Legal Group
PO Box 1604                             450 SKOKIE BLVD SUITE 1000              1300 Texas St
Stafford, TX 77497-1604                 NORTHBROOK IL 60062-7917                Houston, TX 77002-3509

HNB Construction, LLC                   Harris County Tax Assessor              Houston Community College System
521 Woodhaven                           PO Box 4622                             c/o Tara L. Grundemeier
Ingleside, TX 78362-4678                Houston, TX 77210-4622                  Linebarger Goggan Blair & Sampson LLP
                                                                                PO Box 3064
                                                                                Houston, TX 77253-3064
```

| | | |
|---|---|---|
| Houston ISD<br>c/o Tara L. Grundemeier<br>Linebarger Goggan Blair & Sampson LLP<br>PO Box 3064<br>Houston, TX 77253-3064 | Kings 111 Emergency Communications<br>751 Canyon Drive, Suite 100<br>Coppell, TX 75019-3857 | Lexitas<br>PO Box Box 734298 Dept 2012<br>Dallas, TX 75373-4298 |
| Logix Fiber Networks<br>PO Box 734120<br>Dallas, TX 75373-4120 | MacGeorge Law Firm<br>2921 E 17th St Blgd D Suite 6<br>Austin, TX 78702-1572 | Mueller Water Treatment<br>1500 Sherwood Forest Dr.<br>Houston, TX 77043-3899 |
| National Bank of Kuwait<br>299 Park Ave. 17th Floor<br>New York, NY 10171-0023 | Nationwide Security<br>2425 W Loop S 300<br>Houston, TX 77027-4205 | Nichamoff Law Firm<br>2444 Times Blvd 270<br>Houston, TX 77005-3253 |
| Rodney L. Drinnon<br>2000 West Loop S, Ste. 1850,<br>Houston, Texas 77027-3744 | TKE<br>3100 Interstate North Cir SE  500<br>Atlanta, GA 30339-2296 | U.S. Trustee's Office<br>515 Rusk, Suite 3516<br>Houston, Texas 77002-2604 |
| US Retailers LLC d/b/a Cirro Energy<br>Attention: Bankruptcy Department<br>PO Box 3606<br>Houston, TX 77253-3606 | US Trustee<br>Office of the US Trustee<br>515 Rusk Ave<br>Ste 3516<br>Houston, TX 77002-2604 | Waste Management<br>PO Box 660345<br>Dallas, TX 75266-0345 |
| Zindler Cleaning Service Co<br>2450 Fondren 113<br>Houston, TX 77063-2314 | Ali Choudhri<br>24256 West Loop South<br>11th Floor<br>Houston, TX 77027 | Christopher R Murray<br>Jones Murray LLP<br>602 Sawyer St<br>Ste 400<br>Houston, TX 77007-7510 |
| James Q. Pope<br>The Pope Law Firm<br>6161 Savoy Drive<br>Ste 1125<br>Houston, TX 77036-3343 | Reese W Baker<br>Baker & Associates<br>950 Echo Lane<br>Suite 300<br>Houston, TX 77024-2824 | Rodney Drinnon<br>McCathern Houston<br>2000 W Loop S<br>Ste. 1850<br>Houston, TX 77027-3744 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Harris County, ATTN: Property Tax Division<br>Harris County Attorney's Office<br>P.O. Box 2928<br>Houston, TX 77252-2928 United States | First Insurance Funding<br>450 Skokie Blvd<br>Northbrook, IL 60062 | (d)Harris County, et al<br>PO Box 2928<br>Houston, TX 77252 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
End of Label Matrix
Mailable recipients    50
Bypassed recipients     3
Total                  53
```