**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE NBK'S FILING FOR RELIEF UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE AND SUBJECT TO THE PLAN DOCUMENTS.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GALLERIA 2425 Owner, LLC** | § | **Case No. 23-34815 (JPN)** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |
| | § | |

**DISCLOSURE STATEMENT FOR CHAPTER 11**
**PLAN OF LIQUIDATION OF THE DEBTOR**

## I.   INTRODUCTION

NBK submits this disclosure statement (including all exhibits hereto and as may be supplemented or amended from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126 of the Bankruptcy Code in connection with the solicitation of the Plan. A copy of the Plan is attached as **Exhibit A** and incorporated by reference. NBK is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code and seeks to consummate and implement the Plan on the Effective Date.[1]

NBK believes that the Plan is fair and equitable, provides for a larger distribution to the Debtor's creditors than would otherwise result from liquidation under chapter 7 of the Bankruptcy Code, and maximizes the value of the estate. For these reasons and the reasons described herein, NBK recommend(s) that each creditor entitled to vote on the Plan vote to accept the Plan.

## II.   BACKGROUND AND EVENTS LEADING TO THE CHAPTER 11 FILING

On December 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, its second bankruptcy petition in less than six months. The case is a single asset real estate case within the meaning of the relevant provisions of the Bankruptcy Code. The first bankruptcy case was filed on July 5, 2023 under the case caption *In re Galleria 2425 Owner, LLC*, Case No. 23-60036 (CML) ("*Galleria I*") and was dismissed on November 1, 2023 by the Honorable Christopher M. Lopez on the court's own motion.

---

[1] Capitalized terms used but not defined in this Motion have the meanings given them in the *Chapter 11 Plan of Liquidation of the Debtor* (the "Plan") filed contemporaneously herewith. *See* ECF No. 194.

The Debtor's direct membership interests are held by Galleria 2425 JV, LLC ("Galleria JV"), and both the Debtor and Galleria JV are purportedly under common ownership and control of Ali Choudhri ("Choudhri"). The Debtor's sole asset is real property located at 2425 West Loop South, Houston, Texas 77027 (the "Property") from which the Debtor generated substantially all its income. The Property was formerly managed by Dward Darjean and Jetall Companies, Inc., a company owned and controlled by Choudhri. Attached as **Exhibit B** is an organizational chart of the Debtor's corporate structure and other related entities which was prepared using information provided by the Debtor.

On May 23, 2018, NBK loaned the Debtor $51,675,000 (the "Loan") to acquire the Property from 2425 WL LLC, another entity owned and controlled by Choudhri. NBK holds a first-priority lien on the Property, and the Loan and lien is evidenced by the (i) Loan Agreement between NBK and the Debtor dated May 23, 2018 (the "Loan Agreement"), (ii) Promissory Note dated May 23, 2018 executed by the Debtor and payable to NBK (the "Note"), and (iii) Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture Filing dated May 23, 2018, recorded RP 2018-235600 in the Real Property Records of Harris County, Texas (the "Deed of Trust," and together with the Loan Agreement, the Note, the "Loan Documents").

The Note had a five-year term and provided for interest only payments with principal due at maturity, May 23, 2023. Among other things, the Loan Agreement required the Debtor to use loan proceeds to fund an interest reserve account, as defined thereunder, in the amount of $2.5 million, and pay costs and expenses incurred in connection with the closing of the Loan.

The interest reserve account was funded on or around the Closing Date with a deposit of a portion of the proceeds of the Loan. The Loan Documents permit NBK to accelerate the Loan upon the occurrence and continuation of an event of default and exercise all rights and remedies thereunder, including foreclosing the Property. The Loan Agreement also required the Debtor to pay or reimburse NBK for all actual costs and expenses (including reasonable third-party attorneys' fees and disbursements) incurred in connection with, among other things, enforcing the obligations or collecting payments due from the Debtor in respect of the Loan.

On April 1, 2020, the Debtor defaulted on the Loan by failing to make the required payment of interest due that day; instead, the Debtor made only a partial payment. The Debtor did not make any further interest payments (and has not made any principal payments) after April 1, 2020. After the Debtor's default, on each payment date NBK applied the funds in the interest reserve account to pay interest due until the account was depleted on March 6, 2021.

On June 29, 2021, NBK informed the Debtor of the existence of an event of default under the Loan Documents and notified the Debtor, among other things, of NBK's intent to accelerate the Loan if the default was not cured by July 12, 2021. Various litigation maneuvers between the parties occurred for almost the next twelve months.

In August 2022, the Debtor, NBK, Choudhri and Naissance Galleria, LLC (the mezzanine lender for the property and an entity Choudhri asserts he controls as a result of an assignment from its original owner) entered into a confidential settlement agreement (the "Settlement Agreement") that, among other things, included dismissals with prejudice or releases of all claims by the Debtor, Naissance Galleria, LLC and Choudhri against NBK and afforded the Debtor an opportunity to

pay off the Loan in a discounted amount provided that such payment was made on or before a specified payment date.

Pursuant to the Settlement Agreement, Choudhri assigned to NBK certain tax liens on the Property for tax years 2019 and 2020 (the "Tax Liens"), which Choudhri acquired from Caz Creek TX II, LLC ("Caz Creek II") pursuant to an Assignment of Tax Lien dated May 24, 2021 and recorded in RP-2021-508701 of the Official Public Records in Harris County, Texas.

Upon information and belief, Caz Creek II acquired the Tax Liens from certain taxing authorities pursuant to its rights under tax lien contracts dated January 31, 2020 and April 30, 2021 between Caz Creek II and the Debtor, which agreements obligated Caz Creek II to pay the Debtor's 2019 and 2020 property tax obligations, and which were secured by transfer of the Tax Liens from certain taxing units. The Tax Liens were transferred to Caz Creek II after payment of the tax obligations.

The Debtor defaulted under the Settlement Agreement by failing to comply with its payment terms.

On March 28, 2023, pursuant to the terms of the Settlement Agreement, the Loan Documents and the Texas Property Code, NBK noticed the Property for foreclosure and filed a request in state court to have a receiver appointed over the Property until it could be sold at public auction. On April 11, 2023, the day before the hearing on NBK's receivership motion, the Debtor filed a request for a temporary restraining order (TRO(s)) in state court seeking to prevent the court from appointing a receiver and to stop the pending foreclosure. On April 12, 2023, at the hearing on NBK's receivership motion, and in response to arguments by Debtor's counsel, the state court gave the Debtor until July 3, 2023, to make the required discounted payment to NBK under the Settlement Agreement.

The state court conditioned the Debtor's rights ultimately to satisfy the Loan at a discount under the terms of the Settlement Agreement by requiring the Debtor to make three monthly payments of $80,000 each to NBK, and ordered that any failure to make such payments would entitle NBK to proceed with its foreclosure of the Property. Because section 51.002(b) of the Texas Property Code requires 21 days' notice of a foreclosure sale, the state court permitted NBK to submit a notice of foreclosure on June 13, 2023, for a foreclosure sale to occur on July 5, 2023. The Debtor failed to make the last $80,000 payment due on June 15, 2023. As a result, NBK intended to proceed with the noticed foreclosure of the Property on July 5, 2023. In violation of the provisions of the Settlement Agreement, the Debtor filed multiple requests for TROs seeking to prevent that foreclosure. Each TRO was denied by the state court.

On July 5, 2023, minutes before the scheduled foreclosure sale, the Debtor filed *Galleria I*. After the filing, NBK moved to dismiss *Galleria I* because it was filed in bad faith and the Debtor could not successfully reorganize. On September 22, 2023, Judge Lopez held a hearing on NBK's motion to dismiss and denied the motion without prejudice. On November 1, 2023, during a subsequent status conference, Judge Lopez dismissed *Galleria I*, on his own motion.

After dismissal of *Galleria I*, NBK noticed the Property for foreclosure on December 5, 2023. Prior to that scheduled foreclosure sale, the Debtor filed several requests for TROs in state

court, all of which were denied, and appealed those denials through the state court system, including a request to the Texas Supreme Court.  Those appeals were all denied.

On December 5, 2023, minutes before the scheduled foreclosure sale of the Property that day, the Debtor filed this second bankruptcy case.  As of the Petition Date, the Debtor owes NBK $67,099,601.49 under the Loan Documents consisting of (i) unpaid principal of $51,675,000; (ii) past due interest at the default rate in the amount of $10,795,036.25; (iii) unreimbursed legal fees in the amount of $5,591,524.32; and (iv) other credits in the amount of $(961,959.08).

After the Petition Date, the Debtor filed two adversary proceedings under the following case captions: *Galleria 2425 Owner LLC v. National Bank of Kuwait, S.A.K.P., New York Branch et al* (the "Debtor Lawsuit"), Adv. Pro. Case No. 23-03263 (JPN) and *Naissance Galleria, LLC v. Zaheer et al* (the "Naissance Lawsuit"), Adv. Pro. Case No. 23-03259 (JPN).

The Naissance Lawsuit was terminated on January 11, 2024, and the Debtor Lawsuit is pending. In the Debtor Lawsuit, the Debtor principally alleges that NBK breached the confidential settlement agreement by improperly disclosing its terms to third parties in violation of the confidentiality obligations thereunder.  The Debtor has asserted a claim against NBK for breach of contract and seeks injunctive relief as well as damages and attorney's fees. The Debtor Lawsuit will be dismissed with prejudice and its claims against NBK released upon confirmation of the Plan. Debtor affiliate, 2425 WL, LLC, an entity owned and controlled by Choudhri, has also filed an adversary proceeding, seeking to equitably subordinate NBK's claim(s) against the Debtor. That case is pending under the case caption *2425 WL, LLC v. National Bank of Kuwait, SAKP, New York Branch*, Adv. Pro. Case No. 24-3043 (JPN) (the "Affiliate Lawsuit") The claims asserted by 2425 WL, LLC mirror the claims alleged by the Debtor in the Debtor Lawsuit.

NBK believes that the claims asserted in the Debtor Lawsuit, Naissance Lawsuit and Affiliate Lawsuit are entirely without merit. In any event, all claims asserted by the Plaintiffs in these matters are to be released under the Plan with those claims asserted by the Plaintiffs in the Naissance Lawsuit and Affiliate Lawsuit being dismissed because, among other things, those parties have no independent claims against NBK.

On December 27, 2023, NBK filed a motion to convert the chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.  On January 31, 2024, the Court held a hearing on the conversion motion and, thereafter, entered an order directing the appointment of a chapter 11 trustee to manage the Debtor. *See* ECF No. 99. On February 9, 2024, the Court entered an order appointing Christopher R. Murray as trustee, whose appointment became effective on February 13, 2024 (the "Chapter 11 Trustee").  *See* ECF Nos. 116 and 121.  On March 8, 2024, Shannon & Lee LLP was retained as counsel for the Chapter 11 Trustee.  *See* ECF No. 125.

## III.   LITIGATION INVOLVING THE DEBTOR

### A.  Litigation Against Sonder USA, Inc.

On February 19, 2021, Sonder sued the Debtor and several of its affiliates in Harris County, Texas, District Court. The lawsuit sought a declaration that Sonder had terminated a lease it entered into with the Debtor with respect to the Property and also asserted fraud and breach of contract claims against the Debtor. The Debtor and its affiliates filed claims against Sonder for fraud and

breach of contract. On December 19, 2023, the state court entered an order staying the lawsuit between Sonder and the Debtor (among others) and directing that the parties proceed to arbitration based on the agreements between the parties. NBK is not aware of the current status of the arbitration.

### B. The Debtor's Claims Against NBK

The Debtor has filed a number of different lawsuits against NBK in which it has asserted claims against NBK under various legal theories and asserting various causes of action for breach of contract and other claims, including the Debtor Lawsuit. NBK believes these claims are entirely without merit. All of the Estate's claims against NBK will be released under the Plan.

## IV.   SUMMARY OF THE PLAN

This section provides a summary of the structure and means for implementation of the Plan and is qualified in its entirety by reference to the Plan. The statements contained in this Disclosure Statement include summaries of the provisions in the Plan and the documents referred to therein. Such statements do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions of the Plan or documents referred to therein. In the event of any conflict between the terms of this Disclosure Statement and the Plan, the terms of the Plan shall control.

NBK proposes that the Property be sold under the Plan pursuant to a Stalking Horse Purchase Agreement ("Stalking Horse Agreement") with the Debtor, as seller, and NBK, as stalking horse purchaser. Pursuant to the Stalking Horse Agreement, NBK has agreed to provide an offer for the Property in the form of a credit bid in the amount of $18,600,000 subject to higher and better offers at a public auction.

The Property will be marketed for at least 2 months by a real estate broker engaged by the Chapter 11 Trustee, and, thereafter, auctioned pursuant to the Sale and Bid Procedures. *See* ECF No. 188.  NBK hopes that the auction will attract competitive bidding and yield enough proceeds to pay off Administrative Claims and Priority Claims under the Plan, fund the Liquidation Trust Fund for the Liquidation Trust established under the Plan to enhance recoveries for unsecured creditors, and pay NBK its share of the sale proceeds on account of its first priority lien on the Property.

If NBK is declared the Successful Bidder for the Property at the auction via its credit bid, NBK shall contribute Cash to the Estate in the amounts necessary for the following: (i) payment of the Distribution Account Claims in full; (ii) initial funding of the Liquidation Trust in the amount of $150,000.00; and (iii) payment of $238,307.99 to Trade General Unsecured Claims, as provided for in Article III(B)(f) of the Plan.

If NBK is not the Successful Bidder, then the Purchase Price proceeds shall be paid to Holders of (i) Allowed Administrative Claims (including any commission for the Broker), (ii) Allowed Priority Tax Claims, (iii) Allowed Other Secured Claims (which includes a Claim of a governmental unit for the payment of *ad valorem* real property taxes that is secured by property of

the Estate), (iv) Allowed Other Priority Claims, (v) the NBK Tax Claim, and (vi) the NBK Secured Claim. Any Remaining Cash will be transferred to the Liquidation Trust.

       *a.  Classification and Treatment of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with Bankruptcy Code section 1122. A Claim or an Interest is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The chart below summarizes the classification of Claims against and Interests in the Debtor:

| Class | Claim | Status | Voting Rights | Treatment |
|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept | Paid in full |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept | Paid in full |
| 3 | NBK Tax Claim | Impaired | Deemed to Reject | Paid in full or receive no distribution and added to NBK's credit bid |
| 4 | NBK Secured Claim | Impaired | Entitled to Vote | Credit bid or Allowed amount paid as a Distribution Account Claim |
| 5(a) | Trade General Unsecured Claims | Impaired | Entitled to Vote | Cash plus *Pro-Rata* Share in the Liquidation Trust Assets. |
| 5(b) | Other General Unsecured Claims | Impaired | Entitled to Vote | *Pro-Rata* Share in the Liquidation Trust Assets; *provided, however*, the NBK Deficiency Claim shall be Allowed in an amount equal to 90% of such Claim. |
| 6 | Insider Claims | Impaired | Deemed to Reject | No distribution |
| 7 | Subordinated Claims | Impaired | Deemed to Reject | No distribution |
| 8 | Interests | Impaired | Deemed to Reject | No distribution |

       *b.  Treatment of Executory Contracts and Unexpired Leases*

On the Effective Date, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, (ii) is identified on the Schedule of Contracts/Leases; (iii) is subject to a motion filed by the Chapter 11 Trustee to assume (or assume and assign) such unexpired lease or executory contract as of the Effective Date; or (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; *provided, however*, that NBK as plan proponent in cooperation with the Purchaser shall have the right to amend the Schedule of Contracts/Leases up to thirty days (30) after the Effective Date or by any other means approved by the Court or to delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to Article V of the Plan or to add any executory contract or unexpired lease, thus providing for its assumption and assignment pursuant to Article V of the Plan and the terms of the

Purchase Agreement. Such rejection or assumption and assignment shall be effective upon the filing and serving a final version of the Schedule of Contracts/Leases, which final Contract/Lease Schedule shall be filed and served no later than thirty days (30) after the Effective Date

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the executory contracts or unexpired leases as set forth in the Plan and the Schedule of Contracts/Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically provided, assumptions or rejections of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date.

### c. *Means for Implementation of the Plan*

#### i. Sale of the Property

The Confirmation Order shall authorize the consummation of the Sale of the Property pursuant to Bankruptcy Code sections 363, 365, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141(c) and 1146(a) under the terms and conditions of the Purchase Agreement free and clear of any Claims, Liens, Interests, executory contracts, unexpired leases of real or personal property or other encumbrances, other than Assumed Liabilities or Contracts as defined in the Purchase Agreement. Any Sale conducted via the Auction shall be conducted in accordance with applicable orders of the Court, including, the Sale and Bid Procedures (prior to entry of the Confirmation Order). Upon Confirmation, the Chapter 11 Trustee or Liquidation Trustee as applicable shall be authorized and directed to take any action necessary to consummate the Sale of the Property.

#### ii. Management of Property

Upon entry of the Confirmation Order, Jones Lang LaSalle shall continue to manage the Property until such time as the Sale is consummated pursuant to the Purchase Agreement.

#### iii. Liquidation Trust and Liquidation Trustee's Duties and Responsibilities

A Liquidation Trust shall be established to receive on the Effective Date: (a) unless otherwise specifically provided for in the Plan, the Liquidation Trust Fund; (b) the Transferred Actions, and (c) any assets not otherwise conveyed to the Purchaser or Distribution Agent, all of which assets shall vest in the Liquidation Trust on the Effective Date free and clear of all Claims, encumbrances and Interests in accordance with section 1141 of the Bankruptcy Code. The Liquidation Trust shall be the representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

The Liquidation Trustee shall administer the Liquidation Trust and its assets in accordance with the Plan and the Liquidation Trust Agreement, and shall be responsible for, among other things, making distributions required under the Plan.  From and after the Effective Date and continuing through the date of entry of a Final Decree, the Liquidation Trustee shall: (a) have and be entitled to exercise all rights and powers of the Debtor and the Estate, including but not limited to those provided for in the Bankruptcy Code; (b) possess all rights and powers granted in the Liquidation Trust Agreement, including the authority to direct the affairs of, and dissolve, the Debtor (and all bylaws, articles or certificates of incorporation, and related corporate documents

are deemed amended by the Plan to permit and authorize such appointment); (c) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Debtor's bankruptcy case and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Court; (d) have the authority to act as and for and on behalf of the Debtor in all adversary proceedings and contested matters pending in the Court and in all actions and proceedings pending elsewhere; (e) have the power to prosecute, compromise and settle Transferred Actions; (f) have the right to object to Claims; (g) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Court; and (h) borrow money for such purposes as financing the costs of prosecuting the Transferred Actions, on terms and conditions it deems appropriate, upon Court approval after notice and hearing. Professionals and personnel retained or employed by the Liquidation Trust or the Liquidation Trustee need not be disinterested as that term is defined in the Bankruptcy Code.

iv.   Preservation of Causes of Action and Avoidance Actions

Other than Causes of Action and Avoidance Actions released, enjoined or exculpated under Article IX of the Plan, all Causes of Action and Avoidance Actions shall be transferred to and become property of the Liquidation Trust. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee will have the right to retain, enforce and prosecute such Transferred Actions against any Person or Entity, including any Affiliate or Insider of the Debtor, that arose before the Effective Date. The Debtor shall provide to the Liquidation Trustee copies of all its books and records as may be necessary, in the Liquidation Trustee's reasonable discretion, to identify, analyze and prosecute such Transferred Actions.  For the avoidance of doubt, Causes of Action transferred to the Liquidation Trust shall include, without limitation, Avoidance Actions and Causes of Action for breach of fiduciary duty and similar Causes of Action against any party that is not a Released Party, including without limitation Choudhri, any Affiliate of the Debtor or any Related Party of the Debtor.

d.   Settlement, Release, Injunction, and Related Provisions

i.   Compromise and Settlement

The Confirmation Order will constitute the Bankruptcy Court's integrated and global approval of the settlements reflected in the Plan, including the Release, and further, shall constitute the Bankruptcy Court's finding and determination that such settlements, including the Release, are (a) by conferring substantial benefits on the Estate, an exercise of the Chapter 11 Trustee's business judgment and in the best interests of the Estate, and all holders of Claims and Interests; (b) fair, equitable, and within the range of reasonableness; (c) made in good faith; (d) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (e) an integral and non-severable element of the Plan and the transactions incorporated therein, and essential to the confirmation and consummation of the Plan; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity asserting any Released Claim. In

addition, the allowance, classification, and treatment of any Allowed Claim of a Released Party takes into account any Released Claim that may exist as of the Effective Date, any and all such Released Claims are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases of the Released Parties by all Entities and Persons of all the Released Claims that are satisfied, compromised, and settled pursuant to the Plan.

<ol type="i" start="2">
<li>Estate Releases</li>
</ol>

**Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and this Estate will be deemed to have forever released, waived and discharged the Released Parties from any and all Actions, Claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan. This release does not release any Action, Claim, obligation, suit, judgment, damages, demands, debts, rights, and liabilities of a Released Party arising under or pursuant to the Plan or Purchase Agreement, and the contracts, instruments, releases and other agreements delivered in connection with the Plan or Purchase Agreement, which may be enforced only by the Chapter 11 Trustee, NBK, the Purchaser, the Distribution Agent or the Liquidation Agent, as applicable.**

The Plan defines "Released Parties" as follows: (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee, and (d) each Related Party of each Entity in clause (a) through this clause (d). For avoidance of doubt the Debtor, its current and former equity holders and their Affiliates and Related Parties are not Released Parties.

<ol type="i" start="3">
<li>Exculpation</li>
</ol>

**To the maximum extent permitted by the Bankruptcy Code and applicable law, no Exculpated Party shall have or incur any liability to any Person, including, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, filing, negotiating, prosecuting, administering, formulating, implementing, soliciting support or acceptance of, confirming or consummating this Plan, the Purchase Agreement, or the property to be distributed under this Plan, including all activities leading to the promulgation and Confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case; *provided*, *however*, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.**

The Plan defines "Exculpated Party" as follows: (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee; (d) the Distribution Agent; (e) the Purchaser; (f) each current and former Affiliate of each Entity in clause (a) through the following clauses (g); and (g) each Related Party of each Entity in clause (a) through this clause (g).

The complete definition of "Related Party" is as follows:

> with respect to any Entity, and in each case solely in its capacity as such with respect to the Entity to which it is related, each of such Entity's current and former, direct or indirect, directors, members, managers, officers, control persons, equity holders, partners, participants, managed accounts or funds, fund advisors or managers, investment managers, management companies, affiliates, predecessors, successors, assigns, subsidiaries, principals, employees, agents, trustees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors; *provided* that with respect to the Debtor, its current and former equity holders shall not be included as Related Parties.

#### iv.   Injunctions or Stays

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in this case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

#### v.   Gatekeeping Provision

**No Person who has held, holds, or may hold Claims, Interests, or Action may commence or pursue a Claim or Action, as applicable, of any kind in any way related to the Debtor against any Released Party that arose before the Petition Date or arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the Debtor's business, the administration of the Liquidation Trust, or the transactions in furtherance of the foregoing without the Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party that such person has standing and is otherwise entitled to assert such claim or cause of action and (ii) specifically authorizing such Releasing Party to bring such claim or cause of action against any such Released Party.**

## V.   SOLICITATION AND VOTING PROCEDURES

Holders of Claims in Classes 4, 5(a) and 5(b) are entitled to vote to accept or reject the Plan and are receiving this Disclosure Statement, as part of a solicitation package (the "Solicitation

Package") that includes the applicable ballot to vote to accept or reject the Plan (the "Ballot"). All Holders of Claims are encouraged to read the Plan, Disclosure Statement and the instructions for completing the Ballot carefully and in full and return their Ballot to the Chapter 11 Trustee (the "Solicitation Agent") before the Voting Deadline.

NBK is not soliciting votes from Holders of Claims or Interests in Classes 1, 2, 6, 7 and 8. Such Holders will, however, receive a notice of non-voting status as soon as reasonably practicable after approval of the motion for a combined hearing for approval of the Disclosure Statement and confirmation of the Plan.

The Solicitation Package may also be obtained from the Solicitation Agent's counsel: R.J. Shannon and Kyung S. Lee, Shannon & Lee LLP, 2100 Travis Street, Suite 1525, Houston, TX 77002, email: klee@shannonleellp.com, rshannon@shannonleellp.com. NBK may file a Plan Supplement with the Bankruptcy Court in advance of the Confirmation Hearing. NBK will serve a notice of the Plan Supplement filing on parties in interest in accordance with the Bankruptcy Code. Anyone wishing to obtain a copy of the Plan Supplement documents may access the Debtor's bankruptcy docket for a fee via PACER by visiting http://ecf.txsb.uscourts.gov, or from the Solicitation Agent's counsel at the contact information above.

### a. Holders of Claims Entitled to Vote on the Plan

The Bankruptcy Code does not require that all holders of claims against and interests in a debtor vote on a chapter 11 plan. Only impaired creditors who are receiving a distribution under the plan are entitled to vote. The chart shown in this Disclosure Statement provides a summary of the status and voting rights of each Holder of a Claim or Interest in a Class under the Plan. Holders of Claims in Classes 4, 5(a) and 5(b) (the "Voting Classes") are entitled to vote on the Plan. Holders in the Voting Classes are Impaired under the Plan and are receiving a distribution under the Plan, subject to certain applicable conditions. Accordingly, Holders of Claims in the Voting Classes have the right to vote to accept or reject the Plan.

As stated previously, NBK is not soliciting votes from Holders of Claims or Interests in Classes 1, 2, 3, 6, 7 and 8. Holders of Claims in Classes 1 and 2 are deemed to accept the Plan because such Claims are Unimpaired. Holders of Claims in Classes 3, 6 and 7 and Holders of Interests in Class 8 are deemed to reject the Plan because such Interests and Claims are Impaired.

### b. Voting Record Date

The Voting Record Date is the date set forth in NBK's combined hearing motion. The Voting Record Date is the date on which it will be determined which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim.

### c. Voting on the Plan

The Voting Deadline is the date set forth in NBK's combined hearing motion, at 4:00 p.m. (prevailing Central Time). A ballot must be properly executed, completed, and delivered as directed in order to be counted towards acceptance or rejection of the Plan. The Solicitation Agent

must actually receive the completed ballot(s), as explained above, on or before the Voting Deadline, which deadline may be extended by the Debtor.

## VI.   CONFIRMATION OF THE PLAN

### a.   Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires a bankruptcy court, after notice, to conduct a hearing to consider confirmation of a chapter 11 plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of such plan. Pursuant to the Combined Hearing Motion, NBK proposes to schedule a hearing to seek confirmation of the Plan on July 2, 2024. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or the filing of a notice of such adjournment.

### b.   Requirements for Confirmation of the Plan

Among the requirements for Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code are the following: (1) all impaired classes of claims or interests must accept the plan or, if the impaired class rejects the plan, the plan must not "discriminate unfairly" and be "fair and equitable" as to the rejecting impaired class; (2) the plan is feasible; and (3) the plan is in the "best interests" of holders of claims or interests. At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies all the requirements of section 1129 of the Bankruptcy Code. NBK believes that (1) the Plan satisfies or will satisfy all the necessary statutory requirements of chapter 11 for plan confirmation; (2) it has complied or will have complied with all of the necessary requirements of chapter 11 for plan confirmation; and (3) the Plan has been proposed in good faith.

### c.   Best Interest of Creditors / Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find that a chapter 11 plan provides that in each impaired class each holder of a claim or an equity interest either (1) has accepted the plan; or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the debtor liquidated under chapter 7. This requirement is often called the "best interest" test.

NBK believes that confirmation of the Plan will provide an equivalent or better monetary return to holders of Claims as would a liquidation under chapter 7 of the Bankruptcy Code as set forth in the Liquidation Analysis attached as **Exhibit C**.

### d.   Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that neither liquidation nor the need for further financial restructuring of the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization) is likely to follow confirmation of a plan of reorganization. The Plan proposes a Sale of the Property, and thus meets the feasibility test embodied in section 1129(a)(11) of the Bankruptcy Code.

As described above, the Property will be marketed for sale pursuant to the Sale and Bid Procedures Order. This process provides the best method of valuing the Property, as it allows the market to speak as to that value. The marketing and sale process is intended to identify a third party purchaser for the Property, and a sale will demonstrate that recoveries under the Plan are commensurate with parties' Claims and Interests based on the value of the Property.

In light of the foregoing, NBK does not anticipate filing a valuation analysis. *See* 11 U.S.C. § 1125(b) ("The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets."); *In re Gastar Exploration Inc.*, Case No. 18-36057 (MI) (Bankr. S.D. Tex. Dec. 21, 2018) (ECF No. 282) (order approving disclosure statement that conducted valuation analysis through a comprehensive marketing process).

Accordingly, NBK believes that the Plan complies with the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

### e. *Acceptance by Impaired Classes*

The Bankruptcy Code requires, as a condition to confirmation, that each class of claims or interests impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, counting only those claims that have actually voted to accept or to reject the plan. Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number of the Allowed Claims in such Class that vote on the Plan actually cast their ballots in favor of acceptance.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of allowed interests in that class, counting only those interests that have actually voted to accept or to reject the plan. Thus, a Class of Interests will have voted to accept the Plan only if two-thirds in amount of the Allowed Interests in such Class that vote on the Plan actually cast their ballots in favor of acceptance.

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such class.

### f. *Confirmation without Acceptance by All Impaired Classes*

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it, provided that at least one impaired class has accepted the plan. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not

"discriminate unfairly" and is "fair and equitable" with respect to each class of Claims or equity interests that is impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Plan, NBK reserves the right to seek to confirm the Plan using the "cramdown" provision of section 1129(b) of the Bankruptcy Code. To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, NBK may request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. NBK reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Supplement document, including the right to amend or modify the Plan or any Plan Supplement document to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

### g. *No Unfair Discrimination*

The "unfair discrimination" test applies to classes of Claims or Interests that are of equal priority and are receiving different treatment under a plan. The test does not require that the treatment be the same or equivalent, but that treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of Claims or Interests of equal rank (e.g., classes of the same legal character). Bankruptcy courts will consider a number of factors in determining whether a plan discriminates unfairly. A plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### h. *Fair and Equitable Test*

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of Claims receive more than 100 percent of the amount of the Allowed Claims in the class. As to the dissenting class, the test sets different standards depending upon the type of Claims or equity interests in the class.

If the Plan proceeds to confirmation under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. With respect to the fair and equitable requirement, no Class under the Plan will receive more than 100 percent of the amount of Allowed Claims or Interests in that Class and no junior Class is receiving a distribution under the Plan until all senior Classes have received a 100% recovery or agreed to receive a different treatment under the Plan. NBK believes that the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## VII.   RISK FACTORS

### a. *Parties in Interest May Object to the Plan's Classification of Claims and Interests*

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  NBK believes that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Classes of Claims and Interests encompass Claims or Interests, as applicable, that are

substantially similar to the other Claims or Interests, as applicable, in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### b.  *Conditions Precedent to the Effective Date of the Plan May Not Occur*

As more fully set forth in Article VIII of the Plan, the Effective Date of the Plan is subject to a number of conditions precedent.  If such conditions precedent are not met, the Effective Date will not take place.

### c.  *Risk of Non-Confirmation of the Plan*

Although NBK believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes. Moreover, NBK can make no assurances that the Plan will receive the requisite acceptances to confirm the Plan, and even if all Voting Classes voted in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy Court, which may exercise substantial discretion as a court of equity, may choose not to confirm the Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims and Interests ultimately would receive with respect to their Claims in a subsequent plan or other proceeding.

### d.  *Risk of Non-Occurrence of the Effective Date*

Although NBK believes that the Effective Date will occur within 60 calendar days after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtor and all holders of Claims or Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date.

### e.  *Conversion to Chapter 7 Case*

If no chapter 11 plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interests of holders of Claims and Interests, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a chapter 7 trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

### f.  *Additional Factors Affecting Recoveries*

There can be no assurance that the estimated Allowed amount of Claims in certain Classes will not be significantly more than projected, which, in turn, could cause the value of distributions to be reduced substantially. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the assumptions underlying the projected recoveries discussed in this Disclosure Statement, and the variation may be material.

### g. Pursuit of Alternative Plan

If the Plan is not confirmed, NBK, the Chapter 11 Trustee or a party in interest could attempt to formulate a different plan, which will still likely be an orderly liquidation of the Debtor. NBK submits that the Plan, as described herein, enables their creditors to realize the most value under the circumstances.

### h. NBK May Amend, Waive, Modify, or Withdraw the Plan at Any Time Prior to Confirmation

NBK reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and consistent with the terms of the Plan, to amend the terms of the Plan or waive any conditions thereto if and to the extent such amendments or waivers are necessary or desirable to consummate the Plan. The potential impact of any such amendment or waiver on the Holders of Claims and Interests cannot presently be foreseen but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes. All Holders of Claims and Interests will receive notice of such amendments or waivers required by applicable law and the Bankruptcy Court. If, after receiving sufficient acceptances, but prior to Confirmation of the Plan, NBK seeks to modify the Plan, the previously solicited acceptances will be valid only if (1) all classes of adversely affected creditors and interest holders accept the modification in writing; or (2) the Bankruptcy Court determines, after notice to designated parties, that such modification was de minimis or purely technical or otherwise did not adversely change the treatment of Holders of accepting Claims and Interests or is otherwise permitted by the Bankruptcy Code.

### i. The Plan's Release, Injunction, and Exculpation Provisions May Not Be Approved

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including a release of liens and third-party releases that may otherwise be asserted against the Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan.

### j. No Representations Outside This Disclosure Statement Are Authorized

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement after the Bankruptcy Court approves this Disclosure Statement. Any representations or inducements made to secure voting Holder's acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by any voting Holder in arriving at its decision. The voting Holder should promptly report unauthorized representations or inducements to counsel to NBK or the Chapter 11 Trustee and the Office of the United States Trustee for the Southern District of Texas.

### k. No Admission Made

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including NBK or the Debtor) nor

16

(b) be deemed evidence of the tax or other legal effects of the Plan on NBK, the Debtor, Holder of Allowed Claims, or any other parties in interest.

## VIII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### a.   General

Under the Internal Revenue Code of 1986, as amended (the "Tax Code"), there could be significant federal income tax consequences associated with the Plan. Certain of these consequences are discussed below. Due to the unsettled nature of certain of the tax issues presented by the Plan, the differences in the nature of Claims of the  various  creditors,  their taxpayer status, residence and methods of accounting (including creditors within the same creditor class) and prior actions taken by creditors with respect to their Claims, as well as the possibility that events or legislation subsequent to the date hereof could change the federal tax consequences of the transactions, the tax consequences described below are subject to significant considerations applicable to each creditor and may not apply to a particular creditor.

**HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS RESPECTING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS, CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.  THIS DISCLOSURE STATEMENT IS NOT INTENDED TO PROVIDE, AND CANNOT BE CONSTRUED AS PROVIDING, TAX ADVICE TO ANY HOLDER OF A CLAIM OR INTEREST.**

### B.   <u>Tax Consequences to Creditors</u>

The tax consequences of the implementation of the Plan to a creditor will depend in part upon whether the creditor's present debt constitutes a "security" for federal income tax purposes, the type of consideration received by the creditor in exchange for its Allowed Claim, whether the creditor reports income on the accrual or cash basis, whether the creditor receives consideration in more than one tax year of the creditor, whether the creditor is a resident of the United States, and whether all the consideration received by the creditor is deemed to be received by that creditor in an integrated transaction.

### C.   <u>Creditors Receiving Solely Cash</u>

A creditor who receives cash in full satisfaction of its Claim may be required to recognize gain or loss on the exchange. The creditor may recognize gain or loss equal to the difference between the amount realized in respect of such Claim and the creditor's tax basis in the Claim.

### D.   <u>Backup Withholding</u>

Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding". Withholding generally applies if the holder: (a) fails to furnish his social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d)

under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding.

## IX.   CONCLUSION AND RECOMMENDATION

In NBK's opinion, the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtor's creditors than would otherwise result in any other scenario. Accordingly, NBK recommends that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation of the Plan.

Dated: April 10, 2024

**NATIONAL BANK OF KUWAIT, S.A.K.P., NEW ~~YORK~~ BRANCH**

By: _____
Name:   Michael C. Carter
Title:    Vice President

**Exhibit A to Disclosure Statement**

**Chapter 11 Plan of Liquidation**

THE SOLICITATION MATERIALS ACCOMPANYING THE PLAN OF LIQUIDATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF 11 U.S.C. § 1125(a). NBK EXPECTS TO SEEK AN ORDER OF THE BANKRUPTCY COURT, AMONG OTHER THINGS: (1) APPROVING THE SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH 11 U.S.C. § 1126(b); AND (2) CONFIRMING THE PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. § 1129.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GALLERIA 2425 Owner, LLC** | § | **Case No. 23-34815 (JPN)** |
| | § | |
| Debtor. | § | **Chapter 11** |
| | § | |
| | § | |

## CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY
## NATIONAL BANK OF KUWAIT S.A.K.P., NEW YORK BRANCH

**PILLSBURY WINTHROP
SHAW PITTMAN LLP**
Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Phone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

*Counsel for National Bank of Kuwait,
S.A.K.P., New York Branch*

**PILLSBURY WINTHROP
SHAW PITTMAN LLP**
Andrew M. Troop
Federal Bar No. MA547179
Patrick E. Fitzmaurice (admitted *pro hac vice*)
Kwame O. Akuffo (admitted *pro hac vice*)
31 West 52nd Street
New York, NY 10019
Phone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

## INTRODUCTION

National Bank of Kuwait, S.A.K.P., New York Branch, proposes this Chapter 11 Plan of Liquidation pursuant to the provisions of the United States Bankruptcy Code for the resolution of Debtor's outstanding Claims and Interests. All Holders of Claims and Interests are encouraged to read the Plan and any exhibits or supplements attached hereto, or filed by NBK in conjunction with the Plan, in their entirety before voting to accept or reject the Plan.

As set forth more fully below, the Plan proposes that the Debtor's Property be sold through a public auction run by the Chapter 11 Trustee. Pursuant to the Purchase Agreement, NBK has agreed to purchase the Property through a credit bid in the amount of $18,600,000, subject to any higher and better offers that may be received; NBK reserves the right to increase its credit bid.

In general, the Plan provides that if NBK is the Successful Bidder, NBK will make a Cash contribution to the Estate in an amount sufficient to (i) satisfy in full Other Secured Claims and Other Priority Claims; (ii) pay 70% of the Trade General Unsecured Claims in Cash on or after the Effective Date; and (iii) fund the Liquidation Trust. If NBK is not the Successful Bidder, then the Plan provides that the foregoing sums will be paid out of the third-party Purchase Price with the balance being paid to NBK on account of its secured claim against the Debtor.

Capitalized terms not defined in this Introduction shall have the meanings ascribed to them in Article I of the Plan.

PLEASE READ THE PLAN CAREFULLY WITH RESPECT TO HOW YOUR RIGHTS MAY BE AFFECTED.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Defined Terms

1.    *Action* means Causes of Action and Avoidance Actions.

2.    *Administrative Claim* means any Claim constituting a cost or expense of administration of the Chapter 11 Case under Bankruptcy Code section 503(b) and that is entitled to priority under Bankruptcy Code section 507(a), including, inter alia, any actual and necessary expenses of preserving the estate, and all fees and charges assessed against the bankruptcy estate under Chapter 123 of Title 28, United States Code.

3.    *Affiliate* has the meaning set forth in Bankruptcy Code section 101(2).

4.    *Allowed* means any Claim or Interest: (a) that has been listed in the Debtor's Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed or with respect to which no objection has been filed; (b) expressly allowed (i) by a stipulation with the Chapter 11 Trustee executed before the Confirmation Date and approved by the Court regarding the amount and nature of such Claim, (ii) by a stipulation with the Liquidation Trustee executed after the Confirmation Date and, if necessary, approved by the Court regarding the amount and nature of such Claim or (iii) in any contract or other agreement

2

entered into or assumed in connection with the Plan; (c) related to a rejected executory contract or unexpired lease that is (i) not a Disputed Claim or (ii) has been allowed by a Final Order; or (d) expressly allowed by a Final Order or pursuant to the Plan.

5.      ***Allowed Claim*** means a Claim that is Allowed.

6.      ***Auction*** means the sale of the Property that was held in accordance with the Sale and Bid Procedures.

7.      ***Avoidance Actions*** means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under Bankruptcy Code sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

8.      ***Bankruptcy Code*** means Title 11 of the United States Code, as amended from time to time.

9.      ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended from time to time and made applicable to the Chapter 11 Case.

10.     ***Broker*** means JLL or other broker engaged by the Chapter 11 Trustee to market the Property.

11.     ***Business Day*** means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

12.     ***Cash*** means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

13.     ***Cash Contribution*** means the Cash contribution set forth in Article VI(C).

14.     ***Cause of Action*** means any and all actions, Claims, rights, defenses, third party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, but not limited to, the Avoidance Actions.

15.     ***Chapter 11 Case*** means the chapter 11 case filed by the Debtor on the Petition Date.

16.     ***Chapter 11 Trustee*** means Christopher R. Murray, solely in his capacity as such.

17.     ***Claim*** has the meaning set forth in Bankruptcy Code section 101(5).

18.     ***Claims Objection Deadline*** means the deadline for objecting to filed Proofs of Claims or scheduled claims, which shall be the sixtieth (60) day following the later of (a) the

Effective Date and (b) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, as the same may be extended by time to time in accordance with Article VII(D).

19.     ***Claimant*** means the Holder of a Claim.

20.     ***Class*** means a category of Holders of Claims or Interests as classified in the Plan.

21.     ***Confirmation Date*** means the date on which the Court enters the Confirmation Order.

22.     ***Confirmation Hearing*** means the hearing at which the Court will consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

23.     ***Confirmation Order*** means the order of the Court confirming the Plan.

24.     ***Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court as may have jurisdiction with respect to the liquidation of Debtor under Chapter 11 of the Bankruptcy Code.

25.     ***Cure Costs*** means the payment of Cash by the Purchaser necessary to cure a default of an executory contract or unexpired lease pursuant to Bankruptcy Code section 365(b).

26.     ***Debtor*** means Galleria 2425 Owner, LLC.

27.     ***Disallowed*** means, with respect to any Claim or Interest, that such Claim or Interest: (a) has been withdrawn by agreement of the Debtor and the Holder thereof; (b) has been withdrawn by the Holder thereof; (c) has been disallowed by Final Order; or (d) specified in a provision of the Plan not to be Allowed.

28.     ***Disallowed Claim*** means a Claim, or any portion thereof, that is Disallowed.

29.     ***Disclosure Statement*** means the disclosure statement for the Plan, as the Disclosure Statement may be amended, supplemented or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and applicable law.

30.     ***Disputed*** means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

31.     ***Disputed Claim*** means a Claim, or any portion thereof, that is Disputed. Under the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

32.     ***Distribution*** means a distribution of Cash from the Liquidation Trustee on account of an Allowed Claim.

33.     ***Distribution Account Claims*** has the meaning set forth in Article VI(E).

4

34.      ***Distribution Agent*** means the Liquidation Trustee who shall make Distributions and transfers in accordance with the Plan.

35.      ***Effective Date*** means the first Business Day following the date on which all conditions to consummation set forth in Article VIII(B) have been satisfied or waived pursuant to Article VIII(C).

36.      ***Entity*** has the meaning set forth in Bankruptcy Code section 101(15).

37.      ***Estate*** means the estate of the Debtor as defined in section 541 of the Bankruptcy Code.

38.      ***Estate Assets*** means all legal or equitable interests as defined in Bankruptcy Code section 541 or the Plan belonging to the Estate.

39.      ***Exculpated Party*** means: (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee; (d) the Distribution Agent; (e) the Purchaser; (f) each current and former Affiliate of each Entity in clause (a) through the following clause (g); and (g) each Related Party of each Entity in clause (a) through this clause (g).

40.      ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

41.      ***Final Order*** means an order or judgment of the Court as entered on the docket in the Chapter 11 Case, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any reversal, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause an order not to be a Final Order.

42.      ***General Unsecured Claim*** means an Unsecured Claim which is not entitled to priority under the Bankruptcy Code, including the NBK Deficiency Claim.

43.      ***Holder*** means a Person or an Entity holding a Claim against or an Interest in the Debtor.

44.      ***Impaired*** means, with respect to a Claim or Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

45.      ***Insider*** has the meaning set forth in section 101(31) of the Bankruptcy Code.

46.      ***Insider Claims*** means Claims that are held by Insiders. For the avoidance of doubt, the Insider Claims include the following:

| Reference | Claimant | C, D, UL | Est. Claim |
|---|---|---|---|
| POC No. 7 | 2425 WL, LLC | - | $22,968,231.58 |
| POC No. 21 | Ali Choudhri | - | $4,176,657.46 |
| POC No. 22 | Ali Choudhri | - | $1,844,500.45 |
| POC No. 20 | Jetall Companies Inc. | | $3,180,223.30 |
| POC No. 23 | Jetall Capital, LLC | - | $1,699,750.00 |
| | | TOTAL: | $33,869,362.79 |

47.     **Interest** means any equity security (as defined in Bankruptcy Code section 101(16)) of Debtor, including, *inter alia*, any rights arising from the issued and outstanding membership interest or the right to purchase membership interest in Debtor.

48.     **JLL** means Jones Lang LaSalle.

49.     **Lien** has the meaning set forth in Bankruptcy Code section 101(37), and, with respect to any asset, includes, *inter alia*, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

50.     **Liquidation Trust** means the trust established under Article VI.

51.     **Liquidation Trust Agreement** means the agreement to be executed among the Liquidation Trustee and the Chapter 11 Trustee establishing the Liquidation Trust.

52.     **Liquidation Trust Assets** means any and all assets of the Liquidation Trust.

53.     **Liquidation Trust Fund** means the Remaining Cash transferred to the Liquidation Trust and any other proceeds of the Liquidation Trust Assets.

54.     **Liquidation Trustee** means the trustee of the Liquidation Trust.

55.     **NBK** means National Bank of Kuwait, S.A.K.P., a banking corporation organized under the laws of Kuwait, acting through its New York branch.

56.     **NBK Deficiency Claim** means the Claim of NBK set forth in Article III(B)(g).

57.     **NBK Tax Claim** means the Claim of NBK in the aggregate amount of $1,696,384.85 for tax liens imposed against the Property for years 2019 and 2020 pursuant to the Texas Property Tax Code, which liens have been assigned to NBK under that certain confidential settlement agreement, dated August 22, 2022.

58.     **Objection Deadline** means the deadline to object to any of: (a) the proposed Cure Costs set forth in the Schedule of Contracts/Leases; (b) the proposed assumption and assignment of any executory contract or unexpired lease; and (c) the proposed sale of the Property pursuant to

6

the Sale and Bid Procedures.  The Objection Deadline shall be set forth in the notice of Auction (as defined in the Sale and Bid Procedures Final Order).

59.     ***Other Priority Claim*** means any Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, excluding Administrative Claims, Professional Fee Claims, Priority Tax Claims or any Claim asserted by an Insider, Affiliate of the Debtor or Related Party to the Debtor.

60.     ***Other Secured Claim*** means any Secured Claim against the Debtor, including a Claim of a governmental unit for the payment of *ad valorem* real property taxes that is secured by property of the Estate. For avoidance of doubt, Other Secured Claim does not include the NBK Secured Claim or any Secured Claim asserted by an Insider.

61.     ***Other General Unsecured Claim*** means any Unsecured Claim against the Debtor that is not a Trade General Unsecured Claim, an Insider Claim, or a Subordinated Claim.

62.     ***Person*** has the meaning set forth in section 101(41) of the Bankruptcy Code.

63.     ***Petition Date*** means December 5, 2023, the date of filing of the Chapter 11 Case.

64.     ***Plan*** means this Chapter 11 Plan of Liquidation with respect to the Debtor, as amended, modified, or supplemented from time to time, together with all addenda, exhibits, schedules, supplements or other attachments.

65.     ***Plan Supplement*** means any supplement to this Plan that is filed with the Court prior to the Confirmation Hearing.

66.     ***Purchaser*** means the buyer of the Property under the Purchase Agreement.

67.     ***Purchase Agreement*** means that certain Asset Purchase Agreement dated as of April 10, 2024, as it may be modified or amended, by and among the Chapter 11 Trustee, as seller, and NBK, as stalking horse bidder or other buyer, which provides for the sale of the Property, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms.

68.     ***Purchase Price*** has the meaning given to it in the Purchase Agreement.

69.     ***Priority Claim*** means any Claim entitled to priority in payment pursuant to Bankruptcy Code section 507(a), excluding Administrative Claims or Priority Tax Claims.

70.     ***Priority Tax Claim*** means any Claim entitled to priority in payment pursuant to Bankruptcy Code sections 502(i) and 507(a)(8).

71.     ***Property*** means that certain real property located at 2425 West Loop South, Houston, Texas 77027.

72.     ***Pro-Rata Share*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

73.     ***Professional*** means any professional employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328 or 1103 or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code section 503(b)(4).

74.     ***Professional Fee Claim*** means a Claim by a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Bankruptcy Code sections 330 or 331.

75.     ***Proof of Claim*** means a proof of Claim filed against the Debtor.

76.     ***Quarterly Fees*** means fees payable to the U.S. Trustee.

77.     ***Related Party*** means with respect to a Person, that Person's current and former, direct or indirect, directors, members, managers, officers, control persons, equity holders, partners, participants, managed accounts or funds, fund advisors or managers, investment managers, management companies, affiliates, predecessors, successors, assigns, subsidiaries, principals, employees, agents, trustees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors, but does not include the Chapter 11 Trustee or Professionals employed by the Chapter 11 Trustee.

78.     ***Released Parties*** means (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee, and (d) each Related Party of each Entity in clause (a) through this clause (d). For avoidance of doubt, the Debtor, its current and former equity holders and their Affiliates and Related Parties are not Released Parties.

79.     ***Releasing Parties*** means, collectively, and in each case solely in their capacity as such, each of the Released Parties.

80.     ***Remaining Cash*** means the Cash transferred to the Liquidation Trust in accordance with Article VI(E).

81.     ***Sale*** means the sale of the Property under the Sale and Bid Procedures.

82.     ***Sale and Bid Procedures*** means the Final Order setting forth the requirements of a qualifying bidder and the manner in which bidding will occur at the Auction.

83.     ***Schedules*** means, collectively, the (a) schedules of assets and liabilities and (b) statements of financial affairs filed pursuant to section 521 of the Bankruptcy Code filed at docket number 70 in the Chapter 11 Case.

84.     ***Schedule of Contracts/Leases*** means the schedule of executory contracts and unexpired leases assumed by the Debtor and to be assigned to the Purchaser in connection with the Purchase Agreement, which schedule shall be an attachment to the Purchase Agreement.

85.     ***Secured Claim*** means: (a) any Claim that is secured by a Lien on property in which the Estate has an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Bankruptcy Code section 553, to

the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a); and (b) any Claim which is Allowed under the Plan as a Secured Claim.

86. **Subordinated Claims** means any Claim that is not a Class 1, 2, 3, 4, 5 or 6 Claim/that is the Other Secured Claims, Priority Claims, the NBK Tax Claim, NBK Secured Claim, Trade General Unsecured Claims and Other General Unsecured Claims.

87. **Successful Bid** means the offer accepted for the Property in accordance with the Sale and Bid Procedures.

88. **Successful Bidder** means the Qualifying Bidder who makes the Successful Bid.

89. **Trade General Unsecured Claims** means any Claim against the Debtor for goods and repair, maintenance, and utility services provided to the Debtor prior to the Petition Date by a party other than the Debtor, an Affiliate of the Debtor, or a Related Party to the Debtor.  For the avoidance of doubt, the Trade General Unsecured Claims include the following (subject to being Allowed pursuant to the procedures set forth in this Plan):

| Reference | Claimant | C, D, UL | Est. Claim |
|-----------|----------|----------|-----------|
| Sch. 3.2 | ADT | - | $1,487.00 |
| Sch. 3.4 | Ash Automated Control Systems, LLC | - | $1,548.31 |
| Sch. 3.5 | CFI Mechanical | - | $668.44 |
| POC No. 8 | Cirro Electric | - | $62,405.41 |
| Sch. 3.7 | City of Houston Water | - | $6,126.00 |
| Sch. 3.8 | CNA Insurance Co. | - | $0.00 |
| Sch. 3.9 | Comcast | - | $300.00 |
| Sch. 3.10 | Datawatch Systems | - | $22,900.00 |
| Sch. 3.11 | Environmental Coalition Inc. | D, UL | $800.00 |
| Sch. 3.12 | Ferguson Facilities Supplies | - | $2,001.00 |
| Sch. 3.13 | Firetron | - | $30,000.00 |
| Sch. 3.14 | First Insurance Funding | - | $5,507.36 |
| Sch. 3.17 | HNB Construction | D, UL | $84,853.00 |
| Sch. 3.19 | Kings 111 Emergency Communications | - | $315.00 |
| Sch. 3.21 | Logix Fiber Networks | - | $323.42 |
| Sch. 3.22 | Mueller Water Treatment | - | $950.00 |
| Sch. 3.23 | Nationwide Security | - | $32,549.70 |
| Sch. 3.25 | Smart Office Solutions | - | $1,877.00 |
| Sch. 3.26 | T&R Mechanical | - | $4,216.34 |

| Sch. 3.27 | TKE (TK Elevator Corporation) | - | $76,935.00 |
| Sch. 3.28 | Waste Management | - | $456.00 |
| Sch. 3.29 | Zindler Cleaning Service Co. | - | $4,221.00 |
| | | TOTAL: | $340,439.98 |

90.     **Transferred Actions** means all Actions of the Estate other than Causes of Action and Avoidance Actions released, enjoined or exculpated under the Plan. All such Transferred Actions will be transferred to the Liquidation Trust on the Effective Date.

91.     **Unclaimed Property** means any distribution of Cash or any other property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtor, the Distribution Agent, or the Liquidation Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case.

92.     **Unimpaired** means a Claim that is not Impaired within the meaning of Bankruptcy Code section 1124.

93.     **Unsecured Claim** means a Claim that is not a Secured Claim, other than Administrative Claims, Other Secured Claims, Priority Tax Claims, and Professional Fee Claims.

94.     **U.S. Trustee** means the United States Trustee for Region 7.

**B.**     **Exhibits and Schedules.**  All exhibits and schedules to the Plan are incorporated into and are a part of the Plan.

**C.**     **Rules of Interpretation and Construction.**  For purposes of the Plan, (a) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (b) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits to the Plan; (c) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (d) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (e) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender; and (f) the rules of construction outlined in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply to the Plan. In addition, unless otherwise indicated herein, (i) all references to dollars are to United States dollars and (ii) all amounts set forth in the Plan, including, inter alia, with respect to shares, dollar amounts and percentages, shall be subject to rounding and other immaterial changes.

**ARTICLE II**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

**A.**     **Allowed Administrative Claims.** Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, the Holders of Allowed Administrative

Claims will receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of the (a) the Effective Date, (b) the date on which said Entity becomes a holder of such Allowed Administrative Claim, or (c) such date as such Entity may agree to with the Chapter 11 Trustee or Liquidation Trustee; *provided*, *however*, that Administrative Claims representing liabilities incurred in the ordinary course of business by the Estate or liabilities arising under other obligations incurred by the Estate whether or not incurred in the ordinary course of business, shall be paid by the Estate in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.

**B.**     **Administrative Claims Bar Date.** Notwithstanding Bankruptcy Code section 503(a), any person seeking payment of an asserted Administrative Claim under Bankruptcy Code section 503, other than a governmental unit seeking payment of an expense under sections 503(b)(1)(B) or (C), that was incurred on or before the Effective Date but which has not been paid as of the Effective Date, shall be required to file an application for the allowance of final payment of said claim on or before forty-five (45) calendar days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged.  The provisions of this Article II shall apply to any Professional applying for the allowance and payment of a Professional Fee Claim.

**C.**     **Allowed Priority Tax Claims.** Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the Holder of an Allowed Priority Tax Claim and the Chapter 11 Trustee or Liquidation Trustee, as applicable, each Holder of an Allowed Priority Tax Claim will, in full and final satisfaction of that portion of its Allowed Priority Tax Claim that is due and payable on the Effective Date, either (i) receive Cash equal to the amount of such Allowed Claim on or after the Effective Date or (ii) otherwise be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

Except for the Claims addressed in Article II, all Claims and Interests are classified in the Classes set forth below in accordance with Bankruptcy Code section 1122. A Claim or an Interest is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**A. Summary of Classification**

Below is a summary of the classification of Claims against and Interests in the Debtor:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | NBK Tax Claim | Impaired | Deemed to Reject |
| 4 | NBK Secured Claim | Impaired | Entitled to Vote |
| 5(a) | Trade General Unsecured Claims | Impaired | Entitled to Vote |
| 5(b) | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Insider Claims | Impaired | Deemed to Reject |
| 7 | Subordinated Claims | Impaired | Deemed to Reject |
| 8 | Interests | Impaired | Deemed to Reject |

## B. Treatment of Classes of Claims and Interests

**a.** **Unclassified Claims.** Administrative Claims and Priority Tax Claims are treated in accordance with Article II and Bankruptcy Code sections 1129(a)(9)(A) and 1129(a)(9)(C), respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan or sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

**b.** **Class 1: Other Secured Claims.** On or after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to the Allowed amount of such Claim or, at the discretion of the Liquidation Trustee, shall be given the property securing its claim in full satisfaction of that claim.

**c.** **Class 2: Other Priority Claims.** On or after the Effective Date, each Holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to the Allowed amount of such Claim.

**d.** **Class 3: NBK Tax Claim.** The NBK Tax Claim shall be Allowed in an amount equal to $1,696,384.85. If NBK is not the Purchaser of the Property, on or after the Effective Date, NBK shall receive Cash in an amount equal to the Allowed amount of the NBK Tax Claim. NBK shall not receive a distribution on account of the NBK Tax Claim if it is the Purchaser of the Property.

**e.** **Class 4: NBK Secured Claim.** The NBK Secured Claim shall be Allowed in an amount equal to: (a) $18,600,000 (which is the appraised value of the Property according to the most recent appraisal obtained by NBK); or (b) any other amount established at the Auction as determined by the Successful Bid. If NBK is not the Purchaser of the Property, on or after the Effective Date, NBK shall receive in full and final satisfaction of the NBK Secured Claim: (x) the Remaining Cash and (y) any excess proceeds after payment of the Distribution Account Claims. NBK shall not receive a distribution on account of the NBK Secured Claim if it is the Purchaser of the Property

**f.** **Class 5(a): Trade General Unsecured Claims.** Each Holder of a Trade General Unsecured Claim shall receive in full and final satisfaction of such Claim (x) Cash equal to 70% of the Allowed amount of such Claim, and (y) a *Pro-Rata* Share of the Liquidation Trust Assets.

**g.** **Class 5(b): Other General Unsecured Claims.** Each Holder of an Other General Unsecured Claim shall receive in full and final satisfaction of such Claim, a *Pro-Rata* Share of the Liquidation Trust Assets; *provided, however*, NBK shall be deemed to have an Other General Unsecured Claim equal to 90% of the Allowed amount of the NBK Deficiency Claim as determined by the Successful Bid and in accordance with section 506 of the Bankruptcy Code. The NBK Deficiency Claim shall not be subject to objection, disallowance, offset, reduction or subordination.

**h.** **Class 6: Insider Claims.** On the Effective Date, all Insider Claims shall be canceled and extinguished. Holders of Class 6 Insider Claims shall not receive or retain any property under the Plan on account of such Claims.

**i.**     **Class 7: Subordinated Claims.** On the Effective Date, all Subordinated Claims shall be canceled and extinguished, and Holders of such Claims shall not receive or retain any property under the Plan on account of such Subordinated Claims against the Debtor.

**j.**     **Class 8: Interests.** On the Effective Date, all Interests in the Debtor shall be canceled and extinguished, and holders of such Interests shall not receive or retain any property under the Plan on account of such Interests in the Debtor.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.**     **Presumed Acceptance by Unimpaired Classes.** Holders of Claims in Classes 1 and 2 are Unimpaired under the Plan, and therefore are conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code.

**B.**     **Impaired Classes of Claims Entitled to Vote.** Holders of Claims in Classes 4, 5(a) and 5(b) are Impaired and are entitled to vote to accept or reject the Plan.

**C.**     **Classes Deemed to Reject the Plan.** Holders of Claims in Classes 3, 6 and 7 and Holders of Interests in Class 8 are not entitled to receive or retain any property under the Plan. Under Bankruptcy Code section 1126(g), Holders of Claims in Classes 6 and 7, and Holders of Interests in Class 8 are deemed to reject the Plan, and therefore their votes will not be solicited.

**D.**     **Acceptance of Impaired Class.** Pursuant to Bankruptcy Code section 1126(c), an Impaired Class of Claims shall have accepted the Plan if it is accepted by Holders of at least two-thirds (2/3) in dollar amount and one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**E.**     **Cramdown.** If all applicable requirements for confirmation of this Plan are met as set forth in Bankruptcy Code section 1129(a)(1) through (16) except subsection (a)(8) thereof, NBK intends to request confirmation of this Plan in accordance with Bankruptcy Code section 1129(b), notwithstanding the failure to satisfy the requirements of section 1129(a)(8).

## ARTICLE V
## EXECUTORY CONTRACTS AND LEASES

**A.**     **Executory Contracts and Unexpired Leases.** Except as otherwise provided herein, on the Effective Date, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, (ii) is identified on the Schedule of Contracts/Leases; (iii) is subject to a motion filed by the Chapter 11 Trustee to assume (or assume and assign) such unexpired lease or executory contract as of the Effective Date; or (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; *provided*, *however*, that NBK as plan proponent in cooperation with the Purchaser shall have the right to amend the Schedule of Contracts/Leases up to thirty days (30) after the Effective Date or by any other means approved by the Court or to

13

delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to this Article V or to add any executory contract or unexpired lease, thus providing for its assumption and assignment pursuant to this Article V and the terms of the Purchase Agreement. Such rejection or assumption and assignment shall be effective upon the filing and serving of a final version of the Schedule of Contracts/Leases, which final Contract/Lease Schedule shall be filed and served no later than thirty days (30) after the Effective Date.

**B.**     **Assumption of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code section 365(a), of the assumption of the executory contracts and unexpired leases assumed as of the Effective Date.

**C.**     **Rejection Claims.** If the rejection of an executory contract or unexpired lease pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or any property to be distributed under the Plan, unless a proof of claim is filed with the Court and served upon the Trustee or the Liquidation Trustee, as applicable, on or before the date that is thirty (30) calendar days after the Effective Date.

**D.**     **Cure of Defaults for Assumed Contracts and Leases.** The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Purchase Agreement, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases filed by the Objection Deadline, if any, shall be governed by the terms and conditions of the Sale and Bid Procedures Final Order and other orders of the Court. All such Cure Costs shall be satisfied by the Purchaser.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

**A.**     **Sale of Property.** The Confirmation Order shall authorize the consummation of the Sale pursuant to Bankruptcy Code sections 363, 365, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141(c) and 1146(a) under the terms and conditions of the Purchase Agreement free and clear of any Claims, Liens, Interests, encumbrances, executory contracts or unexpired leases of real or personal property other than Assumed Liabilities or Contracts as defined in the Purchase Agreement. Any Sale conducted via the Auction shall be conducted in accordance with applicable orders of the Court, including, without limitation, the Sale and Bid Procedures (prior to entry of the Confirmation Order). Upon Confirmation, the Chapter 11 Trustee shall be authorized and directed to take any action necessary to consummate the Sale.

**B.**     **Management of Property.**     Upon entry of the Confirmation Order, JLL shall continue to manage the Property and pay any expenses associated with the Property until such time as the Sale is consummated pursuant to the Purchase Agreement.

**C.**     **Cash Contribution.** If NBK is the Successful Bidder, on or after the Effective Date, NBK shall contribute Cash to the Estate in the amounts necessary for the following (the "**Cash Contribution**"): (i) payment of the Distribution Account Claims in full; (ii) initial funding

of the Liquidation Trust in the amount of $150,000.00; and (iii) payment of $238,307.99 to Trade General Unsecured Claims, as provided for in Article III(B)(f).

**D.      Dissolution of Debtor.** The Debtor shall be dissolved effective upon filing a certificate of dissolution (or its equivalent) with the secretary of state or similar official jurisdiction of organization of the Debtor after the Effective Date. Any such certificates shall be executed for Debtor by the Liquidation Trustee. On the Effective Date, each of the managers and any other officers or directors of the Debtor shall be deemed to have resigned from all of their respective positions. No separate vote or authorization shall be required to cause or show the authority for the Debtor to be dissolved.

**E.      Distribution Account.** A Distribution Account shall be established to receive any proceeds of the Sale and/or Cash Contribution.  If NBK is not the Purchaser of the Property, on or after the Effective Date, the Distribution Agent shall receive the proceeds of the Sale and: (a) make distributions from the Distribution Account to Holders of Allowed Administrative Claims (including any commission for the Broker), Allowed Priority Tax Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, the NBK Tax Claim, and the NBK Secured Claim in accordance with the Plan (collectively, the "**Distribution Account Claims**"); and (b) transfer the Remaining Cash to the Liquidation Trust; *provided*, *however*, if NBK is the Purchaser of the Property, the Distribution Agent shall receive the Cash Contribution and make distributions to all other Holders of the Distribution Account Claims, except the Holder of the NBK Tax Claim. The Liquidation Trustee shall be authorized to hold and control a Distribution Account for the purpose of administering and resolving Disputed Administrative Claims and distributing Cash to Holders of Administrative Claims if and when they become Allowed after the Administrative Claims bar date approved by the Court.

**F.      Liquidation Trust.** Except as otherwise provided for herein, the Liquidation Trust shall be established on the Effective Date and shall on or after the Effective Date receive: (a) the Liquidation Trust Fund; (b) the Transferred Actions; and (c) any other assets conveyed to the Liquidation Trust under the Plan, all of which assets shall vest in the Liquidation Trust on the Effective Date free and clear of all Claims, encumbrances and Interests in accordance with section 1141 of the Bankruptcy Code. The Liquidation Trust shall be the representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

**G.      Liquidation Trustee Powers and Duties.** The Liquidation Trustee shall administer the Liquidation Trust and its assets in accordance with this Plan and the Liquidation Trust Agreement, and shall be responsible for, among other things, as Distribution Agent, making distributions required under this Plan.  From and after the Effective Date and continuing through the date of entry of a Final Decree, the Liquidation Trustee shall: (a) have and be entitled to exercise all rights and powers of the Debtor and the Estate, including but not limited to those provided for in the Bankruptcy Code, including section 1107 thereof; (b) possess all rights and powers granted in the Liquidation Trust Agreement, including the authority to direct the affairs of, and dissolve, the Debtor (and all bylaws, articles or certificates of incorporation, and related corporate documents are deemed amended by this Plan to permit and authorize such appointment); (c) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Court or other courts,

(ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Court; (d) have the authority to act as and for the Debtor in all adversary proceedings and contested matters pending in the Court and in all actions and proceedings pending elsewhere; (e) have the power to prosecute, compromise and settle the Transferred Actions; (f) have the right to object to Claims; (g) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Court; and (h) borrow money for such purposes as financing the costs of prosecuting the Transferred Actions, on terms and conditions it deems appropriate, upon Court approval after notice and hearing. Professionals and personnel retained or employed by the Liquidation Trust or the Liquidation Trustee need not be disinterested as that term is defined in the Bankruptcy Code.

      **H.**    **Dissolution of Liquidation Trust.**  The Liquidation Trust shall be discharged or dissolved as set forth in the Liquidation Trust Agreement.

      **I.**    **Application of Sale Proceeds and Powers of Purchaser.**  In accordance with the Plan and the Purchase Agreement, the Purchaser or the Chapter 11 Trustee, as applicable, shall, among other things: (a) deliver the proceeds of the Sale to the Distribution Agent to (i) satisfy Allowed Distribution Account Claims and (ii) fund the Liquidation Trust; (b) satisfy all costs to cure and provide adequate assurance of performance with respect to all executory contracts and unexpired leases assumed and assigned to Purchaser; and (c) direct the distribution of the Remaining Cash, if necessary.

      **J.**    **Transfer of Excluded Assets.**  On the Effective Date, the Debtor or Chapter 11 Trustee, as applicable, shall transfer to the Liquidation Trust for Holders of Claims in Classes 4, 5(a) and 5(b), the Transferred Actions and those Excluded Assets (as defined in the Purchase Agreement) not otherwise provided in the Plan.

      **K.**    **Causes of Action and Avoidance Actions.**  Other than Causes of Action and Avoidance Actions released, enjoined or exculpated under Article IX, all Causes of Action and Avoidance Actions shall automatically be transferred to and become property of the Liquidation Trust. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee (as a representative of the Estate) will have the right to retain, enforce and prosecute such Transferred Actions against any Person, Entity, Affiliate or Insider of the Debtor, that arose before the Effective Date. The Debtor shall provide to the Liquidation Trustee copies of all its books and records as may be necessary, in the Liquidation Trustee's reasonable discretion, to identify, analyze and prosecute such Transferred Actions.

## ARTICLE VII
## CLAIMS AND DISTRIBUTIONS

      **A.**    **Distribution Agent.**  On the Effective Date, the Liquidation Trustee shall serve as Distribution Agent for all Distributions required under the Plan.

**B.    Time and Manner of Distributions.** Except as set forth herein or ordered by the Court, on the Effective Date, the Liquidation Trustee shall establish deposit and reserve accounts for the Holders of Allowed Claims to make payments to such Holders in accordance with this Plan. All Distributions to be made or otherwise reserved pursuant to this Plan shall be held by the Liquidation Trust in trust in such accounts for Holders of Allowed Claims entitled to receive Distributions.

**C.    Delivery of Distributions.** Distributions to be made to Holders of Allowed Claims shall be made at (a) the address of each Holder as set forth in the Schedules filed with the Court unless superseded by the address set forth on proof(s) of Claim filed by such Holder, or (b) the last known address of such Holder if no proof of Claim is filed and if the Chapter 11 Trustee or the Liquidation Trustee has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidation Trust may, in its discretion, make such efforts to determine the current address of the Holder of the Claim or Interest with respect to which the Distribution was made as the Liquidation Trust deems appropriate, but no Distribution to any Holder shall be made unless and until the Liquidation Trust has determined the then-current address of the Holder, at which time the Distribution to such Holder shall be made to the Holder without interest. Amounts in respect of any undeliverable Distributions made through or by the Liquidation Trust shall be returned and held in trust by, the Liquidation Trust until such Distributions are claimed or are deemed to be Unclaimed Property under section 347(b) of the Bankruptcy Code or otherwise distributed as set forth herein.

**D.    Claims Objection.** The Liquidation Trustee shall file, prosecute, litigate, settle or withdraw objections to any Claim.  Objections to claims shall be filed by the Claims Objection Deadline unless extended by the Court or agreement with the holder of a Claim.  No party in interest, including the Debtor, shall have the authority to file, prosecute, litigate, settle or withdraw objections to any Claim.

**E.    Claims Estimation.** The Liquidation Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c); *provided*, *however*, that the Court shall determine (a) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (b) the timing and procedures for such estimation proceedings, if any.

**F.    Disputed Claims Reserves.** On and after the Effective Date, the Liquidation Trustee may establish and maintain reserves for all Disputed Claims. For purposes of establishing a reserve, Cash will be set aside in the applicable deposit account equal to the amount that would have been distributed to the Holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date, or such other amount as may be approved by the Court upon motion of the Liquidation Trustee. If any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidation Trustee to the Claimant. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved, shall be distributed by the Liquidation Trustee to Holders of Allowed Claims in Classes 4, 5(a) and 5(b) on account of their *Pro-Rata* Share of such amount. No Distributions shall be made with respect to a Claim that is a Disputed Claim pending resolution of the dispute by Final Order.

**G.**     **Withholding Taxes.** Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. All Persons holding Claims shall have an affirmative duty and be required to provide any information necessary to effect the withholding of such taxes, including its federal tax identification number or social security number.

**H.**     **Setoffs.** Except as otherwise provided for herein, the Liquidation Trustee may, but shall not be required to, set off against any Claim and the Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor, the Liquidation Trustee or the Estate of any Claim they may have against such Creditor; *provided* that such right of setoff shall be subject to this Article VII and in no event shall the Debtor or the Liquidation Trustee set off, or be permitted to set off, against any Claims Allowed under this Plan.

**I.**     **Unclaimed Distributions.** All property distributed on account of Claims must be claimed prior to the date on which the Court enters the Final Decree. All Unclaimed Property will be retained by and will vest in the Liquidation Trust for distribution to Holders of Allowed Claims in Classes 4, 5(a) and 5(b).  Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Article VII(I) will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor, the Distribution Agent, the Liquidation Trustee, NBK, or the Purchaser, or their respective assets.

**J.**     **De Minimis Distribution.** No Cash payment of less than twenty-five ($25.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

**K.**     **Satisfaction of Claims**.  Except as otherwise provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

**L.**     **No Fractional Distributions.**  Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Article VII(I).

## ARTICLE VIII
## CONDITIONS TO CONSUMMATION OF THE PLAN

**A.**     **Confirmation Order.**  The Confirmation Order shall not be entered until the Court enters an order approving the Sale of the Property in accordance with the Sale and Bid Procedures, and the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, if any, shall have been filed.

**B.** **Conditions to the Effective Date.** The Plan shall not be consummated, and the Effective Date shall not occur, until the following conditions have occurred or been waived (if waivable):

    **a.** the Confirmation Order shall have been entered and shall not be stayed, vacated, or otherwise rendered ineffective by order of a court of competent jurisdiction;

    **b.** all conditions precedent under the Purchase Agreement shall have been satisfied;

    **c.** the transactions contemplated in the Purchase Agreement shall have been consummated;

    **d.** the Liquidation Trustee shall have been appointed, the Liquidation Trust Agreement shall have been executed, and the Liquidation Trust shall have received the Liquidation Trust Fund; and

    **e.** no order of a court shall have been entered and shall remain in effect restraining NBK from consummating the Plan, or if it is the Successful Bidder, taking title to the Property directly or through a designee.

**C.** **Waiver of Conditions.** Each of the conditions set forth in Article VIII(B) may be waived at any time by the Successful Bidder, without notice, leave or order of the Court or any further action other than proceeding to confirm or consummate the Plan. The Successful Bidder's failure to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.** **Effect of Failure of Conditions; Order Denying Confirmation.** If one or more of the conditions specified in Article VIII(B) have not been satisfied (or waived) or if the Allowed NBK Secured Claim has not been paid in full where NBK is not the Successful Bidder, upon notification submitted by the Chapter 11 Trustee to the Court: (a) the Confirmation Order shall be vacated, (b) no Distributions under the Plan shall be made, (c) Estate Assets shall revest in the Estate, and (d) all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Purchase Agreement shall become null and void; and (f) the Estate's obligations with respect to the Claims and Interests shall be as if the Confirmation Order had not been entered.

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

**A.** **Discharge.** Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge Claims against the Debtor.

**B.** **Compromise and Settlement of Claims and Interests.** Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan, including the settlement of all Claims, Interests, or controversies among the Debtor, the Estate and NBK, shall constitute an integrated and global good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have

19

with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Court's integrated and global approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interest of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and is within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**C.** **Exculpation.** **Except as otherwise provided in the Plan, to the maximum extent permitted by the Bankruptcy Code and applicable law, no Exculpated Party shall have or incur any liability to any Person, including, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, filing, negotiating, prosecuting, administering, formulating, implementing, soliciting support or acceptance of, confirming or consummating this Plan, the Purchase Agreement, or the property to be distributed under this Plan, including all activities leading to the promulgation and Confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case; *provided, however,* that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.**

**D.** **Estate Releases.** **Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and this Estate will be deemed to have forever released, waived and discharged the Released Parties from any and all Actions, Claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan. This release does not release any Action, Claim, obligation, suit, judgment, damages, demands, debts, rights, and liabilities of a Released Party arising under or pursuant to the Plan or Purchase Agreement, and the contracts, instruments, releases and other agreements delivered in connection with the Plan or Purchase Agreement, which may be enforced only by the Chapter 11 Trustee, NBK, the Purchaser, the Distribution Agent or the Liquidation Agent, as applicable.**

**E.** **Injunction.** **Except as otherwise provided herein, on the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person (excluding the Liquidation Trustee) that has held, currently holds or may hold a Claim,**

Action or liability that is released pursuant to Article IX(D) from enforcing or attempting to enforce any such Claim, Action or liability against any Released Party or any of their respective Property; *provided*, *further*, that no Person who has held, holds, or may hold Claims, Interests, or Action may commence or pursue a Claim or Action, as applicable, of any kind in any way related to the Debtor against any Released Party that arose before the Petition Date or arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the Debtor's business, the administration of the Liquidation Trust, or the transactions in furtherance of the foregoing without the Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party that such person has standing and is otherwise entitled to assert such claim or cause of action and (ii) specifically authorizing such Releasing Party to bring such claim or cause of action against any such Released Party.

      **F.**    <u>**Duration of Injunctions and Stays**</u>.  Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Court, all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under Bankruptcy Code section 362 shall remain in full force and effect subject to Bankruptcy Code Section 362(c).

**ARTICLE X**
**<u>RETENTION OF JURISDICTION</u>**

The Court shall retain jurisdiction of all matters arising under, or related to, these proceedings, including, but not limited to:

    **a.**  ensuring that the Plan is carried out;

    **b.**  considering any modification of the Plan under Bankruptcy Code section 1127;

    **c.**  hearing and determining all controversies, suits, and disputes that may arise in connection with the interpretation of the Plan;

    **d.**  hearing and determining all objections to claims, controversies, suits, and disputes that may be pending as of or initiated after the Effective Date;

    **e.**  hearing and determining all claims, controversies, suits, and disputes against the Debtor or that may arise in connection with the interpretation of the Plan;

    **f.**  hearing and determining all requests for compensation and/or reimbursement of expenses that may be made for fees/expenses incurred before the Effective Date;

    **g.**  enforcing any Final Order, the Confirmation Order, the Final Decree, and all injunctions contained in those orders;

    **h.**  entering an order concluding and terminating this Chapter 11 Case;

**i.** correcting any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order;

**j.** determining all questions and disputes regarding title to the Property and any other assets of Debtor;

**k.** enter a Final Decree in the Chapter 11 Case according to Bankruptcy Rule 3022;

**l.** enforcing the provisions set forth in the Plan, the Confirmation Order, any Final Decree, and any Final Order that provides for the adjudication of any issue by the Court; and

**m.** entering and implementing such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**A.** **Additional Documents/Execution of Documents Generally.** On or before substantial consummation of the Plan, the Chapter 11 Trustee or NBK shall issue, execute, deliver, and file with the Court or record any agreements and other documents consistent with, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan. The Chapter 11 Trustee has the authority, and the Confirmation Order shall constitute conclusive authority, of the Chapter 11 Trustee to act for, and in the name of the Debtor, and any document executed by the Chapter 11 Trustee in connection with the Plan or Sale shall be accepted by any recording office and shall be recorded and published on receipt.

**B.** **Binding Effect.** This Plan shall be binding upon and inure to the benefit of the Debtor, NBK, the Estate, the Liquidation Trustee, the Liquidation Trust, the Distribution Agent, the Purchaser, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**C.** **Entire Agreement.** The Plan (and all exhibits thereto and the Plan Supplement) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**D.** **Final Order.** Except as otherwise provided in the Plan, any requirement in the Plan for a Final Order may be waived: (a) by the Purchaser, in its sole discretion, provided, however, that in the event the Debtor determines in good faith that any such waiver would constitute a breach of the Chapter 11 Trustee's fiduciary duties, NBK may seek to prevent any such waiver by seeking an order of the Court on an expedited basis; or (b) after the Effective Date, by the Liquidation

22

Trustee upon written notice to the Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

       **E.**    **Governing Law.**  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of New York.

       **F.**    **No Admissions or Waivers.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

       **G.**    **Notices.** Any notice required or permitted to be provided under this Plan to the Debtor, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

| Chapter 11 Trustee | Counsel to Chapter 11 Trustee |
|---|---|
| Christopher R. Murray<br>**Jones Murray LLP**<br>602 Sawyer Street, Suite 400<br>Houston, TX 77007 | R. J. Shannon<br>Kyung S. Lee<br>**Shannon & Lee LLP**<br>2100 Travis Street, Suite 1525<br>Houston, TX 77002 |
| **NBK** | **Counsel to NBK** |
| Marwan Isbaih<br>Michael C. Carter<br>**National Bank of Kuwait,**<br>**S.A.K.P., New York Branch**<br>299 Park Avenue<br>New York, NY 10171 | **Pillsbury Winthrop Shaw Pittman LLP**<br>Charles C. Conrad<br>Ryan Steinbrunner<br>609 Main Street Suite 2000<br>Houston, TX 77002<br>----------------------<br>Andrew M. Troop<br>Patrick E. Fitzmaurice<br>Kwame O. Akuffo<br>31 West 52nd Street<br>New York, NY 10019 |

       **H.**    **Plan Modification.** NBK may amend or modify the Plan in accordance with Bankruptcy Code section 1127 or as permitted at any time prior to the Confirmation Date.

       **I.**    **Post-Confirmation Operating Reports.** The Liquidation Trustee shall file quarterly operating reports as required by the U.S. Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Chapter 11 Case.

       **J.**    **Quarterly Fees.** Quarterly Fees due shall be paid on or after the Effective Date.

       **K.**    **Severability.** Should the Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such

provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**L.** **Section 1146 Exemption.** To the fullest extent permitted under Bankruptcy Code section 1146(a), the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other property of or to the Debtor shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**M.** **Solicitation.** NBK (and each of its respective Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals) has, and upon Confirmation of the Plan, shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**N.** **Withdrawal of the Plan.** NBK shall reserve the right, at any time prior to Confirmation of the Plan, to withdraw the Plan. If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice the rights of the Debtor or any Person in any further proceedings involving the Debtor.

NBK requests Confirmation of the Plan under section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated: April 10, 2024

NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH

By: _____
Name:  Michael C. Carter
Title:   Vice President

**<u>Exhibit B to Disclosure Statement</u>**

**Organizational Chart**



**<u>Exhibit C to Disclosure Statement</u>**

Liquidation Analysis

**(TO BE FILED WITH THE PLAN SUPPLEMENT)**