IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § § § § § § | **CASE NO. 23-34815** <br><br> **CHAPTER 11** |

**OBJECTION TO CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (I) APPROVING PROCEDURES FOR THE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIM AND ENCUMBRANCES; (II) SCHEDULING AN AUCTION; (III) AUTHORIZING ENTRY INTO THE STALKING HORSE PURCHASE AGREEMENT; (IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; (V) APPROVING FORM OF NOTICE; AND (VI) GRANTING RELATED RELIEF**

Galleria 2425 Owner, LLC, the Debtor ("Galleria 2425 Owner" or "Debtor") files this objection to the Motion to Sell filed by the Chapter 11 Trustee at docket 188 and would show this court as follows:

1. The Chapter 11 Trustee (the "Trustee") filed a motion to sell ("Motion") the real property of the Debtor at docket #188. The Debtor files this objection.

2. The Motion proposes an auction sale of the real property owned by the Debtor at 2425 West Loop South, Houston, Texas 77027 (the "Property") in approximately 60 days. The Property is an eleven story office building located in the heart of the Galleria area in Houston, Texas. The Property was designed by I. M. Pei, a very well-known architect. It is only one of two buildings in Houston designed by I. M. Pei. It has been refurbished in recent years. It has been the corporate headquarters in the past for companies such as Blue Cross Blue Shield of Texas, Stages Stores and other well-known businesses.

3. The Motion states that the "process . . might create a competitive auction for the property that results in an ultimate sales price that exceeds in value the initial stalking horse bid . . ." The Debtor disputes such allegations. Selling a large office building on a very short

notice will not bring a highest and best value. Selling an office building where the National Bank of Kuwait, S.A.K.P, New York Branch ("NBK") is allowed to credit bid should not be permitted at this time.

4. The Motion in paragraph 3(ii) seeks to establish certain deadlines for the sale process, including an auction, "if needed." The Debtor does not know what "if needed" refers to.

5. The proposal by the Trustee to sell all of the assets of the Debtor must have an approved plan for the sale to occur. Case law in this circuit dictates that a plan of reorganization be in place for the sale of all the assets to occur. This case does not have the facts to demonstrate otherwise.

6. The proposal by the Trustee to sell all of the assets of the Debtor allows NBK to "purchase the Property in exchange for a portion of the amount it is owed (a 'credit bid') .. . ." However, the Debtor, Ali Choudhri and others have significant claims against NBK. Such claims are currently pending in adversary proceedings before this court. The Motion allows NBK to credit bid notwithstanding the significant claims asserted against NBK when such claims are not resolved and are believed to have significant value. NBK should not be allowed to credit bid with the currently pending claims against it. NBK should be required to pay cash as any other bidder.

7. If NBK is allowed to credit bid, such right may completely chill any other bidders. The Trustee stated in paragraph 17: "Here, the Bid Procedures are designed to attract active bidding from parties potentially interested in the Sale of the Property and to maximize its value." However, any entities that may desire to bid can see on Pacer that NBK has filed a claim in excess of $67,000,000. If NBK can credit bid up to the amount of its claim, why would any other persons or entities want to spend the time and effort to participate knowing that NBK can bid up to $67,000,000? Further, if any part of the claims against

NBK are successful and NBK has been allowed to bid based on claims that may have been reduced, where does that leave the process?

8. The Trustee has filed a motion to employ Hilco Real Estate, LLC ("Hilco") as the real estate broker to market and sell the Property. However, Hilco signed a Confidentiality & Non-Disclosure Agreement ("CNA Agreement") with the Debtor and numerous other related parties. The CNA Agreement provides in part that Hilco "agrees to not interfere with or impede on or with the sale of the Properties [which include the Property]." The CNA Agreement has other agreements that restrict actions of Hilco. For Hilco to act as the real estate agent will result in a breach of contract by Hilco and to claims against both the Trustee and Hilco for damages. A copy of the CNA Agreement is attached as an exhibit.

9. A confidentiality agreement involving the Property is obviously important. Any person or entity wanting to review and Property and submit bids must execute a confidentiality agreement as part of the process with the Trustee. Hilco signed a confidentiality agreement with the owners of the Debtor yet the Trustee wants to engage Hilco to effectively breach the confidentiality agreement signed by Hilco.

10. The Motion provides no information as to how the Property may or will be marketed to achieve maximum value in a very short period of time.

11. The Bid Deadline is June 14, 2024. Such date is 7 weeks from Friday April 26, 2024. By the time the motion could be approved, the date may be approximately 6 weeks. Six weeks to market and sell a major Houston office building appears to be unreasonable. The Trustee has provided no information as to the basis of his decision.

12. Paragraph 12 contains the only information on marketing of the Property: "After entry of the Bid Procedures Order, the Trustee also will give notice of the Sale in a local Houston.

Texas publication of general interest." No information is provided as to what the broker may do to market the Property.

13. The Motion states that the Trustee has exercised "sound business judgment in entering into the Stalking Horse Agreement, deciding on this process or the public auction sale of the property, and committing to closing with the prevailing bidder on the terms set forth in the Stalking Horse Agreement." However, there is no facts supporting such statement.

14. The Assumption and Assignment Procedures could have a direct and adverse effect on tenants with leases on the Property. To the extent that such Assumption and Assignment Procedures are adopted by this court without the ability of the tenants to vote on a plan may violate the due process rights of the tenants.

WHEREFORE, PREMISES CONSIDERED, Galleria 2415 Owner, LLC objects to the NBK Disclosure Statement and requests that this court deny such statement until "adequate information" is provided to creditors as required by section 1125 of the Bankruptcy Code and for such other and further relief as to which Galleria 2425 Owner, LLC is entitled.

Dated: April 24, 2024

Respectfully submitted,

*/s/ Reese W. Baker*
**Reese W. Baker**
TX Bar No. 01587700
950 Echo Lane, Ste 300
Houston, Texas 77024
(713) 869-9200
(713) 869-9100 Fax
ATTORNEY FOR DEBTOR

## **CERTIFICATE OF SERVICE**

      I certify that on April 24, 2024, I caused a copy of the foregoing document to be delivered to the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                            */s/ Reese W. Baker*
                            Reese W. Baker