## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | |
| **GALLERIA 2425 OWNER LLC,** | **Case No. 23-34815** |
| | **Chapter 11** |
| Debtor. | |

### GALLERIA 2425 OWNER LLC AND 2425 WL, LLC'S
### SECOND  AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

Galleria 2425 Owner LLC (the "Debtor") and 2425 WL, LLC ("2425 WL") (together the Debtor and 2425 WL are referred to as the "Proponents"), submit this Second Amended Joint *Chapter 11 Plan of Reorganization* (this "Plan") pursuant to section 1121(a) of the United States Bankruptcy Code (11 U.S.C. 101, *et seq.,* the "Bankruptcy Code").

## ARTICLE I.
## INTRODUCTION AND BACKGROUND

Galleria 2425 Owner LLC is a Texas limited liability company founded in 2018. The Debtor's primary asset is a parcel of developed real property located at 2425 West Loop South, Houston, Texas.

On December 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), commencing the above-styled Bankruptcy Case (the "Bankruptcy Case"). Since the Petition Date, the Debtor has continued to operate and manage its business as "debtor-in-possession" pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested by any party in interest or appointed in the Debtor's Bankruptcy Case pursuant to section 1104 of the Bankruptcy Code.

The Proponents file this Plan to reorganize the Debtor's financial affairs and hope that the Plan, as it may hereafter be amended, modified, or restated, in whole or in part, will be confirmed on a consensual basis through acceptance by all Classes of Creditors entitled to vote on the Plan. In the event that one or more of the Debtor's Creditor Classes fails to accept the Plan, the Proponents will request the Court to confirm the Plan on a consensual basis through acceptance by all classes of creditors entitled to vote on the Plan. In the event that one or more of the Debtor's creditor classes fails to accept the Plan, the Proponents will request the Court to confirm the Plan under Section 1129(b) of the Bankruptcy Code.

## ARTICLE II.
## DEFINITIONS

**A.** <u>Defined Terms</u>. For purposes of this Plan and the accompanying Disclosure Statement, the following terms shall have the meaning set forth in this Article II, unless context clearly requires another meaning.

2.1     <u>Accounting Expenses</u>: Expenses incurred by the Debtor for the maintenance of its books and records, preparation of the Debtor's financial reports, marketing materials, tax returns and fulfillment of reporting and auditing obligations to its lenders and other parties.

2.2     <u>Administrative Expense</u>: Any cost or expense of administration of the Chapter 11 case under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code (including any claims for substantial contribution under section 503(b)(3)(D) and any 503(b)(9) claims based upon goods received by the Debtor within 20 days of the Petition Date), and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

2.3     <u>Allowed</u> when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

2.4     <u>Allowed Administrative Priority Claims</u>: The Allowed Claims of: (i) all administrative expenses of the Debtor's Chapter 11 case allowable under Section 503(b) of the Bankruptcy Code, including Professional Compensation and Reimbursement Claims; (ii) all Allowed Unsecured Claims entitled to priority under Section 507(a)(3) and (4) of the Bankruptcy Code for wages, salaries, vacation, severance, sick pay or commissions; (iii) all priority tax claims of governmental units, exclusive of those tax claims defined as "Allowed Tax Claims" herein; (iv) all quarterly fees and other expenses payable to the United States Trustee in connection with the administration of the Debtor's Chapter 11 case.

2.5     <u>Allowed Claim</u>: A claim against the Debtor: (i) in respect of which a Proof of Claim has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the claim is allowed by Final Order of the Bankruptcy Court, or (ii) scheduled in the list of creditors, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed

as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

      2.6    <u>Allowed Priority Claim</u>: A Priority Claim to the extent that it is or has become an Allowed claim, but which, in any event, will be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

      2.7    <u>Allowed Priority Tax Claim</u>: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits or refunds to which the Debtor shall be entitled on the Confirmation Date.

      2.8    <u>Allowed Interest</u>: An equity security Interest in or against the Debtor: (i) in respect of which a Proof of Interest has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the interest is allowed by Final Order of the Bankruptcy Court; or (ii) scheduled in the list of Equity Holders in the Debtor, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(a)(3), as to which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

      2.9    <u>Allowed Secured Claim</u>: A Secured Claim to the extent that it is allowed by Final Order in an amount equivalent to the value of any perfected Collateral held to secure such claim.

      2.10    <u>Allowed Tax Claims</u>: The Allowed Claim of all Allowed Unsecured Claims of governmental units to the extent entitled to priority under Section 507(a)(7) of the Bankruptcy Code, if any.

      2.11    <u>Allowed Unsecured Claim</u>: An Unsecured Claim against the Debtor: (i) in respect of which a Proof of Claim has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the claim is allowed by Final Order of the Bankruptcy Court; or (ii) scheduled in the list of creditors, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This definition includes all claims deemed unsecured and deficiency claims pursuant to Section 506(a) of the Bankruptcy Code.

      2.12    <u>Assets</u>: shall mean and include all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor as of the Petition Date, together with all such

property of every type or nature subsequently acquired by the Debtor through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all claims, causes of action or remedies to pierce the corporate veil of the Debtor, to ignore the corporate structure of the Debtor or arising under Chapter 5 of the Bankruptcy Code.

2.13    <u>Bankruptcy Case</u>: The bankruptcy case styled and numbered *In re: Galleria 2425 Owner LLC*; Case No. 24-34815, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

2.14    <u>Bankruptcy Code</u>: The United States Bankruptcy Code, Title 11, United States Code, 11 U.S.C. § 101 *et seq*.

2.15    <u>Bankruptcy Court</u>: The United States Bankruptcy Court for the Southern District of Texas, Victoria Division, having jurisdiction over this Chapter 11 case, or the United States District Court for the Southern District of Texas acting as a court of bankruptcy.

2.16    <u>Bankruptcy Rules</u>: The Federal Rules of Bankruptcy Procedure.

2.17    <u>Bar Date</u>: The final date for filing Proofs of Claim, as directed by either the Bankruptcy Court or otherwise established pursuant to Bankruptcy Rule 3003(c)(3).

2.18    <u>Business Day</u>: Any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

2.19    <u>Cash</u>: Legal tender of the United States of America or equivalents thereof, which may be conveyed by check or wire transfer.

2.20    <u>Claim</u>: Either: (i) a right to payment from the Debtor and/or its Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor and/or its Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.21    <u>Claimant</u>: The holder of a Claim.

2.22    <u>Class</u>: A category of holders of Claims or Interests which are substantially similar to the other Claims or Interests in such class.

2.23    <u>Collateral</u>: Any Asset subject to a valid and enforceable Lien to secure payment of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

2.24     Confirmation Date: The date upon which the Bankruptcy Court shall enter the Confirmation Order, provided that, if the Confirmation Order or consummation of the Plan is stayed or enjoined pending appeal, the Confirmation Date shall be the date that a Final Order vacating, terminating, annulling, or dissolving such stay or injunction is entered or on which such stay or injunction expires and is no longer in force or effect.

2.25     Confirmation Order: An Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, as such Order may be amended, modified, or supplemented.

2.26     Contested: When used with respect to a Claim, means a Claim: a) that is listed in the Schedules of the Debtor as disputed, contingent, or unliquidated, or in the amount of $0.00 or unknown; b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; c) that is not listed in the Schedules of the Debtor, but as to which a proof of Claim has been filed with the Bankruptcy Court; d) any Claim as to which an objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) any Claim for which the proof of Claim is filed after the Bar Date.

2.27     Corporation Documents: The Debtor's organizational certificates and documents, including its partnership agreement, as the same may have heretofore been amended, modified, supplemented, or restated in whole or in part, and as such Corporation Documents are amended and modified by the provisions of and/or in further implementation of this Plan.

2.28     Creditor: Any person described in section 101(10) of the Bankruptcy Code.

2.29     Cure: The distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to Bankruptcy Code section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

2.30     Debtor or Debtor-in-Possession: Galleria 2425 Owner, LLC.

2.31     Disallowed: When used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to a Contested Claim, any portion thereof which is not allowed by a Final Order of the Bankruptcy Court.

2.32     Distributions: The assets, property, or payments required to be distributed or paid to holders of Allowed Claims under the Plan.

2.33     Distribution Agent: The Reorganized Debtor.

2.34    <u>Disclosure Statement</u>: The *Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of the Debtor's Plan of Reorganization* filed by the Debtor, as same may be modified, amended, restated, or supplemented from time to time in whole or in part in accordance with the Bankruptcy Code.

2.35    <u>Effective Date</u>:Thirty days after the first calendar day of the month after which the Confirmation Order becomes a Final Order.

2.36    <u>Estate</u>: The bankruptcy estate of the Debtor in this Bankruptcy Case created pursuant to section 541 of the Bankruptcy Code.

2.37    <u>Executory Contracts</u>: Any and all unexpired leases or executory contracts to which the Debtor is a party and which are subject to Section 365 of the Bankruptcy Code.

2.38    <u>Final Order</u>: An order of the Bankruptcy Court or any other court of competent jurisdiction which has not been reversed, stayed, modified, amended, vacated, or otherwise altered and in respect of which all applicable time periods for filing an appeal or seeking review of such order shall have expired so that such order has become final in accordance with the Bankruptcy Rules.

2.39    <u>Galleria 2425 Owner, LLC</u>:  The Debtor in this Bankruptcy Case.

2.40    <u>General Unsecured Claim</u>: Any Claim that is not secured by a valid and enforceable Lien against any Asset, but excluding always therefrom all: (a) Administrative Expenses; (b) Priority Claims; (c) Priority Tax Claims; and (d) Secured Claims.

2.41    <u>Gross Revenues</u>: Revenues generated from, *inter alia*: (i) the Debtor's operations; (ii) any other miscellaneous operating sources, (iii) interest received by the Debtor from the investment of its funds, (iv) security and other deposits which are forfeited to the Debtor by the parties making such deposits, and (v) utility and other deposits which are refunded to the Debtor. The term "Gross Revenues" shall not include: (i) insurance loss proceeds or payments; (ii) any award or other payment made by any governmental unit or authority in conjunction with the exercise or any right of eminent domain or condemnation; (iii) any proceeds from any sale, refinancing, exchange, or other disposition of the Property; (iv) any payments made on account of any easements or access rights granted by Debtor which are not material to the operation of the Property; or (v) any capital contributions made to the Debtor by any Equity Holder.

2.42    <u>Insider</u>: Any Person described in section 101(31) of the Bankruptcy Code.

2.43    <u>Interests</u>: Any equity or ownership interest in the Debtor including all stock of any class in the Debtor.

2.44    <u>Lien</u>: Any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset.

2.45     Loan: That certain loan originally made to the Debtor, by National Bank of Kuwait, S.A.K.P. on May 23, 2018.

2.46     NBK: National Bank of Kuwait, S.A.K.P., New York Branch.

2.47     Net Cash Flow:  Net cash after payment of all expenses, secured debts, and plan payments.

2.48     Net Proceeds of Sale or Refinancing: The gross proceeds received from the sale or refinancing of the Property, less the customary and reasonable costs incurred by the Reorganized Debtor to third parties to consummate the sale or refinancing of the Property, including, without limitation, real estate brokerage commissions, origination and discount points, accounting and legal fees, title company charges, and survey fees.

2.49     Objection: Includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

2.50     Objection Deadline: Such date, if any, after the Effective Date as may be fixed by the Bankruptcy Court for the filing of objections to Claims.

2.51     Person: An individual, corporation, association, joint stock company, joint venture, trust, unincorporated organization, governmental unit, agency, or other subdivision thereof, or any other entity.

2.52     Petition Date: December 5, 2023, the date upon which the Debtor filed its Voluntary Petition seeking relief under Chapter 11 of the Bankruptcy Code.

2.53     Plan: This Plan of Reorganization and all addenda, exhibits, schedules, and other attachments hereto, as amended, modified, restated, supplemented, or altered in whole or in part from time to time.

2.54     Pre-Petition Loan Documents: All documents that evidence or relate to the Loan.

2.55     Priority Claim: Any Claim entitled to priority under Sections 507(a)(2) through (6) inclusive of the Bankruptcy Code.

2.56     Priority Tax Claim: A Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

2.57     Professional: Those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.58    <u>Professional Compensation and Reimbursement Claim</u>: A Claim of a Professional for compensation and reimbursement of costs and expenses for services rendered after the Filing Date and prior to and including the Effective Date, including for substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code.

2.59    <u>Property</u>: That certain real property located at 2425 West Loop South, Houston, Texas 77027.

2.60    <u>Proof of Claim</u>: A written claim or form filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3003.

2.61    <u>Pro Rata Share</u>: The proportion that the amount an Allowed Claim (not yet paid) bears to the aggregate amount of all Allowed Claims (not yet paid) with respect to any specific Class, including Contested Claims, but not including Disallowed Claims as calculated on the Initial Distribution Date or Subsequent Distribution Date, as applicable.

2.62    <u>Reorganized Debtor</u>: The holder of the equity after the Effective Date. On the Effective Date, the equity of the Debtor will be canceled and reissued to the Reorganized Debtor, which may be the same entity or any other entity designated by the current Equity Interest Holders.

2.63    <u>Schedules</u>: The Schedules and Statement of Financial Affairs filed by the Debtor in this Bankruptcy Case, as the same may have been or may hereafter be amended, supplemented, modified, or restated in whole or in part.

2.64    <u>Secured Claim</u>: A Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or the Reorganized Debtor and the Holder of such Claim. The amount of any Claim that exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

2.65    <u>Secured Creditor</u>: A Creditor holding a Secured Claim.

2.66    <u>Secured Tax Claim</u>: Any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due, to the extent such Claim constitutes a Secured Claim.

2.67    <u>Tax Claim</u>: Any Claim for or relating to any type or form of taxes, whether assessed by the United States of America, the IRS or any Taxing Authority, including without limitation property, ad valorem, excise, sales, fuel, income or franchise taxes, and whether the tax is assessed against the Debtor as taxpayers or as holders of trust fund taxes.

2.68    Taxing Authority: Any federal, state, or local governmental unit having jurisdiction as to Debtor or its property and authority to assess, levy, and collect taxes.

2.69    Unsecured Claim: A Claim other than an Administrative Expense, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

2.70    Unsecured Creditor: A Creditor holding an Unsecured Claims.

In addition to the foregoing definitions, any term used in this Plan that is defined in the Bankruptcy Code, including section 101 thereof, shall have the meaning ascribed to such term in the Bankruptcy Code wherever used in this Plan, except to the extent that such term is otherwise defined in this Plan or the meaning ascribed to such term in the Bankruptcy Code would contradict or be inconsistent with the use of such term in this Plan.

**B.    Interpretation.** Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to, the Plan as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of interpretation set forth in Bankruptcy Code section 102 shall apply to the Plan.

**C.    Other Terms.** The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in Bankruptcy Code section 102(1).

**D.    Exhibits.** All Exhibits to the Plan are incorporated into the Plan by this reference and shall be deemed to be a part of the Plan is if set forth in full herein. Holders of Claims and Interests may obtain a copy of the Exhibits to this Plan, once filed, by a written request sent to the following address: Baker & Associates, 950 Echo Lane, Ste 300, Houston, Texas 77024, Attn:  Reese W. Baker, Fax 713-869-9100, email:  courtdocs@bakerassociates.net and to Stephen W. Sather, Barron & Newburger, P.C., 7320 N. MoPac Expwy., Suite 400, Austin, TX 78731, Fax: 512-479-0310, email: ssather@bn-lawyers.com/

### ARTICLE III.
### GENERAL TERMS AND CONDITIONS

This Plan shall be subject to the following general terms and conditions:

3.1.    Securities Laws: Any Distributions to a Creditor pursuant to this Plan, or any retention of any property or interest pursuant to this Plan, which may be deemed to be a "security" subject to any applicable laws, rules, or regulations governing the issuance or distribution thereof shall be exempt from registration in accordance with the provisions of Section 1145 of the Bankruptcy Code to the extent permitted thereunder.

3.2.    Time for Filing Claims: All claimants (except for Creditors whose Claims were scheduled as undisputed, liquidated, and non-contingent in the Schedules) shall be required to file

a Proof of Claim prior to the Bar Date in order to participate in any Distribution made under this Plan or to have such Claim allowed by the Bankruptcy Court. Any Claim asserted pursuant to Section 507(a)(1) other than Claims made pursuant to Section 330 of the Bankruptcy Code, shall be filed within ten (10) days prior to the first date scheduled by the Bankruptcy Court for commencement of the hearing to be held on the Confirmation of the Plan.

     3.3.   <u>Amendments and Modifications</u>: This Plan may be amended, modified, supplemented, restated, or altered in whole or in part upon request, motion, or application of the Debtor at any time prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Bankruptcy Code if the Court finds and concludes that any such amendment, modification, supplement, restatement, or other alteration does not materially and adversely affect any Creditor or any Claim.

**ARTICLE IV.**
**<u>EXECUTION OF THE PLAN</u>**

     4.1   <u>Funding</u>: The funds used for the repayment of Claims or other Distributions to be made under the Plan will come from the income generated from the Property, the new equity contribution, plus any other available funds or property that the Reorganized Debtor may otherwise possess on or after the Effective Date, including, without limitation, any such funds or property which may be provided through additional capital contributions, and the proceeds of any sale, refinancing, or other disposition of the Debtor's Assets.

     4.2   <u>Disputed Claims or Interests</u>: Notwithstanding any other provision of this Plan, any Claim or Interest which is disputed, unliquidated, or contingent as of any date on which a Distribution is to be made shall not participate in or otherwise receive any such Distribution until a Final Order has been entered allowing such Claim or Interest.

**ARTICLE V.**
**<u>TREATMENT OF ADMINISTRATIVE EXPENSES</u>**

     5.1   <u>Administrative Expenses.</u>  All Administrative Expense Claims against the Debtor entitled to priority status pursuant to Bankruptcy Code section 507(a)(2) shall be treated as follows:

    a)  <u>Time for Filing Administrative Expense Claims</u>**.** The Holder of any Administrative Expense Claim, including an Administrative Expense Claim for any liability incurred in the ordinary course of business of the Debtor, but not including any Professional Fee Claim, must file with the Bankruptcy Court and serve on the Reorganized Debtor and its counsel an application seeking the Allowance of such Administrative Expense Claim within thirty (30) days after the Effective Date. Failure to timely and properly file an application as required herein shall result in such Administrative Expense Claim being forever barred and discharged.

    b)  <u>Time for Filing Professional Fee Claims</u>. All Professionals or other persons or entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) and 1103 for services

rendered before the Effective Date including, without limitation, any compensation requested by any Professional or any other person or entity for making a substantial contribution in this Bankruptcy Case, shall file and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses within thirty (30) days after the Effective Date. Any professional fees and reimbursable expenses incurred by the Reorganized Debtor on or after the Effective Date may be paid without application to the Bankruptcy Court.

c) <u>Allowance of Administrative Expenses</u>. An Administrative Expense Claim with respect to which an application has been properly filed as provided for herein shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days after the filing and service of the application. If an objection is filed within such thirty (30) day period, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by a Final Order of the Bankruptcy Court. An Administrative Expense Claim that is (i) a Professional Fee Claim with respect to which an application has been properly filed in accordance with this Plan, or (ii) sought by a person or entity for making a substantial contribution in this Bankruptcy Case, with respect to which an appropriate application has been properly filed in accordance with this plan, shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order of the Bankruptcy Court.

d) <u>Payment of Allowed Administrative Expenses</u>. Each Holder of an Allowed Administrative Expense Claim against the Debtor shall receive, at the Reorganized Debtor's option: (i) payment in full in Cash on account of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim is Allowed; or (ii) the amount of such holder's Allowed Administrative Expense Claim in accordance with the ordinary business terms of such expense or cost, or (iii) such other treatment as may be agreed to in writing by such Holder and the Reorganized Debtor or as ordered by the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Reorganized Debtor is authorized to pay in the ordinary course of business any Administrative Expense Claim representing a liability incurred in the ordinary course of business by the Debtor.

5.2    <u>United States Trustee's Fees</u>. All outstanding fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) shall be paid in full by the Reorganized Debtor on the Effective Date and thereafter as the same may become due.

**ARTICLE VI.**
**<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

For purposes of this Plan, the Claims of Creditors and the Interests of Equity Holders are divided into the following Classes:

6.1    Class 1 Claims: Certain Priority Claims. Allowed Claims entitled to priority treatment pursuant to Bankruptcy Code sections 507(a)(1), (a)(4), (a)(5), (a)(6), (a)(7), (a)(9), and (a)(10).

6.2    Class 2 Claim: Secured and/or Priority Claim(s) of Taxing Authorities. The Allowed Secured Claims of Taxing Authorities or Allowed Claims of Taxing Authorities that are entitled to priority treatment under Bankruptcy Code sections 507(a)(8).

6.3    Class 3 Claim:  Secured Claim for Assigned Tax Liens claimed by National Bank of Kuwait and Ali Choudhri.

6.4    Class 4 Claims: Secured Claim of Caz Creek II, LLC.  The Allowed Secured Claims of Caz Creek II, LLC.

6.5    Class 5 Claims: Secured Claim of National Bank of Kuwait.  The Secured Claim of National Bank of Kuwait other than for assigned tax liens.

6.6    Class 6 Claim: Allowed Claim of 2425 WL, LLC.  The Allowed  Claim of 2425 WL, LLC.

6.7    Class 7 Claim: Unsecured Claim of National Bank of Kuwait, S.A.K.P., New York Branch. The Allowed Unsecured Claim of National Bank of Kuwait, S.A.K.P.., New York Branch.

6.8    Class 8: Holders of General Unsecured Claims. Allowed Unsecured Claims other than those contained in Classes 6 and 7.

6.9    Class 9: Equity Interest Holders. The Allowed Interests of the Equity Interest Holders.

## ARTICLE VII.
## IMPAIRMENT OF CLASSES

All Classes are impaired by the Plan, as such impairment is determined and defined in Section 1124 of the Bankruptcy Code except for Class 1..

## ARTICLE VIII.
## TREATMENT OF CLAIMS AND INTERESTS

The concept of the Plan is that the Debtor and 2425 WL, LLC will implement a compromise with National Bank of Kuwait where the Bank will receive a total payment of

$26,038,490.58, third party creditors will be paid in full and 2425 WL, LLC will receive assignment of certain claims owned by the estate in satisfaction of its claim. Upon Confirmation, the holders of Claims or Interests in the Classes of Creditors and Equity Holders established by this Plan shall receive the following treatment in full satisfaction of their respective Claims or Interests:

8.1     Class 1 Claims: Certain Priority Claims. Except as provided herein, Allowed Administrative and Priority Claims entitled to priority treatment pursuant to Section 507(a)(1), (a)(6), (a)(7), (a)(9), and (a)(10) of the Bankruptcy Code shall receive, at the Reorganized Debtor's option: (i) payment in full in cash on account of such Priority Claim without interest when such Claim is Allowed; (ii) the amount of such holder's Allowed Claim paid in twelve equal monthly payments, with the first payment due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date; (iii) the amount of such holder's Allowed Claim in accordance with the ordinary business terms of such expense or cost; or (iv) such other treatment as may be agreed to in writing by such priority Creditor and the Reorganized Debtor or as ordered by the Bankruptcy Court.  Claims of the Chapter 11 Trustee and professionals employed by the Chapter 11 Trustee (whose employment was approved by the court) shall be paid in full after approval of the fees and expenses by the court.

8.2     Class 2 Claim: Secured or Priority Claim(s) of Taxing Authorities. The Class 2 claims shall be paid, together with interest arising under applicable non-bankruptcy law from the Petition Date to the date of payment within 120 days after the Effective Date.

Post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.

Class 2 Claims are impaired by the Plan.

8.3     Class 3: Assigned Tax Claims claimed by  Bank of Kuwait, S.A.K.P., New York Branch and Ali Choudhri.   Both the Bank of Kuwait and Ali Choudhri have filed claims with respect to certain assigned tax claims. The Bank's claim is Claim No.13-1. Mr. Choudhri's claim is Claim No. 21-1. In the event that National Bank of Kuwait receives its required payments under this Plan, the assigned tax lien claims represented by the Bank's Claim No. 13-1 shall be deemed to be irrevocably assigned and conveyed to Ali Choudhri. The Debtor shall pay the Allowed amount of such claim within thirty (30) days after such claim is reassigned to Mr. Choudhri.

Class 3 is impaired.

8.4     Class 4 Claim: Secured Claims of Caz Creek Holdings II, LLC. The Allowed Secured Claim of Caz Creek shall be Allowed in the amount of approximately $879,098 and shall be paid 120 days after the Effective Date with interest at the non-default contract rate of 10.95%.

The written agreements by and between Caz Creek and the Debtor will remain the same, except to the extent that the terms therein are modified by this Plan, and such agreements will be deemed to be modified to comport with this Plan.

All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be deaccelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to Caz Creek, provided, however, that Caz Creek shall be entitled to charge, collect, and receive late charges and other amounts provided by the written agreements between the Debtor and Caz Creek in the event of the Debtor's failure to timely make a payment to Caz Creek on the Allowed Secured Claims under this Plan after Confirmation.

Class 4 Claims are Impaired by the Plan.

8.5    Class 5: Secured Claim of National Bank of Kuwait, S.A.K.P., New York Branch.

The Allowed Secured Claim of NBK will be determined by the value of NBK's interest in the Collateral securing such Allowed Claim, which value will be determined by agreement of the parties or by the Bankruptcy Court following a valuation proceeding in accordance with the Bankruptcy Code.  NBK has valued the Property for purposes of this plan at $18,600,000. This value will control unless the Court determines that a different value should be used. As such, and because the respective taxing authorities and tax lenders hold a higher priority lien on the properties, the Debtor believes that NBK's Allowed Secured Claim will be an amount equal to the difference between the value of the Property less the outstanding property taxes and senior debt owed with respect to the Property.  The ad valorem taxing authorities or their assignees have filed claims for $6,$6,455,683.92.  Thus, unless the Court determines otherwise, the Secured Claim of NBK will be $12,144,316.08.  The Debtor therefore believes that NBK's claim is undersecured and that NBK will have a deficiency claim against the Debtor's Estate, which amount will be included and treated as a Class 7  unsecured claim under the Plan.

The Class 5 Allowed Secured Claim of NBK in the amount of approximately $12,144,316.08 shall be paid with post-confirmation interest at the non-default contract rate within 30 days after the Effective Date.

All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be deaccelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to NBK, provided, however, that NBK shall be entitled to charge, collect, and receive late charges and other amounts provided by the written agreements between the Debtor and NBK in the event of the Debtor's failure to timely make a payment to NBK on its Allowed Secured Claim under this Plan after Confirmation.

Class 5 Claims are Impaired by the Plan.

8.5    Class 6: Allowed Claim of 2425 WL, LLC. Except as provided herein, the Allowed Secured Claim of 2425 WL, LLC, will be determined by the value of 2425 WL LLC's interest in the Collateral securing such Allowed Claim, which value will be determined by agreement of the parties or by the Bankruptcy Court following a valuation proceeding in accordance with the

Bankruptcy Code.  2425 WL, LLC has sought equitable subordination against the National Bank of Kuwait. As a compromise and for purposes of this Plan only, 2425 WL, LLC agrees to dismiss such claims and recognize the lien priority of National Bank of Kuwait. 2425 WL, LLC reserves the right to continue to challenge the Bank's lien position if this Plan is not confirmed.  NBK has valued the Property for purposes of this plan at $18,600,000. This amount shall control unless the Court finds that a different value should be used.  As such, and because the respective taxing authorities and tax lenders hold a higher priority lien on the Property, the Debtor believes that 2425 WL, LLC's' Allowed Secured Claim will be fully unsecured. The Allowed Claim of 2425 WL, LLC shall be satisfied by assigning all of the Estate's claims and causes of action other than Released Claims to 2425 WL, LLC upon the Effective Date.

Class 6 Claims are Impaired by the Plan.

8.7    Class 7:  Allowed Unsecured Claim of National Bank of Kuwait, S.A.K.P., New York Branch.  Class 7 shall consist of the Allowed Unsecured Claim of National Bank of Kuwait, S.A.K.P., New York Branch.

Class 7 shall receive a payment which, when added to the amount paid to National Bank of Kuwait, S.A.K.P. on account of its secured claim, will equal $26,038,490.58.  Any amounts paid by the Debtor or any party related to the Debtor subsequent to the Petition Date but prior to the Effective Date shall be credited to such payment. Such amount shall be paid within 30 days after the Effective Date. This amount is being paid as a compromise and settlement. In the event that the Plan is not confirmed, Debtor and 2425 WL, LLC reserve the right to dispute the claim of National Bank of Kuwait.

Class 7 is impaired.

8.8    Class 8: General Unsecured Claims.

The Reorganized Debtor will pay a total of 100% of the Allowed Claims of unsecured creditors other than National Bank of Kuwait, S.A.K.P. New York Branch and 2425 WL, LLC. Such payment shall be made within 120 days after the Effective Date. The Debtor reserves the right to dispute the claim of any creditor unless expressly stated in this plan.

Class 8 Claims are impaired by the Plan.

8.9    Class 9: Equity Interest Holders. The Class 9 Allowed Interests of the Equity Interest Holders shall be cancelled upon the Effective Date. New Equity shall be issued as provided herein.

Class 9 Interests are impaired by the Plan and are deemed to reject the Plan.

**ARTICLE IX.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

9.1     <u>Classes Entitled to Vote</u>. Each impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

9.2     <u>Acceptance by Impaired Classes of Claims</u>. An impaired Class of Claims shall have accepted this Plan if:

       a.     the Holders (other than any Holder designated pursuant to Bankruptcy Code section 1126(e)) of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan; and

       b.     the Holders (other than any Holder designated pursuant to Bankruptcy Code section 1126(e)) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

9.3     <u>Cramdown</u>. The Debtor requests Confirmation of this Plan under Bankruptcy Code section 1129(b). The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification, or for any other reason in its discretion.

**ARTICLE X.**
**MEANS OF IMPLEMENTATION**

10.1     <u>Conditions Precedent to Effective Date</u>. The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following condition(s) shall have been satisfied or waived in the Debtor's sole and absolute discretion: the Confirmation Order, in a form and substance reasonably acceptable to the Debtor, shall have become a Final Order and shall, among other things (i) confirm this Plan, (ii) find that the Debtor has acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e), and (iii) find that the Debtor is authorized to take all actions and consummate all transactions contemplated under this Plan.

10.2     <u>Distribution Agent</u>. The Distribution Agent shall be the Reorganized Debtor. The Distribution Agent shall place all available funds into the various accounts established pursuant to this Plan and is authorized to make Plan distributions from such accounts. The Distribution Agent will serve until all distributions required under the Plan have been made, whereupon the Distribution Account will be closed, and no further actions are required to consummate the Plan. Appointment of the Distribution Agent herein is in a manner consistent with the interests of the holders of Claims and Interests and public policy. All documents, writings, authorizations or matters requiring the consent of, execution by, or signature of the Debtor or Reorganized Debtor may be consented to, executed by, or signed by the Distribution Agent, whose signature, execution, or consent is hereby deemed authorized, enforceable and binding without further order of the Court. A certified copy of the Confirmation Order may be filed in any deed record, government or

public record keeping place as authentication of the signature and authority of the Distribution Agent to consent to, execute, or sign any writing or document of the Debtor and Reorganized Debtor herein.

10.3    Vesting of Assets. As of the Effective Date, all Assets owned by the Debtor shall be transferred to, and vested in, the Reorganized Debtor free and clear of all Liens, Claims, Interests, and any and all other rights, title, or interest, except as expressly set forth in this Plan.

10.4    New Equity.  On or before the Effective Date, QB Loop Property, LP or its designee shall make a capital contribution to the Debtor in the amount of $10 million. In return for such capital contribution, QB Loop Property, LP or its designee shall be the sole member of the Debtor holding 100% of the membership interest. QB Loop Property, LP shall designate one or more managers to manage the business and legal affairs of the Debtor. QB Loop Property, LP shall designate such manager or managers in writing at least seven (7) days prior to the Confirmation Hearing. In the alternative, if QB Loop Property, LP fails or is unable to pay, 2425 WL, LLC shall make the required capital contribution with exit financing provided by Legalist.

10.5    Release of Claims. Confirmation of this Plan shall constitute a mutual release and extinguishment of all claims by and between the following parties other than obligations under this Plan:  (i) the Chapter 11 Trustee and his professionals, (ii) the NBK Parties, and (iii) the Debtor-Related Parties.  NBK Parties shall mean National Bank of Kuwait, S.A.K.P., New York Branch and its officers, agents, affiliates, attorneys and employees. Debtor-Related Parties shall mean the Debtor, QB Loop Property, LP, 2425 WL, LLC, Ali Choudhri and any entity owned or controlled by Ali Choudhri together with their officers, agents, affiliates, attorneys and employees. These shall be known as the Released Claims. The parties to the Released Claims shall dismiss any adversary proceedings or lawsuits by or between them and shall execute global and mutual releases of any and all claims (other than obligations provided under the Plan), whether known or unknown, contingent, unliquidated, in tort or in contract up through and including the Effective Date in form acceptable to National Bank of Kuwait, S.A.K.P., New York Branch.

10.6    Amendments to Corporate Documents. As of the Effective Date, the Debtor's organizational documents shall be deemed amended and revised to the extent necessary to comply with and reflect the transactions contemplated by the Plan.

10.7    Assumption of Allowed Claims. As of the Effective Date, the Reorganized Debtor shall assume the liability for and obligation to perform and make all Distributions or payments on account of all Allowed Claims in the manner provided in this Plan.

10.8    Attorneys' Fees and Costs. To the extent any holder of a Secured Claim asserts a right to attorneys' fees and costs pursuant to section 506(b) of the Bankruptcy Code, unless otherwise agreed between the Debtor or Reorganized Debtor and such Secured Creditor, the allowance of such fees and expenses shall be handled as set forth in this paragraph. Within twenty (20) days after the Effective Date, the Secured Creditor shall file an application with the Bankruptcy Court for allowance of such fees and expenses. Within twenty (20) days after such application is filed, the Reorganized Debtor may file any objections thereto, and the Secured Creditor shall file any response within ten (10) days thereafter. If the Secured Creditor and the

Reorganized Debtor are unable to reach agreement, the matter shall then be submitted to the Bankruptcy Court for determination on no less than twenty (20) days-notice of the hearing.

10.9    Post-Petition Taxes and Insurance. Funds for payment of post-petition property taxes and insurance will be held by the Reorganized Debtor and deposited as part of the Debtor's monthly operating expenses into the applicable accounts established pursuant to this Plan and will be paid when such taxes and/or insurance become due and payable.

**ARTICLE XI.**
**PROCEDURES FOR THE TREATMENT OF**
**CONTESTED AND CONTINGENT CLAIMS**

11.1    Objection Deadline. All objections to Claims shall be served and filed by the Objection Deadline, if one is set by the Bankruptcy Court, although nothing contained herein shall require the fixing of an Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal Proofs of Claim. If an Objection Deadline is fixed, it may be extended one or more times by the Bankruptcy Court pursuant to a motion filed on or before the then applicable Objection Deadline. Any Contested Claims may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement of a Contested Claim after the Effective Date.

11.2    Objections to Claims.  The Debtor intends to file objections to Sonder, LLC, Rodney Drinnon, Naissance Galleria, LLC, Lloyd Kelley and possibly others.

11.3    Responsibility for Objecting to Claims. The Reorganized Debtor shall have the sole right and responsibility for objecting to the allowance of Claims following the Effective Date.

11.4    Distributions on Account of Contested Claims. No distribution shall be made on account of a Contested Claim prior to the time such Claim is Allowed, if at all. Until such time as a contingent Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to Bankruptcy Code section 502(e).

11.5    No Waiver of Right to Object. Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Reorganized Debtor's right to object to any Claim.

11.6    Bankruptcy Code section 505. All Tax Claims shall remain subject to Bankruptcy Code section 505. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to Bankruptcy Code section 505 as to any Tax Claim. The Reorganized Debtor may seek relief pursuant to Bankruptcy Code section 505 as a part of, and in conjunction with, any objection to any Tax Claim.

11.7    <u>Allowance of Contested Claims</u>. This section shall apply to all Contested Claims. Nothing contained in the Plan, Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the Holder of a Contested Claim must file a timely Proof of Claim, and the Claim of any such Contested Creditor who is required to file a Proof of Claim and fails to do so shall be discharged and shall receive no distribution under the Plan. The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The Holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim. Exclusive venue for any proceeding to determine any Contested Claim shall be in the Bankruptcy Court or a court of competent jurisdiction located in Harris County, Texas. Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any proceeding to determine any Contested Claim. The Reorganized Debtor shall retain all rights of removal to federal court as to any proceeding to determine any Contested Claim.

11.8    <u>Allowance of Certain Claims</u>. All Contested Claims shall be liquidated and determined as follows:

a.    <u>Application of Adversary Proceeding Rules</u>. Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any objection to a Contested Claim shall be treated as a contested matter subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection. The Reorganized Debtor, however, may at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

b.    <u>Scheduling Order</u>. Unless otherwise ordered by the Bankruptcy Court, or if an objection to any Claim is pursued as an adversary proceeding, a scheduling order shall be entered as to each objection to a Claim. The Reorganized Debtor shall tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order. The scheduling order may include (i) a discovery cut-off date; (ii) deadlines to amend pleadings; (iii) deadlines for designation of and objections to experts; (iv) deadlines to exchange witness and exhibit lists and for objections to the same and (v) such other matters as may be appropriate.  The provisions on a scheduling order are not intended to supersede the local bankruptcy rules in the Southern District of Texas on claim objections.

11.9    <u>Substantial Consummation</u>. All distributions of any kind made to any Creditor after Substantial Consummation, and any and all other actions taken under this Plan after Substantial Consummation, shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

11.10   <u>Retention of Claims and Causes of Action</u>. Except to the extent explicitly released in this Plan, all claims, causes of action, rights of setoff, and other legal and equitable defenses of the Debtor and its Estate other than the Released Claims, and any claims arising under any of the Debtor's real property leases, are preserved for the benefit of the Reorganized Debtor. No Person

may rely on the absence of a specific reference in the Plan or the Disclosure Statement as to any claim or cause of action against them as an indication that the Reorganized Debtor will not pursue such claim or cause of action. Such claims and causes of action include, without limitation: (i) all rights, claims, and causes of action pursuant to Bankruptcy Code sections 502, 510, 544, 545, and 546; all preference claims under Bankruptcy Code section 547; all fraudulent transfer claims under Bankruptcy Code section 548 and applicable state law; all claims relating to post-petition transactions under Bankruptcy Code section 549; and all claims recoverable under Bankruptcy Code section 550; (ii) all rights of offset or recoupment and all counterclaims against any Claimant; (iii) the claims and causes of action listed in the Disclosure Statement; and (iv) the claims and causes of action listed in the Schedules. For the avoidance of doubt, the Debtor's claims against NBK are preserved as currently pled or as may be amended or supplemented.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Until this Chapter 11 case is closed, the Court shall retain jurisdiction of all matters arising under, or related to, these proceedings, including, but not limited to:

(a)    ensuring that the purpose and intent of the Plan are carried out;

(b)    consideration of any modification of the Plan under Section 1127 of the Code or modification of the Plan after substantial consummation, as defined in Section 1101(2) of the Code;

(c)    hearing and determining all claims, controversies, suits, and disputes against the Debtor;

(d)    hearing, determining, and enforcing all claims or causes of action which may exist on behalf of the Debtor or its estate;

(e)    hearing and determining all controversies, suits, and disputes that may arise in connection with the interpretation of the Plan;

(f)    hearing and determining all objections to claims, controversies, suits, and disputes that may be pending as of or initiated after the Effective Date;

(g)    enforcing and interpreting, by injunction or otherwise, the terms and conditions of the Plan;

(h)    entering any Order, including injunctions, necessary to enforce the rights, titles, interests, and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions as may be necessary or helpful to carry out the purposes and intent of the Plan;

(i)    entering an Order concluding and terminating this Chapter 11 case;

(j)    correcting or curing any defect, omission, inconsistency, conflict, or error in the Plan or Confirmation Order as may be necessary or helpful to carry out the purposes and intent of the Plan;

(k)     considering and acting on any matters consistent with the Plan as may be provided in the Confirmation Order; and

(l)     considering the rejection of Executory Contracts that have not been rejected prior to Confirmation and adjudicating any claims for damages with respect to such rejection.

## ARTICLE XIII.
## EXECUTORY CONTRACTS

This Plan shall constitute a motion to reject all Executory Contracts and Leases other than (1) the real property leases between the Debtor and its tenants, (2) management agreement between the Debtor and Jetall, and (3) contracts between the Debtor and services for the Property such as utilities, internet, and similar services.  All real property leases and maintenance contracts are assumed.

## ARTICLE XIV.
## EFFECT OF CONFIRMATION

14.1     Effect of Confirmation; Discharge. Confirmation of the Plan shall discharge the Debtor from all claims that arose before the Confirmation Date. After Confirmation, the rights and remedies of any Creditor or Equity Holder shall be governed and limited by the Plan, which shall be binding upon the Debtor, its estate, the Reorganized Debtor, Creditors, Equity Holders, and all other parties in interest, regardless of whether any such Person voted to accept the Plan, and the Pre-Petition Loan Documents shall be deemed to have been amended to comport with the treatment being accorded to NBK herein. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall be waived and of no effect.

14.2     Injunction. From and after the Effective Date, all holders of Claims shall be and are hereby permanently restrained and enjoined from: (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor or the Assets; (b) enforcing, attaching, collecting, or recovering on account of any Claim by any manner or means, any judgment, award, decree, or order against the Reorganized Debtor or the Assets except pursuant to and in accordance with this Plan; (c) creating, perfecting, or enforcing any encumbrance of any kind against either the Assets or the Reorganized Debtor; (d) asserting any control over, interest, rights or title in or to any of the Assets except as provided in this Plan; (e) asserting any setoff, or recoupment of any kind against any obligation due the Reorganized Debtor as assignees, except upon leave of the Bankruptcy Court or except as authorized by section 553 of the Bankruptcy Code; and (f) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that this injunction shall not bar any Creditor from asserting any right granted pursuant to this Plan; provided, further, however, that each holder of a Contested Claim shall be entitled to enforce its rights under the Plan, including seeking Allowance of such Contested Claim pursuant to the Plan.

14.3    <u>Automatic Stay</u>. The stay imposed pursuant to Bankruptcy Code section 362(a) shall remain in full force and effect, except as modified or conditioned by prior Order of the Bankruptcy Court, until the Effective Date. Immediately upon the Effective Date, the stay imposed pursuant to Bankruptcy Code section 362(a) shall terminate, and the discharge and injunction provisions of sections 13.1 and 13.2 hereof shall become immediately effective.

## ARTICLE XV.
## <u>SUBSTANTIAL CONSUMMATION</u>

For purposes of this Plan, substantial consummation shall occur upon the commencement of distributions under the Plan.

## ARTICLE XVI.
## <u>MISCELLANEOUS PROVISIONS</u>

16.1    <u>Corporate Allocations</u>. Any and all adjustments and reallocations among the Equity Holders of the Debtor resulting from the Confirmation of this Plan shall be deemed effective as of the Effective Date for corporate and tax purposes.

16.2    <u>No Double Recovery</u>. No Creditor or other party in interest shall be entitled to a double recovery on account of any Allowed Claim or Interest.

16.3    <u>Compliance with Tax Requirements</u>. The Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities and any distributions hereunder shall be subject to such requirements, if any.

16.4    <u>Revocation and Withdrawal of Plan</u>. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.

16.5    Headings: Headings and captions are used in this Plan for convenience and reference only and such headings and captions shall not constitute a part of the Plan for any other purpose or to otherwise affect the meaning or interpretation of any term, provision, or condition of the Plan.

16.6    Entire Agreement: The Plan sets forth the entire agreement and understanding among the parties relating to the subject matter of the Plan and the satisfaction of all Claims and interests provided in the Plan. No party shall be bound by any terms, conditions, definitions, warranties, restrictions, understandings, agreements, representations, obligations, or other requirements except for those expressly provided in the Plan, which shall supersede all prior discussions, documents, instruments, understandings, and agreements regarding the subject of the Plan.

16.7    <u>Orders in aid of Confirmation</u>: Pursuant to Sections 105, 1141, 1142, and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of Confirmation of this Plan.

DATED: April 29, 2024.

Respectfully submitted,

**GALLERIA 2425 OWNER, LLC**


By:  */s/ Ali Choudhri*
       Ali Choudhri
       **MANAGER OF GALLERIA 2425 OWNER, LLC**


   **2425 WL, LLC**

      By:  */s/Ali Choudhri*
      Ali Choudhri
      Manager of 2425 WL, LLC