United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 29, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 (JPN) |
| Debtor. | ) |  |
|  | ) |  |

**PROPOSED ORDER (I) APPROVING PROCEDURES FOR
THE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS,
CLAIMS AND ENCUMBRANCES; (II) SCHEDULING AN AUCTION;
(III) AUTHORIZING ENTRY INTO THE STALKING HORSE
PURCHASE AGREEMENT; (IV) APPROVING ASSUMPTION
AND ASSIGNMENT PROCEDURES; (V) APPROVING FORM OF
NOTICE; AND (VI) GRANTING RELATED RELIEF (ECF No. 188)**

Upon the motion of the Trustee for entry of an order pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 for an Order (i) approving procedures for the sale of property free and clear of all liens, claims and encumbrances; (B) scheduling an auction; (C) approving the form of purchase agreement and stalking horse bidder; (D) approving assumption and assignment procedures; (E) approving form of notice; and (F) granting related relief dated April 5, 2024 [ECF No. 188] (the "Motion");[1] the objections by 2425 WL, LLC (ECF No. 242), the objection by the debtor (ECF No. 244) and the Omnibus Reply by the Chapter 11 Trustee (ECF No. 247), and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this Motion being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of, and the opportunity for a hearing on, the Motion having been given; and based on the pleadings and testimony of the parties in previous hearings; this Court finds that the time provided for marketing is sufficient, that this order represents the business judgment of the Trustee, the relief requested in the Motion is in the best interests of the estate, its creditors and other parties in interest, and this

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Bid Procedures, as applicable.

Court having determined that the legal and factual bases set forth in the Motion, the pleadings and prior testimony establish just cause for the relief granted herein; and upon the record herein, and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A.     **Bid Procedures.**   The Trustee has articulated good and sufficient reasons for authorizing and approving the Bid Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on the Property.

B.     **Stalking Horse Purchase Agreement.** (ECF No. 197) The Trustee has demonstrated and proven that entry into the Stalking Horse Agreement is in the best interests of the estate and its creditors and that performance under the Stalking Horse Agreement represents a prudent exercise of the Trustee's business judgment. The Bid Procedures and the Stalking Horse Agreement were negotiated at arm's length and in good faith by the Trustee and the Stalking Horse Bidder, without collusion. Furthermore, the Stalking Horse Agreement will serve as a minimum or floor bid on which bidders may rely. The Stalking Horse Bidder has provided a material benefit to the estate and its creditors by increasing the likelihood that, given the circumstances, the best possible price for the Property will be received. The Stalking Horse Agreement represents the highest or otherwise best offer that the estate has received to date to purchase the Property. The process for selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and in the best interests of the estate. Accordingly, the Trustee's entry into the Stalking Horse Agreement is reasonable and appropriate.

C.     **Stalking Horse Bidder.** The Stalking Horse Bidder is not an "insider" of the Debtor, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder

and the Debtor. The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" in connection with the Stalking Horse Bidder's negotiation of the Bid Procedures and entry into the Stalking Horse Agreement.

D. **Sale Notice.** The Sale Notice Package reasonably provides all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bid Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the asset for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement; (vi) representations describing the Sale of the Property as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds subject to customary exceptions for permitted liens; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities disclosed in the Stalking Horse Agreement; and (viii) notice of the proposed assumption and assignment of the Assigned Contracts (or to another Successful Bidder arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

E. **Auction**. The Auction, if held, is necessary to determine whether any entity other than the Stalking Horse Bidder is willing to enter into a definitive agreement on terms and conditions more favorable than the Stalking Horse Agreement.

F. **Assumption & Assignment Procedures**. The Assumption & Assignment Procedures are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their executory contracts, any cure amounts herein), and the Assumption & Assignment Procedures (as defined herein).

**IT IS HEREBY ORDERED THAT**:

1.        The Motion is **GRANTED** to the extent set forth in this Order.

2.        **Bid Deadline.**  June 14, 2024, at 5:00 p.m. (prevailing Central Time) is the deadline by which all Qualified Bids must be **actually received** by the Notice Parties specified in the Bid Procedures.

3.        **Auction.**  June 18, 2024, at 1:00 p.m. (prevailing Central Time) is the date and time the Auction, if one is needed, will be held in accordance with the Bid Procedures.  The Trustee will send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two (2) business days before such Auction.

4.        **Notice of Successful Bidder**. Upon conclusion of the Auction, the Trustee shall file a Notice of Successful Bidder.

5.        **Sale Objection Deadline**. Objections to the Sale, if any, must be made on or before July 1, 2024 (the "Sale Objection Deadline") and served on the following parties so as to be *actually* received by or before the Sale Objection Deadline: (i) the Chapter 11 Trustee, Christopher R. Murray, Jones Murray LLP, 602 Sawyer Street, Suite 400, Houston, TX 77007, email, chris@jmbllp.com;  (ii) counsel to the Chapter 11 Trustee, R.J. Shannon and Kyung S. Lee, Shannon & Lee LLP, 2100 Travis Street, Suite 1525, Houston, TX 77002, email: klee@shannonleellp.com, rshannon@shannonleellp.com; (iii) counsel to NBK, Charles C. Conrad, Andrew M. Troop and Patrick E. Fitzmaurice, Pillsbury Winthrop Shaw Pittman LLP, 609 Main Street Suite 2000, Houston, TX 77002, email, charles.conrad@pillsburylaw.com; patrick.fitzmaurice@pillsburylaw.com;  andrew.troop@pillsburylaw.com;  (iv)  Office  of  the United States Trustee for Region 7, Houston Division, 515 Rusk Street, Suite 3516, Houston, Texas, 77002 (Attn. Jane S. Whitworth), email: jana.whitworth@usdoj.gov; and (v) counsel to the

Debtor, Reese W. Baker, 950 Echo Lane, Suite 300, Houston, Texas 77024, email: Reese.Baker@bakerassociates.net.

6.  **Sale Hearing**. **July 8, 2024, at 9:00 a.m.** (prevailing Central Time), is the date and time for the hearing for the Court to consider the Successful Bid, if needed.

7.  **Sale Closing**. Closing of the Sale shall occur promptly after Court approval of the Sale pursuant to the terms of any agreement or the Sale Order.

8.  **Free and Clear of Any and All Claims and Interests**. Except as provided in any agreement with respect to the sale approved by the Court, upon entry of the applicable sale order, all of the estate's right, title and interest in and to the Property shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon to the maximum extent permitted by section 363 of the Bankruptcy Code, with such interests to attach to the net proceeds of the sale with the same validity and priority as such interests applied against the Property purchased pursuant to these procedures.

9.  **No Other Bids for Acquired Assets**. If the Stalking Horse Bidder's bid, as reflected in the Stalking Horse Agreement, is the only Qualified Bid with respect to the Property that is received by the Trustee by the Bid Deadline, no Auction shall be conducted for the Property and the Stalking Horse Bidder will be the Successful Bidder for the Acquired Assets. In such circumstances, the Trustee shall notify the Court and promptly seek approval of the Stalking Horse Agreement.

10.  The Bid Procedures in the form attached to this Order as Exhibit 1 are **APPROVED**, and the Trustee is authorized to take any and all actions necessary and/or appropriate to implement the Bid Procedures.

11.  The Stalking Horse Agreement in the form attached to this Order as Exhibit 2 is

**APPROVED**, and the Trustee is authorized to enter into the Stalking Horse Agreement with the Stalking Horse Bidder. The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the bid of the Stalking Horse Bidder contemplated by the Stalking Horse Agreement (the "Stalking Horse Bid") shall be deemed a Qualified Bid.

12.     The Assumption & Assignment Procedures in the form attached to this Order as Exhibit 3 are **APPROVED**, and the Trustee is authorized to take any and all actions necessary and/or appropriate to implement the Assumption & Assignment Procedures.

13.     The Sale Notice in the form attached to this Order as Exhibit 4 is **APPROVED**.

14.     Five (5) days after entry of this Order, the Trustee shall publish the Notice (or an abbreviated version thereof) in a local Houston publication of general interest as the Trustee determines will promote the marketing and sale of the Property.  Nothing in this Order limits the Trustee's ability to publish the Notice (or abbreviated version thereof) in any other publication.

15.     The Trustee shall serve the Sale Notice, the Bid Procedures Order and the Bid Procedures upon the following parties and their counsel, if known: (a) NBK; (b) the Office of the United States Trustee for the Southern District of Texas; (c) Naissance Galleria, LLC; (c) the Debtor; (d) any parties known or reasonably believed to have expressed an interest in the Property; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.

16.     The Trustee shall serve the Assumption & Assignment Procedures on all creditors and interest holders, and executory contract counterparties, identified in the Debtor's Schedules.

17.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

18.     To the extent the provisions of any Exhibits to this Order are inconsistent with this Order, this Order shall control.

19.     This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the Bid Procedures and this Order.

Signed: April 29, 2024

Jeffrey P. Norman
United States Bankruptcy Judge

### Exhibit 1

**Bid Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GALLERIA 2425 Owner, LLC** | § | **Case No. 23-34815 (JPN)** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |
| | § | |

## BID PROCEDURES

On December 5, 2023, the above-captioned debtor (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

On April 29, 2024, the Bankruptcy Court entered an order [ECF No. ___] (the "Bid Procedures Order") approving, among other things, these bidding procedures (the "Bid Procedures"), and authorizing the Trustee to enter into an asset purchase agreement (the "Stalking Horse Agreement") with National Bank of Kuwait, S.A.K.P., New York Branch ("NBK" or "Stalking Horse Bidder") or another successful bidder or bidders (each, a "Successful Bidder") for the sale of certain property located at 2425 West Loop South, Houston, Texas 77027 (the "Property"), pursuant to which, among other things, the Stalking Horse Bidder has committed to in the form of a credit bid: (a) purchase, acquire, and take assignment and delivery of, free and clear of all liens, claims, encumbrances, and other interests (except as otherwise provided in the Stalking Horse Agreement), certain assets associated with the Property as set forth in the Stalking Horse Agreement, and (b) assume certain liabilities associated with the Debtor as set forth in the Stalking Horse Agreement (collectively, the "Stalking Horse Bid").

The Bid Procedures set forth the process by which the Trustee is authorized to solicit the highest or otherwise best bid (each, a "Bid") for the sale of the Property, culminating in an auction (the "Auction") if competing bids are received. The sale (the "Sale") will be implemented through a chapter 11 plan or a standalone sale order that ensures that the Sale is incorporated in a chapter 11 plan.

Copies of the Bid Procedures Order are available upon request from the undersigned counsel for the Trustee.

    a. **Potential Bidder.** For purposes of the Bid Procedures, a "Potential Bidder" shall refer to any person or entity interested in submitting a bid.

    b. **Asset to Be Sold.** The Trustee is offering the Property for Sale. The estate shall retain all rights and title to assets that are not subject to a bid approved by the Bankruptcy Court at the Sale Hearing (as defined herein). The asset to be sold

hereunder shall be the "Property" as that term is defined in the Stalking Horse Agreement.

c. **Broker.** The Trustee shall retain a commercial real estate broker (the "<u>Broker</u>") to market the Property and shall seek approval of such retention from the Bankruptcy Court.  The fees or expenses of the Broker shall be paid by the as set forth in the Sale Order or a plan of reorganization.

d. **The Bidding Process.** The Trustee shall: (i) determine whether any person is a Potential Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence regarding the Property; (iii) receive offers from Qualified Bidders (as defined herein); and (iv) negotiate any offer made to purchase the Property, together or separately (collectively, the "<u>Bidding Process</u>"). The Trustee shall not be obligated to furnish any information relating to the Property to any person who is not a Potential Bidder.

e. **Access to Due Diligence.** Any Potential Bidder that executes the confidentiality agreement attached as <u>Schedule 1</u> to the Bid Procedures provides sufficient evidence, as reasonably determined by the Trustee, that the Potential Bidder intends to obtain due diligence and participate in the Sale consistent with these Bid Procedures will be eligible to receive due diligence materials and access to certain non-public information regarding the Property. The Trustee will provide each Potential Bidder due diligence materials regarding the Property. Due diligence also may include presentations as may be scheduled by the Trustee, onsite inspections and such other matters which a Potential Bidder may request and as to which the Trustee may agree in his reasonable discretion, provided that all such information shall be made available to each Potential Bidder on an equal basis.  The Trustee is not obligated to furnish any information relating to the Property to any person except to Potential Bidders. Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Property provided by anyone other than the Trustee.

f. **Bid Requirements.** To be eligible to participate in the Auction, a Potential Bidder must deliver to the Trustee, a written, irrevocable offer that must be determined by the Trustee to satisfy each of the following conditions:

   i. **Purpose**. The Potential Bidder offers to purchase the Property upon the terms and conditions set forth in an executed Stalking Horse Agreement, together with all exhibits, schedules and ancillary agreements related thereto, and as amended and in effect.

   ii. **Purchase Price.** Each Bid must clearly set forth the purchase price to be paid for the Property (the "<u>Purchase Price</u>") and must indicate the source of cash consideration checks, and cash equivalents, as applicable, including funding commitments, and confirm that such consideration is not subject to any contingencies.

iii. **Bid Deposit.** Each Bid must be accompanied by a deposit into escrow with the Trustee of an amount equal to ten percent (10%) of the cash purchase price to be paid in accordance with their bid (the "Good Faith Deposit").

iv. **Committed Financing.** If a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the Sale transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Trustee.

v. **Good Faith Offer.** Each Bid must constitute a good faith, bona fide, irrevocable offer to purchase the Property set forth in such Bid.

vi. **Marked Agreement.** Each Bid must be accompanied by clean and duly executed transaction documents including, a draft purchase agreement, the form of which will be provided to any Potential Bidder prior to the Bid Deadline, including the exhibits and schedules related thereto, and any related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the Sale, along with redlines of such agreement marked against the form purchase agreement provided.

vii. **Contracts and Leases.** Each Bid must identify each executory contract and unexpired lease, the assumption and assignment of which is a condition to Closing a Sale; *provided* that if the Trustee identifies any additional executory contracts or unexpired leases after the Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted.

viii. **No Contingencies.** A Bid must clearly state that it is not subject to any financing conditions or contingencies.

ix. **Binding and Irrevocable.** A Potential Bidder's Bid is irrevocable unless and until the Trustee accepts a higher Bid and such Potential Bidder is not selected as the Back-Up Bidder (defined hereinafter). If a Bid is chosen as the Back-Up Bid, it must remain irrevocable until the Trustee and the Successful Bidder consummate the Sale.

x. **Adequate Assurance Information.** Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Trustee that such Potential Bidder (a) has the financial wherewithal and ability to consummate the sale of the Property (the "Closing"), and (b) can provide adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. The Bid must also identify a contact

person that parties may contact to obtain additional Adequate Assurance Information.

xi.   **Identity & Corporate Authority**. Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtor, any known, potential, prospective bidder, or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtor.

xii.   **Authorization.** Each Bid must contain evidence that the Potential Bidder has obtained authorization from its board of directors (or a comparable governing body reasonably acceptable to the Trustee as to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

xiii.   **No Fees**. Each Potential Bidder will bear its own costs and expenses (including legal fees) in connection with the proposed transaction. By submitting its Bid, each Potential Bidder agrees to waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code. Each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement.

xiv.   **Adherence to Bid Procedures**. By submitting its Bid, each Potential Bidder agrees to (a) abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction and (b) serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid.

xv.   **As Is, Where Is.** Each Bid must include a written acknowledgement and representation that the Potential Bidder relied upon its own independent review, investigation and/or inspection of any documents and/or Asset in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Property, or the completeness of any information provided in connection with the Property, the Bidding Process or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder, in the applicable asset purchase agreement.

xvi.   **Good Faith Purchaser.** The Successful Bidder will have to confirm that the Sale undertaken by the Successful Bidder and the Trustee is at arm's length, without collusion and in good faith within the meaning of Section

363(m) of the Bankruptcy Code, and the Successful Bidder is entitled to the protections of Section 363(m) of the Bankruptcy Code.

xvii. **Consent to Jurisdiction.** The Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Trustee's qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the Closing, as applicable.

xviii. **Submission and Acceptance of Qualified Bids.** Each Bid must be submitted to R.J. Shannon and Kyung S. Lee, Shannon & Lee LLP, 2100 Travis Street, Suite 1525, Houston, TX 77002, email: chris@jmbllp.com, klee@shannonleellp.com, rshannon@shannonleellp.com; and Christopher R. Murray, Jones Murray LLP, 602 Sawyer Street, Suite 400, Houston, TX 77007 (collectively, the <u>Notice Party</u>") on **June 14, 2024 at 5:00 p.m. (prevailing Central Time)** (the "<u>Bid Deadline</u>").

Bids fulfilling all of the preceding requirements, as determined by the Trustee, in his sole discretion, will be deemed a "<u>Qualified Bid</u>," and such bidder shall constitute a "<u>Qualified Bidder</u>." Any amendments or other modifications to any Bid must be delivered to the Notice Party.

g. **Auction.** If the Trustee receives more than one Qualified Bid prior to the Bid Deadline, the Trustee shall conduct an auction (the "<u>Auction</u>") on **June 14, 2024, at 1:00 p.m. (prevailing Central Time)** or such later time or other place as the Trustee shall notify all Qualified Bidders who have submitted Qualified Bids.

Two (2) business days prior to the Auction, the Trustee shall provide each Qualified Bidder participating in the Auction an indication as to which Qualified Bid is the highest or otherwise best Qualified Bid received before the Bid Deadline (such highest or otherwise best Qualified Bid – the "<u>Baseline Bid</u>")

The Trustee may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bid Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Trustee determines is relevant, the Trustee may conduct the Auction in the manner it determines will achieve the maximum value for the Property.

At the conclusion of each round of bidding at the Auction, the Trustee shall announce the then highest or otherwise best offer for the Property and the basis for such determination. Prior to concluding the Auction, the Trustee shall: (i) review each Qualified Bid on the basis of financial and contractual terms and

the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (ii) identify and announce to all attending the Auction, the highest or otherwise best offer for the Property and any second highest offer (the "Successful Bid") and the basis for such determination.

The Trustee and the Successful Bidder shall be required to execute an asset purchase agreement for the Successful Bid at the conclusion of the Auction or immediately thereafter, and the Trustee shall take all actions required under the Bankruptcy Code and Federal and Local Rules of Bankruptcy Procedure. The Successful Bid shall be presented for court approval at the Sale Hearing.

h.  **Break-Up Fee & Expense Reimbursement.** The Stalking Horse Bidder shall not be entitled to a break-up fee in connection with the Stalking Horse Bid.

i.  **Minimum Overbids Bids.** Any overbid, after and above the Baseline Bid shall be made in increments valued at not less than $250,000 (or other amount as shall be announced at the Auction by the Trustee) in cash or in cash equivalents, or other forms of consideration acceptable to the Trustee.

j.  **Acceptance and Approval of Successful Bid.** The Trustee shall accept Qualified Bids as described in Section (f) and the Qualified Bidder that submits the Successful Bid will be deemed a Successful Bidder.  The Successful Bid by the Successful Bidder shall be subject to approval by the Bankruptcy Court at the Sale Hearing.

k.  **Sale Hearing.** After the conclusion of the Auction, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") in which the Trustee will seek entry of an order (the "Sale Order"), among other things: (i) authorizing and approving the Sale to the Successful Bidder pursuant to the terms and conditions set forth in the asset purchase agreement submitted by the Successful Bidder; (iii) authorizing the assumption and assignment of certain executory contracts as designated by the Successful Bidder; and (iv) authorizing the consummation of the Sale to the Successful Bidder through a chapter 11 plan of liquidation to be filed by NBK or as otherwise ordered by the Court. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in court. Following the entry of the Sale Order, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid and the Trustee shall be authorized to effectuate such sale without further order of the Bankruptcy Court.

l.  **Return of Good Faith Deposit.** The Good Faith Deposit of the Successful Bidder will, upon consummation of the Successful Bid, become property of the estate and be credited towards the Purchase Price. If the Successful Bidder (or Back-Up Bidder, if applicable) fails to consummate the Successful Bid (or

Back-Up Bid, if applicable), then the Good Faith Deposit of such Successful Bidder (or Back-Up Bidder, if applicable) will be irrevocably forfeited to the estate and may be retained by the estate as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the estate.

m. **<u>Modifications.</u>** The Trustee may: (i) upon receipt of a Bid prior to the Bid Deadline that is not a Qualified Bid, allow the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction; (iii) reject at any time before announcing the Successful Bid at the Auction, any bid that is: (x) inadequate or insufficient; or (y) not in conformity with the Bankruptcy Code or the Bid Procedures.

n. **<u>Reservation of Rights</u>**. In addition to the rights set forth above, the Trustee may modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Sale if, in his reasonable judgment, such modifications would be in the best interests of the estate and promote an open and fair sale process.

## <u>Schedule 1</u>

**Form of Confidentiality Agreement**

## CONFIDENTIALITY AGREEMENT

This confidentiality agreement ("Agreement") dated as of [DATE], 2024 (the "Effective Date") by and between Christopher R. Murray in his capacity as the Chapter 11 Trustee of Galleria 2424 Owner LLC ("Discloser") and [RECIPIENT] ("Recipient").

**WHEREAS**, on December 5, 2023, Galleria 2425 Owner LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and is a debtor in *In re Galleria 2425 Owner LLC*, Case No. 23-34815 (JPN) (the "Chapter 11 Case"), pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

**WHEREAS**, Recipient is interested in entering into a possible transaction (the "Possible Transaction") for the purchase of the Property of Discloser.

**WHEREAS**, Discloser intends to furnish Recipient and its Representatives (defined below) with certain Confidential Information (defined below) to facilitate Recipient's due diligence in connection with the Possible Transaction.

**WHEREAS**, as a condition to the delivery of the Confidential Information, Discloser desires that Recipient and its Representatives maintain the confidentiality of the Confidential Information and use the same only for the purposes contemplated by this Agreement.

**NOW**, **THEREFORE**, in consideration for and as a condition to Discloser's furnishing Confidential Information, the parties agree as follows:

### A. Confidential Information

As used in this Agreement, the term "Confidential Information" means all information regarding the Discloser or its assets or businesses that is furnished to the Recipient, directly or indirectly by the Discloser or its members, partners, directors, officers, employees, agents, financing sources, and advisors (including attorneys, accountants, consultants, bankers, and financial advisors) ("Representatives") regardless of whether specifically identified as "confidential" and regardless of whatever form or medium such information may take during or after its communication and shall include, but not be limited to, information regarding the Discloser's financial data, operations, business records, programs, products, methods, techniques, processes, patterns, plans, drawings, specifications, devices, prototypes, samples, demonstrations, intellectual property, patents, patent applications and inventions not yet the subject of an issued patent or published patent application, scientific and technical information, engineering data, laboratory research data, business policies, business practices, projections, financial and economic models, economic data, personally identifiable information about the individuals in the organization, applicants for positions within the organization, information of persons whom Discloser may someday like to have as part of its organization, competitive intelligence data, information about those persons and entities with whom the Discloser interacts (including employees, customers, potential customers, investors, joint venturers, vendors, and suppliers), potential transactions, and all materials containing or reflecting such information.

Notwithstanding the foregoing, "Confidential Information" shall not include information (a) in the public domain at or subsequent to the time such portion was communicated to the Recipient by the Discloser (other than as a result of violation of this Agreement), (b) in the Recipient's possession and to the Recipient's knowledge free of any obligation of confidence at or subsequent to the time such portion was communicated to the Recipient by the Discloser, or (c) independently developed or acquired by the Recipient or any of its Representatives without any violation of this Agreement.

To the extent that any Confidential Information may include materials subject to attorney-client privilege, the Discloser is not waiving and will not be deemed to have waived or diminished its attorney work-product protections, attorney-client privileges, or similar protections and privileges as a result of disclosing any Confidential Information (including Confidential Information related to pending or threatened litigation) to the Recipient, regardless of whether the Discloser has asserted or is or may be entitled to assert such privileges and protections. The parties (a) share a common legal and commercial interest in all such Confidential Information that is subject to such privileges and protections; (b) are or may become joint defendants in proceedings to which such Confidential Information covered by such protections and privileges relates; and (c) intend that such privileges and protections remain intact should either party become subject to any actual or threatened proceeding to which such Confidential Information covered by such protections and privileges relates. In furtherance of the foregoing, the Recipient shall not claim or contend, in proceedings involving either party, that the Discloser waived its attorney work-product protections, attorney-client privileges, or similar protections and privileges with respect to any information, documents, or other material not disclosed to the Recipient due to the Discloser disclosing Confidential Information (including Confidential Information related to pending or threatened litigation) to the Recipient.

**B. Nondisclosure and Non-Use Obligation**

Recipient agrees to maintain the confidentiality of the Confidential Information and shall not, directly or indirectly, during the term of this Agreement: (a) transfer or disclose orally, in writing, or electronically any Confidential Information to any third party, except for its internal use or use by its Representatives in connection with making a bid for a Possible Transaction; or (b) use any Confidential Information for any purpose other than for the purpose of evaluating the interests of Recipient in making a bid for a Possible Transaction.

**C. Disclosure to Representatives**

It is understood that the Recipient may disclose Confidential Information to only those of Recipient's Representatives who (a) require such material for the purpose of evaluating the Possible Transaction and (b) are informed by Recipient of the confidential nature of the Confidential Information and the obligations of this Agreement and agrees to abide by such terms Recipient further agrees that Recipient and Recipient's Representatives will not use any of the Confidential Information for any reason or purpose other than to evaluate and to negotiate the Possible Transaction. Recipient also agrees to be responsible for enforcing this Agreement as to Recipient's Representatives and to take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of the Confidential

Information by any of the Recipient's Representatives (including all actions that the Recipient would take to protect its own trade secrets and confidential information) except as permitted by this Agreement.

### D.  Legal Proceedings

In the event that Recipient or any of its Representatives is required by any law, regulation, interrogatories, requests for information or documents, subpoenas, civil investigative demand, or similar process to disclose any Confidential Information, to the extent reasonably practicable, such party will provide Discloser with prompt written notice of such request or requirement so that Discloser may seek an appropriate protective order or take other appropriate action (and if Discloser seeks such an order or takes such action, such party will provide such cooperation as Discloser shall reasonably request). If Recipient or any of its Representatives are nonetheless required to disclose Confidential Information, such party may disclose only that portion of the Confidential Information that is legally required to be disclosed and will exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information.

### E.  Return or Destruction of Confidential Information

Recipient agrees that Discloser retains all right, title and interest in the Confidential Information and that at Discloser's option it shall either return to Discloser or destroy all Confidential Information, and all copies thereof, within ten (10) calendar days of the written request therefor by Discloser; provided, however, that Recipient may retain any copies, extracts, or other reproductions of such Confidential Information in whole or in part (a) to the extent necessary to comply with legal or regulatory recordkeeping requirements of general application, or (b) in accordance with customary recordkeeping policies of Recipient (including any internal policy or system relating to the archiving or backup storage of electronic data).

### F.  No Obligation to Negotiate or Enter a Transaction

Discloser reserves the right, in its sole discretion, to reject any and all proposals made by Recipient or Recipient's Representatives with regard to a Possible Transaction and to terminate discussions and negotiations with Recipient and Recipient's Representatives at any time. Neither Recipient nor Discloser shall have rights or obligations of any kind whatsoever with respect to a Possible Transaction by virtue of this Agreement other than for the matters specifically agreed to herein. Without limiting the preceding sentences, nothing in this Agreement requires either Recipient or Discloser to enter into a Possible Transaction or to negotiate such transaction for any specified period of time.

### G.  Termination

The obligations set forth in this Agreement shall survive for a period of time from the Effective Date to a date that is the earlier of (a) the completion of the Possible Transaction between Disclosure and Recipient, and (b) six months from the Effective Date.

### H.  No Representations or Warranties

Discloser retains the right to determine, in its sole discretion, what information, properties, and personnel it wishes to make available to Recipient, and neither Discloser nor its Representatives make any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information, except pursuant to representations and warranties that may be made in a definitive agreement for a Possible Transaction, if any, between the parties. Recipient agrees that that it is not entitled to rely on the completeness or accuracy of the Confidential Information and that it will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to a Possible Transaction, subject to such limitations and restrictions as may be contained therein.

### I.  Remedies

Recipient acknowledges and agrees that Discloser may suffer irreparable injury not compensable by money damages in the event of breach of the provisions of this Agreement and therefore may not have an adequate remedy at law. Accordingly, Discloser shall be entitled to injunctive relief to prevent or curtail any such breach, threatened or actual, without necessity of posting a bond. The foregoing shall be in addition and without prejudice to such other rights as Discloser may have at law or in equity.

### J.  Miscellaneous

**Modification.** This Agreement may not be amended or modified except by an instrument in writing signed by or on behalf of the parties hereto.

**Waiver.** Neither the failure nor any delay by any party in exercising any right, power, or privilege under this letter agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

**Severability.** The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. If any of the covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope, or otherwise, then the parties contemplate that the court making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

**Construction.** The headings of sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the

parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

**Execution.** This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for any purpose whatsoever.

**Jurisdiction.** Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement, and each of the Parties consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein. If the Chapter 11 Case has been fully and finally dismissed and/or the Bankruptcy Court declines jurisdiction, the Parties agree to and hereby unconditionally and irrevocably submit to the exclusive jurisdiction of the State of Texas in the County of Harris, or in the United States District Court for the Southern District of Texas, and each of the Parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

**Governing Law.** This letter agreement will be governed by the laws of the State of Texas without regard to conflicts-of-laws principles.

[*Remainder of Page Intentionally Left Blank*]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

[DISCLOSER'S NAME]

By: _____
Name:
Title:

[RECIPIENT'S NAME]

By: _____
Name:
Title:

## **Exhibit 2**

**Purchase Agreement**

[To Be  Supplemented]

## **Exhibit 3**

**Assumption & Assignment Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GALLERIA 2425 Owner, LLC** | § | **Case No. 23-34815 (JPN)** |
| | § | |
| Debtor. | § | **Chapter 11** |
| | § | |
| | § | |

## NOTICE OF ASSUMPTION AND ASSIGNMENT PROCEDURES

Below are the assumption and assignment procedures (the "Assumption & Assignment Procedures") contemplated in the Trustee's motion for, among other things, entry of an order (a) authorizing the entry into an asset purchase agreement (the "Stalking Horse Agreement"), (b) authorizing and approving the bidding procedures (the "Bid Procedures") in connection with the proposed auction (the "Auction") for the Sale of the Property to a Successful Bidder, [1] (c) scheduling dates and deadlines in connection with approval of the Sale, and (d) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

    a.  On or before **June 7, 2024**, the Trustee shall file a schedule of cure obligations (the "Contract & Cure Schedule") listing all of the Debtor's leases and executory contracts that may be assumed and assigned (the "Assigned Contracts") and the amount, if any, that the Trustee contends is the amount needed to cure any defaults with respect to such Assigned Contracts (the "Cure Amounts").

    b.  Upon filing, a copy of the Contract & Cure Schedule and these Assumption & Assignment Procedures will be served on each of the counterparties to the Assigned Contracts listed on the Contract & Cure Schedule.

    c.  The Trustee shall amend the Contract & Cure Schedule promptly after the completion of the Auction to update the information contained therein with respect to the Successful Bid, including but not limited to adding additional leases and executory contracts (which shall then be deemed Assigned Contracts) and corresponding cure amounts (which shall be deemed Cure Amounts) and shall serve an amended Contract & Cure Schedule on each of the counterparties to the Assigned Contracts listed thereon.

    d.  The Successful Bidder approved by the Bankruptcy Court as submitting the highest or otherwise best bid for purchase of the Property (the "Approved Purchaser"), at any time prior to closing on the sale of the Property, may identify executory contracts and leases to be (a) added to the Contract and Cure Schedule

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures.

(which contracts shall then be deemed Assigned Contracts) and the corresponding cure amounts (which shall be deemed Cure Amounts) and (b) deleted from the list of Assigned Contracts (which shall then cease to be Assigned Contracts). The Trustee shall give notice (the "Supplemental Notice") to counterparties to executory contracts and leases added to or deleted from the Contract and Cure Schedule.

e. Any objections ("Assignment Objections") to the assumption and assignment of any Assigned Contract, including, but not limited to, objections relating to adequate assurance of future performance or to the cure amount set forth in the Contract & Cure Schedule must be filed with the Bankruptcy Court and served upon the Notice Party on or before **July 1, 2024, at 5:00 p.m. (prevailing Central Time)** (the "Assignment Objection Deadline").

f. Any counterparty failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from (i) objecting to the Cure Amount set forth on the Contract & Cure Schedule with respect to its Assigned Contract; (ii) seeking additional amounts arising under its Assigned Contract prior to the Closing from the Successful Bidder; and (iii) objecting to the assumption and assignment of its Assigned Contract to the Successful Bidder.

g. Any Assignment Objections required to be filed prior to the date of the Sale Hearing and not consensually resolved prior to the Sale Hearing shall be heard at the Sale Hearing with any related Cure Amounts or adequate assurance of future performance being fixed by the Bankruptcy Court. All other objections to the proposed assumption and assignment of the Assigned Contracts will be heard at the Sale Hearing; *provided*, *however*, all Assignment Objections for which the Assignment Objection Deadline is after the date of the Sale Hearing and which objection is not filed prior to the Sale Hearing, shall be heard on a date to be determined by the Trustee and the Approved Purchaser, subject to the availability of the Bankruptcy Court.

h. Except as may otherwise be agreed to by all parties to an Assigned Contract, on or before the Closing, the cure of any defaults under Assigned Contracts necessary to permit assumption and assignment thereof shall be by (i) payment of the undisputed Cure Amount, and/or (ii) establishment of a reserve with respect to any disputed Cure Amount. The party responsible for paying Cure Amounts shall be as set forth in the Stalking Horse Agreement or other agreement between the Successful Bidder and the Seller.

**<u>Exhibit 4</u>**

**Form Sale Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GALLERIA 2425 Owner, LLC** | § | **Case No. 23-34815 (JPN)** |
| | § | |
| Debtor. | § | **Chapter 11** |
| | § | |
| | § | |

**NOTICE OF BID DEADLINE AND AUCTION IN
CONNECTION WITH THE SALE OF PROPERTY**

**PLEASE TAKE NOTICE** that on December 5, 2023, the above-captioned debtor (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

**PLEASE TAKE NOTICE** that on April [●], 2024, in connection with the proposed sale (the "Sale") of certain property located at 2425 West Loop South, Houston, Texas 77027 (the "Property") to National Bank of Kuwait, S.A.K.P., New York Branch ("NBK" or the "Stalking Horse Bidder") or another successful bidder or bidders (each, a "Successful Bidder") at an auction, the Trustee filed a motion [ECF No. [●]] (the "Motion") seeking, among other things, entry of an order (a) authorizing entry into an asset purchase agreement (the "Stalking Horse Agreement"), (b) authorizing and approving the bidding procedures (the "Bid Procedures") in connection with the proposed auction (the "Auction") for the Sale of the Property to a Successful Bidder, (c) scheduling dates and deadlines in connection with approval of the Sale, and (d) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (the "Assignment & Assumption Procedures" together with the Motion, Stalking Horse Agreement, Bid Procedures, the "Pleadings").

**PLEASE TAKE FURTHER NOTICE** that, by order dated [●], 2024, the Bankruptcy Court entered an order approving the Bid Procedures [ECF No. [●]] (the "Bid Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that, all interested parties are invited to submit a Qualified Bid[1] and to make offers to purchase the Property in accordance with the terms of the Bid Procedures and the Bid Procedures Order. The deadline to submit bids (the "Bid Deadline") is June 14, 2024, at 5:00 p.m. (prevailing Central Time).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Order, the Trustee intends to conduct an Auction for the sale of the Property on June 18, 2024, at 1:00 p.m.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures.

(prevailing Central Time), or at such other place and time as the Trustee shall notify all Qualified Bidders who have submitted Qualified Bids.

**PLEASE TAKE FURTHER NOTICE**, **that the Sale Hearing to consider approval of the sale of the Property to the Successful Bidder at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f) will be held before the Honorable Jeffrey P. Norman, United States Bankruptcy Judge for the Southern District of Texas, Houston Division, Courtroom 403, 515 Rusk, Houston, Texas 77002, on [●], 2024 at [●] :00 [●].m**.

**PLEASE TAKE FURTHER NOTICE** that, this Notice is subject to the complete terms and conditions of the Motion, the Bid Procedures, and the Bid Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties in interest to review such documents in their entirety. Copies of the Pleadings may be obtained by written request to counsel to the Trustee R.J. Shannon and Kyung S. Lee, Shannon & Lee LLP, 2100 Travis Street, Suite 1525, Houston, TX 77002, email: klee@shannonleellp.com and rshannon@shannonleellp.com. In addition, copies of the Pleadings are available for a fee via PACER by visiting http://ecf.txsb.uscourts.gov, and are on file with the Bankruptcy Court and available for inspection during regular business hours at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of Texas, Bob Casey United States Courthouse, 515 Rusk, Houston, TX 77002.

DATED: [●], 2024

SHANNON & LEE LLP

/s/_____
Kyung S. Lee (TBA No. 12128400)
R. J. Shannon (TBA No. 24108062)
2100 Travis Street, STE 1525
Houston, TX 77002
Telephone: (713) 714-5770
klee@shannonleellp.com
rshannon@shannonleellp.com

*Counsel to the Chapter 11 Trustee*