**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | |
| | Case No. 23-34815 |
| **GALLERIA 2425 OWNER LLC,** | **Chapter 11** |
| Debtor. | |

## MOTION FOR ENTRY OF ORDER PROHIBITING CREDIT BIDDING BY NATIONAL BANK OF KUWAIT S.A.K.P., NEW YORK BRANCH PURUSANT TO 11 U.S.C. § 363(k)

> THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE JEFFREY P. NORMAN:

COME NOW 2425 WL, LLC and Ali Choudhri ("Choudhri"), creditors in the captioned case and files this *Motion for Entry of Order Prohibiting Credit Bidding by National Bank of Kuwait S.A.K.P., New York Branch* (the "Motion"), and would respectfully show the Court as follows:

## I.     <u>INTRODUCTION</u>

1.      Through this Motion, 2425 WL, LLC and Choudhri seek the entry of an order prohibiting the National Bank of Kuwait, S.A.K.P., New York Branch ("<u>NBK</u>") from credit bidding the amount of its purported secured claims pursuant to section 363(k) of the Bankruptcy Code. As explained below and as will be demonstrated at the hearing, substantial disputes exist regarding the extent, validity, and priority of the NBK Claim (defined below). These disputes are the subject of numerous lawsuits in the Bankruptcy Court and state court, a motion by 2425 WL, LLC for authorization to pursue estate claims, and multiple objections to the NBK Claim. As discussed below, because substantial *bona fide* disputes exist regarding the validity, priority, and extent of NBK's secured claim – ***including whether NBK possesses any claim or rights to the Debtor's property at all based on the loan, deed of trust, and tax liens*** – NBK should not be permitted to credit bid the NBK Claim in any auction or sale of the Debtor's property.

## II.     BACKGROUND

### A.    *The Bankruptcy Case*

2.      The debtor, 2425 Galleria Owner, LLC ("<u>Debtor</u>") commenced this chapter 11 case on December 5, 2023 (the "<u>Petition Date</u>").

3.      On January 31, 2024, the Court entered an order directing the appointment of a chapter 11 trustee to manage the Debtor's estate [ECF 99]. The chapter 11 trustee, Christopher R. Murray, was appointed on February 9, 2024 [ECF 117].

### B.    *The Bid Procedures Motion*

4.      On April 5, 2024, the Trustee filed the *Chapter 11 Trustee's Motion for Entry of an Order: (i) Approving Procedures for the Sale of Property Free and Clear of All Liens, Claims and Encumbrances; (ii) Scheduling an Auction; (iii) Authorizing Entry into the Stalking Horse*

*Purchase Agreement; (iv) Approving Assumption and Assignment Procedures; (v) Approving form of Notice; and (vi) Granting Related Relief* (the "<u>Bid Procedures Motion</u>") [ECF 188] seeking to sell substantially all of the Debtor's assets, including the property located at 2425 West Loop South, Houston, Texas 77027 (the "<u>Property</u>").

5.      On April 10, 2024, the Trustee filed a *Notice of Proposed Stalking Horse Agreement* (the "<u>Stalking Horse Agreement</u>") [ECF 197].  Subject to higher and better offers at an auction, the Stalking Horse Agreement provides that NBK will purchase the Property through a credit bid (i.e., an offset against the NBK Claim) in the amount of $18.6 million [ECF 197-1, Stalking Horse Agreement Art. III, § 1].

6.      The Court entered an order (the "<u>Bid Procedures Order</u>") [ECF 254] granting the Bid Procedures Motion on April 29, 2024.  The Bid Procedures approved the form of the Stalking Horse Agreement.  However, the Bid Procedures Order does not approve the sale of the Property to NBK, even if NBK is the only bidder for the Property.  Indeed, the deadline to object to the sale of the Property itself is not until July 1, 2024.  Instead, the Bid Procedures Order requires the Trustee to "promptly seek approval of the Stalking Horse Agreement" if NBK's stalking horse bid is the only qualified bid for the Property.  In other words, any sale of the Property to NBK based on a credit bid has yet to be presented to and approved by the Court.

**C.      *The NBK Claim***

7.      On April 9, 2024, NBK filed proof of claim No. 13 in the amount of $3,864,455.06 ("<u>POC 13</u>"), which is based on certain tax liens (the "<u>Tax Liens</u>") against the Property.  On April 9, 2024, NBK also filed proof of claim No. 14 in the amount of $67,157,854.15 ("<u>POC 14</u>"), which is based on a loan ("<u>Loan</u>") and a deed of trust ("<u>Deed of Trust</u>") against the Property.  POC 13 and POC 14 are hereinafter collectively referred to as the "<u>NBK Claim</u>."  Pursuant to the NBK

Claim, NBK asserts a secured claim in the aggregate amount of $71,018,309.21, which NBK contends is secured by a first-priority lien on the Property.

## III.      RELIEF REQUESTED

8.        Through this Motion, 2425 WL, LLC and Choudhri ("Movants") seek to prohibit NBK from credit bidding all or any portion of the NBK Claim in any auction or sale of the Property.  Specifically, Movants request the entry of a order (i) granting the Motion, (ii) prohibiting NBK from credit bidding all or any portion of the NBK Claim in any auction or sale of the Property, and (iii) granting Movants any such further and other relief to which they are justly entitled.  A copy of Movants' proposed order granting the relief requested in this Motion is attached hereto as **Exhibit C+**.

## IV.      BASIS FOR RELIEF

*A.      Substantial and Bona Fide Disputes Exist relating to the Extent, Validity, and Priority of the NBK Claim*

*(1)      The Choudhri Lawsuit*

9.        As an initial matter, a dispute exists between Choudhri and NBK regarding whether NBK currently has any ownership interest in the Property pursuant to the Loan and Deed of Trust.  Specifically, on May 15, 2024, Choudhri filed a Second Amended Original Petition and Jury Demand in Case No. 2024-27168 before the 129th Judicial District Court of Harris County (the "Choudhri Suit") (a copy of the Second Amended Petition is attached hereto as **Exhibit A** and incorporated herein by reference).  In the Choudhri Suit, Choudhri asserts that, on June 28, 2023, NBK offered to sell the Loan and the Deed of Trust securing the Property to Choudhri for $27 million less credits resulting in a net purchase price of $26,038,490.58.  The offer was never rescinded or withdrawn and therefore remained open to acceptance.  On April 28, 2024, Choudhri

unconditionally accepted the offer and tendered the $26,038,490.58 purchase price to NBK.  As a result, Choudhri and NBK have a binding contract for the purchase and sale of the Loan and Deed of Trust on the Property from NBK to Choudhri (the "2024 Contract").

10.     Through the Choudhri Suit, Choudhri asserts claims against NBK for e.g., breach of the 2024 Contract based on NBK's failure to effectuate the sale of the Loan and Deed of Trust, specific performance of the 2024 Contract, and related injunctive relief against NBK, including a temporary restraining order preventing NBK from exercising any rights pursuant to the Loan and Deed of Trust.   The Choudhri Suit raises substantial disputes relating to the NBK Claim, including whether NBK has any rights to the Property whatsoever pursuant to the Loan and Deed of Trust.

### (2)     The State Court Lawsuit

11.     NBK's ownership of the Tax Liens forming the basis of POC 13 is also in dispute in the Choudhri Suit.  In the Choudhri Suit, Choudhri seeks, e.g., a declaratory judgment that he is the rightful owner of the Tax Liens, entry of an order requiring NBK to execute any documents necessary to establish that fact as a matter of record, and damages based on NBK's wrongful conduct.

### (3)     The 2425 WL, LLC Louisiana World Exposition Motion

12.     On May 20, 2024, 2425 WL, LLC ("2425 WL") filed a *Motion for Entry of Order Authorizing the Debtor to Pursue Estate Claims against National Bank of Kuwait, S.A.K.P., New York Branch* (the "Motion for Authority") [ECF 352].

13.      In the Motion for Authority, 2425 WL seeks authorization from the Bankruptcy Court to pursue the estate's claims against NBK.  Such claims include claims against NBK for, e.g., breach of contract, tortious interference with contract, tortious interference with business relations, fraud/fraudulent inducement/lender liability, fraudulent conveyance, estoppel, business

disparagement, breach of duty of good faith and fair dealing, and unjust enrichment (collectively, the "Lender Liability Claims").[1]  Choudhri and 2425 WL believe that the damages incurred by the Debtor's estate as a result of NBK's wrongful conduct exceed, and may therefore completely offset, the amount of the NBK Claim.

### (4)    The 2425 WL Claim Objection

14.     On May 6, 2024, 2425 WL filed an amended objection to the NBK Claim (the "2425 WL Claim Objection") [ECF 284].  In the 2425 WL Claim Objection, 2425 WL objects to the NBK Claim for several reasons, including the following:  (i) the NBK Claim fails to state the value of the Property securing POC 14; (ii) disputes exist regarding the ownership of the Tax Liens as set forth in the State Court Lawsuit; and (iii) the Lender Liability Claims against NBK contained in the Draft Complaint (and the Prior Complaint) exceed the amount of the NBK Claim.

### B.    NBK Should Be Prohibited from Credit Bidding the NBK Claim

15.     Pursuant to the Stalking Horse Agreement, NBK intends to credit bid the amount of $18.6 million of the amount it contends is owed to NBK pursuant the NBK Claim.  If an auction occurs, NBK could potentially thereafter seek to credit bid up to the full amount of the NBK Claim. The proposed auction ("Auction") for the Property through the Bid Procedures Order is scheduled to occur on June 18, 2024.  As discussed above, however, substantial disputes exist regarding the NBK Claim – *including whether NBK has any rights to or interest in the Property at all* – based on the Loan, Deed of Trust, and Tax Liens.  These disputes are set forth in the Choudhri Suit, and the 2425 WL Objection.  It is extremely unlikely that the disputes between NBK, Choudhri, and

---

[1] These allegations also formed the basis of a separate adversary proceeding (Adv. Proc. No. 23-06009) filed by the Debtor, Naissance Galleria, LLC ("Naissance"), and Choudhri in the Debtor's prior bankruptcy case (Case No. 23-60036).  However, the complaint in that adversary proceeding (the "Prior Complaint") was never served.  If 2425 WL is authorized to pursue the estate claims, the prior adversary proceeding will be dismissed without prejudice and a new adversary proceeding will be filed by 2425 WL in this Court.

2425 WL relating to the NBK Claim can be resolved prior to the Auction.  Consequently, NBK

should be prohibited from making a credit bid for the Property based on the NBK Claim at the

Auction or in any sale of the Property.  This is particularly true here where it may ultimately be

determined that NBK has no rights whatsoever to the Property pursuant to the Loan, Deed of Trust,

and/or Tax Liens.

16.     Section 363(k) of the Bankruptcy Code provides as follows:

> At a sale under subsection (b) of this section of property that is
> subject to a lien that secures an ***allowed claim, unless the court for
> cause orders otherwise*** the holder of such claim may bid at such
> sale, and, if the holder of such claim purchases such property, such
> holder may offset such claim against the purchase price of such
> property.

11 U.S.C. § 363(k) (emphasis added).  Consequently, pursuant to section 363(k): "(i) a secured

creditor may 'credit bid' at a sale of estate property, i.e., offset its allowed claim against the

purchase price of property sold pursuant to Bankruptcy Code section 363(b), but (ii) [] the court

may deny a secured creditor the ability to do so for 'cause.'  ***Thus, a secured creditor's right to

credit bid is not absolute***."[2]  Indeed, where the extent or validity of a creditor's lien is genuinely

in dispute, the bankruptcy courts may prohibit credit biding entirely.[3]

---

[2] *In re Figueroa Mt. Brewing, LLC*, Case No. 9:20-bk-11208-MB, 2021 Bankr. LEXIS 1775, *14 (Bankr. C.D. Cal. July 2, 2021) (Unpublished) (emphasis added) (collecting cases, internal quotations omitted); *In re CS Mining, LLC*, 574 B.R. 259, 283 (Bankr. D. Utah 2017) (quoting *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 59 (Bankr. D. Del. 2014).

[3] *Ratcliff v. Rancher's Legacy Meat Co.*, Case No. 20-cv-834, 2020 U.S. Dist. LEXIS 127276, *13 (D. Minn. July 20, 2020); see also, e.g., *Flowers v. Sherman*, Case No. 3:18-cv-01139-S, 2018 U.S. Dist. LEXIS 248688, *4 (N.D. Tex. May 10, 2018) ("11 U.S.C. § 363(k) expressly allows the bankruptcy court discretion to deny a credit bid for cause."); *In re CS Mining, LLC*, 574 B.R. at 283 (finding that, because the right credit bid only applies to "the holder of a lien securing an *allowed* claim," the right to credit bid is not automatic when a bona fide dispute exists regarding the secured creditor's lien.); *In re L.L. Murphrey Co.*, Case No. 12-3837-8-JRL, 2013 Bankr. LEXIS 2318, *16 (Bankr. E.D.N.C. June 6, 2013) ("The language of section 363(k) allows a court, in its discretion, to abrogate a creditor's right to credit bid "for cause.").

17.     Cause to deny a secured creditor's ability to credit bid under section 363(k) is generally determined on a case-by-case basis.[4]  However, cause to deny credit bidding may be found if allowing credit bidding would "impede or delay a successful reorganization strategy, chill the bidding process, and reduce the overall benefits to the estate."[5]  Moreover, courts have found "cause" exists under section 363(k) to bar a creditor from credit bidding "when the creditor's lien is questioned or otherwise in dispute."[6]  This makes sense because "it would be unfair to the estate and its myriad stakeholders for a purportedly secured creditor to credit bid for assets and obtain an offset against the purchase price based on a secured claim that is later disallowed."[7]

18.     Finally, a party seeking to limit or deny a credit bid is not required to demonstrate that it is likely to succeed on its challenges.  "Instead, courts require a showing that a *sufficient* dispute exists regarding the lien forming the basis for a credit bid."[8]  Consequently, where a bona fide dispute regarding the extent, validity, and priority of a creditor's lien exists, courts deny creditors the ability to credit bid under section 363(k).[9]

---

[4] *In re CS Mining*, 574 B.R. at 283; *In re L.L. Murphrey Co.*, 2013 Bankr. LEXIS 2318 at *17.

[5] *Id.* at 283.

[6] *In re Figueroa Mt. Brewing, LLC*, 2021 Bankr. LEXIS 1775 at *22 (collecting cases; quotations omitted); *In re L.L. Murphrey Co.*, 2013 Bankr. LEXIS 2318 at *17-18 (same).
[7] *Id.* at *22-23.

[8] *Id.* at *23 (collecting cases).

[9] *Id.* at *18. 22-23 (denying credit bid under section 363(k) where debtor demonstrated that a sufficient dispute existed regarding the creditor's lien where the debtor asserted claims against the creditor based on the creditor's inequitable conduct, including conduct intending to enhance the creditor's ultimate objective of acquiring ownership of the debtor's assets); see also, e.g., *Flowers*, 2018 U.S. Dist. LEXIS 248688 at *4 (finding bankruptcy court did not abuse its discretion in denying party ability to credit bid where a bona fide dispute existed regarding the validity and extent of its claims against the debtor's estate); *In re Daufuskie Island Props., LLC*, 441 B.R. 60, 63 (Bankr. D.S.C. 2010) (denying credit bid under section 363(k) where, e.g., creditor's claim was disputed and parties had filed adversary proceedings to invalidate and/or equitably subordinate the asserted mortgage and claim); *Morgan Stanley Dean Witter Mortg. Capital, Inc. v. Alon USA LP (In re Akard Street Fuels, L.P.*, Case No. 3:01-cv-1927-D, 2001 U.S. Dist. LEXIS 1644, * (N.D. Tex. Dec. 5, 2001) (affirming bankruptcy court's decision to deny credit bidding in sale under section 363(k) where complex disputes existed regarding the challenged liens which would take time to resolve and party was capable of bidding cash at the auction and later recovering the cash if it proved its liens).

19.     Here, the Court should deny NBK the ability to credit bid the NBK Claim under section 363(k) because serious and substantial disputes exist relating to the validity NBK's lien. First, in the Choudhri Adversary, Choudhri asserts that he – and not NBK – owns and is entitled to enforce the Loan and Deed of Trust pursuant to the 2024 Contract.  Second, in the State Court Lawsuit, Choudhri contends that he – and not NBK – is the rightful owner of the Tax Liens.  Third, the Debtor's estate possesses substantial Lender Liability Claims against NBK, the value of which may offset some or all of the amount of the NBK Claim.  2425 WL has requested authority to pursue those claims on behalf of the estate.  Finally, the foregoing disputes form the basis of Choudhri's and 2425 WL's objections to the NBK Claim.  These substantial, complex disputes relating to the NBK Claim cannot be resolved prior to the Auction on June 18, 2024, which is only weeks away.  Moreover, the resolution of these disputes, however, may result in a determination that either (i) NBK does not own and has no rights pursuant to the Loan, Deed of Trust, or Tax Liens, or (ii) the amount of the NBK Claim is completely offset by the amount of the Debtor's Lender Liability Claims against NBK.  In addition, allowing NBK to credit bid a disputed $71 million claim could have the effect of chilling other interested parties from bidding on the Property.  As a result, the Court should prohibit NBK from credit bidding the NBK Claim at the Auction or any sale of the Property.

WHEREFORE, Movants respectfully requests that the Court enter an order:  (i) granting the Motion, (ii) prohibiting NBK from credit bidding all or any portion of the NBK Claim in any auction or sale of the Property, and (iii) granting Movants any such further and other relief to which he is justly entitled.

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expy, Suite 400
Austin, Texas 78731
(512) 649-3243
(512) 476-9253 Facsimile

/s/ Stephen Sather
Stephen Sather
State Bar No 17657520
**ATTORNEY FOR 2425 WL, LLC**


*/s/Ali Choudhri*
Ali Choudhri, Pro Se
2425 West Loop South, 11th Floor
Houston, TX 77027
ali@jetallcapital.com


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 20, 2024, a true and correct copy of the foregoing Response was served upon the parties on the attached Matrix by United States First Class Mail, postage prepaid, or by the Court's ECF noticing system to those parties registered to receive such service.


*/s/ Stephen Sather*_____
Stephen Sather

Label Matrix for local noticing
0541-4
Case 23-34815
Southern District of Texas
Houston
Thu May  9 13:16:14 CDT 2024

2425 WL, LLC
2425 West Loop South 11th floor
Houston, TX 77027-4304

CC2 TX, LLC
c/o Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road Suite 850
Dallas, TX 75251-1364

City of Houston
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Galleria 2425 Owner, LLC
1001 West Loop South 700
Houston, TX 77027-9084

(p)HARRIS COUNTY ATTORNEY'S OFFICE
P O BOX 2928
HOUSTON TX 77252-2928

Hayward PLLC
c/o Melissa Hayward
10501 N. Central Expy., Ste. 106
Dallas, TX 75231-2203

Houston Community College System
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Houston ISD
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

National Bank of Kuwait, S.A.K.P., New York

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

2425 WL, LLC
13498 Pond Springs Rd.
Austin, TX 78729-4422

2425 West Loop, LLC
2000 Hughes Landing Blvd., Suite 815
The Woodlands, Texas 77380-4142

ADT
PO Box 382109
Pittsburgh, PA 15251-8109

Ali Choudhry
1001 West Loop South 700
Houston, TX 77027-9084

Arin-Air, Inc.
5710 Brittmoore Rd. #13
Houston, TX 77041-5627

Ash Automated Control Systems, LLC
PO Box 1113
Fulshear, TX 77441-2013

CC2 TX, LLC
14800 Landmark Blvd., Suite 400
Dallas, TX 75254-7598

CFI Mechanical, Inc
6109 Brittmoore Rd
Houston, TX 77041-5610

CNA Insurance Co
PO Box 74007619
Chicago, IL 60674-7619

Caz Creek Lending
118 Vintage Park Blvd No. W
Houston, TX 77070-4095

Cirro Electric
PO Box 60004
Dallas, TX 75266

City of Houston
PO Box 1560
Houston, TX 77251-1560

City of Houston
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Comcast
PO Box 60533
City of Industry, CA 91716-0533

Datawatch Systems
4520 East West Highway 200
Bethesda, MD 20814-3382

Environmental Coalition Inc
PO Box 1568
Stafford, TX 77497-1568

Ferguson Facilities Supplies
PO Box 200184
San Antonio, TX 78220-0184

Firetron
PO Box 1604
Stafford, TX 77497-1604

(p)FIRST INSURANCE FUNDING
450 SKOKIE BLVD SUITE 1000
NORTHBROOK IL 60062-7917

Gulfstream Legal Group
1300 Texas St
Houston, TX 77002-3509

H.N.B. Construction, LLC
c/o Malcolm D. Dishongh
PO Box 2347
Humble, TX 77347-2347

HNB Construction, LLC
521 Woodhaven
Ingleside, TX 78362-4678

Hayward PLLC
c/o Melissa S. Hayward
10501 N. Central Expy., Ste. 106
Dallas, TX 75231-2203

Houston Community College System
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Houston ISD
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Jetall Companies, Inc
1001 West Loop South Ste 700
Houston, TX 77027-9033

Kings 111 Emergency Communications
751 Canyon Drive, Suite 100
Coppell, TX 75019-3857

Lexitas
PO Box Box 734298 Dept 2012
Dallas, TX 75373-4298

Lloyd E. Kelley
2726 Bissonnet Suite 240
Houston, TX 77005-1352

Logix Fiber Networks
PO Box 734120
Dallas, TX 75373-4120

MacGeorge Law Firm
2921 E 17th St Blgd D Suite 6
Austin, TX 78702-1572

Mueller Water Treatment
1500 Sherwood Forest Dr.
Houston, TX 77043-3899

Naissance Galleria, LLC
c/o Law Office of Nima Taherian
701 N. Post Oak Rd. Ste 216
Houston, TX 77024-3868

National Bank of Kuwait
299 Park Ave. 17th Floor
New York, NY 10171-0023

Nationwide Security
2425 W Loop S 300
Houston, TX 77027-4205

Nichamoff Law Firm
2444 Times Blvd 270
Houston, TX 77005-3253

Rodney L. Drinnon
2000 West Loop S, Ste. 1850,
Houston, Texas 77027-3744

TKE
3100 Interstate North Cir SE  500
Atlanta, GA 30339-2296

U.S. Trustee's Office
515 Rusk, Suite 3516
Houston, Texas 77002-2604

US Retailers LLC d/b/a Cirro Energy
Attention: Bankruptcy Department
PO Box 3606
Houston, TX 77253-3606

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Waste Management
PO Box 660345
Dallas, TX 75266-0345

Zindler Cleaning Service Co
2450 Fondren 113
Houston, TX 77063-2314

Ali Choudhri
24256 West Loop South
11th Floor
Houston, TX 77027

Christopher R Murray
Jones Murray LLP
602 Sawyer St
Ste 400
Houston, TX 77007-7510

James Q. Pope
The Pope Law Firm
6161 Savoy Drive
Ste 1125
Houston, TX 77036-3343

Reese W Baker
Baker & Associates
950 Echo Lane
Suite 300
Houston, TX 77024-2824

Rodney Drinnon
McCathern Houston
2000 W Loop S
Ste. 1850
Houston, TX 77027-3744

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Harris County, ATTN: Property Tax Division
Harris County Attorney's Office
P.O. Box 2928
Houston, TX 77252-2928 United States

First Insurance Funding
450 Skokie Blvd
Northbrook, IL 60062

(d)Harris County Tax Assessor
PO Box 4622
Houston, TX 77210

(d)Harris County, et al
PO Box 2928
Houston, TX 77252

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)2425 West Loop, LLC

(u)Sonder USA Inc.

(d)Arin-Air, LLC
5710 Brittmoore Rd. #13
Houston, TX 77041-5627

(du)Sonder USA Inc.

(u)Jack Rose

End of Label Matrix
Mailable recipients    58
Bypassed recipients     5
Total                  63

5/15/2024 4:22 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 87787807
By: Gerardo Perez
Filed: 5/15/2024 4:22 PM

## CAUSE NO. 2024-27168

| | | |
|---|---|---|
| **ALI CHOUDHRI** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH, et al** | § | |
| *Defendants.* | § | **129TH JUDICIAL DISTRICT** |

## PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION
## AND JURY DEMAND

Plaintiff Ali Choudhri ("Plaintiff") files this Second Amended Original Petition against Defendant National Bank of Kuwait, S. A. K.P., New York Branch ("NBK" or "Defendant") and hereby states and alleges the following:

### I.
### DISCOVERY PLAN

1. Discovery should be conducted pursuant to Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### II.
### RELIEF SOUGHT

2. Pursuant to Texas Rules of Civil Procedure 47(c), Plaintiff is presently seeking monetary relief over $1,000,000.00 and/or injunctive relief. The damages sought are within the jurisdictional limits of the Court.

### III.
### PARTIES

3. Plaintiff is an individual residing in Harris County, Texas.

4.    Defendant National Bank of Kuwait, S.A.K.P., New York Branch is a banking corporation organized under the laws of Kuwait, acting through its New York Branch.  Defendant has not designated a registered for service of process in the State of Texas.  As such, pursuant to Texas Civil Practice and Remedies Code 17.041-045, the Secretary of State is Defendant's agent for service of process in this proceeding which arises out of business Defendant has done in this state, and Defendant may be served through the Texas Secretary of State. The Secretary of State shall thereafter forward a copy by certified mail return receipt requested, to Corporation Service Company, 299 Park Avenue, New York, New York 10171.  Plaintiff requests that the clerk issue citation at this time.

## IV.
## JURISDICTION AND VENUE

5.    The Court has jurisdiction over the parties and claims which are subject of this suit.

6.    Venue is proper in Harris County, Texas pursuant to the Texas Civil Practice & Remedies §15.0115 because Defendant transacted business in and around Harris County, Texas, the real estate which forms the basis of the ownership of tax liens asserted by Plaintiff is located in Harris County, Texas, and the agreement to return the tax liens which forms a portion of the basis of this suit was executed and performable in Harris County, Texas. In addition the contract at issue regarding the sale of the real estate to Plaintiff was accepted in Harris County, Texas and performable in Harris County, Texas with respect to real estate located in Harris County. Mandatory venue exists in Harris County since this is an action to recover an interest in real property located in Harris County.

2

## V.
## FACTUAL BACKGROUND

7.  Plaintiff is an individual, and the sole member and manager of Galleria West Loop Investments II, LLC, which is the sole member and manager of Galleria 2425 JV, LLC, which is the sole member and manager of and principal officer in and of Galleria 2425 Owner, LLC. ("2425 Owner") which owns an office building located at 2425 West Loop South in Houston, Texas ("Real Property").

8.  As a principal related to the various corporate entities and in his individual capacity, Plaintiff participated in negotiations with the Defendant with respect to issues affecting the Real Property.

9.  The Real Property is a unique and iconic Grade A building in the heart of one of Houston's prominent retail and food destinations, the Galleria. The building itself is in close proximity to the Galleria Mall, an upscale mixed-use urban development shopping mall located in the Uptown District of Houston with over 30 million visitors per year, as well as the River Oaks District, an outdoor shopping complex of global luxury brands. The Real Property was designed in the 1980s by world renowned architect, I.M. Pei. To honor his legacy work, The Real Property was recently refurbished and continues to undergo significant upgrades with new health and wellness amenities for the tenants, and a new ground floor tenant conference facility and tenant lounge.

10.  In 2018, 2425 Owner entered into a loan agreement with Defendant.  The indebtedness on that loan was secured by a first lien deed of trust on the Real Property.  Accordingly, Defendant held an interest in the Real Property by virtue of its first-priority deed of trust and 2425 Owner held an interest in the Real Property as the owner.  During September of 2021, a dispute arose concerning certain loan payments.  State court litigation ensued, and in August of 2022 that

3

litigation was dismissed as part of an agreement of the affected parties, designated as a Confidential Settlement Agreement ("CSA"). Pursuant to that agreement, Plaintiff was individually included and named as a "Purchase Option Party," entitled to purchase the deed of trust and loan for $27,000,000.00. The draft of the closing documents exchanged after the agreement was reached did not include the name of the buyer, since it was contemplated that the buyer could be the Plaintiff, the borrower, or the Plaintiff's designee. That contemplated transaction did not occur in 2022, but as will be noted below a new offer concerning the sale of the Real Property was made by Defendant in 2023 and accepted by Plaintiff.

11.     As part of the CSA, Plaintiff was required to cause the transfer of tax liens ("Tax Liens") against the Real Property for the years 2019 and 2020, currently valued at a little less than $4,000,000, to the Defendant.[1]     Specifically, the agreement provided that "Choudhri shall cause the transfer and assignment of the tax liens with respect to the Property for years 2019 and 2020 (the "Tax Liens") to NBK." Plaintiff performed his obligations under the Agreement, and the Tax Liens were transferred to NBK on the temporary basis contemplated by the parties. The agreement further provided that upon consummation of the payment provisions of the agreement, the Tax Liens would be returned to Plaintiff as the rightful owner. In the operative documents this was stated as follows: "Upon NBK's receipt of either the Settlement Payment or Purchase Option Payment, NBK shall contemporaneously transfer and assign the Tax Liens to Choudhri." Included in the documents exchanged in connection with the settlement were documents assigning the Tax Liens back to Plaintiff. The Tax Liens were never returned to their rightful owner, and Defendant

---

[1] On April 9, 2024, Defendant, unperturbed by the fact that it has no legitimate ownership rights, filed proof of claim No. 13 in the bankruptcy case: In re:   Galleria 2425 Owner, LLC, Debtor, Case no. 23-34815 in the amount of $3,864,455.06 which is based on Defendant's asserted ownership of the Tax Liens.

currently asserts that it is the lawful owner of the Tax Liens.  Defendant NBK fraudulently asserts ownership of Plaintiff's assets.

12.     Obviously if Defendant NBK breached the agreement, refused to perform the agreement, or for any reason the agreement was not fully performed, Defendant NBK was obligated under law to return the Tax Liens to Plaintiff.  This was never done, and NBK continues to exercise wrongful dominion and control over the property of Plaintiff, and it appears that Defendant NBK may be attempting to permanently deprive Plaintiff of his lawful interest. At no time was there ever the contemplation under any circumstances that NBK would NOT return the Tax Liens.  If the CSA had been performed, that agreement required the return of the Tax Liens. If the CSA agreement does not exist, Defendant NBK has no right to any of the fruits of that agreement. However the controversy between the various parties is to be resolved the Plaintiff's right to his property, the Tax Liens, remains inviolate.  If the agreement does not exist, the Tax Liens must be returned; if the agreement does exist, by the terms of the agreement the Tax Liens should have been returned long ago.

13.     After the time of the CSA, discussions continued and on June 28, 2023, Defendant, acting through its authorized agent (Charles Conrad of the Pillsbury Winthrop Shaw Pittman, LLP law firm) forwarded a letter to Plaintiff's attorney, Jim Wetwiska (Akin Gump law firm), in which Defendant made a new offer to sell the Deed of Trust and Loan for a fixed price, which was $27,000,000.00 less sums previously paid on the subject loan (Exhibit A). Neither the Defendant attorney nor any of its attorneys, agents or representatives ever rescinded or withdrew the offer it made to the Plaintiff and the offer remained open, therefore, subject to acceptance.

14.     On April 28, 2024, Plaintiff unconditionally accepted the offer to purchase the Deed of Trust and the Loan at the price and on the terms proposed by the Defendant. Plaintiff tendered the

full amount requested by Defendant's attorney in the June 28, 2023 offer (Exhibit B).  Accordingly, the parties entered into a binding contract for Plaintiff to acquire from Defendant the Deed of Trust and the Loan on this unique Real Property.  At that time, the amount of the first lien exceeds the market value of the property, so the holder and owner of the first lien effectively has the ultimate right to own the Real Property if it, or he, so chooses.

15.    After Plaintiff accepted the offer extended and not withdrawn by Defendant, the Defendant continues, as it has done with the Tax Liens, to assert that it owns the Note and Deed of Trust that it agreed to sell to Plaintiff.

16.    The record shows that Defendant made an offer to the Plaintiff and that Plaintiff accepted it.  Plaintiff tendered performance, but the Defendant has refused to accept the price for which it agreed to sell the note and the deed of trust that secures it.  Defendant repudiated the contract and continues to do so.

17.    The parties mutually assented to all terms and there is a binding contract ("2024 Contract"), subject to the remedies of specific performance, consequential damages, and attorneys' fees.

18.    Defendant made the offer to sell the Note and the Deed of Trust by written communication from by its duly authorized agent, made to the duly authorized agent of Plaintiff. The offer was never withdrawn.  Plaintiff unconditionally accepted all material terms and conditions in Defendant's written offer. Thus, a binding contract has been made.

19.    Plaintiff has previously tendered the funds nominated by Defendant and at all times since, including the present, continues to be ready, willing and able to perform. Plaintiff is ready, willing, and able to pay the required money and otherwise perform under the 2024 Contract.

20.    To date, Defendant has failed to provide the purchase and sale documents that of necessity accompany the agreed to transaction.  These include the transfer of ownership of the right to payment under the Note and the Deed of Trust.  In addition, Defendant continues to wrongfully assert ownership, dominion and control of the Note and Deed of Trust. A party repudiates a contract if the party manifests, by words or actions, a definite and unconditional intention not to perform the contract according to its terms.  Defendant has repudiated the contract.

21.    Defendant has materially breached the 2024 Contract by failing effectuate purchase and sale of the Deed of Trust and Loan, by repudiating the contract, by continuing to assert ownership that it does not have, and by refusing to deliver appropriate documents effectuating the transfer of title to the assets it agreed to sell.  Plaintiff has been damaged in many ways, the most serious of which is the inability to control to fate of this unique asset.

22.    Defendant has breached the terms of the CSA by which it obtained the Tax Liens and the by failing to return them to the Plaintiff.  Outside of the actions contemplated by the CSA, Defendant is, and has been, in wrongful possession of the assets of the Plaintiff.

## VI.

23.    Plaintiff seeks specific performance of Defendant's contractual obligation to sell the Deed of Trust and Loan to Plaintiff for the contract amount.

24.    The 2024 Contract is a binding agreement.  There exists no other real property identical to the Real Property now subject to the Defendant's Note and Deed of Trust lien.  The first lien that is the subject of this sale effectively gives ownership rights of a unique asset to the owner of the Note and Deed of Trust. Plaintiff has tendered actual funds and stands ready to deliver actual funds in any reasonable fashion once its right to specific performance is confirmed by this Court.

7

Plaintiff is entitled to the equitable remedy of specific performance and requests an Order from this Court granting this relief.

25.    Plaintiff will show the Court that money damages will not provide adequate compensation for the harm and financial injury plaintiff will sustain if the Court does not require specific performance of the 2024 Contract.

26.    In addition, this Court should order Defendant NBK to execute the documents necessary to transfer the Tax Liens back to Plaintiff, either due to the enforcement of the CSA, or because the CSA failed and does not exist, and Defendant NBK is wrongfully attempting to steal these Tax Liens, concerning which it has no legitimate rights or interest.  The Tax Liens have, buy their very nature, the right to foreclose on the Real Property, so they are an interest in real property, that by definition is unique.

**VII.**

27.    Presently, Defendant is a creditor in a Chapter 11 bankruptcy case pending in the bankruptcy court of this district:  Case Number 23-34815 (JPN) styled "*In re GALLERIA 2425 OWNER, LLC.*"  2024 Owner is the debtor and the owner of the Real Property.  2024 Owner filed a bankruptcy petition after D instituted foreclosure proceedings.

28.    Defendant, as a creditor in the bankruptcy proceeding, is attempting to use the Deed of Trust and Note[2] that it contractually agreed to sell to Plaintiff, as a means to purchase the Real Property.

29.    Plaintiff is not a debtor or a debtor in possession under Chapter 11 in any pending bankruptcy case in the United States.  This suit and request for injunctive relief is based on the

---

[2] As well as the Tax Liens that it refused to return to Plaintiff.

Tax Liens owned by Plaintiff and the 2024 Contract between Plaintiff, individually and Defendant. Thus, this suit is between two non-debtors and involves property – the Deed of Trust and the Loan and the Tax Liens - which are not the property of 2024 Owner or the bankruptcy estate.

30.    Plaintiff will suffer irreparable harm if Defendant is allowed to retain ownership of the Deed of Trust and the Loan in derogation of Plaintiff's rights under the 2024 Contract.[3] The value of the Real Property is much less than the claimed amount of "credit" the Defendant asserts, so the holder of the Note and Deed of Trust effectively owns the Real Property.    On April 9, 2024, Defendant filed proof of claim No. 14 in the bankruptcy court in the amount of $67,157,854.15 which is based on the loan and a deed of trust against the Real Property.  It seems probable that objections to the ownership claims made by Defendant NBK will be some part of the bankruptcy proceedings, but the controversy over ownership remains between two non-debtor parties, and properly in this Court.

31.    The harm is imminent because the bankruptcy court has scheduled an auction to sell the Real Property on June 18, 2024. It is clear that Defendant is asserting the right to make a credit bid using as "credit" the Deed of Trust and Note that it sold to Plaintiff in the 2024 Contract.[4]  The Defendant also apparently intends to use the Tax Liens as part of its "credit".[5]  In essence, the Defendant is using the property of the Plaintiff to deprive the Plaintiff of effective ownership in

---

[3] *See Yarto v. Gilliland*, 287 S.W.3d 83, 97 (Tex. App.-Corpus Christi 2009, no pet.) (holding that the potential loss of rights in real property is probable, imminent, and irreparable injury that qualifies a party for injunctive relief); *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.-Tyler 2007, no pet.) (same).

[4] Plaintiff objects to the Defendant claiming ownership of the Note and Deed of Trust and the Tax Liens and using that disputed "ownership" in the impending bankruptcy proceedings, because it wrongfully deprives Plaintiff of the use of assets he is due.  Proof of Claim 14 is wrongfully made.  If this use is allowed and then the determination is made that Plaintiff prevails on his claims, it inures to the detriment of these parties and all those who may become involved.

[5] Plaintiff also objects to Defendant wrongfully using the Tax Liens that under any version of the "facts" it is clear that the Defendant has no rights, because it too wrongfully deprives Plaintiff of the use of its assets. Proof of claim 13 is wrongfully made.

the unique Real Property that is the subject of this action.  Plaintiff expects the bankruptcy court to delay the actual auction and sale of the Real Property past the current June 18, 2024 date, but Plaintiff reserves his right to seek emergency injunctive relief in the event an auction or sale intends to go forward even though the ownership of the note and deed of trust is in dispute.

32.     Defendant is entitled to specific performance, but if this remedy is not available before the sale of the Real Property, then this Court should put in place injunctive relief restraining the Defendant from exercising ownership rights to the Note and Deed of Trust, and it should maintain that injunction pending the final determination of the issue of ownership, and an order of specific performance upon the final trial of the issue, after which a permanent injunction should not be necessary.[6]

33.     Plaintiff submits that fundamental contract law and the preponderance of evidence supports his assertion that the parties entered-into a binding contract that pertains to a unique commercial property. The terms of the offer are specific and identifiable, and fully met by Plaintiff's acceptance of that offer.  There is no question that the offeror could have rescinded or revoked the written offer at any time and chose not to do so, leaving it open for acceptance in this ongoing controversy. There is no apparent issue with the authority of the author of the offer, or with the capacity of the Plaintiff in accepting.  No issue is presented at all concerning the ability of the Plaintiff to perform, as he has already tendered that performance. Consequently, there is a very strong likelihood that plaintiff will prevail in a trial on the merits.

34.     Accordingly, plaintiff requests that the Court schedule a hearing to consider evidence, after which it should issue a preliminary injunction.  Plaintiff requests that this Court restrain

---

[6] Determination of the ownership of real property is often the subject of injunctive relief of the type requested here for the obvious reason that a host of potential problems are avoided if a determination is made before a sale or encumbrance, or multiples of these occur and then have to be unwound.

defendant from exercising ownership, dominion or control over the Note and Deed of Trust, including but not limited to the exercise of decision-making over the ue of the Deed of Trust and Loan, pending the Court's final determination on the merits.

## VIII.
## ATTORNEYS' FEES

35.     Plaintiff repeats the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

36.     Plaintiff hereby seeks from Defendant reasonable and necessary attorney's fees for breach of contract, specific performance, injunctive relief, and under any statutory or common law right to recover attorney's fees.

## IX.
## JURY DEMAND

37.     Plaintiff demands a jury trial and has tendered the appropriate fee.

## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear herein as provided by law and that upon hearing:  the Honorable Court to find, adjudge and Order as follows:

1) Plaintiff is entitled to specific performance of 2024 Contract, as identified in the offer letter and accepted by Plaintiff;

2) A preliminary injunction to be in effect until the issue of ownership of the Deed of Trust and Note is determined, followed by an Order directing Defendant to comply with the contract created by the offer letter and the acceptance by Plaintiff.  The injunctive relief should be that Defendant is restrained from exercising dominion, control or assertion of ownership of the Real Property that the true owner may possess under the Deed of Trust and Note;

3) The immediate return of the Tax Liens;

11

4) An award of Plaintiff's reasonable and necessary attorney's fees, and

5) any other and further relief to which Plaintiff may be justly entitled at law and equity.

Respectfully Submitted,

**THE STEIDLEY LAW FIRM**

By _Jeffrey W. Steidley_
JEFFREY W. STEIDLEY
State Bar No. 19126300
jeff@texlaw.us
3701 Kirby Drive, Suite 1196
Houston, Texas 77098
(713) 523-9595 (telephone)
(713) 523-0578 (facsimile)

**ATTORNEY FOR PLAINTIFF**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeffrey Steidley on behalf of Jeffrey Steidley
Bar No. 19126300
jeff@texlaw.us
Envelope ID: 87787807
Filing Code Description: Amended Filing
Filing Description: Plaintiff's Second Amended Petition
Status as of 5/16/2024 8:25 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeffrey WSteidley | | jeff@texlaw.us | 5/15/2024 4:22:49 PM | SENT |
| Lawrence Rodriguez | | Lawrence@texlaw.us | 5/15/2024 4:22:49 PM | SENT |
| Ali Choudhri | | ali@jetallcapital.com | 5/15/2024 4:22:49 PM | SENT |

<span style="color:red">EXHIBIT A</span>



Pillsbury Winthrop Shaw Pittman LLP
Two Houston Center 909 Fannin, Suite 2000  |  Houston, TX 77010-1018  |  tel 713.276.7600  |  fax 713.276.7673

Charles C. Conrad
tel: +1.713.276.7626
charles.conrad@pillsburylaw.com

June 28, 2023

*Via Email*
Jim Wetwiska
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana, 44th Floor
Houston, Texas 77002-5200

> Re:   Cause No. 2021-63370; *Galleria 2425 Owner LLC v. National Bank of Kuwait, S.A.K.P.*, In the 281st Judicial District Court of Harris County, Texas

### Confidential Communication

Jim,

We received your letter this morning, and we are working to get you drafts of the documents you reference therein (*i.e.*, the Loan and Sale Agreement, Assignments of the Lien and Tax Liens, and Allonge) as soon as practicable. In this regard, please inform us who the buyer/purchaser and assignee is, and when your client intends to initiate the settlement/purchase option payment so that an orderly closing can be scheduled on Monday, July 3.

With respect to the specific amount of the Settlement Payment/Purchase Option Payment, here is what we have (please confirm this is the correct amount on your end):

Settlement Payment Amount: $27 million

Amounts Paid to Date:

- $801,509.42 paid to NBK from registry of the Court

- $80,000 paid to NBK on 4/18 per order of the Court

- $80,000 paid to NBK on 5/10 per order of the Court

Current Outstanding Settlement Balance: $26,038,490.58

Jim Wetwiska
Akin Gump Strauss Hauer & Feld LLP
June 28, 2023
Page 2

For the payee information, please have the funds wired to our firm's trust account and reference "National Bank of Kuwait, S.A.K.P." in the Remittance Information.  We have included wiring instructions with this letter.

Thanks again, and we look forward to hearing from you.

Very truly yours,

Charles C. Conrad

Attachment

EXHIBIT B

Ali Choudhri
2425 West Loop South, 11th Floor
Houston, TX 77027

April 28, 2024

Charles Conrad
Pillsbury Winthrop Shaw Pittman, LLP
Two Houston Center
909 Fannin, Suite 200
Houston, TX 77010

      RE:    Galleria 2425 Owner, LLC

      SUB:  Tender of Settlement/Purchase Option Payment

Dear Mr. Conrad:

      Pursuant to your letter (attached herewith) and recent discussions, I hereby accept and tender the Settlement/Purchase Option, full payment in the amount of the Current Outstanding Settlement Balance (**$26,038,490.58),** regarding the Confidential Settlement Agreement dated August 21 2022 as follows:

Settlement Payment Amount: $27 million

Current Outstanding Settlement Balance: **$26,038,490.58**.

      The above payment, as instructed in your letter, shall be wired to an account you designate. If you wish to handle this with a designated title company, please advise.  Please provide the necessary documents to consummate the transaction for example the Assignment of Note and Sale Agreement and Assignment of any liens.

      I expect that the National Bank of Kuwait is prepared to perform its obligations under the Confidential Settlement Agreement in connection with this payment.

      To confirm, the Assignee for the Note and Lien will be:

      QB Loop Property LP is a Texas limited partnership. It's general partner is QB Loop Property GP LLC, a Texas limited liability company, and it's manager is Anwar I Qadeer.

I look forward to bringing this to a close.  I appreciate your cooperation.

Sincerely,

Ali Choudhri