**CONFIDENTIAL SETTLEMENT AGREEMENT**

This Confidential Settlement Agreement is made and entered into by and between the undersigned as of August 22, 2022 (the "Effective Date"), and is a binding contract pursuant to which the below named parties have fully and finally settled all claims and controversies existing between and among them, according to the terms of this Confidential Settlement Agreement. The parties to this agreement are National Bank of Kuwait, S.A.K.P., New York Branch, Galleria 2425 Owner, LLC, Naissance Galleria, LLC, and Ali Choudhri.

### I. DEFINITIONS

In addition to other definitions provided in this document as needed, the Parties hereto have agreed to the following definitions:

1.1 "Agreement" means this Confidential Settlement Agreement.

1.2 "Claims" means the Lawsuit (as defined below) and all other claims, counter-claims, causes of action, controversies, losses, demands, costs, damages, liabilities (joint or several), expenses of any nature (including attorneys' fees, costs and/or expenses), judgments, fines, and other amounts, both known and unknown, asserted or not asserted, accrued or not accrued, from the beginning of time up until the date of this Agreement, under any theory or any cause of action whatsoever recognized by law or equity between NBK, Galleria, and Ali Choudhri (and Naissance to the extent Naissance exercises the Purchase Option pursuant to Section 3.1(h)), as such terms are defined below.

1.3 "NBK" means National Bank of Kuwait, S.A.K.P., New York Branch, the Defendant and Counter-Plaintiff in the Lawsuit.

1.4 "NBK Released Parties" means NBK and all of its present or past parents, present or past subsidiaries, divisions, partners, successors-in-interest, predecessors, present and future affiliates, shareholders, unit holders, employees, officers, directors, representatives, agents, investigators, attorneys, assigns, executors, administrators, lenders, lien holders, creditors, financing institutions, banks, and insurers, and those in privity therewith.

1.5 "Galleria" means Galleria 2425 Owner, LLC, the Plaintiff and Counter-Defendant in the Lawsuit.

1.6 "Galleria Released Parties" means Galleria and all of its present or past parents, present or past subsidiaries, divisions, partners, successors-in-interest, members, managers, guarantors (including the Guarantor under the Loan Agreement), predecessors, present and future affiliates, shareholders, unit holders, employees, officers, directors, representatives, agents, investigators, attorneys, assigns, executors, administrators, lenders, lien holders, creditors, financing institutions, banks, and insurers, and those in privity therewith.

1.7 "Choudhri" means Ali Choudhri in his sole and individual capacity and as Intervenor in the Lawsuit.

1.8 "Choudhri Released Parties" means Choudhri, both in his individual capacity and including his heirs, assigns, agents, executors, attorneys, lenders, administrators, lien holders, creditors, and those in privity therewith, along with any entity in which Choudhri may have an ownership interest in and/or right to control now or in the future.

1.9 "Naissance" means Naissance Galleria, LLC.

1.10 "Parties" means NBK, Galleria, Naissance, and Choudhri, as defined herein, who are the parties to this Agreement.

1.11 "Lawsuit" means: Cause No. 2021-63370; *Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., A New York Branch, et al.*; in the 281st District Court of Harris County, Texas.

1.12 "Loan Agreement" means that certain Loan Agreement between NBK and Galleria, dated May 23, 2018. Capitalized terms not defined herein shall have the meaning ascribed in the Loan Agreement.

1.13 "Loan Documents" collectively means the following documents as defined in the Loan Agreement: the Loan Agreement, the Promissory Note, the Deed of Trust, the Assignment of Leases and Rents, the Guaranty, the Environmental Indemnity Agreement, the Assignment of Agreements, Licenses, Permits and Contracts, the Subordination of Management Agreement, the Fee Letter, the Intercreditor Agreement, the Control Account Agreement, any Assignment of Interest Rate Agreement entered into after the Closing Date and any and all other documents, agreements and certificates executed and/or delivered in connection with the Loan, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time. Loan Documents shall also include any Interest Rate Protection Product or ISDA Master Agreement.

1.14 "Property" means that certain real property and improvements located at 2425 West Loop South, Houston, TX 77027.

1.15 "Purchase Option Parties" means Naissance, Galleria, Choudhri and an entity wholly owned and controlled by Choudhri.

## II. RECITALS

2.1 WHEREAS, the Parties understand and agree that the claims and defenses asserted between them are in dispute, the Parties desire to confidentially compromise and settle the Claims and the Lawsuit, and including all claims, counter-claims, claims in intervention, third-party

claims and causes of action that were asserted or which could have been asserted, currently known or unknown, from the beginning of time up until the date of this Agreement, whether or not alleged or set forth in prior correspondence, claims, pleadings, or orally, which arise out of the Claims or the Lawsuit, the related occurrences, or legal proceedings, and which pertain thereto, to prevent any current or future litigation by or between the Parties arising out of or related to the Claims or the Lawsuit.

2.2     WHEREAS, the Parties deny all allegations, claims, counterclaims, claims in intervention and third-party claims arising out of the Claims or the Lawsuit, and by executing this Agreement, the Parties make no admissions, but rather have settled those claims and defenses which were raised or could have been raised by compromise as set forth below in order to avoid further litigation and to buy peace of mind.

### III.    A G R E E M E N T

NOW, THEREFORE, for and in consideration of the mutual promises, covenants and agreements contained herein, for the resolution and settlement of the Claims and the Lawsuit as set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree and covenant as follows:

**A.     SETTLEMENT TERMS**

3.1     (a) **Acknowledgement of the Indebtedness.**     As of the Effective Date, Choudhri, Galleria and Naissance acknowledge and agree that NBK is owed $60,212,816.90 under the Loan Documents, **without defenses, setoffs, claims, counterclaims or deductions of any nature whatsoever, all of which are hereby expressly waived**;

(b) **Acknowledgment of Existing Defaults**. Galleria, Choudhri and Naissance further acknowledges and agrees that: (i) an Event of Default exists under the Loan Documents, (ii) any cure period with respect thereto has expired, (iii) all principal, interest, fees, costs and other charges due under the Loan Documents are fully accelerated and immediately due and owing to NBK **without defenses, setoffs, claims or counterclaims or deductions of any nature whatsoever all of which are hereby expressly waived**, and (iv) that each of Galleria, Choudhri and Naissance waives the right to all notices (including but not limited to notice of default, notice of intent to accelerate, notice of acceleration, and notice of foreclosure) each may otherwise be entitled to under the Loan Documents or otherwise. Galleria, Choudhri and Naissance further acknowledge and agree that all conditions precedent for NBK to post the Property for foreclosure have been fully satisfied;

(c) **Acknowledgment of Right to Foreclose.** Except as otherwise provided in this Agreement, Galleria, Choudhri and Naissance expressly recognize and acknowledge that NBK can exercise all of its rights and remedies under the Loan Documents, which are fully matured and

3

available for exercise by NBK, including, without limitation, the right to foreclose and the right to recover on any part or all of the indebtedness **without defenses, setoffs, claims or counterclaims or deductions of any nature whatsoever all of which are hereby expressly waived**;

(d) **Settlement Payment**. On or before the Payment Date (as defined below), Galleria will pay or cause to be paid to NBK the total sum of $27,000,000 as a settlement for all amounts owed under the Loan Documents, as follows: (i) within five (5) days of the Effective Date, Galleria agrees to request the Court to transfer the amount deposited into the registry of the Court by Choudhri, currently EIGHT HUNDRED AND ONE THOUSAND FIVE HUNDRED AND NINE AND 42/100 US DOLLARS ($801,509.42) (such amount, including any increases thereto or income thereon, the "Down Payment") directly to NBK. To the extent that a Settlement Default (as defined below) occurs, then NBK shall be entitled to retain the Down Payment as liquidated damages and, in addition, shall be entitled to pursue all of its rights and remedies under this Agreement, the Loan Documents or otherwise at law or in equity. If necessary, NBK agrees to join in Galleria's request to the Court where the Lawsuit is pending seeking disbursement of the funds constituting the Down Payment that is currently on file with the registry of the court in the Lawsuit; (ii) within two hundred ten (210) days of the Effective Date (such date, the "Payment Date") Galleria agrees to pay, or cause to be paid to NBK the balance by wire transfer in immediately available funds (the "Settlement Payment"), except to the extent that the Purchase Option is exercised pursuant to Section 3.1(h); and (iii) contemporaneously with NBK's receipt of the Settlement Payment set forth in Section 3.1(d)(ii), NBK will file a release of its lien and deliver proof of such release to Galleria's attorneys establishing that no NBK liens exist or have not been otherwise released by NBK;

(e) The Settlement Payment shall be made in good and immediately available funds by wire transfer to an account designated by NBK in writing; provided, however, that to the extent the Settlement Payment is made in connection with a sale or refinancing of the Property, the Settlement Payment may be first transferred to a title company handling the closing of such sale or refinancing for onward remittance to NBK;

(f) Galleria acknowledges and agrees that to the extent the Settlement Payment is remitted to NBK, or to an agreed upon title company as escrow agent or other acceptable escrow agent for further delivery to NBK, by anyone other than Galleria (including, without limitation, any lender to Galleria), then Galleria has no right, title or interest of any kind whatsoever in such Settlement Payment or the proceeds thereof;

(g) **Dismissal of the Lawsuit**. Within five (5) days of the Effective Date, Galleria will execute, enter, and file in conjunction with NBK a joint motion for dismissal with prejudice of all of its claims against NBK in the Lawsuit and a motion to permanently dissolve with prejudice the Court's Temporary Injunction Order issued in the Lawsuit;

4

(h) **Purchase Option**. NBK grants the Purchase Option Parties, as directed by Choudhri, the sole and exclusive right to purchase the Loan Documents as follows: (i) the Purchase Option Parties each acknowledge that a Purchase Option Event (as defined in the Intercreditor Agreement) has occurred, that Naissance has received a Purchase Option Notice (as defined in the Intercreditor Agreement), and that the Monetary Cure Period (as defined in the Intercreditor Agreement) has expired; (ii) the Parties agree that the Loan Purchase Price (within the meaning of Section 12(a) of the Intercreditor Agreement) is $27,000,000 payable as follows: (x) $801,509.42 in the form of the Down Payment payable pursuant to section 3.1(d) hereof; and (y) the balance payable by wire transfer in good and immediately available funds on or before the Payment Date (such payment, the "Purchase Option Payment"); (iii) other than the amount of the Loan Purchase Price set forth in this section 3.1(h), a Purchase Option Party's exercise of the Purchase Option shall be in the form and manner provided in Section 12 of the Intercreditor Agreement; (iv) all Parties consent to the transfer of the Loan Documents to a Purchase Option Party in connection with the exercise of the purchase option; (v) to the extent that a party other than a Purchase Option Party seeks to exercise this purchase option, NBK has the right to consent to such exercise, such consent not to be unreasonably withheld; and (vi) NBK shall transfer and assign the Loan Documents to the party exercising this purchase option upon NBK's receipt of the Purchase Option Payment. Upon written request of a Purchase Option Party, NBK shall provide such Purchase Option Party with a payoff statement for the satisfaction or purchase of its loan and the Loan Documents;

(i) within five (5) days of the Payment Date, NBK will prepare, execute and file a request to the Court in which the Lawsuit is pending for an abatement of NBK's claims in the Lawsuit. To the extent the Court declines to grant such abatement request, then NBK shall file a nonsuit, without prejudice, of its claims and Galleria specifically agrees (i) that such claims may be refiled following a the occurrence of a Settlement Default; (ii) that they will accept service of any such refiled claims by email on their counsel; and (iii) they agree not to assert any statute of limitations, laches or similar defense in response to such refiled claims;

(j) Except upon the occurrence of a Settlement Default, NBK will not take measures to foreclose on the Property or sell or assign the loan, other than as provided for in this Agreement, for two hundred ten (210) days after the Effective Date (such period, the "Foreclosure Forbearance Period"), and during such Foreclosure Forbearance Period, Galleria will maintain the Property itself and maintain all insurance policies covering the Property.  If during the Foreclosure Forbearance Period, Galleria presents a request on behalf of any potential tenant that presents a Material Lease: 1) that does not include subordination and non-disturbance agreement from NBK, Galleria shall be permitted to enter into such lease without obtaining NBK's prior consent; or 2) that does include subordination and non-disturbance agreement from NBK, then NBK shall have the right to accept or reject pursuant to the Loan Documents;

B. RELEASES

5

4.1     Release of NBK Released Parties.

(a) by Galleria. As of the Effective Date, Galleria **RELEASES, ACQUITS AND FOREVER DISCHARGES** the NBK Released Parties from all claims, both known and unknown, accrued or not accrued, from the beginning of time until the date of this Agreement, including, but not limited to, any and all claims relating to the Claims or the Lawsuit. Upon NBK's receipt of either the Settlement Payment or the Purchase Option Payment, Galleria further **RELEASES, ACQUITS AND FOREVER DISCHARGES** the NBK Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of such payment, including, but not limited to, any and all claims relating to the Claims or the Lawsuit;

(b) By Choudhri. As of the Effective Date, Choudhri **RELEASES, ACQUITS AND FOREVER DISCHARGES** the NBK Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of this Agreement, including, but not limited to, any and all claims relating to the Claims or the Lawsuit. Upon NBK's receipt of either the Settlement Payment or the Purchase Option Payment, Choudhri further **RELEASES, ACQUITS AND FOREVER DISCHARGES** the NBK Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of such payment, including, but not limited to, any and all claims relating to the Claims or the Lawsuit.

(c) by Naissance. As of the Effective Date, Naissance **RELEASES, ACQUITS AND FOREVER DISCHARGES** the NBK Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of this Agreement, including, but not limited to, any and all claims relating to the Claims, the Lawsuit or the Intercreditor Agreement. Upon NBK's receipt of either the Settlement Payment or the Purchase Option Payment, Choudhri further **RELEASES, ACQUITS AND FOREVER DISCHARGES** the NBK Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of such payment, including, but not limited to, any and all claims relating to the Claims, the Lawsuit or the Intercreditor Agreement.

4.2     Release of Choudhri Released Parties.

(a) By NBK. As of the Effective Date, NBK **RELEASES, ACQUITS AND FOREVER DISCHARGES** the Choudhri Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of this Agreement, including, but not limited to, any and all claims relating to the Claims or the Lawsuit. Effective upon NBK's receipt of the Settlement Payment or the Purchase Option Payment, NBK **RELEASES, ACQUITS AND FOREVER DISCHARGES** the Choudhri Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of such payment, including, but not limited to, any and all claims relating to the Claims or the Lawsuit.

4.3	Release of Galleria Released Parties.

(a) By NBK. Effective upon NBK's receipt of the Settlement Payment or the Purchase Option Payment, NBK **RELEASES, ACQUITS AND FOREVER DISCHARGES** the Galleria Released Parties from all known and unknown claims, accrued or not accrued, from the beginning of time until the date of this Agreement, including, but not limited to, any and all claims relating to the Claims or the Lawsuit. Galleria acknowledges and agrees that such release, NBK's dismissal of its claims in the Lawsuit and the other obligations NBK has or will occur in connection with this Agreement constitute new value given to Galleria by NBK and that such new value is given by NBK and received by Galleria contemporaneously with the releases and any other value given or obligation incurred by Galleria under this Agreement.

C.	REPRESENTATIONS AND WARRANTIES

5.1 **Capacity to Execute Agreement**. The Parties represent and warrant that they have the sole right and exclusive authority to enter into and execute this Agreement and that they have not sold, assigned, transferred or otherwise disposed of any of the Claims.

5.2 **Due Authority**. Each Party hereto that is not a natural person has duly authorized the person signing this Agreement on such Party's behalf to do so and each such signatory has the requisite power and authority to bind such Party to the terms of this Agreement.

5.3 **Concerning any Foreclosure**. Following any Settlement Default, each of Galleria, Choudhri and Naissance covenant and agree that they shall not seek to restrain or otherwise hinder, delay, frustrate or impair NBK's efforts to (i) foreclose upon any collateral granted under the Loan Documents, or (ii) enforce its rights and remedies pursuant to the Loan Documents. The provisions of this Paragraph shall be specifically enforceable by NBK and Galleria, Choudhri and Naissance acknowledge and agree that any breach thereof will expose NBK to irreparable harm and therefore injunctive relief is necessary without having to prove damages or post a bond or other collateral. Galleria, Choudhri and Naissance will cooperate, assist and execute all necessary documents, upon NBK's request, in furtherance of NBK's rights, powers and remedies under the Loan Documents.

5.4 **Assignment of Tax Liens**.  Within five (5) days of the Effective Date, Choudhri shall cause the transfer and assignment of the tax liens with respect to the Property for years 2019 and 2020 (the "Tax Liens") to NBK.  NBK represents and warrants that it will not take any measures to foreclose on the Property pursuant to the Tax Liens during the Foreclosure Forbearance Period.  Upon NBK's receipt of either the Settlement Payment or Purchase Option Payment, NBK shall contemporaneously transfer and assign the Tax Liens to Choudhri.

D.	DEFAULT

6.1 **Settlement Default**. Each of the following shall constitute a Settlement Default: (i) failure of any of Galleria, Choudhri or Naissance to comply with its representations, warranties,

7

covenants or other undertakings under this Agreement; (ii) breach of any representation made by Galleria, Choudhri or Naissance in this Agreement; (iii) if NBK does not receive the Settlement Payment or the Purchase Option Payment on or before the Payment Date; (iv) if Galleria (a) admits in writing of its inability to pay its debts generally as they become due, (b) file a petition in bankruptcy or a petition to take advantage of any insolvency act; (c) make an assignment for the benefit of creditors; (d) consent to, or acquiesce in, the appointment of a receiver, liquidator or trustee of itself or of the whole or any substantial part of its properties or assets; (e) file a petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the Federal Bankruptcy laws or any other applicable law; (f) have a court of competent jurisdiction enter an order, judgment or decree appointing a receiver, liquidator or trustee of Borrower, or of the whole or any substantial part of the property or assets of Borrower, and such order, judgment or decree shall remain unabated or not set aside or unstated for sixty (60) days; (g) have a petition filed against it seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the Federal Bankruptcy laws or any other applicable law and such petition shall remain undismissed for sixty (60) days; (h) have, under the provisions of any other law for the relief or aid of debtors, any court of competent jurisdiction assume custody or control of Borrower or of the whole or any substantial part of its property or assets and such custody or control shall remain unterminated or unstayed for sixty (60) days; or (i) have an attachment or execution levied against the Property which is not discharged or dissolved by a bond within sixty (60) days;

6.2 **Remedies**. Upon the occurrence of a Settlement Default, NBK shall have the right to pursue any and all rights and remedies it has under the Loan Documents, applicable law and in equity, including, without limitation, the right to pursue foreclosure of the Property.

### E.     GUARANTY

7.1 Choudhri agrees that to the extent that any portion of the Settlement Payment or the Purchase Option Payment is avoided and recovered as a result of the operation of any bankruptcy or other proceeding, then Choudhri shall be liable for, and absolutely and unconditionally guarantees to NBK, the prompt payment to NBK of such avoided and recovered sums. This guaranty is a guaranty of payment and not of collection and Choudhri waives any right to require NBK to sue Galleria or any other party or to foreclose on the Property or any other collateral.

### F.     DEFENSE, INDEMNITY AND HOLD HARMLESS.

8.1     In consideration of the mutual promises, covenants, and agreements contained herein, for the resolution and settlement of the Claims and the Lawsuit, Galleria agrees to fully defend, indemnify, and hold NBK Released Parties harmless from any and all claims asserted against the NBK Released Parties by any party that are related to the Property, the Loan, the Loan Documents, this Agreement and any payments made under it.

### G.     MISCELLANEOUS

9.1     The Parties further agree that this Agreement shall not be interpreted as an admission of liability on the part of any of the Parties hereto.  The consideration described above has been given by way of compromise to avoid expenses and terminate all controversies between the Parties, regardless to the extent of the Claims and the Lawsuit.

9.2     It is further agreed that the considerations stated above are the sole considerations for this Agreement, and that the considerations are contractual and not mere recitals, and that all agreements and understandings of the Parties are expressed herein.

9.3     **CONFIDENTIALITY AGREEMENT.  The Parties hereby further expressly represent, warrant, and agree that in making this Agreement, NBK, Galleria, Naissance, and Choudhri will keep the negotiations, contents and terms of this Agreement completely confidential and will not make known such information to anyone at any time under any circumstances (meaning that such information may not be published, displayed, discussed, disclosed, revealed or characterized, directly or indirectly, in any way to any one) save and except the Parties themselves, and as to their tax advisor or attorney, in which case NBK, Galleria, Naissance, and Choudhri warrant that such individuals shall also comply with this confidentiality provision, except as compelled to do so by law.  The Parties further agree, however, that any action brought on any kind herein released, this Agreement may be pled by the party against whom the claim is filed as a defense and this Agreement may be used by any party in any suit for breach of this Agreement.  Notwithstanding the foregoing and anything herein to the contrary, the Parties further agree that (i) following the Effective Date of this Agreement, Galleria or Choudhri may inform governmental agencies or departments that the Parties have reached a settlement agreement, and NBK will confirm same if contacted by any governmental agencies or departments, and (ii)  upon NBK's receipt of either the Settlement Payment or Purchase Option Payment**, **Galleria or Choudhri may inform governmental agencies or departments that the Parties have reached a settlement agreement to the satisfaction of all Parties, and NBK will confirm same if contacted by any governmental agencies or departments.**

9.4     No person or entity not a party to this Agreement shall be deemed to be a third-party beneficiary of this Agreement.

9.5     This Agreement may be amended only by an instrument in writing executed by the Parties.

9.6     If any term or other provision of this Agreement is found to be invalid, illegal, or incapable of being enforced by any rule of law or public policy, such provision shall be severed or reformed to the maximum extent allowed by law.  In any event, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect.

9.7     The Parties hereto agree that this Agreement may be executed in counterpart originals, each of which shall constitute an original, and all of which together shall constitute one and the same agreement.

9.8     The Parties acknowledge that they have had the opportunity to read this Agreement and to consult with legal counsel of their choosing as to the meaning and effect of the Agreement and the rights and liabilities of the Parties. The Parties acknowledge that they understand and appreciate the foregoing words and terms and their effect.

9.9     The Parties acknowledge that they understand the meaning and effect of this Agreement and that they execute it of their own free will and accord for the purposes and considerations set forth.  Further, the Parties solemnly state that this Agreement is not being made because of any persuasive statement or representation or promise by anyone whomsoever or for anything other than what is recited herein.  In entering into this Agreement, each Party acknowledges that it is not relying upon any statement, representation, or promise that is not specified expressly herein.

9.10    The Parties represent one to the other that their respective signatory to this Agreement is empowered and legally competent to execute this Agreement on behalf of the Party for which it signed.  The Parties further represent that they, their respective signatories, and their respective representatives are of sound mind at the time they executed this Agreement.

9.11    The Parties represent and warrant to each other that they are the sole owner of all claims and causes of action they have released in this Agreement, that such claims are free and clear of all claims or liens of any other person or entity, that they have not assigned, pledged, subrogated or in any other manner transferred any of the claims or causes of action released herein, the Loan or any debt related to the Loan, and that there are no other persons or legal entities who could or should have asserted such claims or joined in any settlement or compromise of such claims.

9.12    Notwithstanding any provision contained herein to the contrary, each Party agrees to pay all of his or its own legal fees, costs and expenses that have been incurred in connection with the Claims and the Lawsuit, and the release of claims and related activities, including those associated with the negotiating, drafting and signing of this Agreement.

9.13    Within thirty (30) days after NBK's receipt of the Settlement Payment or the Purchase Option Payment, each party shall return all documents and discovery in their possession or control, including all copies, to the party who furnished it in the Lawsuit, or certify in writing that all such documents have been destroyed.

9.14     The undersigned acknowledges that this Agreement is to be performed in Texas, and that the provisions hereof, and the respective rights and duties of the Parties hereto shall be construed in accordance with and governed by the laws of the State of Texas.  The undersigned agree that exclusive jurisdiction for any dispute based on or arising from this Agreement will be in the Harris County District Court, Houston, Texas; and that the prevailing party in any suit based on or arising from this Agreement will be further entitled to recover from the non-prevailing party the prevailing party's reasonable and necessary attorneys' fees, costs, and expenses.

9.15     THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF AND THERE ARE NO OTHER AGREEMENTS, WRITTEN OR ORAL, EXPRESS OR IMPLIED, RELATED TO THE MATTERS SET FORTH HEREIN.  THIS AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

*<remainder of this page left intentionally blank>*

**NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH**

**Agreed:** National Bank of Kuwait, S.A.K.P., New York Branch

*[signature: M. Isbaih]*                                                                8/22/2020

**By:**   ~~Marwan Isbaih~~                                        **Date**
**Its:**  ~~General Manager~~

12

## GALLERIA 2425 OWNER, LLC

Agreed: Galleria 2425 Owner, LLC

By: _Ali Choudhri w/permission AMP_  
Its: _Auth Agent_

Date: 8/21/22

## NAISSANCE GALLERIA, LLC

Agreed:  Naissance Galleria, LLC

By: _____ *Authorized Agent* _____  Date 8/21/22

Its: _____ Ali Choudhri w/permission MP

**ALI CHOUDHRI**

**Agreed: Ali Choudhri**

_____     _____2-21.22_____
                                    **Date**