IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-34815 (JPN) |
| **GALLERIA 2425 Owner, LLC** | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

---

**NATIONAL BANK OF KUWAIT S.A.K.P., NEW YORK BRANCH'S
MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION
OF CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR
AND OMNIBUS REPLY TO OBJECTIONS THERETO**

---

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ............................................................................................................... 1

Jurisdiction .................................................................................................................................. 2

Background .................................................................................................................................. 2

I.   Chapter 11 Case ................................................................................................................. 2

II.  Summary of the Plan ......................................................................................................... 3

III. Plan Solicitation and Voting Tabulation ......................................................................... 4

IV. Plan Supplement and Objections to the Plan ................................................................. 6

Argument ..................................................................................................................................... 6

I.   The Plan Complies With Section 1129(a)(1) ................................................................. 7

    A.  The Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122 ........... 7

    B.  The Plan Satisfies the Mandatory Requirements of 11 U.S.C. § 1123(a) ........... 9

    C.  Section 1123(b): The Plan Incorporates Certain Permissive Provisions .......... 11

    D.  Section 1123(d): Curing of Defaults .................................................................. 20

    E.  Section 1129(a)(2): Compliance with the Bankruptcy Code's Applicable
       Provisions ............................................................................................................ 20

    F.  Section 1129(a)(3): Good Faith ......................................................................... 22

    G.  Section 1129(a)(4): Professional Fees Subject to Court Approval .................... 24

    H.  Section 1129(a)(5): Compliance with Disclosure Requirements ....................... 24

    I.   Section 1129(a)(6): No Rate Changes ............................................................... 25

    J.   Section 1129(a)(7): Best Interests Test .............................................................. 25

    K.  Section 1129(a)(8): Acceptance of Impaired Classes ........................................ 26

    L.  Section 1129(a)(9): Payment in Full of Administrative and Priority Claims ................. 27

    M. Section 1129(a)(10): Impaired Accepting Class ............................................... 27

    N.  Section 1129(a)(11): The Plan is Feasible ........................................................ 27

    O.  Section 1129(a)(12): Payment of U.S. Trustee Quarterly Fees ........................ 29

    P.  Inapplicable Provisions:  11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15) and (a)(16) ........... 29

    Q.  Section 1129(b): Cramdown of Non-Accepting Classes ................................... 30

    R.  Section 1129(d): Principal Purpose of Plan Is Not Avoidance of Taxes ........... 33

CONCLUSION .......................................................................................................................... 34

# **TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*In re AJ Town Centre, LLC,*
  No. 2:10-bk-17310-GBN, 2012 WL 2524731 (Bankr. D. Ariz. Jan. 5, 2012) ........................17

*In re ASARCO LLC,*
  No. 05-21207, 2009 WL 8176641 (Bankr. S.D. Tex. Jun. 5, 2009) .......................................13

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
  526 U.S. 434 (1999) ...........................................................................................................25, 33

*In re Bigler LP,*
  442 B.R. 537 (Bankr. S.D. Tex. 2010) ...............................................................................13, 15

*In re Cajun Elec. Power Coop.,*
  150 F.3d 503 (5th Cir. 1998) ...................................................................................................21

*In re Chemtura Corp.,*
  439 B.R. 561 (Bankr. S.D.N.Y. 2010) ......................................................................................23

*In re Cypresswood Land Partners, I,*
  409 B.R. 396 (Bankr. S.D. Tex. 2009) ................................................................................21, 31

*In re Drexel Burnham Lambert Grp., Inc.,*
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) ...............................................................................7, 13, 31

*In re Foster Mort. Corp.,*
  68 F.3d 914 (5th Cir.1995) .......................................................................................................15

*In re Franco's Paving LLC,*
  654 B.R. 107 (Bankr. S.D. Tex. 2023) .....................................................................................31

*Galleria 2425 Owner LLC v. National Bank of Kuwait, S.A.K.P., New York Branch et al,*
  Adv. Pro. No. 23-03263 ............................................................................................................15

*In re General Homes Corp. FGMC,*
  134 B.R. 853 (Bankr. S.D. Tex. 1991) .....................................................................................13

*In re Gilbert,*
  104 B.R. 206 (Bankr. W.D. Mo. 1989) .....................................................................................32

*In re Goodrich Petroleum Corp.,*
  No. 16-31975 (MI) (Bankr. S.D. Tex. Sept. 28, 2016) ............................................................19

*In re Heritage Org., L.L.C.*,
    375 B.R. 230 (Bankr. N.D. Tex. 2007) ............................................................................13, 28

*In re Hot'z Power Wash, Inc.*,
    655 B.R. 107 (Bankr. S.D. Tex. 2023) ............................................................................22, 31

*In re Idearc Inc.*,
    423 B.R. 138 (Bankr. N.D. Tex. 2009),
    *aff'd, In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011) ............................................................8

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*
    *Kane v. Johns- Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) .................................................31

*In re Lichtin/Wade, LLC*,
    No. 12-00845-8-RDD, 2012 WL 3260315 (Bankr. E.D.N.C. Aug. 8, 2012) .........................32

*In re MCorp Financial, Inc.*,
    160 B.R. 941 (S.D. Tex. 1993) .............................................................................................32

*In re Meruelo Maddux Properties, Inc.*,
    637 F. Appx. 1012 (9th Cir. 2016) .......................................................................................32

*In re Moore*,
    608 F.3d. 253 (5th Cir. 2020) ...............................................................................................15

*Nextpoint Advisors, L.P. v. Highland Capital Mgmt, L.P. (In re Highland Capital Mgmt., L.P.)*,
    48 F.4th 419 (5th Cir. 2022) ...........................................................................................18, 19

*In re Ngan Gung. Rest.*,
    254 B.R. 566 (Bankr. S.D.N.Y. 2000) .................................................................................23

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d. Cir. 2000) ................................................................................................18

*In re RAAM Global Energy Co.*,
    No. 15-35615 (MI) (Bankr. S.D. Tex. Jan. 19, 2016) ..........................................................19

*In re Sandy Ridge Dev. Corp.*,
    881 F.2d 1346 (5th Cir. 1989) ........................................................................................23, 28

*In re Save Our Springs (S.O.S.) All., Inc.*,
    632 F.3d 168 (5th Cir. 2011) ..................................................................................................7

*In re Sentry Operating Co. of Tex., Inc.*,
    264 B.R. 850 (Bankr. S.D. Tex. 2001) .................................................................................30

*In re Star Ambulance Serv., LLC,*
    540 B.R. 251 (Bankr. S.D. Tex. 2015) ...............................................................7, 23

*In re Sun Country Dev. Inc.,*
    764 F.2d 406 (5th Cir. 1985) .................................................................................23

*In re T-H New Orleans Ltd. P'ship,*
    116 F.3d 790 (5th Cir. 1997) .................................................................................28

*In re Tex. Extrusion Corp.,*
    844 F.2d 1142 (5th Cir. 1988) ...............................................................................25

*In re Weatherford Int'l PLC, et al.,*
    No. 19-33694 (DRJ) (Bankr. S.D. Tex. Sept. 11, 2019).......................................19

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") files this memorandum of law and omnibus reply (the "Memorandum") in support of confirmation of the *Chapter 11 Plan of Liquidation of the Debtor*, dated April 10, 2024 [ECF No. 194] (as may be amended or supplemented, the "Plan").[1]  In further support of confirmation of the Plan, NBK submits the *Declaration of Michael C. Carter* dated June 14, 2024 (the "Carter Declaration") and respectfully states as follows:

<b><span style="font-variant:small-caps">Preliminary Statement</span></b>

1.      The Plan complies with the Bankruptcy Code's requirements for confirmation and provides for a value maximizing sale transaction for creditors and the estate.  Under the Plan, administrative expense claims, priority claims, and secured claims (other than NBK's) will be paid in full, as the Bankruptcy Code requires.  General unsecured trade creditors—creditors who likely are 'out of the money'—will receive a guaranteed recovery irrespective of whether the Sale generates value beyond the Property's secured debt.  This guaranteed recovery for trade creditors is based on a cash contribution from NBK (if it is the Successful Bidder) or from the third-party Purchase Price and will provide value to those creditors that would not be received in a chapter 7 liquidation.  For these reasons and others, the Plan should be confirmed.

2.      The objections to the Plan filed by the Debtor and 2425 WL, LLC ("2425 WL"), another entity owned by the Debtor's principal, Mr. Choudhri, are yet another self-serving attempt by Mr. Chouhri to retain his economic interest in the Property at the expense of creditors and the estate. As set forth below, these objections are entirely without merit.  All other objections to the Plan (formal and informal) raised by the Office of the United States Trustee and tax lien claimants

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

are expected to be resolved between now and the confirmation hearing through additions or changes to the Confirmation Order.

**JURISDICTION**

3.     This Court has jurisdiction to consider this matter under 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**I.      Chapter 11 Case**

4.     On December 5, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code (11 U.S.C. §§ 101 et seq.).[2]  The estate's sole asset is certain real property and improvements located at 2425 West Loop South, Houston, Texas 77027 (the "Property").[3]

5.     On January 31, 2024, the Court entered an order directing the appointment of a chapter 11 trustee.  *See* ECF No. 99.  On February 9, 2024, Christopher R. Murray was appointed as trustee of the Debtor's estate, and his appointment became effective on February 13, 2024 (the "Chapter 11 Trustee").  *See* ECF Nos. 116 and 121.  Upon the Chapter 11 Trustee's appointment, the Debtor's exclusive right to file and try to confirm a plan terminated.[4]

6.     On April 10, 2024, NBK filed the Plan and *Disclosure Statement for Chapter 11 Plan of Liquidation of the Debtor* (the "Disclosure Statement").  *See* ECF Nos. 194 and 195.

7.     On April 29, 2024, the Court entered an order (the "Bid Procedures Order") approving bid procedures for the sale of the Property and a form stalking horse purchase agreement

---

[2]  Unless otherwise stated, all references to 'section' or 'subsection' are references to the Bankruptcy Code.

[3]  Additional factual background is set forth in detail in the National Bank of Kuwait, S.A.K.P. New York Branch's Motion Pursuant to 11 U.S.C. § 1112(b) to Convert Chapter 11 Case to Chapter 7.  See ECF No. 72.

[4]  *See* 11 U.S.C. § 1121(c).

(the "Stalking Horse Agreement") with the Debtor, as seller, and NBK, as the stalking horse purchaser based on a credit bid of $18,600,000.  *See* ECF No. 254.

8.     Pursuant to the Bid Procedures Order, if the Chapter 11 Trustee receives qualified competing bids to purchase the property by the bid deadline of June 14, 2024 at 5:00 p.m. (prevailing Central Time), the Chapter 11 Trustee will conduct a court-supervised auction of the Property on June 18, 2024 at 1:00 p.m. (prevailing Central Time).  If there are no qualified competing bids, NBK will purchase the Property pursuant to the Stalking Horse Agreement, subject to Court approval.

9.     On April 30, 2024, the Court entered an order approving the retention of Hilco Real Estate, LLC to market the Property.  *See* ECF No. 257.

10.     On June 10, 2024, the Chapter 11 Trustee filed a status report on the marketing process [ECF No. 452] reporting that at least fifty (50) parties have initiated contact to request information regarding the Property, at least twenty-four (24) parties have signed non-disclosure agreements to receive information, and at least eight (8) parties have conducted on-site inspections.

## II.     Summary of the Plan

11.     Among other things, the Plan provides for the following:

- The liquidation of the Debtor's estate, including the Sale of the Property.  *See* Plan § VI.

- Creation of a Liquidation Trust that will receive an assignment of certain causes of action of the estate (the "Transferred Actions" as defined by the Plan).  *See* Plan § VI.F-G.  A trustee for the Liquidation Trust will administer the trust and its assets, including by prosecuting or compromising causes of action for the benefit of unsecured creditors.

- If NBK is the Successful Bidder, a contribution by NBK in the amount equal to (i) all Distribution Account Claims (which includes, without limitation, administrative expense, tax and other priority claims, and secured claims other than NBK), (ii) $150,000 as initial funding for the Liquidation Trust, and (iii) $238,307.99 for Trade General Unsecured Claims.  *See* Plan § VI.C.

3

- Treatment for the eight (8) creditor classes under the Plan are set forth on Schedule 1. This treatment includes:

  o Class 1 (Other Secured Claims), consisting of secured creditors other than NBK, as well as Class 2 (Other Priority Claims), will receive payment in full on the Effective Date (or in the case of Class 1, payment in full or the property securing the claims in full satisfaction thereof). *See* Plan § III.B.b-c.

  o Class 5(a) (Trade General Unsecured Claims) will receive a recovery of seventy percent (70%) in Cash on or after the Effective Date *plus* a pro rata share of the Liquidation Trust Assets. The Plan provides this recovery for trade creditors irrespective of whether NBK is the Successful Bidder in the Sale: if NBK is the Successful Bidder, then this recovery is funded by NBK's cash contribution, and if a third-party is the Successful Bidder, then this recovery is funded by the Purchase Price for the Property before payment on account of NBK's secured claim. *See* Plan § VI.C.

  o Class 5(b) (Other General Unsecured Claims) will receive a pro rata share of the Liquidation Trust Assets. Class 5(b) creditors consist mostly of attorneys formerly employed by the Debtor and, an unsecured deficiency claim by NBK equal to ninety-percent (90%) of the amount of its deficiency as determined by the Successful Bid and section 506(b).

- A release of estate claims against NBK. *See* Plan § IX.

## III.    Plan Solicitation and Voting Tabulation

12.    On May 3, 2024, the Court entered an order (i) approving the Disclosure Statement; (ii) scheduling the confirmation hearing for June 7, 2024; (iii) setting June 3, 2024 as the deadline for creditors to vote on the Plan (the "Voting Deadline"), (iv) setting June 3, 2024 at 4:00 p.m. as the confirmation objection deadline (the "Objection Deadline"); and (iv) directing NBK to serve the Plan, Disclosure Statement and a form ballot (the "Ballot" and together with the Plan and Disclosure Statement, the "Solicitation Package") on creditors entitled to vote on the Plan. *See* ECF No. 276.

13.    On May 6, 2024, NBK served the Solicitation Package on Holders of Claims in Class 4, Class 5(a) and Class 5(b) (the "Voting Classes") and a notice of non-voting status on

Holders of Claims Class 1 and 2 who are deemed to accept the Plan (the "Unimpaired Classes") and Holders of Claims and Interests in Classes 3, 6, 7 and 8 who are deemed to reject the Plan (the "Impaired Classes", together with the Unimpaired Claims, the "Non-Voting Classes"). *See* ECF No. 290.

14.     On May 13, 2024, the Court entered an order adjourning the hearing on confirmation of the Plan to June 17, 2024 at 9:00 a.m. (the "Confirmation Hearing"). *See* ECF No. 324.

15.     On May 14, 2024, NBK served an amended notice of the Confirmation Hearing on the Voting Classes and the Non-Voting Classes. *See* ECF No. 328.   On June 5, 2024, the Solicitation Agent filed the *Ballot Summary* (the "Voting Summary") [ECF No. 428].

16.     The Voting Summary shows that NBK was the only member of the Voting Classes to cast a vote and that it cast its votes in Class 4 and Class 5(b) to accept the Plan. While 2425 WL's claims are classified in Class 6, and therefore not entitled to vote on the Plan, it nevertheless submitted a ballot rejecting the Plan.  2425 WL's vote is disregarded because it is in Class 6.

17.     The Voting Summary shows that Class 4 and 5(b) accepted the Plan and that none of the Voting Classes rejected the Plan.

18.     On June 13, 2024, the Court denied a motion by 2425 WL to cancel the confirmation hearing alleging that NBK failed to provide proper service of the Plan.  *See* ECF No. 507.  The Court found that "the service of the plan proponent [NBK] is legally sufficient to meet the requirements of actual notice and due process."  ECF No. 507. The Court also found that to the extent necessary, pursuant to the Federal Rules of Bankruptcy Procedure 2002 and 9007, the Court "modifies the notice required by its Order (ECF No. 276) to the notice provided by NBK (ECF No. 290)."  *Id*.

**IV.**     **Plan Supplement and Objections to the Plan**

19.     On June 3, 2024, 2425 WL and the Debtor each filed an objection to the Plan. *See* ECF Nos. 401 and 409.

20.     On June 10, 2024, CC2 TX, LLC ("CC2 TX") filed an objection to the Plan. *See* ECF No. 454.

21.     NBK received an informal objection from the Office of the United States Trustee (the "U.S. Trustee") and agreed to extend the U.S. Trustee's time to file a formal objection while NBK worked with the U.S. Trustee to attempt to resolve its comments. If they are unable to do so, NBK reserves the right to file a response to any objection submitted by the UST.

22.     In addition to the formal objection by CC2 TX [ECF NO. 454], tax lien holders raised informal objections to the Plan requesting that it provide for payment of statutory interest accruing from the Petition Date until such claims are paid full.  The proposed Confirmation Order filed herewith should resolve these formal and informal objections by providing for the payment of post-petition statutory interest on tax lien claims through the date of payment.

23.     Attached as **Exhibit A** is a summary chart of the formal objections and responses to each objection.

<strong>A<small>RGUMENT</small></strong>

24.     Section 1129(a) of the Bankruptcy Code governs confirmation of a chapter 11 plan. To confirm a plan, the Court must find that each of the requirements of section 1129(a) are met. For the reasons set forth below, NBK submits that the Plan satisfies all of the requirements of section 1129(a) and thus the Plan should be confirmed. If, however, the Court determines that all requirements for confirmation are met except for subsection 1129(a)(8), then NBK submits that the Plan should still be confirmed pursuant to section 1129(b) because it satisfies the so-called 'cramdown' requirements of that subsection.

6

## I.    The Plan Complies With Section 1129(a)(1)

25.    Section 1129(a)(1) provides that a plan "complies with the applicable provisions of [the Bankruptcy Code]" and courts have interpreted this provision as requiring compliance with sections 1122 and 1123 governing classification of claims and contents of a plan, respectively.[5] As explained below, the Plan complies with the requirements of sections 1122 and 1123 and all other applicable provisions of the Bankruptcy Code.

### A.    The Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122

26.    Section 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[6]   Section 1122(b) permits separate classification of certain claims for purposes of administrative convenience.[7]   For a classification structure to satisfy section 1122, it is not necessary that all substantially similar claims or interests be designated in the same class, but only that all claims or interests designated in a particular class be substantially similar to each other.[8] In addition, a plan proponent is afforded "significant flexibility in classifying claims under section 1122(a) provided there is a reasonable basis for the classification scheme and all claims within a particular class are substantially similar."[9]

---

[5]   H.R. Rep. No. 95-595, at *412; *see also In re Star Ambulance Serv., LLC*, 540 B.R. 251, 260 (Bankr. S.D. Tex. 2015) ("Courts interpret [section 1129(a)(1)] to mean that a plan must meet the requirements of Bankruptcy Code Sections 1122 and 1123.") (citing *In re Save Our Springs (S.O.S.) All., Inc.*, 632 F.3d 168, 174 (5th Cir. 2011)).

[6]   11 U.S.C. § 1122(a).

[7]   *See* 11 U.S.C. § 1122(b).

[8]   *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.  It does not require that similar classes be grouped together, but merely that any groups be homogenous or share some attributes." (citations omitted)).

[9]   *In re Idearc Inc.*, 423 B.R. 138, 160 (Bankr. N.D. Tex. 2009), *aff'd, In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011).

27.     The Plan's classification of Claims and Interests satisfies the requirements of section 1122 because the Plan separately classifies claims and interests based on the legal or factual basis of the claim.  The separate classification of claims and interests are:

- Class 1 - Other Secured Claims
- Class 2 - Other Priority Claims
- Class 3 - NBK Tax Claim
- Class 4 - NBK Secured Claim
- Class 5(a) - Trade General Unsecured Claims
- Class 5(b) - Other General Unsecured Claims
- Class 6 - Insider Claims
- Class 7 - Subordinated Claims
- Class 8 - Interests

28.     Claims and interests assigned to each of these classes are substantially similar to the other claims and interests in that class. As explained below, the separate classes under the Plan are based on the different factual or legal bases for the Claims and no unfair discrimination exists:[10]

- Each member of Class 1 (Other Secured Claims), Class 3 (NBK Tax Claim) and Class 4 (NBK Secured Claim) hold secured claims against the Debtor.  While the claims in Class 1 and Class 3 each relate to tax liens against the Property, those claims are classified separately because the claims in Class 1 will be paid in full whether or not NBK is the Successful Bidder at the auction while the claims in Class 3 will be waived if NBK is the Successful Bidder. The Claims in Class 4 are classified separately from those in Class 1 and Class 3 because Class 4 claims arise out of the loan documents between the Debtor and NBK.

- The claims in Class 2 (Other Priority Claims) are classified separately due to their required treatment under section 507 of the Bankruptcy Code.

- The Plan includes two sub-classes of general unsecured claims. Class 5(a) consists of general unsecured claims arising from maintenance and related work performed by creditors at the Property while the claims in Class 5(b) arise

---

[10] For the reasons set forth herein, including NBK's responses in Exhibit A hereto, the objections by 2425 WL and the Debtor with respect to classification should be overruled.  *See* 2425 WL Objection ¶ 9(b) and Debtor Objection at 13.

out of other commercial contracts between creditors and the Debtor, including claims by former attorneys for the Debtor and NBK's deficiency claim on account of its loan to the Debtor. These general unsecured claims are classified separately because they are different in nature and type.

- The claims in Class 6 (Insider Claims) are separately classified because they are claims asserted by the Debtor's insiders, whose votes are not counted under section 1129(a)(10) (requiring at least one impaired class to vote to accept the plan without regard to any insider vote).

- The Claims in Class 7 (Subordinated Claims) are separately classified due to their statutory subordination and treatment under section 510(b) of the Bankruptcy Code. There are no members of Class 7.

- The Claims in Class 8 (Interests) are separately classified from other claims because they represent equity interests in the Debtor and are therefore different in nature and type from other claims.

29.     The Plan's classification structure complies with the Bankruptcy Code because it provides for the separate classification of Claims and Interests based upon the different legal nature and priority of such Claims and Interests. As a result, the Plan complies with section 1122.

B.      *The Plan Satisfies the Mandatory Requirements of 11 U.S.C. § 1123(a)*

30.     Section 1123(a) mandates that a plan:

(1) designate classes of claims and interests; (2) specify unimpaired classes of claims and interests; (3) specify treatment of impaired classes of claims and interests; (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest; (5) provide adequate means for implementation of the plan; (6) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (7) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the

manner of selection of the reorganized company's officers and directors.[11]

31.     Article III of the Plan satisfies the first <u>three</u> requirements of section 1123(a) by: (i) designating the eight (8) classes of claims and interests described above (section 1123(a)(1)); (b) specifying the classes of claims and interests that are unimpaired (section 1123(a)(2) with respect to Class 1 and Class 2); and (iii) specifying the treatment of claims and interests that are impaired (section 1123(a)(3) with respect to Classes 4, 5(a), 5(b), 6, 7 and 8).

32.     Article IV of the Plan satisfies the <u>fourth</u> requirement (section 1123(a)(4)) because it provides for equal treatment of all claims and interests within each class: all claims in Class 1 and Class 2 are unimpaired, all claims in Class 6 and Class 7 are impaired and will be discharged and extinguished, and all interests in Class 8 are impaired and will be cancelled and extinguished.

33.     NBK is the sole Holder of a Claim in Class 3 and such claim is impaired.  If NBK is the Successful Bidder, it will waive its Class 3 Claim.  If NBK is not the Successful Bidder, then its Class 3 Claim will be paid in full in cash.  NBK is also the sole Holder of an impaired claim in Class 4 and will be entitled to credit bid at the auction (if necessary) or receive the Remaining Cash as defined in the Plan and any excess proceeds after the Distribution Account Claims are paid in full.  Holders of Claims in Class 5(a) and Class 5(b) are also impaired.  Holders of Trade General Unsecured Claims in Class 5(a) will receive 70% of their Allowed Claims and a *pro-rata* share of the Liquidation Trust Assets, and Holders of Other General Unsecured Claims in Class 5(b) will receive a *pro-rata* share of the Liquidation Trust Assets, except that NBK agrees to reduce its unsecured claim in Class 5(b) to 90% of the Allowed amount of its deficiency claim.

34.     The Plan satisfies the <u>fifth</u> requirement (section 1123(a)(5)) because Article VI of the Plan provides adequate means for implementation as described in section II *supra*.

---

[11]   *See* 11 U.S.C. § 1123(a)(1)-(7).

35.     The <u>sixth</u> requirement (section 1123(a)(6)) - that the Plan prohibit the issuance of non-voting equity securities - does not apply because no securities will be issued under the Plan.

36.     Finally, the Plan satisfies the <u>seventh</u> requirement (section 1123(a)(7)), which requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."[12]

37.     On the Effective Date of the Plan, all managers, officers and directors of the Debtor shall be deemed to have resigned from their respective positions, and the Chapter 11 Trustee's position will be terminated.  The Liquidation Trustee will be appointed to liquidate remaining assets, if any, prosecute affirmative claims, resolve claims against the estate and distribute funds to holders of Allowed Claims in accordance with the terms of the Plan.  The Liquidation Trustee's appointment on the Effective Date is consistent with the interests of creditors and public policy because it provides an independent fiduciary to continue to manage and wind down the estate and prosecute and recover claims for the benefit of unsecured creditors as permitted under the Liquidation Trust Agreement.  The current Chapter 11 Trustee will serve as the Liquidation Trustee, and his appointment to this role is consistent with the interests of creditors and equity holders and public policy.  Therefore, the Plan satisfies section 1123(a)(7).[13]

C.      *Section 1123(b): The Plan Incorporates Certain Permissive Provisions*

---

[12]  11 U.S.C. § 1123(a)(7).

[13]  For the reasons set forth herein, including NBK's responses in Exhibit A hereto, the objections by 2425 WL and the Debtor with respect to identifying the Liquidation Trustee should be overruled.  *See* 2425 WL Objection ¶ 10 and Debtor Objection at 14-15.

38.     Section 1123(b) identifies various discretionary provisions that may be included in a chapter 11 plan, including a catch-all provision providing that a plan of reorganization may "include any other appropriate provision not inconsistent with the applicable provisions of [title 11]." *See* 11 U.S.C. § 1123(b)(6).  Here, the Plan complies with all applicable provisions of section 1123(b).

      i.      <u>Sections 1123(b)(1) and (2).</u>

39.     Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."[14]  Section 1123(b)(2) allows a plan to provide for assumption, assumption and assignment, or rejection of executory contracts and unexpired leases under section 365.[15]

40.     The Plan impairs certain Claims and Interests (Classes 3, 4, 5(a), 5(b), 6, 7 and 8) and leaves other Claims Unimpaired (Class 1 and Class 2).

41.     Article V.D of the Plan provides for the automatic rejection of executory contracts and unexpired leases to which the Debtor is a party if NBK is the Successful Bidder.  If NBK is not the Successful Bidder, then the Chapter 11 Trustee and the Purchaser will determine what contracts and leases will be assumed or rejected as provided for under the Plan.

      ii.      <u>Section 1123(b)(3).</u>

42.     Section 1123(b)(3)(A) provides that a chapter 11 plan may settle or adjust "any claim or interest belonging to the debtor or to the estate."[16]  In considering the propriety of estate releases, courts frequently use the reasonableness standards for approval of a settlement under Bankruptcy Rule 9019 or require a showing that granting the releases is a valid exercise of the

---

[14]  *See* 11 U.S.C. § 1123(b)(1).

[15]  *See* 11 U.S.C. § 1123(b)(2).

[16]  *See* 11 U.S.C. § 1123(b)(3)(A).

debtor's business judgment.[17]  Approval of a proposed settlement under Bankruptcy Rule 9019 is within the "sound discretion" of the bankruptcy court, but a court should not substitute its judgment for that of a debtor.  "Rather than being forced to decide all questions of law and fact that are settled, a Court need only 'canvas the issues [to] see whether the settlement fall[s] below the lowest point in the range of reasonableness.'"[18] By its terms, the Plan settles and adjusts claims or interests of the estate.

43.     Under section 1123(b)(3)(B) a plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose" of any claim or interest.[19]  As section 1123(b)(3)(B) permits, Article VI.K of the Plan transfers the Transferred Actions into the Liquidation Trust and allows the Liquidation Trustee to commence, pursue and settle the Transferred Actions for the benefit of unsecured creditors.

iii.     Section 1123(b)(4).

44.     Section 1123(b)(4) permits a plan of reorganization to provide for the sale of all or substantially all of the property of the estate, and distribution of the proceeds of such sale among holders of claims and interests.[20]  As discussed above, the Plan incorporates the Chapter 11 Trustee's sale of the Property and provides for distribution of sale proceeds in the event that NBK is not the Successful Bidder. If NBK is the Successful Bidder, its cash contribution to the estate will be distributed to creditors in the same manner.

---

[17]  *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the Debtors and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan"); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 308 (Bankr. N.D. Tex. 2007) ("[T]he plain language of § 1123(b)(3) provides for the inclusion in a plan of a settlement of claims belonging to the debtor or to the estate.") (emphasis omitted); *In re General Homes Corp. FGMC*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991) ("To the extent that . . . the plan purports to release any causes of action against the [creditor] which the Debtor could assert, such provision is authorized by § 1123(b)(3)(A).").

[18]  *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *10 (Bankr. S.D. Tex. Jun. 5, 2009) (quoting *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992)).

[19]  11 U.S.C. § 1123 (b)(3)(B).

[20]  *See* 11 U.S.C. § 1123(b)(4).

45.     Accordingly, the Plan satisfies section 1123(b)(4).

      iv.     <u>Section 1123(b)(5).</u>

46.     Section 1123(b)(5) provides that a plan may modify the rights of holders of secured claims or holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.[21]   As section 1123(b)(5) permits, the Plan modifies the rights of Holders of Claims or Interests in the Impaired Classes (Classes 3, 4, 5(a), 5(b), 6, 7 and 8), and leaves unaffected the rights of Holders of Claims in the Unimpaired Classes (Class 1 and Class 2).

      v.     <u>Section 1123(b)(6).</u>

47.     Section 1123(b)(6) provides that a Plan may include "any other appropriate provision not inconsistent with the applicable provisions of this title."   Here, in accordance with section 1123(b)(6), the Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code and other applicable law.   Specifically, the release, exculpation, and injunction provisions are appropriate and consistent with the applicable Bankruptcy Code provisions and Fifth Circuit law.[22]

      1.     <u>Estate Release</u>

48.     Under Article IX.D of the Plan, the Chapter 11 Trustee is releasing the Estate's Claims, Interests, or Causes of Action,[23] other than the retained actions identified on the Schedule

---

[21]   *See* 11 U.S.C. § 1123(b)(5).

[22]   For the reasons set forth herein, including NBK's responses in Exhibit A hereto, the objections by 2425 WL and the Debtor with respect to the exculpation and release provisions should be overruled.   *See* 2425 WL Objection ¶¶ 9(a), 9(e) and 15 and Debtor Objection at 12-14, 16-17.

[23]   The Estate Release provides that:

    Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and this Estate will be deemed to have forever released, waived and discharged the Released Parties from any and all Actions, Claims, obligations, suits, judgments, damages, demands, debts, rights, and liabilities, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection

of Retained Causes of Action, against each Released Party (including NBK) [24] (the "Estate Release").

49.     The Estate Release should be approved because it is "fair and equitable and in the best interest of the [e]state." [25]   The Debtor commenced an adversary proceeding against NBK by removing its state court lawsuit to this Court.  *See Galleria 2425 Owner LLC v. National Bank of Kuwait, S.A.K.P., New York Branch et al*, Adv. Pro. No. 23-03263 (the "Estate Lawsuit").  The Estate Lawsuit asserts tortious interference and lender liability claims against NBK, which stem from NBK's alleged breach of a confidential settlement agreement between Mr. Ali Choudhri, the Debtor, NBK, and the Debtor's mezzanine lender.  Pursuant to Bankruptcy Rule 2012(a), the Chapter 11 Trustee was substituted as the plaintiff in the Estate Lawsuit.

50.     After the Chapter 11 Trustee's appointment, the Court also entered a *Final Order Authorizing the Trustee to Use Cash Collateral* [ECF No. 187] (the "Final Cash Collateral Order").

51.     The Final Cash Collateral Order provided for the investigation of claims by the Chapter 11 Trustee against NBK and the ability to "challenge the amount or allowance of the NBK Claim, or seek to equitably subordinate that claim, up to ten (10) days before a hearing on any plan

---

with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan. This release does not release any Action, Claim, obligation, suit, judgment, damages, demands, debts, rights, and liabilities of a Released Party arising under or pursuant to the Plan or Purchase Agreement, and the contracts, instruments, releases and other agreements delivered in connection with the Plan or Purchase Agreement, which may be enforced only by the Chapter 11 Trustee, NBK, the Purchaser, the Distribution Agent or the Liquidation Agent, as applicable.

[24]   "*Released Parties*" means (a) the Chapter 11 Trustee; (b) NBK; (c) the Liquidation Trustee, and (d) each Related Party of each Entity in clause (a) through this clause (d).  For avoidance of doubt the Debtor, its current and former equity holders and Related Parties are not Released Parties.

"*Releasing Parties*" means, collectively, and in each case solely in their capacity as such, each of the Released Parties.

[25]   *Bigler*, 442 B.R. at 543 n.6 ("[S]ettlement provisions in a Chapter 11 plan must satisfy the standards used to evaluate compromises under Rule 9019.").  *See also In re Moore*, 608 F.3d. 253, 263 (5th Cir. 2020) ("(1) the probability of success in litigation, with due consideration for uncertainty in fact and law; (2) complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, including difficulties, if any, to be encountered in the matter of collection; (3) the paramount interest of creditors and proper deference to their respective views; (4) the extent to which the settlement is truly the product of arm's-length bargaining and not fraud or collusion; and (5) all other factors bearing on wisdom of compromise.") (citing *In re Foster Mort. Corp.*, 68 F.3d 914, 917-18 (5th Cir.1995)).

of reorganization for the Debtor is *first scheduled for hearing* with any such challenge to be heard and determined in connection with that hearing (the "Challenge Period")." Final Cash Collateral Order ¶ 3(a) (emphasis added). Because the Chapter 11 Trustee did not challenge NBK's Claim, the Final Cash Collateral Order bound the Chapter 11 Trustee and "all other parties in interest and all of their respective successors and assigns" by the stipulations in that order concerning the amount, validity, perfection and enforceability of NBK's claims. *Id.* ¶ 4.

52.     NBK understands that the Chapter 11 Trustee, with the assistance of its advisors, investigated and assessed claims and causes of action against the Released Parties. With respect to NBK, NBK produced documents to the Chapter 11 Trustee in response to requests and based on that investigation, NBK and the Chapter 11 Trustee have agreed settle any and all potential Estate issues and claims against NBK.

53.     NBK understands that the Chapter 11 Trustee's decision not to bring a challenge despite the Challenge Period in the Cash Collateral Order reflects the Chapter 11 Trustee's determination, after its investigation, that any claims against NBK lack sufficient merit or otherwise were not in the best interests of the estate to pursue. NBK, therefore, believes that the Estate Release is reasonable and understands that the Chapter 11 Trustee believes giving the Estate Release reflects his sound business judgment.

54.     In addition, the Estate Release is the result of arm's length negotiations between the Chapter 11 Trustee and NBK and is essential to the conclusion of this case and consummation of the Plan. Absent the Estate Release, NBK would not be obligated to fund the Plan, potentially leaving unsecured creditors with nothing. Given the Chapter 11 Trustee's investigation, evaluation, and decision not to challenge NBK's Claim, as well as the cost that would be incurred pursuing those claims against NBK, the Estate Release is fair and equitable, in the best interests of creditors,

and is an integral part of the Plan and the global settlement. The Chapter 11 Trustee's decisions to grant the Estate Release to NBK is a reasonable exercise of the Truste's business judgment, satisfies the standards under Bankruptcy Rule 9019 and should be approved.

55.     Further, the Estate Release only effects the release of direct or derivative claims belonging to the Estate.

### 2.  Exculpation

56.     Unlike a release, the Exculpation does not affect the liability of Exculpated Parties *per se*, but rather sets a standard of care of actual fraud, willful misconduct, or gross negligence in hypothetical future litigation against an Exculpated Party for acts arising out of this case.[26]  A bankruptcy court has the power to approve an exculpation provision in a chapter 11 case because a bankruptcy court must find a plan has been proposed in good faith in order to confirm such a plan.[27]  As such, an exculpation provision represents a legal conclusion that flows inevitably from several findings a bankruptcy court must reach in confirming a plan,[28] as well as the statutory exculpation in section 1125(e) of the Bankruptcy Code.[29]

57.     Once the court makes its good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan.[30] Exculpation provisions, therefore, appropriately prevent future collateral attacks against fiduciaries of a chapter 11 estate.

---

[26] *In re AJ Town Centre, LLC*, No. 2:10-bk-17310-GBN, 2012 WL 2524731, p. 4 (Bankr. D. Ariz. Jan. 5, 2012).

[27] *See* 11 U.S.C. § 1129(a)(3).

[28] *See* 28 U.S.C. § 157(b)(2)(L) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . [c]ore proceedings include, but are not limited to . . . confirmations of plans").

[29] *See* 11 U.S.C. § 1125 ("A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.").

[30] *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d. Cir. 2000) (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties . . . .").

58.     In light of an informal objection received from the UST, NBK has agreed to limit the exculpation provision in Article IX.C of the Plan (the "Exculpation") to reflect the Fifth Circuit Court of Appeal's decision in *Highland Capital*, which held that a bankruptcy court's ability to exculpate non-debtors is limited to creditors' committee members, trustees, and independent directors (in that case, acting as a quasi-trustee for the debtor-in-possession).[31]  The Exculpation in the Plan will be limited by adding the following paragraph to the Confirmation Order which eliminates all parties other than the Chapter 11 Trustee (and its Related Parties) from the Exculpation, including NBK:

> Notwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39, the Exculpated Parties under the Plan shall mean only the Chapter 11 Trustee and any Related Parties.

59.     As modified, the Exculpation is appropriate and vital because it provides protection to the Chapter 11 Trustee in connection with this case.[32] The Exculpation is narrowly tailored to exclude acts of willful misconduct or gross negligence, and relates only to acts or omissions in connection with, or arising out of, the administration of this case.

60.     Accordingly, the Exculpation should be approved.

---

[31] *See Nextpoint Advisors, L.P. v. Highland Capital Mgmt, L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 437-38 (5th Cir. 2022) (finding that an exculpation in a chapter 11 plan with respect to non-debtors may only cover a "creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties….")

[32] The Exculpation states:

Except as otherwise provided in the Plan, to the maximum extent permitted by the Bankruptcy Code and applicable law, no Exculpated Party shall have or incur any liability to any Person, including, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, filing, negotiating, prosecuting, administering, formulating, implementing, soliciting support or acceptance of, confirming or consummating this Plan, the Purchase Agreement, or the property to be distributed under this Plan, including all activities leading to the promulgation and Confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case; *provided*, *however*, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.

### 3. Injunction and Gatekeeping Provision

61.     Article IX.E of the Plan contains an injunction provision that permanently enjoins all Persons from commencing any action or proceeding against the Released Parties with respect to any Claims that have been discharged, released or exculpated under the Plan, [33] and a "gatekeeper provision" [34] that requires any party in interest to seek leave of this Court before commencing or pursuing a Claim or Action against the Released Parties that relate to the Debtor that arose before the Petition Date or arose in connection with this chapter 11 case, negotiations over the Plan and certain other Plan-related actions (collectively, the "Injunctions"). [35]

62.     The Injunctions are key provisions of the Plan because they enforce the release, discharge, and exculpation provisions that are central to the Plan and are narrowly tailored to achieve that purpose.  With respect to the gatekeeper provision, it does not prejudice any party because the Court would in any event have jurisdiction over any colorable claims raised by such

---

[33]  The injunction provision states:

Except as otherwise provided herein, on the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person (excluding the Liquidation Trustee) that has held, currently holds or may hold a Claim, Action or liability that is released pursuant to Article IX(D) from enforcing or attempting to enforce any such Claim, Action or liability against any Released Party or any of their respective Property….

[34]  The gatekeeping provision states:

[N]o Person who has held, holds, or may hold Claims, Interests, or Action may commence or pursue a Claim or Action, as applicable, of any kind in any way related to the Debtor against any Released Party that arose before the Petition Date or arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the Debtor's business, the administration of the Liquidation Trust, or the transactions in furtherance of the foregoing without the Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party that such person has standing and is otherwise entitled to assert such claim or cause of action and (ii) specifically authorizing such Releasing Party to bring such claim or cause of action against any such Released Party.

[35]  *See, e.g.*, *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) ("Courts have long recognized bankruptcy courts can perform a gatekeeping function" and "[w]e otherwise affirm the inclusion of the injunction and the gatekeeper provisions in the Plan.")*; In re Weatherford Int'l PLC, et al.*, at ¶ 28, No. 19-33694 (DRJ) (Bankr. S.D. Tex. Sept. 11, 2019) [ECF No. 343] (approving similar injunctions and finding that they are "an integral part of th[e] Plan and essential to its implementation."); *In re Goodrich Petroleum Corp.*, ¶¶ 29, 108, No. 16-31975 (MI) (Bankr. S.D. Tex. Sept. 28, 2016) [ECF No. 531] (approving substantially similar injunction as being "necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and . . . narrowly tailored to achieve this purpose"); *In re RAAM Global Energy Co.*, No. 15-35615 (MI) (Bankr. S.D. Tex. Jan. 19, 2016) [ECF No. 376] (approving similar injunction provision).

party after plan confirmation. The Plan's gatekeeping provision is not a release, but it is intended to protect against a party seeking to pursue non-meritorious litigation based on a Claim that belongs to, and is released under the Plan by, this Estate (so-called "derivative claims"). Given the history of vexatious litigation against NBK, this provision is especially important here.

63.      For the foregoing reasons, each of the permissive provisions discussed are appropriate and consistent with section 1123(b) and should be approved.

   D.      *Section 1123(d): Curing of Defaults*

64.      Section 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[36]  This provision generally does not apply because all executory contracts and unexpired leases are being rejected under the Plan if NBK is the Successful Bidder. *See* Plan § V.A.  If NBK is not the Successful Bidder, Plan § V.A complies with Section 1123(d) because it contemplates the assumption/assignment (and cure) of any executory contracts designated by any third-party purchaser of the Property.  *See id*.

   E.      *Section 1129(a)(2): Compliance with the Bankruptcy Code's Applicable Provisions*

65.      Section 1129(a)(2) requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[37] This provision has been interpreted to include the disclosure and solicitation requirements of sections 1125 and 1126.[38]  As explained in section III in the background section of this Memorandum, NBK complied with the notice and solicitation requirements of section 1125.

---

[36]  *See* 11 U.S.C. § 1123(d).

[37]  *See* 11 U.S.C. § 1129(a)(2).

[38]  *See, e.g.*, *In re Cajun Elec. Power Coop.*, 150 F.3d 503, 512 n.3 (5th Cir. 1998) (noting that section 1129(a)(2) includes requirement of compliance with section 1125); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 424 (Bankr. S.D. Tex. 2009) ("Bankruptcy courts limit their inquiry under § 1129(a)(2) to ensuring that the plan proponent has complied with the solicitation and disclosure requirements of § 1125." (citation omitted))

66.     Section 1126 sets forth the procedures for soliciting votes on a chapter 11 plan and determining acceptance thereof.  Pursuant to section 1126, only holders of allowed, impaired claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject a plan.[39]

67.     As set forth in section III in the background section of this Memorandum, in accordance with section 1125, NBK solicited acceptances or rejections of the Plan from Holders of Allowed Claims in Class 4, Class 5(a), and Class 5(b) because the claims in these Classes are impaired and will receive distributions[40] under the Plan.  NBK did not solicit votes from Holders of Claims in Class 1 and Class 2 because claimholders in these classes are Unimpaired and are conclusively presumed to have accepted the Plan. *See* Section 1126(f). NBK did not solicit votes from Holders of Claims and Interests in Classes 3, 6, 7, and 8 because they will not receive any distribution on account of their Claims and Interests and are deemed to reject the Plan under section 1126(g).

68.     Sections 1126(c) and 1126(d) specify the requirements for acceptance of a plan by classes of claims and interests:

> (c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

> (d) A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) or this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under

---

[39]  *See* 11 U.S.C. § 1126(a), (f) and (g).

[40]  Because Class 3, NBK's tax lien claim, will not receive a distribution in the event a third party is the Successful Bidder, it is deemed under the Plan to be a Non-Voting Class.

subsection (e) of this section, that have accepted or rejected such plan.[41]

69.     As shown in the Voting Summary, NBK voted to accept the Plan based on its claims in Class 4 and Class 5(b) and no other members of the Voting Classes cast a ballot. *See* ECF No. 428.  2425 WL purported to cast a ballot to reject the Plan, but its vote is not counted because it is already conclusively deemed to have rejected the Plan.

70.     No votes were cast in Class 5(a), but this failure to vote does not require a cramdown of that Class. A class that fails to vote for a plan should simply be ignored in tabulating votes on a plan.[42]

71.     However, if cram down of Class 5(a) is required, the Plan satisfies the cram down provisions of section 1129(b).

72.     Based on the foregoing, the Plan satisfies the requirements of section 1129(a)(2).

F.     *Section 1129(a)(3): Good Faith*

---

[41] 11 U.S.C. §§ 1126(c) and (d).

[42] *See In re Hot'z Power Wash, Inc.*, 655 B.R. 107 (Bankr. S.D. Tex. 2023) (finding that non-voting class was not counted as an acceptance or rejection (*i.e.*, ignored) for purposes of section 1129(a)(8)).

73.     Section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[43]  This section addresses the process of the plan development rather than the plan's contents.[44]

74.     Where the plan proponent proposes the plan with the legitimate and honest purpose to reorganize or liquidate and has a reasonable hope of success, the plan proponent satisfies the good faith requirement of section 1129(a)(3).[45]  "Good faith" is evaluated in light of the totality of the circumstances surrounding the development of the plan.[46]

75.     Here, the Plan has been proposed in good faith because it is designed to distribute value to the estate's creditors and is grounded in the court-supervised auction being conducted by the Chapter 11 Trustee.[47]  Under the Plan, secured and priority claims will be paid in full and trade creditors will receive a guaranteed distribution regardless of the outcome of the auction. In addition, other unsecured creditors, including the Debtor's former counsel who have not been paid for their work *against* NBK, could receive distributions under NBK's Plan if the Liquidation Trustee successfully prosecutes claims against third parties. The Plan also reflects the Chapter 11 Trustee's input on classification of claims, which included changes to the classification structure to afford recoveries to non-insider creditors adverse to NBK and ensure that trade creditors who have not been paid for their work receive substantial recoveries under the Plan.

---

[43] 11 U.S.C. § 1129(a)(3).

[44] *See In re Star Ambulance Serv., LLC*, 540 B.R. 251, 262 (S.D. Tex. 2015) ("As several courts have observed, the good faith requirement should be viewed in light of the totality of the circumstances surrounding the plan, and 'the requirement of Section 1129(a)(3) speaks more to the process of plan development than to the content of the plan.'") (quoting *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010)).

[45] *See In re Sun Country Dev. Inc.*, 764 F.2d 406, 408 (5th Cir. 1985); *see also In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1352 (5th Cir. 1989) ("although Chapter 11 is titled 'Reorganization,' a plan may result in the liquidation of the debtor").

[46] *See In re Sun Country Dev., Inc.*, 764 F.2d at 408.

[47] *See, e.g.*, *In re Ngan Gung. Rest.*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (emphasizing the equitable distribution of value to creditors as the primary objective in chapter 11 cases).

76.     In sum, in proposing its liquidation Plan of the Debtor NBK has satisfied its good faith obligations under section 1129(a)(3).[48]

G.     *Section 1129(a)(4): Professional Fees Subject to Court Approval*

77.     Section 1129(a)(4) requires the Court to review and approve "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case," including professionals.[49]

78.     The Plan complies with this provision because all fees for services rendered and expenses incurred in connection with this case, including Professional Fee Claims, are subject to Court approval.  Only Allowed Professional Fee Claims based on all final requests for payment filed no later than forty-five (45) days after the Effective Date (in accordance with Bankruptcy Code procedures, Bankruptcy Rules, and prior Court orders) will be paid.  NBK's fees and expenses will not be paid by the estate.

H.     *Section 1129(a)(5): Compliance with Disclosure Requirements*

79.     Section 1129(a)(5)(A)(i) requires the plan proponent to disclose "the identity and affiliation of any individual proposed to serve" as a director or officer of the debtor or a successor to the debtor under the plan.[50]  Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of such officers and directors be "consistent with the interests of creditors and equity security holders and with public policy."[51]

80.     The Plan provides that the Chapter 11 Trustee will serve as the Liquidation Trustee. NBK believes that the appointment of the Chapter 11 Trustee as the Liquidation Trustee on the

---

[48] For the reasons set forth herein, including NBK's responses in Exhibit A hereto, the objections by 2425 WL and the Debtor with respect to the Plan's good faith should be overruled.  *See* 2425 WL Objection ¶ 10 and Debtor Objection at 14.

[49] 11 U.S.C. § 1129(a)(4).

[50] 11 U.S.C. § 1129(a)(5)(A)(i).

[51] 11 U.S.C. § 1129(a)(5)(A)(ii).

Effective Date is consistent with public policy, and no party in interest has objected to the Plan on these grounds.

81.     The Plan satisfies section 1129(a)(5)(A).

*I.*     *Section 1129(a)(6): No Rate Changes*

82.     Section 1129(a)(6) requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."[52]

83.     This provision does not apply because no governmental regulatory commission has jurisdiction over the Debtor.

*J.*     *Section 1129(a)(7): Best Interests Test*

84.     Section 1129(a)(7) sets forth the so-called "best interests test."  That section provides that each holder of an impaired class of claims or interests must receive or retain at least what it would have if the debtor were liquidated under Chapter 7.[53]  The "best interests of creditors" test is satisfied where the estimated recoveries in a hypothetical chapter 7 liquidation are less than or equal to the estimated recoveries for a holder of an impaired claim or interest that rejects the plan.[54]

85.     As section 1129(a)(7) makes clear, the best interests test analysis applies only to non-accepting impaired claims or interests.  If a class of impaired claims or interests unanimously accepts the plan, the best interests test is deemed satisfied for all members of that class.[55]

---

[52]  11 U.S.C. § 1129(a)(6).

[53]  *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

[54]  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1159 n.23 (5th Cir. 1988) (a bankruptcy court is required to determine whether impaired claims would receive no less under a reorganization than through a liquidation).

[55]  *See* 11 U.S.C. § 1129(a)(7)(A)(i).

86.     The Plan satisfies section 1129(a)(7) because creditors in Classes 5(a) and 5(b) receive more under the Plan than they would in a chapter 7 liquidation while creditors in Class 6 and interest holders in Class 8[56] receive the same recovery.

87.     NBK will file a liquidation analysis estimating the range of recoveries under a hypothetical chapter 7 liquidation (the "Liquidation Analysis").  *See* Plan Supplement.  In a hypothetical chapter 7 liquidation, the Liquidation Analysis shows that Holders of unsecured claims receive nothing.  By contrast, under the Plan, creditors in Class 5(a) will receive a 70% recovery on account of their allowed claims, plus their share of the Liquidation Trust Assets and creditors in Class 5(b) will receive their share of the Liquidation Trust Assets.

K.     *Section 1129(a)(8): Acceptance of Impaired Classes*

88.     Section 1129(a)(8) requires that each class of claims or interests either accept a plan or not be impaired by a plan.[57]  A class of claims or interests that is not impaired under a plan is "conclusively presumed" to have accepted the plan and need not be further examined under section 1129(a)(8).[58]  A class of claims accepts a plan if the holders of at least two-thirds in dollar amount and more than one-half in the number of claims in the class vote to accept the plan, counting only those claims whose holders actually vote to accept or reject the plan.[59]  As discussed below, if any class of claims or interests rejects a plan, such plan must satisfy the "cramdown" requirements of section 1129(b).

---

[56] There are no members of Class 7.

[57] *See* 11 U.S.C. § 1129(a)(8).

[58] *See* 11 U.S.C. § 1126(f).

[59] *See* 11 U.S.C. § 1126(c).

89.     Only NBK voted to accept the Plan based on its Impaired Claims in Class 4 and Class 5(b).  The Impaired Claims in Class 6, Class 7 and Class 8 are deemed to reject the Plan.[60]

90.     The Plan is still confirmable over these rejecting Impaired Classes of Claims because it complies with section 1129(a)(10) and section 1129(b)'s cram down requirements as discussed further below.

*L.     Section 1129(a)(9): Payment in Full of Administrative and Priority Claims*

91.     Section 1129(a)(9) requires that claims entitled to priority under section 507(a) of the Bankruptcy Code must be paid in full in cash, unless the holder thereof agrees to a different treatment with respect to such claim.[61]

92.     Article II of the Plan complies with section 1129(a)(9) because it provides full payment of Allowed Administrative Claims, Priority Tax Claims, and Other Priority Claims on the Effective Date of the Plan or as soon as reasonably practicable thereafter.

*M.     Section 1129(a)(10): Impaired Accepting Class*

93.     Section 1129(a)(10) requires acceptance of the Plan by at least one class of impaired claims, excluding "acceptance of the plan by any insider."[62]

94.     The Plan complies with section 1129(a)(10) of the Bankruptcy Code because NBK voted to accept the Plan based on its Impaired Claims in Class 4 and Class 5(b) and based on those votes both Class 4 and Class 5(b) have accepted the Plan. NBK is not an insider within the meaning of the relevant provisions of the Bankruptcy Code.

*N.     Section 1129(a)(11): The Plan is Feasible*

---

[60] For the reasons set forth herein, including NBK's responses in Exhibit A hereto, the objections by 2425 WL and the Debtor with respect to section 1129(a)(8) should be overruled.  *See* 2425 WL Objection ¶ 12 and Debtor Objection at 16.

[61] *See* 11 U.S.C. § 1129(a)(9).

[62] 11 U.S.C. § 1129(a)(10).

95.     Section 1129(a)(11) requires the court to determine, in relevant part, that confirmation of the plan is not likely to be followed by liquidation or further financial reorganization unless such liquidation is proposed in the plan.[63]  This has been interpreted by courts as requiring a determination that the plan has a "reasonable probability of success."[64]

96.     A liquidating plan is not exempt from meeting the requirements under this section, but it does reduce the emphasis on future performance after the plan becomes effective.[65]  To demonstrate that a liquidating plan is feasible, a plan proponent need only show that "the successful performance of [the plan's] terms is not dependent or contingent upon any future, uncertain event."[66] A plan proponent does not need to establish that the success of any future litigation is guaranteed or that a trust's funds will never run out.[67]

97.     The Plan is feasible.  It ensures the payment of claims regardless of the outcome of the auction.  As stated, if NBK is the Purchaser, it will make a cash contribution to the estate in amounts sufficient to fund the Liquidation Trust, pay trade creditors in Class 5(a) 70% of their allowed claims, and pay all other Holders of the Distribution Account Claims in full, except the NBK Tax Claim which is waived if NBK is the Purchaser.  NBK has the means to make the payments contemplated under the Plan.  Based on National Bank of Kuwait S.A.K.P.'s annual financial report for 2023, its profit for 2023 was $1,918,086,000 and, as of December 31, 2023, it held cash and other short-term funds in the amount of $14,294,050,000.  *See* Carter Decl., Exhibit A at 119-21.  The New York Branch does not publish separate public financial reports.

---

[63]  11 U.S.C. § 1129(a)(11).

[64]  *See In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997).

[65]  *See T-H New Orleans*, 116 F.3d at 802 (citing *Sandy Ridge*, 881 F.2d at 1152-53) and explaining that even a liquidating chapter 11 plan does not violate section 1129(a)(11)).

[66]  *Heritage Org.*, 375 B.R. at 311 (holding that the creation of a creditor trust with *res* consisting of estate cash and the proceeds of any future successful litigation in addition to a fixed trust governance mechanism qualified as feasible).

[67]  *See T-H New Orleans*, 116 F.3d at 801 (a bankruptcy court "need not require a guarantee of success").

98.     If NBK is not the Purchaser, the same payments will be made from the sale proceeds paid by the Successful Bidder. In addition, creditors may receive additional distributions from the Liquidation Trust because the Liquidation Trust Assets include retained causes of action that the Liquidation Trustee may pursue against third parties.

99.     Overall, the Plan provides a process and a fixed trust governance mechanism for creditors, and performance of its terms does not hinge on any future or uncertain events. The Plan is feasible. [68]

O.     *Section 1129(a)(12): Payment of U.S. Trustee Quarterly Fees*

100.     Section 1129(a)(12) requires the payment of "[a]ll fees payable under Section 1930 [of title 28 of the United States Code], as determined by the Court at the Confirmation Hearing.[69] Section 507 provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[70]

101.     Article XI of the Plan complies with section 1129(a)(12) because it provides for the payment of all statutory fees until this case is converted, dismissed or closed.

P.     *Inapplicable Provisions:  11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15) and (a)(16)*

102.     Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established under section 1114 of the Bankruptcy Code.[71] Section 1129(a)(14) relates to the payment of domestic support obligations.[72] Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code).[73] Section 1129(a)(16)

---

[68] *See id*.

[69] 11 U.S.C. § 1129(a)(12).

[70] 11 U.S.C. § 507(a)(2).

[71] *See* 11 U.S.C. § 1129(a)(13).

[72] *See* 11 U.S.C. § 1129(a)(14).

[73] *See* 11 U.S.C. § 1129(a)(15).

applies to transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust made in accordance with applicable provisions of nonbankruptcy law.[74]

103.    These provisions do not apply because the Debtor: (i) is not an individual or subject to any domestic support obligations; and (ii) is a moneyed, business, or commercial corporation.

Q.    *Section 1129(b): Cramdown of Non-Accepting Classes*[75]

104.    Section 1129(b) provides a mechanism for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims or interests.  Under section 1129(b), the court may "cramdown" a plan over the dissenting vote of an impaired class of claims or interests so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.[76]  By its terms, section 1129(b) only applies to a class of creditors or interest holders that reject a plan.[77]

105.    Here, Class 6 and Class 8 are deemed to reject the Plan because they will not receive any property under the Plan on account of their Claims or Interests and as discussed below the Plan satisfies both cramdown requirements with respect to those Classes.  To the extent that the Plan must satisfy those requirements with respect to Class 5(a), where no votes were cast, it clearly does so; but cramdown of this Class is not required because Class 5(a) effectively is ignored.[78]

i.    The Plan Does Not Discriminate Unfairly

---

[74]  *See* 11 U.S.C. § 1129(a)(16).

[75]  NBK has an impaired claim in Class 3 based on certain tax liens and is deemed to reject the Plan.  As plan proponent, it is presumed that the cram down requirements have been satisfied with respect to the treatment of such claim.  In addition, NBK is not aware of any Subordinated Claims in Class 7.  Thus, cram down is not issue for such claims.

[76]  *See In re Sentry Operating Co. of Tex., Inc.,* 264 B.R. 850, 862 (Bankr. S.D. Tex. 2001).

[77]  *See* 11 U.S.C. § 1129(b)(1).

[78]  *See In re Franco's Paving LLC*, 654 B.R. 107, 108-09 (Bankr. S.D. Tex. 2023) (holding that where no votes are cast for a class of creditors, that class either is ignored for confirmation purposes or deemed to accept); *see also Hot'z Power Wash*, 655 B.R. at 118 (same).

106.    Section 1129(b)(1) does not prohibit discrimination between classes; rather, it prohibits unfair discrimination.   Under section 1129(b), a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment.[79]   As between two classes of claims or classes of interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims,[80] or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.[81]

107.    The Plan does not discriminate unfairly.  With respect to the non-voting Holders of Claims in Class 5(a), none of them objected to the Plan and they will receive property under the Plan which they would not otherwise receive.  Regardless of the outcome of the auction, it is likely that NBK will have a significant deficiency claim, meaning that the sale will not generate sufficient proceeds to pay anything to unsecured creditors.  In the Plan, however, NBK has ensured that unsecured creditors obtain a recovery through a guaranteed cash payment and interests in the Liquidation Trust.

108.    With respect to Holders of Claims and Interests in Class 6 (Insider Claims), their treatment under the Plan is proper. Class 6 includes parties that arguably hold general unsecured claims, which are likely 'out of the money' and not entitled to receive any distribution.  In addition, NBK notes that the Chapter 11 Trustee has objected to and sought disallowance of those claims because they lack any factual or legal basis. *See* ECF No. 403. In addition, it is appropriate to

---

[79]   *See Cypresswood Land Partners*, 409 B.R. at 434.

[80]   *See, e.g.*, *In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom*. *Kane v. Johns- Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[81]   *See, e.g.*, *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992).

separately classify the Insider Claims[82] as the votes of insiders are not considered under section 1129(a)(10).[83]

109.    With respect to the Holders of Interests in Class 8 (Interests) it does not unfairly discriminate against equity interest holders to classify them separately from the holders of creditor claims because of their different legal nature and the different facts that give rise to the claims of interest holders and creditors.  For all these reasons, the Plan does not unfairly discriminate against the Holders of Claims in Class 6 and Class 8 that are deemed to reject the Plan.

110.    Further, the Plan does not unfairly discriminate against the non-voting Holders of Claims in Class 5(a), to the extent those non-voting Holders are deemed to reject the Plan, because Holders in 5(a) are receiving value under the Plan that they are not entitled to receive.

ii.        The Plan Is Fair and Equitable

111.    Sections 1129(b)(2)(B)(ii) and (b)(2)(C)(ii) provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or interests if, under the plan, no holder of any junior claim or interest will receive or retain property under the plan on account of such junior claim or interest.[84]  Generally, this requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired rejecting class not receive any distribution

---

[82]  *See In re MCorp Financial, Inc.*, 160 B.R. 941, 949 (S.D. Tex. 1993) ("An insider is someone connected to or in a position of authority with the debtor. 11 U.S.C. § 101(31) (Supp. IV 1992). An insider's acceptance does not count. 11 U.S.C. § 1129(a)(10) (1988)."); *In re Meruelo Maddux Properties, Inc.*, 637 F. Appx. 1012, 1015 (9th Cir. 2016) ("The bankruptcy court did not err in confirming the plan of reorganization that divided insider and non-insider shareholders into separate classes."); *In re Lichtin/Wade, LLC*, No. 12-00845-8-RDD, 2012 WL 3260315, at *2 (Bankr. E.D.N.C. Aug. 8, 2012) (finding that the debtor's amended plan did not improperly classify claims, including Class 8, which "consists of insider claims whose votes will not be considered for purposes of 11 U.S.C. § 1129(a)(10)."); *In re Gilbert*, 104 B.R. 206, 210 (Bankr. W.D. Mo. 1989) ("Protecting the interests of other creditors also seems to be the driving force behind the preclusion of insiders of an impaired class from voting on a reorganization plan under Section 1129(a)(10).").

[83]  For the reasons set forth herein, including NBK's responses in Exhibit A hereto, the objections by 2425 WL and the Debtor with respect to unfair discrimination in Class 6 should be overruled.  *See* 2425 WL Objection ¶ 14 and Debtor Objection at 16.

[84]  *See* 11 U.S.C. §§ 1129(b)(2)(B)(ii) and (C)(ii).

under a plan on account of its junior claim or interest.[85]  Additionally, for a plan to be "fair and equitable," no creditor may be paid more than what it is owed (i.e., no class of creditors may receive more than 100% of its claims).

112.    The Plan is fair and equitable to the Holders of Claims in Classes 6 and 8 (as well as Class 5(a), to the extent necessary) because there is no value available to make distributions to these creditors, and the Plan does not provide for recoveries for claims or interests junior to these Classes.

113.    In sum, the Plan satisfies the requirements of section 1129(b) because it meets all the requirements of section 1129(a), except for subsection (a)(8), and does not discriminate unfairly and is fair and equitable with respect to Claims in Classes 6 and 8.

    *R.*    *Section 1129(d): Principal Purpose of Plan Is Not Avoidance of Taxes*

114.    Section 1129(d) prohibits the Court from confirming "a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[86]

115.    The Plan complies with this provision because it is not designed to avoid taxes or Section 5 of the Securities Act.  Article II.C of the Plan contemplates payment of Allowed Priority Tax Claims.

    *S.*    <u>Waiver of Bankruptcy Rule 3020(e)</u>

116.    To implement the Plan, NBK seeks a waiver of the 14-day stay of an order confirming the Plan under Bankruptcy Rule 3020(e).  Entry of the Confirmation Order will enable

---

[85]  *See 203 N. LaSalle P'ship*, 526 U.S. at 459.
[86]  11 U.S.C. § 1129(d).

the Chapter 11 Trustee to effectuate the sale of the Property contemplated in the Plan, with the Successful Bidder knowing that the terms of the Plan have otherwise been approved, and immediate entry and effect of the Confirmation Order will permit the sale to close and the Plan to go effective promptly.

## **CONCLUSION**

117.    For the foregoing reasons, the Court should confirm the Plan by entering an order attached as **Exhibit B**, overrule any objections, and grant further relief as is just and proper.

DATED: June 14, 2024

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Andrew M. Troop*

Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

- *and* -

Andrew M. Troop  (Bar No. MA547179)
Patrick E. Fitzmaurice*
Andrew V. Alfano (Bar No. NY5525241)
Kwame O. Akuffo*
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
andrew.alfano@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*Admitted *pro hac vice*

**Counsel for National Bank of Kuwait, S.A.K.P., New York Branch**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 14, 2024, a true and correct copy of this document was served via the Court's CM/ECF system on the Chapter 11 Trustee, the Debtor's counsel of record and all others who are deemed to have consented to ECF electronic service, and also by mailing, first class, postage prepaid, to each of the parties on the attached service list.

_/s/ Andrew M. Troop_
Andrew M. Troop