UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 Owner, LLC. | § | |
|     Debtor | § | Chapter 11 |

**SUPPLEMENTAL OBJECTION TO CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTOR BY NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH AND TO FINAL APPROVAL OF DISCLOSURE STATEMENT**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

COMES NOW 2425 WL, LLC ("Respondent") and files this Supplemental Objection to Plan of Liquidation filed by National Bank of Kuwait and would show as follows:

**PROCEDURAL BACKGROUND**

1. On April 10, 2024, National Bank of Kuwait filed a Plan of Liquidation and Disclosure Statement. The Disclosure Statement failed to contain most of the information required under 11 U.S.C. §1125.

2. The Bank also filed a Motion for Conditional Approval of the Disclosure Statement.

3. The Court set a deadline for filing objections to the Motion for Conditional Approval on April 24, 2024 at 5:00 p.m. and scheduled a hearing on April 25, 2024 at 2:30 p.m.

4. There were three timely objections to the Motion to Conditionally Approve the Disclosure Statement.

5. The Court entered an order canceling the hearing on the Motion for Conditional Approval and stated its intent to conditionally approve the disclosure statement.

6. On May 3, 2024, the Court entered an Order and Notice approving Disclosure Statement; Fixing Time for Filing Objections to Confirmation of Plan and Fixing Time for Hearing on Confirmation of Plan. The Court's order failed to set a deadline for balloting.

7. The Bank was required to mail out the plan, the disclosure statement and a ballot to creditors, equity security holders and other parties in interest.

8. The Court set June 3, 2024 as the deadline for filing objections to the Plan. 2425 WL, LLC filed a timely objection to the Bank's plan. Since filing its original objection, 2425 WL, LLC has uncovered additional reasons why the plan is unconfirmable. Rather than requiring the Court to compare the original and supplemental objections together, 2425 WL, LLC has added the additional material in bold.

## OBJECTIONS

9. Under 11 U.S.C. §1129(a)(1) the court must find that "the plan complies with the applicable provisions of this title." NBK's plan does not comply with title 11 in the following respects:

   a. The Exculpation provisions at para. IX(C) violate Fifth Circuit law. *Nexpoint Advisors, LP v. Highland Capital Management, LP (In re Highland Capital Management),* 48 F.4th 419 (5thCir. 2022). There the court stated that it "categorically bars third-party exculpations absent express authority in another provision of the Bankruptcy Code." In this case, the exulpations protect the Chapter 11 Trustee, NBK, the Liquidating Trustee, the Distribution Agent, the Purchaser and each current and former affiliate of each such entity for liability for negligence in connection with the Chapter 11 case. This is strictly prohibited.

   b. The plan violates 11 U.S.C. §1122 by classifying dissimilar claims in a single class. Specifically, Class 6 contains claims of insiders. This class includes the claim of 2425 WL, LLC, which is a secured claim and the claims of Ali Choudhri, Jetall Companies, Inc. and Jetall Capital, LLC, which are unsecured claims. See para. I(A)(46). Secured and unsecured claims are not similar claims which may be classified together.

   c. The Plan also violates 11 U.S.C. §1123(a)(4) by providing different treatment to creditors within a class without the consent of the class members. In Class 5(b), it states that "(t)he NBK Deficiency Claim shall not be subject to objection, disallowance, offset,

reduction or subordination." No other claim within class 5(b) receives this treatment. Thus, one member of Class 5(b) is more equal than the other members of Class 5(b).

d. **The Plan improperly classifies similar claims of unsecured creditors separately in order to gerrymander an accepting class. Classes 5(a), 5(b) and 6 are each classes of unsecured claims. The general rule for classifying unsecured claims was stated by the Fifth Circuit in** *Matter of Greystone III Joint Venture*, **995 F.2d 1274, 1279 (5th Cir. 1991) where the Court stated "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." The Bank offers the nonsensical justification that claims of insiders are not counted when determining acceptable by a class of impaired creditors. However, this rule only applies when determining whether the plan has been accepted by a class of impaired claims under 11 U.S.C. Sec. 1129(a)(10). It does not affect the general rule that claims of insiders are counted when determining acceptance or rejection by a class of claims.**

e. The Plan purports to deny the claims of insiders in Class 6 without due process. 11 U.S.C. §502(a) provides that a claim is allowed unless a party in interest objects. The Plan purports to deny the claims of insiders without an objection or a hearing.

f. Para. IX(E) of the Plan contains broad injunctive language. The first clause enjoins parties granting or being granted releases from pursuing released claims. This is not objectionable because it is limited to claims by and between NBK, the Trustee, the Liquidating Trustee, the Purchaser and affiliates of the same. However, it goes on to state that:

> **no Person who has held, holds, or may hold Claims, Interests, or Action may commence or pursue a Claim or Action, as applicable, of any kind in any way related to the Debtor against any Released Party that arose before the Petition Date or arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan,**

> the wind down of the Debtor's business, the administration of the Liquidation Trust, or the transactions in furtherance of the foregoing without the Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party that such person has standing and is otherwise entitled to assert such claim or cause of action and (ii) specifically authorizing such Releasing Party to bring such claim or cause of action against any such Released Party.

In *In re Highland Capital Management, supra*, the Fifth Circuit approved gatekeeping provisions under the *Barton Doctrine* against a trustee or other court-appointed officer. However, in this case, the gatekeeping provisions extend beyond the Trustee and also protect NBK and the Purchaser (which will likely also be NBK). NBK is not within the zone of interests protected by the *Barton* Doctrine. As drafted, the gatekeeping provision means that no party holding a claim in this case can ever sue NBK for any claim that arose before or during the case without permission from this Court. This Court lacks subject matter jurisdiction to enjoin claims between non-debtor parties. Therefore, the gatekeeping provision should be struck as it applies to NBK and the Purchaser.

10. Under 11 U.S.C. §1129(a)(2) the Plan Proponent must comply with the applicable provisions of title 11. This Court ordered that:

> Within two days after the entry of this order, the plan, the disclosure statement and a ballot conforming to Ballot for Accepting or Rejecting Plan of Reorganization (Official Form 314) shall be mailed to creditors, equity security holders, and other parties in interest, and shall be transmitted to the United States trustee.

The Affidavit of Mailing filed by the Bank shows that only certain creditors and parties in interest received the full mailing. Creditors, such as 2425 WL, LLC, which were deemed to reject the plan were to receive a notice as were creditors left unimpaired. The Court has found that limited service to the creditors deemed to reject could be allowed. However, this does not cure the issues with the mailing. Although the Affidavit of Mailing stated that service was made on the undersigned counsel, it has not been received as of the current date. Given that no creditors other than NBK and 2425 WL, LLC actually cast a vote upon the plan, it

**seems unlikely that creditors and parties in interest actually received the plan mailing. Further, the Affidavit of Mailing does not show that the Plan was served on parties to executory contracts and unexpired leases, who are certainly parties in interest.**

11.     The Plan fails to provide "adequate means for the plan's implementation" as required by 11 U.S.C. §1123(a)(5). The Plan provides that the Confirmation Order shall "authorize the consummation of the Sale . . . free and clear of any Claims, Liens, interests, encumbrances, executory contracts or unexpired leases . . . . " However, the auction sale will not occur until after the Confirmation hearing. Under 11 U.S.C. §1129(a)(3) the Court must find that "(t)he plan has been proposed in good faith and not by any means forbidden by law." The plan has not been proposed in good faith. The plan and the sales process it encompasses have been proposed for the purpose of allowing NBK to acquire the Debtor's real property by means of a credit bid without any meaningful opportunity for third party bidding. Specifically, the Plan allows NBK to make an initial credit bid of $18.6 million but allows an ultimate credit bid of up to $62 million. 2425 WL, LLC has objected to the bank's ability to credit bid. However, that motion will not be heard until the day of the confirmation hearing. By this time, the deadline for third parties to have submitted bids will have passed. Legitimate third-party bidders will be deterred by the prospect of a bank with almost unlimited credit bidding rights, especially when the Bank's claim and lien rights are suspect due to its extended history of improper conduct as referenced in other pleadings filed in this case. Further, Hilco has not sought to legitimately market the property. The flyer sent out to bidders states that the minimum overbid is $19,750,000. However, the Court approved bid procedures provide that the highest bid submitted will be the Baseline Bid. Thereafter, bidding will proceed in increments of $250,000. The Baseline Bid need only be the highest bid received by the Trustee by the bid deadline which could be $18,601,000. As a result, Hilco has advertised a higher opening bid than allowed by the Court's orders. Further, the phone number which Hilco placed on the property goes to a line dedicated to another case. Further, phone calls to Hilco by prospective bidders are not

returned. The sales procedures in this case were approved on April 29, 2024. The deadline to submit bids is June 14, 2024. Additionally, Hilco was only approved as a broker on April 30, 2024. As a result, the property is being marketed for just 45 days, a woefully insufficient period for an asset of this type.

12. The Plan does not satisfy 11 U.S.C. §1129(a)(5) which requires that the Plan Proponent disclose "the identity and affiliation of any individual proposed to serve, after confirmation of the plan. " The Plan does not disclose who will serve as Liquidation Trustee. Instead, the Plan just contains a circular reference stating that the Liquidation Trustee shall be "the trustee of the liquidation trust."  See para. I(A)(54).

13. The Plan does not satisfy 11 U.S.C. §1129(a)(8) because classes 3, 6, 7 and 8 are deemed to reject. As a result, the Plan must satisfy the cramdown requirements of 11 U.S.C. §1129(b).

14. **The Plan does not comply with 11 U.S.C. §1129(a)(10) which requires that "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider." Under 11 U.S.C. §1126(a), (t)he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." The only creditor to accept the Plan was NBK. NBK does not hold a claim or interest allowed under section 502 of this title. Therefore, the plan cannot be approved.**

15. Under 11 U.S.C. §1129(b)(1) in order to cramdown a plan despite the rejection of at least one class of impaired claims, the plan must not discriminate unfairly and must be fair and equitable.

16. The Plan contains unfair discrimination. There are three classes of unsecured claims. Class 5(a) consisting of Trade General Unsecured Claims receives 70%. plus a pro rata share of the liquidating trust assets.  Class 5(b) consisting of Other General Unsecured Claims receives a pro rata share of the liquidating trust assets. Class 6 consisting of insiders receives no distribution. The

general rule for classifying unsecured claims was stated by the Fifth Circuit in *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991) where the Court stated "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." There is no justification offered for the disparate treatment. In some cases, a higher distribution to current vendors has been justified where the support of those creditors is necessary to the plan's success. However, this is a liquidating plan in which the new owner of the property will be free to decide which vendors to retain and which to replace. NBK has offered preferential treatment to the Trade General Unsecured Creditors in order to gerrymander acceptance of the Plan.

17. **The Plan also unfairly discriminates between secured claims. Class 1 is a class of "Other Secured Claims." It is purportedly left unimpaired. This means that the Other Secured Claims in Class 1 will be paid according to the terms of their claims. This is not objectionable with respect to the ad valorem tax claims which hold superior priority under Texas law. However, NBK has includes the mechanic's lien claim of Arin-Air, Inc. within this class. Arin-Air, Inc. is a mechanic's lien which is junior to the lien of 2425 WL, LLC. However, it will receive payment in full on its lien while 2425 WL, LLC will receive no payment on account of its lien. This is clearly unfair discrimination.**

18. The plan is also not fair and equitable. While 11 U.S.C. §1129(2)(B) states that the requirement to be fair and equitable "includes" certain treatment, that is not exclusive. The Court may look to broader concepts of fairness and equity. In *D & F Construction, Inc.*, 865 F. 2d 673, 675 (5th Cir. 1989), the court stated:

> Section 1129(b)(2) sets minimal standards plans must meet. However, it is not to be interpreted as requiring that every plan not prohibited be approved. A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is "fair and equitable."

In this case, one of the most valuable assets of the estate consists of claims against NBK. These claims are so valuable that the law firm of Passman Jones has offered to pursue such claims on a

contingent fee basis and advance costs. **2425 WL, LLC has made a cash offer to purchase such claims for $700,000.00.** However, the Trustee has made minimal to no efforts to investigate these claims. The Plan proposes to release these claims providing that NBK will discount its unsecured claim by 10%. See para. III(B)(g). While a plan may propose a compromise and settlement, such compromise must be fair and equitable the same as a compromise under Fed.R.Bankr.P. 9019. *In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984). Assuming that NBK has a claim of $62 million and acquires the property for a credit bid of $18.6 million, its unsecured claim would be $43.4 million.[1] A 10% reduction of this amount would be $4.34 million. However, this is not an actual cash amount being paid. The Plan does not even attempt to justify the settlement proposed. Rather, it simply provides for a discount against an unsecured claim which will receive an unknown amount under the plan. In short, the consideration being offered for compromise of this valuable claim is illusory.

19. Confirmation should also be denied because acceptance of the plan was solicited without adequate information as required by 11 U.S.C. §1125. NBK requested conditional approval of its disclosure statement. This means that it must still prove that its disclosure statement contained adequate information in order for the plan to be confirmed. In this case, the Disclosure Statement lacked the following information:

> (a) On page 2 of the NBK Disclosure Statement, it asserted that "Various litigation maneuvers between the parties occurred for almost the next twelve months." NBK should have been required to disclose the specific lawsuit or lawsuits filed and the contentions of the parties.
>
> (b) . NBK should have been required to disclose that on June 12, 2023 its lawyers stated "that there is no settlement agreement."
>
> (c). NBK should have been required to disclose that on June 28, 2023, its lawyers

---

[1] 2425 WL, LLC does not stipulate that the Bank has a valid claim for $62 million. These numbers are being used for purposes of example only.

stated that the "Current Outstanding Settlement Balance" was $26,038,040.92.

(d).     On page 3 of the NBK Disclosure Statement, it asserts that "The Debtor defaulted under the Settlement Agreement by failing to comply with its payment terms." NBK should have been required to disclose that the Debtor contends that NBK defaulted first by interfering with Debtor's attempts to lease the property and by failing to tender a loan purchase agreement. NBK should also be required to state when the alleged default occurred.

(e) .    On page 3, NBK contends that the state court allowed it to post the property for a foreclosure sale on July 5, 2023. NBK should have been required to disclose that the Debtor disputes that NBK was allowed to post the property and that such posting prevented Debtor's attempt to meet the settlement terms.

(f).     On page 4, NBK states that Adv. No. 23-03263 and Adv. No. 24-3043 will be dismissed under the Plan. NBK should have disclosed what consideration, if any, it is providing for dismissal of these actions and what the basis for dismissing such actions is.

(g)     On page 5, NBK stated that it will make a credit bid. NBK should be required to discuss the effect of Sec. 363(k) on its ability to credit bid.

(h).    On page 6, NBK lists the classification of claims and interests. NBK should have disclosed which creditors fall within which classes. If NKB intends to classify Respondent's claim as an "Insider" claim, NBK should disclose why it believes that classifying secured and unsecured claims in a single class is permitted by the Code.

(i). On page 6, NBK stated that on the Effective Date all unexpired leases shall be rejected. NBK should have discussed how rejection of all leases in the building will affect the value of the property.

(j). On page 7, NBK should have disclosed whether claims against NBK will be

transferred to the Liquidation Trust, and if not, why not. NBK should be required to disclose what claims will be transferred to the Liquidation Trust without resorting to defined terms which obscure the substance of the contents of the Liquidation Trust.

(k). On page 8, NBK should have disclosed whether the Trustee consents to the settlements contained in the Plan. NBK should be required to explain exactly what claims and causes of action are being compromised and released, what the merits of such claims are and whether NBK is providing any consideration for such releases. NBK should be required to disclose whether its plan contains third party releases and whether such releases are permissible in the Fifth Circuit.

(l). NBK should have disclosed how its proposed exclupations contained on page 9 comply with applicable Fifth Circuit law and whether NBK is seeking to release its own attorneys for negligence in connection with this case.

(m). NBK should have disclosed why it believes that the automatic stay may continue in effect after confirmation of the Plan.

(n). NBK should have disclosed why it believes that its Gatekeeping Provision on page 10 complies with applicable Fifth Circuit law.

(o). NBK should have disclosed that 2425 WL offered to pay $500,000 for claims against NBK. NBK should disclose why it is in the best interest of the estate to release claims against NBK when there is a qualified lawyer willing to pursue claims against NBK on a contingent fee basis.

(p). NBK should have provided a full and fair discussion of the value of the assets of the estate.

(q). NBK should have provided a full and fair discussion of the claims and causes of action belonging to the estate.

Given the failure to provide adequate information, NBK should be required to resolicit acceptances

and rejections of the plan.

DATED: June 16, 2024.

                                        Respectfully Submitted,

                                        **BARRON & NEWBURGER, P.C.**
                                        7320 N. MoPac Expwy., Suite 400
                                        Austin, Texas 78731
                                        Tel: (512) 476-9103

                   By:       */s/ Stephen W. Sather*
                                        Stephen W. Sather
                                        State Bar No.

                                        **ATTORNEYS FOR**
                                        **CREDITOR, 2425 WL,LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing Objection was served on the 17th day of June, 2024 to the parties on the attached list by first mail and by CM/ECF to all parties registered to receive such service.

                                                  */s/ Stephen W. Sather*
                                                  Stephen W. Sather

```
Label Matrix for local noticing          2425 WL, LLC                              Arin-Air Inc.
0541-4                                   2425 West Loop South 11th floor           c/o Smith & Cerasuolo, LLP
Case 23-34815                            Houston, TX 77027-4304                    7500 San Felipe, Suite 777
Southern District of Texas                                                         Houston, TX 77063-1709
Houston
Tue Jun 11 11:35:00 CDT 2024

CC2 TX, LLC                              City of Houston                           Galleria 2425 Owner, LLC
c/o Howard Marc Spector                  Linebarger Goggan Blair & Sampson LLP     1001 West Loop South 700
Spector & Cox, PLLC                      c/o Tara L. Grundemeier                   Houston, TX 77027-9084
12770 Coit Road Suite 850                PO Box 3064
Dallas, TX 75251-1364                    Houston, TX 77253-3064


(p)HARRIS COUNTY ATTORNEY'S OFFICE       Hayward PLLC                              Houston Community College System
P O BOX 2928                             c/o Melissa Hayward                       Linebarger Goggan Blair & Sampson LLP
HOUSTON TX 77252-2928                    10501 N. Central Expy., Ste. 106          c/o Tara L. Grundemeier
                                         Dallas, TX 75231-2203                     PO Box 3064
                                                                                   Houston, TX 77253-3064


Houston ISD                              National Bank of Kuwait, S.A.K.P., New York    4
Linebarger Goggan Blair & Sampson LLP                                              United States Bankruptcy Court
c/o Tara L. Grundemeier                                                            PO Box 61010
PO Box 3064                                                                        Houston, TX 77208-1010
Houston, TX 77253-3064


2425 WL, LLC                             2425 West Loop, LLC                       ADT
13498 Pond Springs Rd.                   2000 Hughes Landing Blvd., Suite 815      PO Box 382109
Austin, TX 78729-4422                    The Woodlands, Texas 77380-4142           Pittsburgh, PA 15251-8109


Ali Choudhry                             Arin-Air, Inc.                            Ash Automated Control Systems, LLC
1001 West Loop South 700                 5710 Brittmoore Rd. #13                   PO Box 1113
Houston, TX 77027-9084                   Houston, TX 77041-5627                    Fulshear, TX 77441-2013


CC2 TX, LLC                              CFI Mechanical, Inc                       CNA Insurance Co
14800 Landmark Blvd., Suite 400          6109 Brittmoore Rd                        PO Box 74007619
Dallas, TX 75254-7598                    Houston, TX 77041-5610                    Chicago, IL 60674-7619


Caz Creek Lending                        Cirro Electric                            City of Houston
118 Vintage Park Blvd No. W              PO Box 60004                              PO Box 1560
Houston, TX 77070-4095                   Dallas, TX 75266                          Houston, TX 77251-1560


City of Houston                          Comcast                                   Datawatch Systems
c/o Tara L. Grundemeier                  PO Box 60533                              4520 East West Highway 200
Linebarger Goggan Blair & Sampson LLP    City of Industry, CA 91716-0533           Bethesda, MD 20814-3382
PO Box 3064
Houston, TX 77253-3064


Environmental Coalition Inc              Ferguson Facilities Supplies              Firetron
PO Box 1568                              PO Box 200184                             PO Box 1604
Stafford, TX 77497-1568                  San Antonio, TX 78220-0184                Stafford, TX 77497-1604
```

| | | |
|---|---|---|
| (p)FIRST INSURANCE FUNDING<br>450 SKOKIE BLVD SUITE 1000<br>NORTHBROOK IL 60062-7917 | Gulfstream Legal Group<br>1300 Texas St<br>Houston, TX 77002-3509 | H.N.B. Construction, LLC<br>c/o Malcolm D. Dishongh<br>PO Box 2347<br>Humble, TX 77347-2347 |
| HNB Construction, LLC<br>521 Woodhaven<br>Ingleside, TX 78362-4678 | Hayward PLLC<br>c/o Melissa S. Hayward<br>10501 N. Central Expy., Ste. 106<br>Dallas, TX 75231-2203 | Houston Community College System<br>c/o Tara L. Grundemeier<br>Linebarger Goggan Blair & Sampson LLP<br>PO Box 3064<br>Houston, TX 77253-3064 |
| Houston ISD<br>c/o Tara L. Grundemeier<br>Linebarger Goggan Blair & Sampson LLP<br>PO Box 3064<br>Houston, TX 77253-3064 | Jetall Companies, Inc<br>1001 West Loop South Ste 700<br>Houston, TX 77027-9033 | Kings 111 Emergency Communications<br>751 Canyon Drive, Suite 100<br>Coppell, TX 75019-3857 |
| Lexitas<br>PO Box Box 734298 Dept 2012<br>Dallas, TX 75373-4298 | Lloyd E. Kelley<br>2726 Bissonent Suite 240<br>Houston, TX 77005-1352 | Logix Fiber Networks<br>PO Box 734120<br>Dallas, TX 75373-4120 |
| MacGeorge Law Firm<br>2921 E 17th St Blgd D Suite 6<br>Austin, TX 78702-1572 | Mueller Water Treatment<br>1500 Sherwood Forest Dr.<br>Houston, TX 77043-3899 | Naissance Galleria, LLC<br>c/o Law Office of Nima Taherian<br>701 N. Post Oak Rd. Ste 216<br>Houston, TX 77024-3868 |
| National Bank of Kuwait<br>299 Park Ave. 17th Floor<br>New York, NY 10171-0023 | Nationwide Security<br>2425 W Loop S 300<br>Houston, TX 77027-4205 | Nichamoff Law Firm<br>2444 Times Blvd 270<br>Houston, TX 77005-3253 |
| Rodney L. Drinnon<br>2000 West Loop S, Ste. 1850,<br>Houston, Texas 77027-3744 | TKE<br>3100 Interstate North Cir SE  500<br>Atlanta, GA 30339-2296 | U.S. Trustee's Office<br>515 Rusk, Suite 3516<br>Houston, Texas 77002-2604 |
| US Retailers LLC d/b/a Cirro Energy<br>Attention: Bankruptcy Department<br>PO Box 3606<br>Houston, TX 77253-3606 | US Trustee<br>Office of the US Trustee<br>515 Rusk Ave<br>Ste 3516<br>Houston, TX 77002-2604 | Waste Management<br>PO Box 660345<br>Dallas, TX 75266-0345 |
| Zindler Cleaning Service Co<br>2450 Fondren 113<br>Houston, TX 77063-2314 | Ali Choudhri<br>24256 West Loop South<br>11th Floor<br>Houston, TX 77027 | Christopher R Murray<br>Jones Murray LLP<br>602 Sawyer St<br>Ste 400<br>Houston, TX 77007-7510 |
| James Q. Pope<br>The Pope Law Firm<br>6161 Savoy Drive<br>Ste 1125<br>Houston, TX 77036-3343 | Jeffrey W Steidley<br>Steidley Law Firm<br>3000 Weslayan<br>Ste 200<br>Houston, TX 77027-5741 | Reese W Baker<br>Baker & Associates<br>950 Echo Lane<br>Suite 300<br>Houston, TX 77024-2824 |

Rodney Drinnon
McCathern Houston
2000 W Loop S
Ste. 1850
Houston, TX 77027-3744

      The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
      by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Harris County, ATTN: Property Tax Division<br>Harris County Attorney's Office<br>P.O. Box 2928<br>Houston, TX 77252-2928 United States | First Insurance Funding<br>450 Skokie Blvd<br>Northbrook, IL 60062 | (d)Harris County Tax Assessor<br>PO Box 4622<br>Houston, TX 77210 |

(d)Harris County, et al
PO Box 2928
Houston, TX 77252


      The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)2425 West Loop, LLC | (u)Landry's Inc. | (u)Sonder USA Inc. |
| (d)Arin-Air, LLC<br>5710 Brittmoore Rd. #13<br>Houston, TX 77041-5627 | (du)Sonder USA Inc. | (u)Azeemeh Zaheer |
| (u)Jack Rose | End of Label Matrix<br>Mailable recipients    60<br>Bypassed recipients     7<br>Total                   67 | |