| | |
|---|---|
| **From:** | Brian T. Rice |
| **To:** | Fitzmaurice, Patrick E. |
| **Subject:** | Fwd: financing commitment for Galleria 2425 Owner LLC |
| **Date:** | Thursday, June 13, 2024 11:43:04 AM |
| **Attachments:** | image00a658.PNG |
| | image3e31a3.PNG |
| | Legalist Term Sheet.pdf |
| | 2024.06.11 NBK Subpoena to Legalist.pdf |

Patrick,

Your note got forwarded up to me.

I'm told this application didn't make it through underwriting, so the funds we manage won't be moving forward with an investment.

I haven't reviewing the filing that our term sheet was attached to, but the underwriting decision was passed along to the debtor/sponsor -- so I'd imagine that document will be withdrawn.

Brian T. Rice
**LEGALIST, INC.**
General Counsel &
Chief Operating Officer
brian.rice@legalist.com

---------- Forwarded message ---------
From: **Fitzmaurice, Patrick E.** <patrick.fitzmaurice@pillsburylaw.com>
Date: Tue, Jun 11, 2024 at 8:20 AM
Subject: financing commitment for Galleria 2425 Owner LLC
To: heather.davey@legalist.com <heather.davey@legalist.com>

Heather,

Good morning. I am an attorney with Pillsbury, Winthrop, Shaw Pittman LLP and we represent the National Bank of Kuwait, S.A.K.P. New York Branch in connection with the bankruptcy case of Galleria Owner 2425 WL LLC, which is pending in Houston. We understand that Legalist entered into a term sheet with the debtor to provide certain funding to the debtor in connection with the case. I've attached a copy of the term sheet that the debtor filed with the court as an exhibit to an earlier version of its plan.

Yesterday, the bankruptcy court entered an order setting the confirmation hearing for the debtor's reorganization plan and for the liquidation plan we filed on NBK's behalf for next Monday, June 17. The asserted funding from Legalist is a significant feature of the debtor's plan. Indeed, as I understand it, the funding from Legalist is the basis for the debtor's assertion that it can make the payments to NBK required by its plan.

I've attached a form of subpoena that calls for a deposition of a corporate representative of Legalist at our San Francisco office on Friday, June 14. The purpose of the deposition would be to memorialize Legalist's testimony for use at the confirmation hearing. I would prefer not to have to serve the subpoena and would like to speak with you or another member of the Legalist team today if you have a few minutes.

I am in the office – 212.858.1171

**Patrick E. Fitzmaurice** | Partner
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131
t +1.212.858.1171 | m +1.917.608.8497
patrick.fitzmaurice@pillsburylaw.com | website bio

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

--

**Chris Wren**
DIP Portfolio Manager | Legalist Inc.
+1.415.301.5455 | chris@legalist.com | legalist.com

Exhibit B

May 3, 2024

Summary of Key Terms of and Conditions for
**DEBTOR-IN-POSSESSION TERM LOAN FACILITY**

Galleria 2425 Owner, LLC
c/o: Ali Choudhri
Jetall Capital
ali@jetallcapital.com

**CC: Heather Davey**

The following summarizes the key terms (the "**Term Sheet**") on which certain investment fund(s) for which Legalist, Inc. serves as investment adviser (the "**DIP Lender**") are willing to extend post-petition financing (the "**DIP Loans**") to Galleria 2425 Owner, LLC (the "**Debtor**") in connection with its chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), in an aggregate principal amount of $35,000,000 (the "**DIP Commitment**").

Prior to satisfaction of the Conditions Precedent to funding, this Term Sheet shall be *confidential, non-binding, for discussion purposes only, and not a commitment to lend*.

| **Overview** | The DIP Loans shall be made available to the Debtor in the aggregate amount of the DIP Commitment for the following uses:<br>1. Fees for all Estate Professionals;<br>2. Refinance/pay down prepetition lender(s), as applicable;<br>3. Operating expenses of the Debtor; and<br>4. Other agreed-on uses. |
|---|---|
| **Conditions Precedent to DIP Draw** | The DIP Lender will make available DIP Loans in multiple draws, provided no event of default shall (x) have occurred and be continuing or (y) be reasonably likely to result therefrom, upon (such date, the "**Effective Date**"):<br>1. The DIP Lender's completion, to its own satisfaction, of any remaining due diligence including representations and warranties confirmed to be true and accurate;<br>2. The Debtor's delivery of a fully executed credit agreement in Approved Form;[1]<br>3. The Debtor's delivery of an appraisal of the DIP Collateral (defined below) in Approved form; and<br>4. The Bankruptcy Court's entry of a final financing order approving the DIP Loans and otherwise in Approved Form (the "**DIP Order**"), which remains in full force and effect.<br><br>The Debtor shall file a motion for expedited approval of the DIP Loans no later than three weeks from the execution of this Term Sheet, or an additional one-time **"Reserved Funds Fee"** of 1.00% of the DIP Commitment shall be earned. |
| **Interest; Default Interest; Undrawn Line Fee** | The outstanding principal amount of the DIP Loans (together with all other due and payable DIP Obligations (defined below)) shall accrue interest monthly in arrears from the Effective Date at the U.S. prime rate plus 5.00% per year.<br><br>While an event of default has occurred and is continuing, such amounts shall accrue an additional 4.75% in interest per year. If the DIP Loans are not borrowed in full in a single draw, any undrawn portion of the DIP Commitment shall accrue an "**Undrawn Line Fee**" from the Effective Date at 2.50% per year. Any default interest and all such fees shall accrue and be compounded and capitalized monthly and be due and payable in cash upon the Maturity Date. |
| **Other Costs of Borrowing** | A onetime "**Commitment Fee**" of 2.50% of the DIP Commitment and "**Underwriting Fee**" of 2.00% of the DIP Commitment shall be fully and irrevocably earned upon the Effective Date, due and payable in cash upon the Effective date, or paid in-kind as of the Maturity date for an additional 0.50% of the DIP Commitment, at the Debtor's election. In addition, a "**Monitoring Fee**" of 0.50% of the DIP |

---

[1] "**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the DIP Lender.

| | |
|---|---|
| | Commitment per year shall accrue and be compounded and capitalized monthly, due and payable in cash upon the Maturity Date. |
| **Prepayments** | The DIP Loans shall be mandatorily repaid from, and within 10 days of the Debtor's receipt of, proceeds from any sale or other disposition of DIP Collateral; <u>provided</u> that any such disposition shall occur in Approved Form. Any repayment required to be made within 180 days of the Effective Date shall be accompanied by a "**Makewhole Fee**" of 2.50% of the amount required to be repaid. The DIP Loans may be voluntarily repaid prior to the Maturity Date beginning 90 days after the Effective Date; <u>provided</u> that voluntary repayments made within 180 days of the Effective Date shall be subject to a Makewhole Fee. |
| **Maturity Date** | The DIP Loans shall mature, and all unpaid DIP Obligations shall be due and payable, upon the earliest (the "**Maturity Date**") of (i) 12 months after the Effective Date, with one six-month extension option for an additional 1.50% of interest, based on mutually agreed-upon Milestones between the Debtor and the DIP Lender; and (ii) acceleration of the DIP Loans following an event of default. |
| **Superpriority Claims; DIP Liens; DIP Collateral** | Subject to a customary carveout for estate professional fees and other administrative expenses, all DIP Obligations shall constitute DIP Claims,[2] payable from the DIP Collateral and all other property of the Debtor's estate. The DIP Order shall grant the DIP Lender automatically perfected security interests (collectively, the "**DIP Liens**"), senior to all pre- and postpetition liens, on all present or future estate property (collectively, the "**DIP Collateral**"). |
| **Work Fee** | No later than three (3) business days after the execution of this Term Sheet, the Debtor shall pay a work fee in two parts: 1) payment for a $7,000 appraisal of the DIP Collateral, in Approved Form; and 2) no later than three (3) business days after the DIP Lender's receipt of the appraisal, the amount of $250,000, which shall be credited against the DIP Lender Expenses below; provided, however, such Work Fee is fully earned and payable in cash upon the execution of the Term Sheet. |
| **DIP Lender Expenses; Other DIP Obligations** | The Debtor shall pay, no later than the Maturity Date, all reasonable costs and expenses of the DIP Lender incurred in connection with the DIP Loans (collectively, the "**DIP Lender Expenses**"). The DIP Lender Expenses, together with all principal of, and interest and fees on, the DIP Loans, together with any other amount owed by the Debtor in connection therewith shall constitute "**DIP Obligations**" secured by the DIP Liens. The Debtor shall indemnify, pay and hold harmless the DIP Lender (and each of their respective directors, officers, members, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence, willful misconduct or actual fraud of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).<br><br>The DIP Orders shall contain stipulations and releases for the DIP Lender (in any capacity) and the prepetition secured parties, in form and substance satisfactory to such party, respectively, including, without limitation, releases from any avoidance actions. |
| **Miscellaneous Provisions** | Customary and as reasonably required by the DIP Lender, including:<br>● Debtor's representations, warranties, and covenants (including budget and reporting);<br>● Stay waiver (notwithstanding Bankruptcy Rule 6004);<br>● Releases, Exculpation, Limitation of Liabilities and Indemnity of DIP Lender, the DIP Agent and their affiliates;<br>● Section 364(e) "good faith" findings in favor of the DIP Lender;<br>● DIP Order and DIP Agreements acceptable to the DIP Lender in its sole discretion;<br>● DIP Budget acceptable to the DIP Lender in its sole discretion; |

---

[2] "**DIP Claims**" means "superpriority" administrative-expense claims with priority over (i) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code and (ii) all other unsecured claims against the Debtor.

2

| | <ul><li>No portion of the Debtor's cash collateral and other cash (collectively, the "**Cash Collateral**"), the DIP Loans or the Collateral may be used to investigate, commence or prosecute any action, proceeding or objection with respect to or related to the claims, liens or security interests of the DIP Agent and the DIP Lender.</li><li>Events of default and DIP Lender's rights and remedies; and</li><li>Governing Law (Bankruptcy Code / New York State).</li></ul> |
|---|---|

Case 23-34815   Document 527-3   Filed in TXSB on 06/16/24   Page 5 of 14

**This Term Sheet shall expire and be without further effect if not signed by both parties by May 2, 2024.**

Accepted and agreed to, as of the first date written above:

| | |
|---|---|
| **DEBTOR:** | **DIP LENDER:** |
| GALLERIA 2425 OWNER, LLC | By: LEGALIST, INC., as Investment Adviser |
| By: _[signature]_ | By: _[signature]_ |
| Name: Ali Choudhri, | Name: Christian G.B. Haigh |
| Title: Authorized Representative | Title: Chief Investment Officer |

*Signing on behalf of the debtor, not the chapter 11 Trustee.

4

# UNITED STATES BANKRUPTCY COURT
Southern District of Texas

In re GALLERIA 2425 OWNER, LLC
        Debtor

Case No. 23-34815

*(Complete if issued in an adversary proceeding)*

_____
        Plaintiff

Chapter 11

v.

_____
        Defendant

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Legalist, Inc., 880 Harrison Street, San Francisco, CA 94107**

*(Name of person to whom the subpoena is directed)*

[X] *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998 | Friday, June 14, 2024 at 9:00 AM PST |

The deposition will be recorded by this method:    Video and stenographic.

[X] *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

    See attached Exhibit A.

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  June 11, 2024

        CLERK OF COURT

                                OR

_____          _____
  *Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* National Bank of Kuwait, S.A.K.P., New York Branch, who issues or requests this subpoena, are: Charles Conrad, Pillsbury Winthrop Shaw Pittman LLP, 609 Main Street, Ste. 2000, Houston, TX 77002; charles.conrad@pillsburylaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
   (i) is a party or a party's officer; or
   (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   (i) fails to allow a reasonable time to comply;
   (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   (i) disclosing a trade secret or other confidential research, development, or commercial information; or

   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   (i) expressly make the claim; and
   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A[1]

1. Copies of any appraisal or similar valuation concerning the Dip Collateral, including, without limitation, that certain real property located at 2425 West Loop South, Houston, Texas 77027 (the "Property;" any such appraisal or valuation of the Property, an "Appraisal").

2. Copies of all correspondence (including, letters, memos, emails, text messages, etc) concerning the Property and/or any Appraisal.

3. Any term sheet, loan commitment or requests to fund as it relates to the Property.

4. Any agreements between Legalist, Inc. or any investment fund(s) for which Legalist, Inc. serves as investment advisor on the one hand and any of (i) Ali Choudhri, (ii) 2425 Galleria Owner, LLC, (iii) 2425 WL, LLC or (iv) any other entity or person you have reason to believe is to be associated with the foregoing parties regarding the Property, the DIP Commitment, the DIP Loans, the Debtor, and/or the DIP Collateral.

---

[1] Capitalized terms not defined here shall have the meaning given to them in the May 3, 2024 *Summary of Key Terms of and Conditions for DEBTOR-IN-POSSESSION TERM LOAN FACILITY* attached as Exhibit A-1.

May 3, 2024

## Summary of Key Terms of and Conditions for
## **DEBTOR-IN-POSSESSION TERM LOAN FACILITY**

Galleria 2425 Owner, LLC
c/o: Ali Choudhri
Jetall Capital
ali@jetallcapital.com

**CC: Heather Davey**

The following summarizes the key terms (the "**Term Sheet**") on which certain investment fund(s) for which Legalist, Inc. serves as investment adviser (the "**DIP Lender**") are willing to extend post-petition financing (the "**DIP Loans**") to Galleria 2425 Owner, LLC (the "**Debtor**") in connection with its chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), in an aggregate principal amount of $35,000,000 (the "**DIP Commitment**").

Prior to satisfaction of the Conditions Precedent to funding, this Term Sheet shall be *confidential, non-binding, for discussion purposes only, and not a commitment to lend*.

| **Overview** | The DIP Loans shall be made available to the Debtor in the aggregate amount of the DIP Commitment for the following uses:<br>1. Fees for all Estate Professionals;<br>2. Refinance/pay down prepetition lender(s), as applicable;<br>3. Operating expenses of the Debtor; and<br>4. Other agreed-on uses. |
|---|---|
| **Conditions Precedent to DIP Draw** | The DIP Lender will make available DIP Loans in multiple draws, provided no event of default shall (x) have occurred and be continuing or (y) be reasonably likely to result therefrom, upon (such date, the "**Effective Date**"):<br>1. The DIP Lender's completion, to its own satisfaction, of any remaining due diligence including representations and warranties confirmed to be true and accurate;<br>2. The Debtor's delivery of a fully executed credit agreement in Approved Form;[1]<br>3. The Debtor's delivery of an appraisal of the DIP Collateral (defined below) in Approved form; and<br>4. The Bankruptcy Court's entry of a final financing order approving the DIP Loans and otherwise in Approved Form (the "**DIP Order**"), which remains in full force and effect.<br><br>The Debtor shall file a motion for expedited approval of the DIP Loans no later than three weeks from the execution of this Term Sheet, or an additional one-time **"Reserved Funds Fee"** of 1.00% of the DIP Commitment shall be earned. |
| **Interest; Default Interest; Undrawn Line Fee** | The outstanding principal amount of the DIP Loans (together with all other due and payable DIP Obligations (defined below)) shall accrue interest monthly in arrears from the Effective Date at the U.S. prime rate plus 5.00% per year.<br><br>While an event of default has occurred and is continuing, such amounts shall accrue an additional 4.75% in interest per year. If the DIP Loans are not borrowed in full in a single draw, any undrawn portion of the DIP Commitment shall accrue an "**Undrawn Line Fee**" from the Effective Date at 2.50% per year. Any default interest and all such fees shall accrue and be compounded and capitalized monthly and be due and payable in cash upon the Maturity Date. |
| **Other Costs of Borrowing** | A onetime "**Commitment Fee**" of 2.50% of the DIP Commitment and "**Underwriting Fee**" of 2.00% of the DIP Commitment shall be fully and irrevocably earned upon the Effective Date, due and payable in cash upon the Effective date, or paid in-kind as of the Maturity date for an additional 0.50% of the DIP Commitment, at the Debtor's election. In addition, a "**Monitoring Fee**" of 0.50% of the DIP |

---

[1] "**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the DIP Lender.

| | |
|---|---|
| | Commitment per year shall accrue and be compounded and capitalized monthly, due and payable in cash upon the Maturity Date. |
| **Prepayments** | The DIP Loans shall be mandatorily repaid from, and within 10 days of the Debtor's receipt of, proceeds from any sale or other disposition of DIP Collateral; <u>provided</u> that any such disposition shall occur in Approved Form. Any repayment required to be made within 180 days of the Effective Date shall be accompanied by a "**Makewhole Fee**" of 2.50% of the amount required to be repaid. The DIP Loans may be voluntarily repaid prior to the Maturity Date beginning 90 days after the Effective Date; <u>provided</u> that voluntary repayments made within 180 days of the Effective Date shall be subject to a Makewhole Fee. |
| **Maturity Date** | The DIP Loans shall mature, and all unpaid DIP Obligations shall be due and payable, upon the earliest (the "**Maturity Date**") of (i) 12 months after the Effective Date, with one six-month extension option for an additional 1.50% of interest, based on mutually agreed-upon Milestones between the Debtor and the DIP Lender; and (ii) acceleration of the DIP Loans following an event of default. |
| **Superpriority Claims; DIP Liens; DIP Collateral** | Subject to a customary carveout for estate professional fees and other administrative expenses, all DIP Obligations shall constitute DIP Claims,[2] payable from the DIP Collateral and all other property of the Debtor's estate. The DIP Order shall grant the DIP Lender automatically perfected security interests (collectively, the "**DIP Liens**"), senior to all pre- and postpetition liens, on all present or future estate property (collectively, the "**DIP Collateral**"). |
| **Work Fee** | No later than three (3) business days after the execution of this Term Sheet, the Debtor shall pay a work fee in two parts: 1) payment for a $7,000 appraisal of the DIP Collateral, in Approved Form; and 2) no later than three (3) business days after the DIP Lender's receipt of the appraisal, the amount of $250,000, which shall be credited against the DIP Lender Expenses below; provided, however, such Work Fee is fully earned and payable in cash upon the execution of the Term Sheet. |
| **DIP Lender Expenses; Other DIP Obligations** | The Debtor shall pay, no later than the Maturity Date, all reasonable costs and expenses of the DIP Lender incurred in connection with the DIP Loans (collectively, the "**DIP Lender Expenses**"). The DIP Lender Expenses, together with all principal of, and interest and fees on, the DIP Loans, together with any other amount owed by the Debtor in connection therewith shall constitute "**DIP Obligations**" secured by the DIP Liens. The Debtor shall indemnify, pay and hold harmless the DIP Lender (and each of their respective directors, officers, members, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence, willful misconduct or actual fraud of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).<br><br>The DIP Orders shall contain stipulations and releases for the DIP Lender (in any capacity) and the prepetition secured parties, in form and substance satisfactory to such party, respectively, including, without limitation, releases from any avoidance actions. |
| **Miscellaneous Provisions** | Customary and as reasonably required by the DIP Lender, including:<br><br>● Debtor's representations, warranties, and covenants (including budget and reporting);<br>● Stay waiver (notwithstanding Bankruptcy Rule 6004);<br>● Releases, Exculpation, Limitation of Liabilities and Indemnity of DIP Lender, the DIP Agent and their affiliates;<br>● Section 364(e) "good faith" findings in favor of the DIP Lender;<br>● DIP Order and DIP Agreements acceptable to the DIP Lender in its sole discretion;<br>● DIP Budget acceptable to the DIP Lender in its sole discretion; |

---

[2] "**DIP Claims**" means "superpriority" administrative-expense claims with priority over (i) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code and (ii) all other unsecured claims against the Debtor.

|  | <ul><li>No portion of the Debtor's cash collateral and other cash (collectively, the "**Cash Collateral**"), the DIP Loans or the Collateral may be used to investigate, commence or prosecute any action, proceeding or objection with respect to or related to the claims, liens or security interests of the DIP Agent and the DIP Lender.</li><li>Events of default and DIP Lender's rights and remedies; and</li><li>Governing Law (Bankruptcy Code / New York State).</li></ul> |
|---|---|

3

**This Term Sheet shall expire and be without further effect if not signed by both parties by May 2, 2024.**

Accepted and agreed to, as of the first date written above:

| | |
|---|---|
| **DEBTOR:** | **DIP LENDER:** |
| GALLERIA 2425 OWNER, LLC | By: LEGALIST, INC., as Investment Adviser |
| By: _____ | By: _____ |
| Name: Ali Choudhri, | Name: Christian G.B. Haigh |
| Title: Authorized Representative | Title: Chief Investment Officer |

*Signing on behalf of the debtor, not the chapter 11 Trustee.

4