# **EXHIBIT 1**

11/29/2023 10:01 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82040972
By: Domonique Palmer
Filed: 11/29/2023 10:01 AM

**CAUSE NO. <u>2023-43755</u>**

| | | |
|---|---|---|
| **NAISSANCE GALLERIA,  LLC** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **AZEEMEH ZAHEER** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | **80TH JUDICIAL DISTRICT** |

<u>**PLAINTIFF'S SECOND AMENDED PETITION & EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT NATIONAL BANK OF KUWAIT S.A.K.P.**</u>

Naissance Galleria, LLC ("***Plaintiff***") files this Amended Petition and Emergency Application for Temporary Restraining Order against National Bank of Kuwait S.A.K.P., New York Branch (individually as "***NBK***", or collectively as "***Defendant***") and, in support, submit the following:

**I.**
**<u>DISCOVERY PLAN</u>**

1.      Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

**II.**
**<u>PARTIES</u>**

2.    Naissance Galleria, LLC ("***Plaintiff***") is a limited liability company doing business in Texas and is mezzanine lender to Galleria 2425 JV, LLC ("JV"). The JV is the sole member of

Galleria 2425 Owner, LLC (Owner"), which is the 100% owner of the building located at 2425 West Loop S., Houston, Texas 77027 ("*2425 Building*").

3.      Azeemeh Zaheer ("**Zaheer**"), is an individual who resides, and has appeared and is represented by counsel Rodney Drinnon, 2000 West Loop South, Suite 1850, Houston, Texas 77027 and David Tang, 6711 Stella Link, #343, West University Place, Texas 77005. **ZAHEER HAS APPEARED.**

4.      National Bank of Kuwait, S.A.K.P., New York Branch ("*NBK*") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch.  This party may be served through its counsel, Charles Conrad, Two Houston Center, 909 Fannin, Suite 2000, Houston, Texas 77010-1018, and via email: charles.conrad@pillsburylaw.com. **CITATION IS REQUESTED**.

### III.
### INTRODUCTION

5.      Defendant Zaheer was previously the managing member of Naissance Galleria LLC, however on or about July 3, 2020, Defendant Zaheer assigned all control of Naissance Galleria, LLC to Ali Choudhri.  On or about July 3, 2020, Defendant Zaheer ceased having any "powers, rights, privileges, duties and discretion" as it pertains to Plaintiff Naissance Galleria LLC. Defendant Zaheer sent an email correspondence to Plaintiff's current managing member regarding her transfer of interest to Plaintiff's current managing member, which for all intents and purposes terminated and ratified the interest transfer by Defendant Zaheer for Naissance Galleria LLC.

6.      Plaintiff Naissance Galleria LLC has been operating under the control of its current managing member since the execution of the assignment on July 3, 2020 and it is unconscionable to discover that Defendant Zaheer, three (3) years after executing the assignment is now suddenly asserting that she manages and has control over Naissance Galleria LLC.  Moreover, Defendant Zaheer retained counsel and initiated litigation against third parties on behalf of Naissance Galleria, LLC three (3) years after executing the assignment.  Most shockingly is that fact that, without any appearance or objection by Zaheer, the managing member of Naissance Galleria, Ali Choudhri, who has controlled Naissance Galleria LLC since around July 2020, has initiated lawsuits against Defendant Bank of Kuwait, and has entered into a sealed confidential settlement agreement on behalf of Naissance Galleria, LLC with Defendant Bank of Kuwait which is the subject of another litigation.

7.      A lawsuit was originally filed against NBK, a party who has been shown to be willing to engage in bad faith actions amounting to lender liability, because of its repeated attempts to make outside deals with third parties to specifically deprive the JV and Owner of their ownership interest, and Plaintiff of its collateral interest in the 2425 Building, in any way it can.

8.      Galleria 2425 Owner, LLC, filed bankruptcy to preserve the asset, which NBK vehemently opposed, and fought to have dismissed from the bankruptcy court. However, at the hearing on NBK's motion to dismiss, Galleria 2425 Owner, LLC was successful in defending against dismissal, and the bankruptcy case moved forward.

9.      Galleria 2425 Owner, LLC promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez.

10.     Then, after Defendant NBK lost its motion to dismiss, true to its pattern of behavior, it continued to engage in more bad faith actions by conspiring with Azeemeh Zaheer, and perhaps other yet unknown parties, to create confusion that caused havoc and further disrupted the bankruptcy case.

11.     Notably, Judge Manor, in this matter, which is referenced in NBK's letter to Judge Lopez, did issue a Temporary Injunction, **which maintained the status quo of Choudhri's management and control of Naissance Galleria, LLC, but limited any actions that could be taken by Choudhri on behalf of Naissance Galleria, LLC to only those which are also approved by Zaheer, until a trial resolves the issue once and for all.**

12.     After the Temporary Injunction was in place establishing Choudhri's control of Naissance Galleria, LLC, Counsel David Tang and Rodney Drinnon acting for Azeemeh Zaheer, appeared in violation of this TRO and purported to act for Naissance Galleria, LLC. They appeared on behalf of Naissance Galleria, LLC, at two separate hearings in the bankruptcy court, on or about October 12th, 2023 and November 1st, 2023. Even more egregiously, these same parties, again acting in express violation of the Temporary Injunction, filed a motion to lift the stay in the bankruptcy court, which is entirely against the fiduciary interests of plaintiff, and they request for Judge Lopez to rule against the this Court and find that Zaheer had control of, and could act for Naissance Galleria, LLC.

13.     When the parties to the state court litigation returned to appear before this Court on November 13th, 2023, Judge Manor confirmed that her Temporary Injunction did not give Zaheer any right to act as the manager of Naissance Galleria, LLC, and confirmed that Choudhri was in control, subject to Zaheer's approval during the pendency of trial.

14.     All of these actions, including the actions taken by Zaheer in direct violation of this Court's temporary injunction, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action. Judge Lopez stated in the November 1st, 2023 Status Conference the following:

"I don't have anything to qualify it in state court issues. I don't know. There's just a lot of confusing stuff, and my gut tells me that I need to dismiss this case and let you all go figure this out in State Court, because there's not enough here, and there's real concerns that I have…".

15.     The fact that Zaheer, allegedly acting on behalf of Naissance filed these appearances and motions in violation of the Temporary Injunction not only makes these actions unlawful, but there could be no other purpose aside from attempting to cause the dismissal of the bankruptcy case brought by Galleria 2425 Owner, LLC, which is an action that, logically, would be counter to the company's fiduciary interests.

16.     In its letter, NBK cleverly attempts to confuse the court by implying that Ms. Zaheer had control of Naissance Galleria, LLC because the order says that management decisions could not be made without her approval. This is exact same argument Zaheer made before being shut down by this Court itself, stating that its Temporary Injunction left Mr. Choudhri in control, subject to Zaheer's approval, in order to freeze all actions of the parties until trial, except that Mr. Choudhri's actions on behalf of Naissance Galleria, LLC in the instant suit have been expressly permitted.

17.     Judge Weems in the 281st Civil District Court has handled cases related Galleria 2425 Owner, LLC for years, and is well aware that Ms. Zaheer has been entirely absent from any of these proceedings until on or about July 5th, 2023, when Mr. Tang appeared, allegedly for

Naissance Galleria, LLC, before that Court's ancillary docket, attempting to stop the foreclosure by NBK, at which hearing Judge Weems questioned the absence of Ms. Zaheer over the last several years, and denied the TRO, as it was not believable to Judge Weems that Zaheer had authority to act on behalf of Naissance Galleria, LLC.

18.     From July 3rd, 2020, the date of signing, until or July 5th, 2023, Defendant Zaheer did not make any claims of control over Naissance Galleria, LLC, did not attempt to object to or interfere with Mr. Choudhri's management of the company, and did not make allegations of forgery regarding the assignment of the company to Choudhri. These allegations are absurd, as Defendant Zaheer has been entirely absent from the company's management for years.

19.     **As a result of this conspiracy by the Defendant Bank of Kuwait and Defendant Zaheer falsely acting on behalf of Plaintiff Naissance Galleria LLC the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.**

20.     **What's interesting is that, if Ms. Zaheer was authentically the manager of Naissance Galleria, LLC, and acting in the best interests of the company, she would not have worked tirelessly to have the bankruptcy case dismissed. Any intent it has is behind the NBK debt and will be wiped out.**

21.     Any actions by a manager would be a breach of fiduciary unless there is a back room deal.

22.     Now that NBK has re-posted the 2425 Building for foreclosure, Plaintiff will suffer irreparable harm as a result of the defendants' actions.

**IV.**
**FACTUAL BACKGROUND**

23.     In 2018, Defendant NBK loaned certain funds to Galleria Owner 2425, LLC  and at the same time NBK has continually interfered with the Plaintiff's ability to lease the 2425 Building to produce revenue and Plaintiff's ability to sell the 2425 Building to pay NBK off.  Every time NBK has so interfered, it has then blamed the Plaintiff for its inability supposedly to meet some of the loan terms.  What is now occurring is a simply a continuation of the long term interference, because Defendant National Bank of Kuwait simply wants to own the building instead of being paid off.

24.     For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had the building at 2425 West Loop South, Houston, Texas, the main asset of the Plaintiff, had serious parties interested in building for a purchase price of $85 million, more than enough to clear NBK's debt.  A letter dated January 15, 2021 from SIBS International and two purchase contracts which would have paid off not only NBK, but left the Plaintiff with a great deal of value.  **NBK, rather than facilitate this sale, disclosed confidential information and sales issued a formal notice of default**, while the SIBS International deal was in progress, killing that deal.

25.     **The same was true with regard to NBK's interference with efforts  to lease space in the building to provide revenue so it could operate and make loan payments.**  By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Plaintiff on August 13, 2021 to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- ◆ **Healthcare Service Organization**

    - ▪ •Size: 130,000+ RSF – large client requirement in their preliminary planning stages: •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.   They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- ◆ **Invesco**

    - ▪ We met with the team twice and are actively pursuing them for 2425.   They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- ◆ **Financial Services Firm**

    - ▪ Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

- ◆ **Beyond Finance**

    - ▪ We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- ◆ **Banco Affirme**

    - ▪ We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

- ◆ **Walls Bank (existing tenant)**

    - ▪ Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

- ◆ **Others (working directly with ownership)**

    - ▪ ResMed (https://www.resmed.com/en-us/), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

    - ▪ Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2.

    - ▪ Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

26.    Below is an August 16, 2021 email from counsel for the Plaintiff to NBK forwarding multiple leases for approval that **NBK had failed to approve or even respond to.**



This lack of approval, or finding obstacles to approve, was not new.  In September 2019, Related Group had reached out to lease the parking garage located at the 2425 Building to be used for overflow, for parking up to 110 spaces.  **NBK's authorized representative Michael Carter would not approve this lease** (note "nbkny" email address below– *i.e.* National Bank of Kuwait, New York Branch), which would have generated a great deal of revenue for the Plaintiff.

> **From:** Michael Carter <Michael.Carter@nbkny.com>
> **Date:** Monday, 23 September 2019 at 13:22
> **To:** Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker
> <Lisa.Walker@nbkny.com>
> **Subject:** RE: LOI
>
> My primary concern is that the tenant determines when the commencement date, presumably
> because they have zoning and building department approvals to complete as well as financing to
> arrange, which is understandable, however there does not appear to be an outside expiration date
> for the Commencement date. It appears they could tie up these space permanently without having
> to pay rent. I think you should have an outside date for Commencement.

27.     The situation became so untenable that in September 2021, Galleria 2425 Owner,
LLC  initiated a lawsuit against NBK.

28.     In good faith, even during the pendency of this litigation, the Galleria 2425 Owner,
LLC was still trying to get tenants into the building and get NBK's approval to do so, so it would
not claim additional breaches of loan agreements.  **On July 2, 2022,  Galleria 2425 Owner, LLC
sent NBK five leases for approval, which NBK did not approve.**

29.     *Defendant Bank of Kuwait and Galleria Owner 2425 LLC litigated for eleven (11)
months until August 22, 2022, when they entered into a Confidential Settlement Agreement.*  The
entire Confidential Settlement Agreement will be submitted to the Court *in camera* at the
appropriate time, and the Plaintiff – Naissance Galleria should be allowed to use it in this case
since the breach of that Settlement Agreement by NBK is not only actionable, but was also
devastating to Plaintiff.  Because NBK has a way of interpreting any action of the Plaintiff as one
to breach or avoid some purported contractual obligation or other, when the reverse is entirely true,
the Confidential Settlement Agreement has not been attached.  **NBK has prevented  Galleria**

**2425 Owner, LLC's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.**

30.     The Confidential Settlement Agreement permitted a timeframe in which **Galleria 2425 Owner, LLC** could sell the 2425 Building, and **Galleria 2425 Owner, LLC** was successful in receiving a hard Letter of Intent dated January 17, 2023 to purchase the building from Caldwell Soames.  Again, while these negotiations were ongoing, **NBK took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure on March 29, 2023 in breach of the Confidential Settlement Agreement, which Galleria 2425 Owner, LLC believes was done intentionally to prevent the sale.**  The sale would have cleared the Bank of Kuwait debt as it stood at that time and left great value for **Galleria 2425 Owner, LLC  and** Plaintiff.  Plaintiff believes that Bank of Kuwait recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

31.     There are tremendous factual inaccuracies that NBK represents to state and federal courts and they continue into these proceedings.  For example, in its Motion to Dismiss the ~~Plaintiff's~~ Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, they were also **granted by this Court.  The facts presented that NBK had not allowed the Galleria 2425 Owner, LLC to lease up the building to generate revenue, and had killed two transactions that Galleria 2425 Owner, LLC was working on that would have cleared NBK and left value for the Galleria 2425 Owner, LLC.**

32.     Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that this Court had given Galleria 2425 Owner, LLC, which silenced the bidding process and interest in the 2425 Building completely.  No one wants to buy a building posted for

foreclosure.  **Plaintiff believes that NBK knew this and did it on purpose to prevent the Galleria 2425 Owner, LLC from successfully selling the property and paying off the loan, so NBK could foreclose and become the owner of the 2425 Building.**

33.     The absolute opposite is true.  Representatives of Defendant NBK have admitted in writing that the following substantial payments have been made to Defendant NBK well after March 6, 2021:

      a)    $801,509.42 paid by  Galleria 2425 Owner, LLC to Defendant NBK on August 27, 2022;

      b)    $80,000 paid by Galleria 2425 Owner, LLC to Defendant NBK on April 18, 2023;

      c)    $80,000 paid by Galleria 2425 Owner, LLC to Defendant NBK on May 10, 2023.

This is almost One Million Dollars ($1,000,000) that not only does NBK not give credit to  Galleria 2425 Owner, LLC for having made the payments, but again, it vilifies it, saying exactly the opposite that no payments (zero) have been made since March 6, 2021.

34.     After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with **Galleria 2425 Owner, LLC** , became potential purchasers of the NBK Note and began negotiating with NBK. NBK interfered with these potential purchases and with these business relationships.  At least the following were interfered with in this fashion:

      a)    Globix Investment,

      b)    Ironwood Commercial Realty,

      c)    Shah Firm, LLC, and

d)   Jeb Brown Law.

**B.   Azeemeh Zaheer Decides She Wants the Building.**

35.   On June 26, 2023, Defendant Zaheer filed a lawsuit in the name of Naissance Galleria, LLC ("***Naissance***"), which she purported to control, in the 157th Judicial District Court in Harris County, Texas referenced by case number 2023-39006 against Brad Parker ("***Parker***") as an initial step in Zaheer pursuit of a hostile takeover of the 2425 Building.

36.   On July 5, 2023,  Defendant Zaheer and also in the name of Naissance, filed a second lawsuit in the 129th Judicial District Court in Harris County, Texas referenced by case number 2023-41091 against Parker and NBK at the request of Zaheer, to further the defendants' hostile takeover attempt of the 2425 Building.  Zaheer sought injunctive relief, but that request for an emergency temporary restraining order was denied.

37.   On or about July 5, 2023, Galleria 2425 Owner, LLC commenced a Chapter 11 bankruptcy proceeding in the Southern District of Texas, referenced by case number 23-60036. NBK sought to dismiss the bankruptcy proceeding, but its motion to dismiss was denied on September 26, 2023.   The Chapter 11 Plan should have been approved and would have substantially reduced the value of Bank of Kuwait's secured debt, which Bank of Kuwait decided it would not allow, just as it had decided not to allow the prior sales of the building that had been lined up by Galleria 2425 Owner, LLC.

**C.   Azeemeh Zaheer is a False Representative of Naissance.**

38.   Azeemeh Zaheer at one time had a business relationship with Ali Choudhri, both of which appeared to have ended mutually for a time.  Azeemeh Zaheer filed an Application for Temporary Injunction in the 80th Judicial District Court for Harris County against Naissance

Galleria, LLC, which was a mezzanine lender to an LLC ("**LLC**") two steps up in the building's ownership chain.

39.     Azeemeh Zaheer had signed, as the authorized representative of the Managing Member of Naissance Galleria, LLC an Assignment of the management rights of that LLC to Ali Choudhri.  In response, Mr. Choudhri stepped into Naissance's shoes, covered its expenses, and did a miraculous job of negotiating the aforementioned settlement with Bank of Kuwait after the Assignment.  Azeemeh Zaheer made this assignment for a number of reasons, but most of them stemmed from her ineffective management of the building and her fear of exposure to Bank of Kuwait and certain individuals affiliated with the Bank of Kuwait because of her poor performance.

40.     After Mr. Choudhri received the Assignment and had negotiated the successful settlement with Bank of Kuwait and the building looked as if it might succeed (a period of years), Azeemeh Zaheer decided she wanted to misappropriate the value that Mr. Choudhri had just preserved and to an extent had just created.  First, she claimed the Assignment was invalid and sought and received a Temporary Injunction on September 21, 2023 from the 80th Judicial District Court in Harris County.  This Temporary Injunction basically only created a stalemate with respect to the management of Naissance Galleria, LLC to preserve the status quo until a trial in January. Mr. Choudhri is still the manager of Naissance Galleria, LLC, not Azeemeh Zaheer, although she did have some approval rights under the injunction.  Mr. Choudhri, as the manager of Naissance Galleria LLC, is only required to obtain approval from Zaheer for his actions.  Zaheer DOES NOT have any control of the entity.  Moreover, this was confirmed at a hearing on November 13, 2023 before Judge Manor in the 80th Judicial District Court.

**D.     Azeemeh Decides to Conspire with Bank of Kuwait So It Could Foreclose On the Building.**

41.     After the September 21, 2023 entry of the Temporary Injunction, some ironic, if not strange, events start taking place with respect to Ms. Zaheer and the Galleria 2425 Owner, LLC.  First, it is against Azeemeh Zaheer and Naissance's financial interests if the Bank of Kuwait forecloses.

42.     Second, on information and belief, Zaheer caused a copy of the Temporary Injunction Entered on September 21, 2023 by the 80th Judicial District Court in Harris County to be sent to counsel for the Bank of Kuwait, who in turn immediately wrote a letter to Judge Lopez, the Bankruptcy Judge in charge of Galleria 2425 Owner, LLC's Bankruptcy, and the Judge who has approval authority over Galleria 2425 Owner, LLC's Plan.  (Not exactly helpful in getting a Plan of Reorganization approved.)

43.     Third, Zaheer's attorneys (Mr. Tang and Mr. Drinnon) show up without any forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC, all by virtue of the Temporary Injunction.

44.     They again made pleas to the court regarding Zaheer's desire to take over the 2425 Building, stating the Temporary Injunction gave them sole authority to represent Naissance, and Naissance did not want to sue the Bank of Kuwait for breach of the Settlement Agreement as it had already done under Mr. Choudhri's rightful management.

**E.**     **Zaheer Changes Sides to Make a Deal with the Bank of Kuwait and Extort Money from Mr. Choudhri.**

45.     Progressively, Azeemeh Zaheer's behavior becomes more inexplicable as she instructs her attorneys to: (1) take the position that the Temporary Injunction put her in charge of Naissance (it did not);[1] (2) that Naissance Galleria, LLC could or had already become the owner of Galleria 2425 Owner, LLC) and as the new owner, they might want to take the bankruptcy in another direction.

46.     <u>The only explanation for Zaheer's extraordinary behavior, which appears self-destructive, is Zaheer sees the opportunity to make a deal with the Bank of Kuwait or extort Mr. Choudhri, who will lose millions of dollars of equity in the building if a foreclosure takes place</u>.

47.     This created an environment of confusion for the Bankruptcy Court, which was by Defendants' design, and it was a concerted effort by the Defendants to have the bankruptcy case dismissed, allowing the Bank of Kuwait to foreclose.  Defendant NBK would not be impeded by the bankruptcy and Zaheer could tell Mr. Choudhri, "I will not go along with your reorganization plan unless you pay me millions of dollars" while making a deal with the Bank of Kuwait to block the Plan of Reorganization in the event no payment was received from Mr. Choudhri.

48.     The Defendants are working in concert, to achieve the same end.  Specifically, the Defendants have devised, and intended to devise, a scheme or artifice to seize the 2425 Building

---

[1] At a hearing had in the issuing court (the 80th Judicial District Court) on Monday, November 13, 2023, the Court confirmed her Temporary Injunction Order had not turned control of Naissance over to Zaheer and Zaheer had no authority to authorize attorneys to make the filing and take the action they had on behalf of Naissance Galleria, LLC in the Bankruptcy.

by any means necessary.  Defendants will stop at nothing to see the Plaintiff lose any interest it has in  the 2425 Building

49.    Defendants' scheme has involved false representations of material information, including but not limited to misrepresentations concerning the Plaintiff and the purpose and effects of the Temporary Injunction.

**F.    False Representations by Zaheer's Agents are Successful in Getting Galleria 2425 Owner LLC's Bankruptcy Dismissed.**

50.    The Bankruptcy Court scheduled a Status Conference for  Galleria 2425 Owner, LLC's Bankruptcy Case for November 1, 2023.  Azeemeh's agents, on October 31, 2023, only hours before the Status Conference, filed an Emergency Motion.  This Motion contained many misrepresentations, some of which follow:

a)    Even though Zaheer had no right to or standing necessary to file anything on behalf of  Naissance, and the Temporary Injunction gave Zaheer no such rights, statements were made in their Emergency Motion directly to the contrary, stating Azeemeh Zaheer was in, Choudhri was out.

b)    The filing stated flatly at one point that the Assignment had been found to be forged – it had not.

c)    The filing stated that, because of the Temporary Injunction, Naissance was now controlled exclusively by Zaheer, who could make Naissance become the Owner of the Bankrupt.  (The issuing court on Monday, November 13, 2023, ruled from the bench it said no such thing.)

These misrepresentations had the desired effect, and the Bankruptcy Court dismissed the Bankruptcy, green-lighting the Bank of Kuwait to foreclose.

**G.    Abdullatif is Choudhri's Competitor and Wants to Ruin Him.**

51.    Choudhri has been in the real estate investment and management business for the last 20 years.  The regular course of Choudhri's business involves numerous aspects of real estate development.  These activities include real estate and business acquisitions and dispositions,

seeking and obtaining financing, and developing and managing commercial and residential properties.  He regularly raises capital for these activities through the issuance of equity and/or debt.  It is also within his normal course of business to enter into transactions with borrowers, lenders, and investors to support the purchase, development, and operations of real estate properties.

52.     Choudhri at times conducts his real estate investment and management business through the use of special purpose entities, such as Plaintiff Galleria Owner 2425, LLC.  Choudhri runs a management company, Jetall Companies, Inc. ("*Jetall*"), to provide employees and management services to entities for purposes of operating real estate investments.

53.     Abdullatif has provided financing for numerous third-party claims against Choudhri, including interfering with Choudhri's final divorce proceedings in both Pakistan Supreme Court and Harris County District Court by soliciting Choudhri's ex-wife for her legal claims against Choudhri and/or his entities and to gain access to Choudhri's protected financial disclosures.

54.     Upon information and belief, Abdullatif is also financing the litigation expenses of Zaheer against Choudhri in the dispute over the building owned by Plaintiff.  Zaheer has agreed to the enterprise course of action aimed at destroying Choudhri's business, and either taking possession of the 2425 Building or extorting money from him to agree to a plan of reorganization.

55.     On more than one occasion, Abdullatif resorted to violence and threats against Choudhri and/or his family, friends, and associates.  Mr. Choudhri had another real estate venture involving an entity called Dalio.  Abdullatif was present at Dalio's foreclosure proceeding, where a friend accompanying him assaulted one of Choudhri's lawyers. On another occasion, Abdullatif and his associates used firearms to hold Choudhri and his associates hostage.

56.    Abdullatif also formed an association with others in his illegal efforts to destroy Choudhri's business.  These individuals include but are not limited to Chris Wyatt, former Chief Operating Officer of Jetall ("**Wyatt**").

57.    Wyatt was hired by Jetall in 2019.  In the course of his employment, Wyatt oversaw legal and litigation matters for Jetall.  He was provided confidential information concerning Jetall's and its client's real estate transactions, finances and debt leverage on properties, and litigation management strategies.  As a Jetall representative, Wyatt was regularly involved in and provided access to privileged information and communications, including information subject to attorney-client and work product privileges.  Wyatt signed a non-disclosure agreement at the beginning of his employment prohibiting him from disclosing confidential information and requiring him to return all files upon his termination.

58.    Wyatt's employment at Jetall ended in December 2020.  When he left Jetall, Wyatt stole corporate files including electronic communications and secretly recorded privileged phone communications between Choudhri and his attorneys.

59.    Jetall obtained a restraining order in January 2021 enjoining Wyatt from disclosing or divulging confidential information obtained through his course of employment with Jetall.

60.    Abdullatif met with Wyatt immediately following Wyatt's departure from Jetall. Abdullatif, directly and through his lawyers, received confidential and privileged information from Wyatt.  This information included but is not limited to illegal recordings of Choudhri's conversations with attorneys.

61.    Upon information and belief, Abdullatif and  his agents were aware that Wyatt was a former employee of Jetall who was involved in confidential and privileged communications and that a restraining order was entered enjoining Wyatt from disclosing confidential information.

62.     Abdullatif and his agents have used the illegally obtained information and recordings as part of Abdullatif's scheme to destroy Choudhri's business.  Abdullatif retained Wayne Dolcefino ("***Dolcefino***") as a "consultant" to publish on the internet a series of hit pieces on Choudhri.  Dolcefino advertises that his services included "litigation support," and Abdullatif has utilized Dolcefino in the course of his numerous lawsuits asserted against Choudhri and his businesses.

63.     Information illegally obtained from Wyatt is included in many of Dolcefino's hit pieces.  Dolcefino continues to publish these hit pieces on the internet, including videos posted in May 2023.

64.     Abdullatif, with the assistance of Drinnon, now representing Azeemeh Zaheer, has made several false claims against his competitor, Choudhri, in many ways, two of the most egregious being:

a)     Hiring Dolcefino to create video "hit pieces" about Choudhri, his business, his marital status, and inappropriate character based upon his actions during that marital status. This video contained "over the top" falsehoods, e.g. that he was still married and had been for years. It was commercial speech designed to designate a competitor (Choudhri) and give Abdullatif a competitive advantage, and was introduced into interstate commerce by release to major television (broadcast and cable) networks and by placing on the internet where it still resides today, making it available to the potential customers and lenders that are competed for; and

b)     Placing multiple improper Lis Pendens on the record title to properties owned by Choudhri or his business entities, which created a double negative effect on Choudhri's ability to conduct business by hampering his ability to find new lenders or renewing existing loans because the security for them was impaired and making it impossible to sell those properties to raise new capital on his own. These Lis Pendens were "over the top" misrepresentations because they were illegal and did not assert valid interests in the subject properties.  The Lis Pendens were also introduced into interstate commerce because they were filed of record and were available "online" over the internet to any potential customer for commercial real estate in the Houston area.

**V.**

**CAUSES OF ACTION**

**COUNT 1:  BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT**

65.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

66.     Plaintiff and Defendant reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement.  Pursuant to the Confidential Settlement Agreement, Defendant agreed to keep the contents and terms of the parties' agreement completely confidential.

67.     Defendant breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions.  These disclosures prevented the sale of the 2425 Building and chilled the market for other buyers..  The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

68.     Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement.  The damages for these breaches are the amounts of money that the Plaintiff would have made from the contemplated transaction

**COUNT 2:  TORTIOUS INTERFERENCE WITH CONTRACT**

69.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

70.     As alleged, NBK tortiously interfered with the SIBS International contract and the Caldwell Soames Inc. contract, causing damages to the Plaintiff, but for NBK's interference, would have been paid to the Plaintiff.

71.     Zaheer, tortiously interfered with Plaintiff's contract with NBK, and with Plaintiff's bankruptcy proceeding.

**COUNT 3:  <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS</u>**

72.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

73.     After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Galleria 2425 Owner, LLC became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of Galleria 2425 Owner, LLC  NBK interfered with these potential purchasers and with these potential business relationships.  At least the following were interfered with in this fashion:

    a)     Globix Investment,
    b)     Ironwood Commercial Realty,
    c)     Shah Firm, LLC, and
    d)     Jeb Brown Law.

74.     Zaheer,  has interfered with the Plaintiff's relationship with NBK

75.     This interference by the Zaheer damaged Plaintiff in amounts to be determined after discovery

### COUNT 4:  FRAUD AND FRAUDULENT INDUCEMENT

76.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

77.     NBK never had any intention of living up to the Confidential Settlement Agreement.  The Galleria 2425 Owner, LLC was winning the lawsuit against NBK, so NBK induced the Plaintiff into entering into the Confidential Settlement Agreement which NBK had no intention of living up to.  This fraud works as an estoppel against NBK Plaintiff hereby sues NBK for fraud and fraudulent inducement

78.     NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Galleria 2425 Owner, LLC's attempts to sell the 2425 Building so NBK would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time.  The fraud, fraud in the inducement, and subsequent interference for all of which Plaintiff hereby sues NBK.

### COUNT 5:  BUSINESS DISPARAGEMENT

79.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

80.     The posting of the 2425 Building during any negotiation periods and/or the extended grace period when actual buyers were moving toward concluding a deal and when other potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Plaintiff for which Plaintiff hereby sues NBK.

81.     The efforts of Zaheerto make false accusations and representations about the Plaintiff's ownership interests, management, and decision making abilities constituted business disparagement against the Plaintiff for which the Plaintiff hereby sues Zaheer,

82.     The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery.

## COUNT 6:  UNJUST ENRICHMENT

83.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

84.     If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit.  The amount of its unjust enrichment for which Plaintiff hereby sues NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiff hereby sue NBK.

## COUNT 7:  CONSPIRACY

85.     Defendants Zaheer,in combination with NBK, agreed to work in concert with each other in order to interfere with Plaintiff's bankruptcy case, and to have it dismissed by making fraudulently claiming they had control over Naissance Galleria, LLC.

86.     Defendants Zaheer, and NBK acted with the intent to harm plaintiff.

87.     To accomplish the object of their agreement Zaheer, and NBK intentionally or negligently mischaracterized the effect of the state court temporary injunction, in order to confuse and disrupt Plaintiff's bankruptcy case, which resulted in dismissal.

88.     The agreement to engage in this conduct proximately caused injury to plaintiff. Plaintiff's interests in Galleria 2425 Owner, LLC's sole asset, instead of being protected through a bankruptcy action, has now been posted for foreclosure on December 5th, 2023, which will irreparably harm Plaintiff.

## COUNT 8:  ATTORNEYS' FEES

89.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

90.     Plaintiff hereby sue Defendants for its reasonable and necessary attorneys' fees under breach of contract and under any statutory or common law right to recover same.

### VI.
### APPLICATION FOR TEMPORARY INJUNCTION OR ORDER

91.     The Defendants have conspired with each other and others, or worked in parallel courses to get the bankruptcy of Plaintiff 2425 Galleria Owner, LLC dismissed so that Bank of Kuwait is not prohibited by the automatic stay from foreclosing.  If a foreclosure takes place, the equity of Plaintiff will be wiped out and Plaintiff will have no assets and no adequate remedy at law to return the retrieve the assets or its value.

92.     Temporary injunctive relief is necessary until such time as the merits of this case can be decided and the status quo is maintained pending resolution on the merits.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER

93.     Plaintiff's application for a temporary restraining order is authorized by Tex. Civ. Prac. & Rem. Code §65.011(1) which allows applicants to the relief sought to restrain the Defendants from prejudicial acts; by Tex. Civ. Prac. & Rem. Code §65.011(3) which allows applicants to the relief sought under the principles of equity and laws of Texas related to injunctions; by Tex. Civ. Prac. & Rem. Code § 65.011(5) which allows applicants to the relief sought when irreparable injury to business, good will, reputation and personal property is threatened; and by Tex. Bus. Orgs. Code § 152.211(b), allowing partners in a partnership to obtain an injunction to enforce rights under the Texas Business Organizations Code.

94.     As set forth above, an emergency hearing on Plaintiff's Application for Temporary Restraining Order is necessary to conserve the Plaintiff's business status and maintain the status quo during the pendency of this lawsuit. Plaintiff would suffer material injury by the delay necessary to give notice. Any delay necessary for notice would lead to imminent and irreparable injury to property.

95.     It is probable that Plaintiff will recover from Defendants after a trial on the merits because the facts set forth are verified and sets forth the Defendants wrongful conduct; and actions including seeking the sale of the business by the Defendants are wrongful and must be stopped.

96.     If Plaintiff's application is not granted, harm is imminent because 1) Galleria 2425 Owner, LLC's  sole asset will be foreclosed as a result of Defendants harmful actions on December 5th, 2023; 2) Defendants will continue to conspire with each other in a manner that is counter to the true interests of Naissance Galleria, LLC; and 3) Defendants will continue to  violate the Temporary Injunction, as they have already done on at least three occasions, in order to interfere with Plaintiff's lawful attempts to preserve the 2425 Building. These harms are imminent and would cause irreparable injury with no other adequate legal remedy.

97.     The harm that will result if the temporary restraining order is not issued is irreparable because Plaintiff has an interest in a unique piece of real estate which it will be wiped out in the event of foreclosure. Texas Courts repeatedly rule that "every piece of **real estate** is innately  [**8] unique. *See, e.g., Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.--Houston [14th [*58]  Dist.] 1982, no writ) ("It is well established law that each and every piece of **real estate** is unique. Therefore, if appellants were allowed to foreclose appellees would be irreparably harmed, since **real estate** is so unique."); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.--Corpus Christi 1987, no writ) ("Every piece of **real estate** is unique,

and if foreclosure were allowed before a full determination of the usury claim, appellee would be irreparably harmed."). *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 57-58 (Tex. App.—San Antonio 2010, no pet.).

**VII.JURY DEMAND**

98.     Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

**VIII. PRAYER**

99.     For the reasons set forth above, Plaintiff asks that the Court enter a Temporary Restraining Order, and after a hearing, a Temporary Injunction, enjoining the Defendants in the following manners:

a)     NBK is restrained from 1) Foreclosing on, posting, reposting, or otherwise selling at auction the 2425 Building; and 2) transferring any Note and/or lien it holds or may hold relating to the 2425 Building; or 3) or interfering with the Plaintiff's business in any manner, including by acting in concert with another party.

b)     Actual damages including economic injuries & consequential damages;

c)     Attorney's fees;

d)     Exemplary damages;

e)     Prejudgment and post judgment interest;

f)     Court costs; and

g)     All other relief to which Plaintiff is entitled under both law and equity.

100.    Plaintiff is willing to post bond.

Respectfully submitted,

**MATÍAS J. ADROGUÉ PLLC**

By: _____
        Matías J. Adrogué
        Texas State Bar No. 24012192
        Leila M. El-Hakam
        Texas State Bar No. 24007147
        1629 West Alabama St.
        Houston, Texas 77006
        713-425-7270 *Telephone*
        713-425-7271 *Facsimile*
        service@mjalawyer.com
        **ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served to all counsel of record by hand delivery, fax transmittal, Certified mail, return receipt requested, electronic mail, e-service, and/or U.S. Mail, on this the 29th day of November, 2023.

_____
Matías J. Adrogué

Unofficial Copy Office of Marilyn Burgess District Clerk

JURAT

My name is Ali Choudhri, my date of birth is 01/24/1980. My office address is 1001 West Loop South, Suite 700, Houston, Texas 77027. I declare under penalty of perjury that the facts and events set forth in the foregoing Amended Petition and Emergency Application for Temporary Restraining Order are within my personal knowledge and are true and correct.

Executed in Harris County, State of Texas, on November 29, 2023.

_____/s/Ali Choudhri_____
Ali Choudhri

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Matias Adrogue
Bar No. 24012192
mja@mjalawyer.com
Envelope ID: 82040972
Filing Code Description: Amended Filing
Filing Description: Plaintiff's Second Amended Petition & Application for TRO
Status as of 11/29/2023 10:18 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jerry CAlexander | | alexanderj@passmanjones.com | 11/29/2023 10:01:12 AM | SENT |
| Ruth NVera | | verar@passmanjones.com | 11/29/2023 10:01:12 AM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 11/29/2023 10:01:12 AM | SENT |
| Jennifer LMacGeorge | | jmac@jlm-law.com | 11/29/2023 10:01:12 AM | SENT |
| Jetall Legal | | legal@jetallcompanies.com | 11/29/2023 10:01:12 AM | SENT |
| Omar Khwaja | | service@attorneyomar.com | 11/29/2023 10:01:12 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/29/2023 10:01:12 AM | SENT |
| Omar Khawaja | 24072181 | Omar@attorneyomar.com | 11/29/2023 10:01:12 AM | SENT |
| David Tang | 24014483 | dtangattorney@gmail.com | 11/29/2023 10:01:12 AM | SENT |
| MacGeorge Law Firm Admin | | service@jlm-law.com | 11/29/2023 10:01:12 AM | SENT |