# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## NBK'S RESPONSE TO ALI CHOUDHRI'S MOTION TO COMPLY WITH THE GATEKEEPING PROVISIONS OF THE CONFIRMED CHAPTER 11 PLAN
[Relates to Docket No. 810]

TO THE HONORABLE JEFFREY P. NORMAN,
UNITED STATES BANKRUPTCY JUDGE:

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK"), files this response (the "Response") to Ali Choudhri's *Motion to Comply with the Gatekeeping Provisions of the Confirmed Chapter 11 Plan* [Docket No. 810] ("Choudhri's Motion")[1] and represents follows:

## PRELIMINARY STATEMENT

1.      The Court has provided Mr. Choudhri with every opportunity to participate in this case and be heard. When attorneys for companies he owns were unwilling to make arguments to the Court or pursue various lines of questioning with witnesses, the Court permitted Mr. Choudhri to examine witnesses and make arguments, which were ultimately found to be nonsense.[2]

2.      Now, after three plus years of litigation involving two bankruptcy cases and several state court lawsuits and bankruptcy adversary proceedings that have not gone his way, Mr. Choudhri, rather than simply comply with the unstayed provisions of the confirmed Plan,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in National Bank of Kuwait, S.A.K.P, New York Branch's Emergency Motion to Enforce the Gate-Keeping Provisions of the Confirmed Chapter 11 Plan [Docket No. 758] ("NBK's Motion").

[2] "This Court having spent considerable time attempting to evaluate the actions and testimony of Ali Choudhri in this case both as a witness and as a pro se litigant. The Court, based on this analysis, holds that Choudhri must at times believe what he is telling the Court. Unfortunately, what he has told the Court, often in broad terms, is not supported by rational facts or any documentary evidence. It additionally often is totally untrue." [Docket No. 565 at 17-18] (the "Memorandum Opinion").

seeks to challenge its gatekeeping provisions, so that he can continue to harass NBK, arguing that the Supreme Court "significantly constrained" this Court's gatekeeping powers. That argument fails for two reasons. First, *Purdue Pharma* did nothing to alter existing Fifth Circuit law,[3] so nothing in *Purdue Pharma* requires this Court to reconsider the propriety of the Plan's gatekeeping provisions.

3.      Second, Mr. Choudhri is barred from challenging the Plan's gatekeeping provisions. Although a company owned by Mr. Choudhri challenged and appealed the Plan's gatekeeping provisions, Mr. Choudhri did not.[4] As explained below, fourteen years ago the Supreme Court foreclosed an after-the-fact attack on a confirmed plan by a party that never objected or appealed, even if the challenged provisions contravene the Bankruptcy Code. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).[5]

4.      Because there is neither a basis to challenge the Plan's gatekeeping provisions nor can Mr. Choudhri pursue a challenge given his failure to object to those provisions in the first place, the next step for the Court would be to determine whether Mr. Choudhri has colorable claims against NBK. But, as Mr. Choudhri himself acknowledges,[6] the Court has already made that determination. Nevertheless, Mr. Choudhri asks the Court to *reconsider* because "the Plaintiffs were not permitted to present, and the Court was not permitted to hear, a full airing of the evidence

---

[3]   Non-consensual third-party releases have long been prohibited in the Fifth Circuit. *See, e.g., Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) (overturing an injunction that effectively discharged a non-debtor).

[4]   The only party to appeal the Confirmation Order was 2425 WL, LLC ("2425 WL") [Docket No. 603].

[5]   Any effort by Mr. Choudhri to even suggest that 2425 WL's appeal should be treated like he appealed, or he should get some benefit here from that appeal should be rejected out of hand. Mr. Choudhri is currently opposing efforts to hold him and various of his entities *alter egos* of each other in other litigation pending before this Court, arguing each are distinct. *See John Quinlan, et. al. v. Jetall Companies, Inc., et al.,* Adversary No. 23-03141 (Bankr. S.D. Tex.). He cannot have it both ways.

[6]   *See* Choudhri's Motion at ¶ 33.

2

to support the Plaintiffs' claims,"[7] as though the Court must conduct a full trial before it can determine whether a claim is colorable.

5.        Then, instead of describing the unheard evidence and explaining how it would affect the Court's ruling, Mr. Choudhri points to (a) testimony the Court already heard and did not believe, and (b) the pleadings in the Pending Actions, without identifying a single factual allegation that the Court has not heard or that would (or even might) persuade the Court to reverse its determination that Mr. Choudhri's claims are "dubious," "of limited value," "primarily nuisance litigation," "not viable," and "implausible."[8] That is because there are none.

6.        Additionally, Mr. Choudhri invokes the wrong legal standard for determining whether his claims against NBK are colorable and asks the Court to accept his allegations as true.[9] This matter does not concern the fraudulent joinder rule, and the appropriate test is not "more lenient" than the analysis applicable to a FED. R. CIV. P. 12(b)(6) motion. As explained below, the Gatekeeper Colorability Test from *Highland Capital* is broader and requires an additional level of review. The test permits a court to take into consideration its knowledge of the bankruptcy case and the parties and any additional evidence and places the burden on Mr. Choudhri to make a *prima facie* showing that his proposed claims are (a) not without foundation, (b) not without merit, and (c) not being pursued for any improper purpose such as harassment.

7.        The Court ordered Mr. Choudhri to show why the claims asserted in the Pending Actions are colorable.[10] He has failed to do so. It is time for Mr. Choudhri's vexatious litigation against NBK to end, and he should be sanctioned.

---

[7]   *Id.*

[8]   Memorandum Opinion at 16-17.

[9]   *See* Choudhri's Motion ¶ 24.

[10]  *See* Docket No. 779 at 2. The Court also ordered Naissance Galleria to show cause, but it has not. Accordingly, pursuant to the Court's prior order, its claims against NBK must be dismissed. *Id.*

4869-6753-5861.v7

## BACKGROUND

8.      This Court previously entered a Memorandum Opinion in which the Court determined that claims asserted by the Debtor and its principal Mr. Choudhri against NBK "are not viable" based on evidence presented during the confirmation hearing, "especially the documentary evidence."[11] The Court found the disputes raised by the Debtor, primarily through Mr. Choudhri, to be "dubious and of limited value that includes primarily nuisance litigation to avoid foreclosure of the subject real estate."[12] The Court also noted "two distinct facts (1) that the Debtor via his principal has never been able to pay the original note, or his Confidential Settlement Payment or his extended Confidential Settlement Payment which was a sizable discount on the original amount of the Note; [and] (2) the record in this case does not support his sizable but *implausible claims*."[13] In rendering its opinion, the Court stated "Choudhri must at times believe what he is telling the Court. Unfortunately, what he has told the Court, often in broad terms, is not supported by rational facts or any documentary evidence. It additionally often is totally untrue."[14]

9.      During the confirmation hearing, the chapter 11 trustee testified that in the course of his duties he investigated the Debtor's claims against NBK.[15] He testified that (a) the releases in favor of NBK in the Confidential Settlement Agreement ("CSA") were likely enforceable;[16] (b) the Debtor and Mr. Choudhri failed to provide any documentary evidence to support its claims

---

[11] Memorandum Opinion at 16.

[12] *Id.*

[13] *Id.* at 17 (emphasis added).

[14] *Id.* at 17-18.

[15] *See* June 19, 2024 confirmation hearing transcript, attached as **Exhibit A**, at 122:4-9.

[16] *See id.* at 127:9-15.

for events following the execution of the CSA;[17] and (c) any factual support for those claims was "weak to non-existent."[18]

10.     The claims evaluated by the Trustee and the Court during the confirmation hearing included a litany of claims and alleged facts duplicated in multiple lawsuits by Mr. Choudhri, whether in his own name or via various of his entities including the Debtor, Naissance Galleria, LLC ("Naissance"), or 2425 WL.[19] For ease of reference, attached as **Exhibit B**, is a chart of the pending claims asserted by the Debtor, Naissance, and Mr. Choudhri.

11.     Specifically, the Court noted in its Memorandum Opinion that the claims asserted by the Debtor, Naissance, and Mr. Choudhri against NBK in Adversary No. 23-03263 ("*Choudhri Intervention Action*"),[20] commenced under this bankruptcy case, are the same as those asserted in Adversary No. 23-06009 ("*Galleria I Adversary*"), commenced under the Debtor's prior bankruptcy case – namely "breach of the [CSA], tortious interference with contract, tortious interference with business relations, fraud and fraudulent inducement/lender liability, fraudulent conveyance, estoppel, breach of good faith and fair dealing, and unjust enrichment."[21] The claims in the *Choudhri Intervention Action* also include causes of action for conspiracy and federal misrepresentation of services and unfair competition under the Lanham Act.[22] The *Choudhri*

---

[17] *See id.* at 129:22-130:8.

[18] *See id.* at 130:9-13.

[19] *See* Memorandum Opinion at 2. These claims included a number of causes of action previously nonsuited with prejudice by Debtor as to NBK in Cause No. 2021-63370, *Galleria 2425 Owner, LLC v. NBK, et al.* pending in the District Court of Harris County, Texas, 281st Judicial District, including claims for breach of the loan agreement in allegedly failing to approve leases or sale of the property, common law fraud in allegedly fraudulently inducing Debtor to enter the loan agreements, tortious interference with prospective relations and existing contracts including tenant leases, breach of fiduciary duty, and general good faith duty in allegedly failing to approve tenant leases. *Plaintiffs' Second Amended Petition* attached as **Exhibit C**; *Order on Plaintiffs' Notice of Nonsuit as to Defendant National Bank of Kuwait, S.A.K.P.* attached as **Exhibit D**.

[20] The Court referenced Adversary No. 23-34815 in its Memorandum Opinion. However, the removed case is Adversary No. 23-03263.

[21] *See* Memorandum Opinion at 2-3.

[22] *See id.* at 3.

4869-6753-5861.v7

*Intervention Action* includes his *Second Amended Petition in Intervention* in which Choudhri asserts claims for fraud, promissory estoppel, and equitable estoppel.[23] Although Mr. Choudhri offers scant facts to support his claims in his *Second Amended Petition*, they appear to arise from the CSA to the extent asserted against NBK. The Court dismissed with prejudice the Debtor's causes of action against NBK in the *Choudhri Intervention Action.*[24]

12.     Naissance also filed Cause No. 2023-43755, *Naissance Galleria, LLC v. Azeemeh Zaheer*, Cause No. 2023-43755, in the 80th Judicial District Court of Harris County, Texas, ("*Naissance I*") and in that action filed *Plaintiff's Second Amended Petition & Emergency Application for Temporary Restraining Order against NBK*.[25] Naissance asserts the same claims against NBK as those asserted in the *Choudhri Intervention Action* including breach of the CSA, tortious interference with contract, tortious interference with business relations, fraud and fraudulent inducement, business disparagement, and unjust enrichment. In support of the petition in *Naissance I*, Mr. Choudhri declared under penalty of perjury that the facts and events set forth in *Plaintiff's Second Amended Petition & Emergency Application for Temporary Restraining Order* against NBK were within his personal knowledge and true and correct.[26] As noted in footnote 10, although it was ordered to show cause why its claims can be pursued consistent with the Plan's gatekeeping provisions, Naissance did not do so. Its claim against NBK, therefore, must be dismissed. *See* Docket No. 779 at 2 ("The failure to timely file a Show Cause Motion by a plaintiff shall be deemed to be an admission by that plaintiff that its Pending Action is an estate

---

[23] Adversary No. 23-03263, Docket No. 1-2 at 907.

[24] Adversary No. 23-03263, Docket No. 26.

[25] Attached as **Exhibit E**.

[26] *Id.* at 29.

4869-6753-5861.v7

claim, or is not a colorable, non-estate claim, and the appropriate Pending Action shall be permanently stayed, removed if necessary to this Court, and dismissed with prejudice.").

## ARGUMENT & AUTHORITIES

**A.  Mr. Choudhri Is Prohibited from Collaterally Attacking Confirmed Plan Provisions That He Did Not Object to or Appeal**

13.     "The Supreme Court has held that a confirmed plan may bind parties in interest even if a plan provision contravenes the Bankruptcy Code." *In re Sanchez Energy Corp.*, 631 B.R. 847, 857 (Bankr. S.D. Tex. 2021).

> In *United Student Aid Funds, Inc. v. Espinosa*, a bankruptcy court confirmed a chapter 13 plan which improperly discharged a portion of the debtor's student loan debt. 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). Like Occidental, the creditor received notice of the plan, but did not object to or appeal confirmation. Although the bankruptcy court confirmed the plan in error, the Supreme Court found that the confirmation order was "enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." *Id.* at 275, 130 S.Ct. 1367.
>
> . . .
>
> "An Order confirming a plan of reorganization is entitled to res judicata effect." *In re Wildwood Prop. Owners Ass'n*, 2017 WL 3189874, at *7 (Bankr. S.D. Tex. July 25, 2017) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170-71, 59 S.Ct. 134, 83 L.Ed. 104 (1938)). "Federal courts have consistently applied res judicata principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order." *Id*.

*Id.* 857-59.

14.     "*Espinosa* makes clear that parties and the Court must adhere to the terms of a confirmed plan. This is so even if the Court committed a legal error by confirming the plan." *In re Sanchez*, 631 B.R. at 857. Even if the scope of the gatekeeping provisions in the confirmed Plan runs afoul of any requirement imposed by the Fifth Circuit's *Highland Capital* opinion (which

4869-6753-5861.v7

they do not),[27] there can be no question that the Court must apply them here as set forth in the confirmed Plan.

15.     Additionally, implicit in Choudhri's Motion is an argument that, but for the gatekeeping provisions, the Court would not have jurisdiction over the Pending Actions. But that implicit argument is wrong.

16.     There can be no question that this Court has related-to jurisdiction over the Pending Actions. As this Court has held:

> The Supreme Court has noted "related to" bankruptcy proceedings include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir.2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)). The Fifth Circuit has stated that a matter is related to a case under title 11 if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984)). Even when there is a possibility a suit may ultimately have no effect on the estate, this possibility is not enough to conclude there would be no *conceivable* effect. *Id.* "Certainty or even likelihood of such an effect is not a requirement." *Arnold*, 278 F.3d at 434 (citing *In re Canion*, 196 F.3d 579, 588 (5th Cir.1999)).

*In re Mugica*, 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007) (emphasis added).

17.     The Fifth Circuit has also held that related-to jurisdiction may extend to non-debtors' state-law disputes after the plan is confirmed. *Feld v. Zale Corp. (In re Zale)*, 62 F.3d 746, 757-59 (5th Cir. 1995).

18.     With respect to the "lender liability" claims cited throughout Choudhri's Motion, the Debtor was the borrower, and the estate released all of its claims against NBK under the Plan.

---

[27] *Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022), *cert. denied sub nom. Highland Cap. Mgmt., L.P. v. Nex-Point Advisors, L.P.*, 144 S. Ct. 2714 (2024), *and cert. denied sub nom. NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, 144 S. Ct. 2715 (2024).

Nearly identical claims were asserted by Naissance in *Naissance I*, and the *Galleria I Adversary* and *Choudhri Intervention Action* each of which are already pending in this Court.

19.     Under these circumstances, there is no doubt that post-confirmation related-to jurisdiction exists.

20.     Furthermore, post-confirmation core jurisdiction also exists, and the evaluation by this Court of the various claims asserted by Mr. Choudhri necessarily means comparing the identical nature of those claims to the released estate claims. Mr. Choudhri has not established that the claims he asserts are his direct claims against NBK, and not just repackaged estate claims that have been released or dismissed altogether. If they are just repackaged estate claims, it is well within this Court's core jurisdiction to prohibit their prosecution in aid of confirmation of the Plan and in the exercise of its inherent power to enforce its own order confirming the Plan and approving the releases of estate claims against NBK.[28]

**B.      The Appropriate Standard Is the *Highland Capital* Gatekeeper Colorability Test**

21.     In *Highland Capital*, United States Bankruptcy Judge Jernigan undertook the most comprehensive analysis of the proper standard to apply when determining the "colorability" of a claim in the context of gatekeeping provisions in a chapter 11 plan.

> The court concludes that the appropriate standard to be applied in making its "colorability" determination in *this* bankruptcy case, in the exercise of its gatekeeping function pursuant to the two Gatekeeper Orders and the Gatekeeper Provision in *this* Plan, is a broader standard than the "plausibility" standard applied to Rule 12(b)(6) motions to dismiss. It is, rather, a standard that involves *an additional level of review*—one that places on the proposed plaintiff a burden of making a prima facie case that its proposed claims are *not without foundation*, are *not without merit*, and are *not being pursued for any improper purpose such as harassment*. Additionally, this court may, and should, take into consideration its *knowledge* of the *bankruptcy proceedings* and *the parties* and any additional evidence presented at the hearing on the Motion for Leave. For ease of reference,

---

[28] *See Defendant National Bank of Kuwait, S.A.K.P., New York Branch's Objection to Emergency Motion to Remand of Ali Choudhri* [Adversary No. 03120, Docket No. 9].

the court will refer to this standard of "colorability" as the "Gatekeeper Colorability Test." The court considers this test as a sort of hybrid of what the *Barton* doctrine contemplates and what courts have applied when considering motions to file suit when a vexatious litigant bar order is in place.

*In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ-11, 2023 WL 5523949, at *41 (Bankr. N.D. Tex. Aug. 25, 2023) (emphasis in original). Judge Jernigan emphasized "***this*** bankruptcy case" and "***this*** Plan" because "[i]n determining what appropriate legal standard applies here in the 'colorability' analysis, the context in which the Gatekeeper Provision of the Plan was approved seems very relevant." *Id.* at *38.

22.     To the extent that the FED. R. CIV. P. 12(b)(6) plausibility standard is applicable, a court is not just permitted, but is required, to rely upon its judicial experience and common sense in its application.

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Factual allegations that are merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief, and thus are inadequate. Accordingly, the requisite facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Determining whether a complaint states a plausible claim for relief is a context-specific task that ***requires*** the reviewing court to draw on its ***judicial experience*** and ***common sense***.

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quotations and citations omitted) (emphasis added).

23.     Thus, it is entirely appropriate for the Court to view Mr. Choudhri's claims through the lens of its knowledge of the bankruptcy proceedings and the parties, including the time "spent over two days June 17 and 19, 2024, hearing specific evidence regarding the disputes between the Debtor, its principal and the NBK,"[29] and any party's credibility deficit resulting therefrom.

---

[29] Memorandum Opinion at 16.

4869-6753-5861.v7

C. **Mr. Choudhri's Claims Do Not Satisfy Any of the Requirements Under the Gatekeeper Colorability Test**

24.     As stated in NBK's Motion, the Pending Actions assert the same basic facts and claims that this Court found lacked foundation and merit. The lender liability claims in the Pending Actions hinge upon an alleged breach by NBK of the CSA. These claims and NBK's alleged breach of the CSA were explored on several occasions in this case, including in the motion to prohibit credit bidding,[30] at the hearing on NBK's motion to convert, and – most thoroughly – at the confirmation hearing.

25.     The CSA was a key evidentiary document evaluated by the Court at the confirmation hearing, including the following provisions whereby Mr. Choudhri waived claims against NBK.

> (a) Acknowledgement of the Indebtedness. As of the Effective Date, Choudhri, Galleria and Naissance acknowledge and agree that NBK is owed $60,212,816.90 under the Loan Documents, **without defenses, setoffs, claims, counterclaims or deductions of any nature whatsoever, all of which are hereby expressly waived**;
>
> (b) Acknowledgment of Existing Defaults. Galleria, Choudhri and Naissance further acknowledges and agrees that: (i) an Event of Default exists under the Loan Documents, (ii) any cure period with respect thereto has expired, (iii) all principal, interest, fees, costs and other charges due under the Loan Documents are fully accelerated and immediately due and owing to NBK **without defenses, setoffs, claims or counterclaims or deductions of any nature whatsoever all of which are hereby expressly waived**, . . . .

Memorandum Opinion at 5 (emphasis in original).

26.     A cursory review of the Pending Actions makes clear that they allege claims based on conduct that allegedly occurred before the CSA was executed. These claims have been expressly released by Mr. Choudhri, and he presents no credible argument or fact that would support vitiating Mr. Choudhri's release.

---

[30] Docket No. 353.

4869-6753-5861.v7

27.     Furthermore, to the extent that Mr. Choudhri contends that there was a post-execution breach of the CSA that should void the releases, or that gives rise to new post-execution claims for breach, the Court found no evidence NBK breached the CSA, after evaluating the documentary evidence and Mr. Choudhri's own allegations.

> The Debtor's principal strongly feels that he is a victim of unusual circumstance, COVID but mostly the actions of NBK. He strongly complains that the actions of NBK have caused him to default, face foreclosure and that it should pay for its actions [whatever they may be]. However, this totally ignores two distinct facts (1) that the Debtor via his principal has never been able to pay the original note, or his Confidential Settlement Payment or his extended Confidential Settlement Payment which was a sizable discount on the original amount of the Note; (2) the record in this case does not support his sizable but implausible claims. The Court notes two specific allegations. ***First, the allegation that NBK faces a large lender liability claim based on the CSA and second, that NBK breached that agreement first and therefore the Debtor's breach of the CSA by not paying over $26 million dollars was somehow acceptable. The Court invites the parties to examine the record to find any evidence that either of these facts are true.*** Yes, the Debtor had lawyers testify that the Debtor had claims but they never explained how or why these claims arose, just that they existed. Additionally, the Court notes that the Chapter 11 Trustee interviewed these attorneys and discounted their claims. Their testimony was incomplete and not believable given the lack of documentary evidence. Just because a lawyer tells this Court or any Court that its client or potential client has a great claim for damages does not make it so or the presentation of evidence in hearings would become superfluous.

Memorandum Opinion at 17 (footnotes omitted) (emphasis added).

28.     Because the Court found that NBK did not breach the CSA, Mr. Choudhri's express waiver of claims against NBK under the CSA remains in effect, and there is no claim for a post-CSA breach. The claims asserted, therefore, are neither colorable nor viable.

29.     Moreover, Choudhri's Motion altogether fails to introduce any new documentary evidence supporting the argument that the Court has not heard "a full airing of the evidence" before concluding that Mr. Choudhri's claims lack merit. Mr. Choudhri's evidence has been presented and found wanting. For example:

- Exhibit 3 to Choudhri's Motion is attached to support the allegation Osama Abdullatif "arranged to have hard drives seized from Choudhri's companies." This allegation was

4869-6753-5861.v7

raised in the *Motion to Disqualify Rodney Drinnon as Counsel* [Adversary. No. 23-03259, Docket No. 10].

- Exhibit 4 to Choudhri's Motion is attached to support the allegation that Abdullatif "arranged for Choudhri to be accused of a murder-for-hire plot to kill Abdullatif himself, which authorities dismissed as 'a hoax.'" This allegation was raised in 2425 WL, LLC's *Motion for Reconsideration and Relief from Judgment* [Docket No. 740] concerning the disallowance of Proof of Claim No. 7, which the Court denied [Docket No. 743]

- Exhibit 5 to Choudhri's Motion is attached to support the allegation that Abdullatif's attorney "admits to representing Abdullatif and Zaheer in furtherance of Abdullatif's avowed goal of seizing all of Choudhri's business interests through litigation—under their theory: 'If [Ali] own[s] it, we own it.'" This allegation was also raised in the *Motion for Reconsideration and Relief from Judgment.*

30.     Leaving aside that none of these allegations involve alleged conduct by NBK, there simply is nothing in Choudhri's Motion that the Court has not already considered in assessing the foundation and merit of the claims at issue. Furthermore, the Court has had ample opportunity to assess Mr. Choudhri's purpose for pursuing these claims and likewise found them to be improper. Therefore, although the Gatekeeper Colorability Test requires that all three prongs – foundation, merit, and purpose – be satisfied, Mr. Choudhri's claims fail to satisfy a single component of the test.

## CONCLUSION

For the foregoing reasons, NBK respectfully requests that this Court deny Choudhri's Motion, enforce the Plan's gatekeeping provisions by requiring the Pending Actions to be dismissed, and sanction Mr. Choudhri for his continued pursuit, without any new evidence, of claims this Court has already found to be meritless.

4869-6753-5861.v7

DATED: November 20, 2024                   **PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Charles C. Conrad*
Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

-   *and*   -

Andrew M. Troop (Bar No. MA547179)
Patrick E. Fitzmaurice*
Kwame O. Akuffo*
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*Admitted *pro hac vice*

***Counsel for National Bank of Kuwait, S.A.K.P., New York Branch***

## CERTIFICATE OF SERVICE

I hereby certify that, on November 20, 2024, a true and correct copy of the forgoing Objection was served via the Court's CM/ECF system on all counsel of record who are deemed to have consented to electronic service.

*/s/ Charles C. Conrad*
Charles C. Conrad

4869-6753-5861.v7