## THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GALLERIA  2425 OWNER, LLC, | ) | Case No. 23-34815 |
| | ) | |
| Debtor. | ) | |
| | ) | |

_____

## RESPONSE  TO NBK'S EMERGENCY  MOTION TO ENFORCE SALE ORDER AND MOTION FOR CONTINUANCE

_____

**To the Honorable Court:**

Jetall Companies, Inc. hereby files this response to the Emergency Motion to Enforce Sale Order filed by the National Bank of Kuwait, S.A.K.P., New York Branch and, subject to Jetall's challenge to this Court's jurisdiction, and without waiving same, would respectfully show as follows:

### BACKGROUND

The Court should deny this demand by the Bank to convert this Court into a justice of the peace by counsel that has been disqualified from handling the issues in this case.

1.     The Bank is fully aware that this Court is not the appropriate forum for it to try and evict Jetall from the Property, and that the Court lacks the power to have one bankrupt party evict a non-bankrupt party that has not appeared in this proceeding and has not been served with citation, has not been provided appropriate notice, and has not been

given any of the procedural benefits that parties enjoy in forcible entry and detainer actions under Texas law.

2. After all, the purchaser of the Property, Houston 2425 Galleria, LLC, started where it *should* go for any eviction proceeding: to a justice of the peace, the only court with authority over forcible entry and detainer actions in Texas. Tex. Prop. Code § 24.004. The purchaser brought just such a forcible entry and detainer action. *Houston 2425 Galleria, LLC v. Jetall Companies, Inc*., Cause No. 241100353166 (Harris County Justice of the Peace, Precinct 1 Place 1) (*See* **Exhibit 1** [Affidavit of Marc Hill]**)**. But the Purchaser lost in that proceeding. And despite what the Bank insists—without any supporting evidence—that was not simply because Jetall raised issues of "title." (Mot. 5) It was because the justice court determined that the Bank had not provided Jetall with the appropriate notice required under Texas law in a forcible entry and detainer action . Indeed, while the justice court's order denying the forcible entry and detainer did not specify *why* it was denied—saying only that it lacked jurisdiction—it is nonetheless clear that it was for lack of notice. there is no record of proceedings before the justice court (because justice of the peace courts are not courts of record) But Marc Hill, Jetall's lawyer who represented Jetall in the forcible entry and detainer action, and who was present at the hearing on that action, confirms that the justice court determined that it lacked jurisdiction because it determined that the Bank had violated Texas eviction law by failing to give Jetall "adequate notice." (*See* Ex. 1)

3. The Purchaser itself confirmed that it was problems regarding lack of notice—rather than title issues—that caused its forcible entry and detainer action to fail,

by hastily correcting the error and filing a new notice, purporting to notify Jetall that it had until "December 18, 2024 (30 days from the date of this notice)," to "vacate" the property. (**Exhibit 1-B** [Notice to Vacate dated November 18, 2024] at 2) Now the Bank is compounding its failure to follow Texas eviction law with a failure to fulfill the promise the Purchaser made in that notice by turning to this Court and seeking "emergency" relief to evict Jetall before the 30 days provided in the notice has expired. But neither the Bank's impatience nor the Purchaser's failure to provide the notice that the justice court deemed to be required under Texas law is a matter deserving of this Court's attention—much less create an "emergency" necessitating the Court's immediate action.

4.      The Bank is also aware that its current counsel cannot bring this action because it has been disqualified from any matter having to do with Jetall. In the eviction action, the justice of the peace disqualified the Purchaser's counsel, Jackson Walker, LLP because that firm had represented Jetall in previous litigation and thus had a "conflict of interest." (*See* **Exhibit 2**) That disqualification extended not only to Jackson Walker itself, but also to "its co-counsel" Pillsbury Winthrop. (*Id*.) And that disqualification went beyond the "the present case" before the justice court, to include *any* case involving a "party in this case or the matters and issues relating thereto." (*Id*.) Jetall was a party in that case. And the matters in this action are identical to those in the forcible entry and detainer. Accordingly, Pillsbury Winthrop's continued representation of the Bank in this action is in direct, willful violation of the justice court's order. And that is only the beginning of the problems with the Bank's motion.

**ARGUMENT**

**I.      The Court lacks jurisdiction over this action and over Jetall.**

5.      To begin with, the Court does not have jurisdiction over either the parties, or the subject matter of, any action to evict Jetall. Jetall is not a debtor in this case. It has not been served with any summons or citation. It is not before the Court. And it has made no appearance in this case beyond filing a proof of claim. That did not make it a party to any eviction action that is separate and apart from the main bankruptcy action. The Court therefore lacks power to compel Jetall to leave the property. The Bank cites no authority suggesting otherwise.

6.      The Court also does not have any jurisdiction over the case under 28 U.S.C. 1334. This is an action by one non-bankrupt party seeking to evict another non-bankrupt party from a building that—as the result of a foreclosure sale by which the Bank purchased the property—is no longer property of the bankruptcy estate. The eviction will have no effect on the bankruptcy estate. And the only thing that the Court has offered to establish a connection to the estate is the Court's Order (A) Approving Asset Purchase Agreement Between the Trustee and QB Loop Property LP; (B) Approving the Sale of the Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (C) Approving Assumption and Assignment of Executory Contracts and Leases; (D) Determining the amounts necessary to cure such Executory Contracts, and Unexpired Leases; and (E) Granting Related Relief [Docket No. 608] (the "Sale Order").

7.      But the present action has absolutely *no* connection to the Sale Order. While that order conveys the Property—the physical building that was purchased in the

4

foreclosure sale—to the Purchaser, it does not purport to transfer any leasehold interests to anyone. Accordingly, the Sale Order's provision demanding that "all persons that are in possession of some or all of the Purchased Assets" turn over those assets to the Purchaser does not apply to Jetall's lease—because its lease is not one of the "Purchased Assets." (Mot. 4) (quoting Sale Order, p. 26 ¶ 34) Furthermore, while the Sale Order purports to convey the Property "free and clear of all interests, including all liens, claims and encumbrances," (Mot. 4) (quoting Sale Order p. 7 ¶ N, p. 13 ¶ 5]), whether that provision had any effect on Jetall's legal entitlement to possess the Property—it cannot effectuate a transfer of possession. That is why an eviction was necessary.

8.      Indeed, the only Property transfer that the Sale Order effectuates is the transfer from the bankruptcy estate to the Purchaser—with no transfer of property from Jetall to the Bank. And in that sense, the Sale Order strips this Court of jurisdiction rather than conveys jurisdiction. By transferring property out of the bankruptcy estate, that ensures that nothing that happens to the Property will have any effect on the estate.

## I.      The Court lacks any substantive power to evict Jetall.

9.      The Court also lacks substantive power to evict Jetall for several reasons.

### A.      The Bankruptcy Code does not convey power to bankruptcy courts to evict one non-bankrupt party for the benefit of another.

10.      First, nothing in the Code empowers a bankruptcy court to conduct eviction of one non-bankrupt party for the benefit of another non-bankrupt party. And the Bank cites nothing to suggest otherwise. The sole substantive bankruptcy power that the Bank invokes is section 105(a) of the Code, and the Court's power to "enforce its own orders."

(Mot. 6) But the Bank concedes that this power is limited to "*effectuat[ing]* the requirements of the Sale Order"—not *expanding* upon them. (*Id*. at 7) (emphasis added) But as explained above, the Sale Order does not order any transfer of possession from Jetall to the Bank, so the Court cannot "effectuate" the Sale Order by making a separate order initiating that transfer. The Bank does not cite any authority to the contrary. And thus the Bank cannot invoke the Sale Order as the basis to transfer property from one non-bankrupt entity to another.

11.    Instead, the Bank cites to a series of cases that all involved **bankrupt parties**—and did so according to orders demanding changes in possession. Some of these, like *In re Searles*, 70 B.R. 266 (D.R.I. 1987) were consent orders, by which the bankrupt debtor *had agreed* that it would turn over the property to a creditor if certain conditions were not met. *See also Ragsdale v. Michas (In re Five Star Design & Builders, LLC)*, Adv. Proc. 05-06626 (Bankr. N.D. Ga. 2006); *In re M.A.S. 284 Parking Corp*., 201 F.3d 431 (2d Cir. 1999); In re Stephens, No. ADV 04-3468 DDO, 2012 WL 1899716, at *7 (D. Minn. May 24, 2012), aff'd (Apr. 2, 2013). And that gave the Bankruptcy Court to effectuate the promised transfer when those conditions were not satisfied. Where these cases involved sales orders at all, that was only because the sale order actually ordered a change in possession—by requiring that possession be granted to the purchaser of the property. None of these Courts suggest that bankruptcy courts possess authority under Section 105 to enter transfer orders that had not been previously demanded.

**B.** **The Court is prohibited under the *Rooker Feldman* doctrine from evicting Jetall.**

12.     The eviction is also prohibited by the *Rooker-Feldman* doctrine. That doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*,544 U.S. 280, 284 (2005). And pursuant to that doctrine, "federal district courts lack jurisdiction to review state-court judgments by means of a state-court loser's collateral attack." *United States v. Shepherd*, 23F.3d 923, 924 (5th Cir. 1994). The Bank is trying just such a state-court bypass here, by seeking an eviction in contravention justice court's denial of the Bank's forcible entry and detainer.

13.     That court determined that it lacked jurisdiction to evict Jetall because the Bank had not provided proper notice—because Jetall's lease required 30-days' notice. But the Bank is now trying to overturn that decision by seeking an eviction before the notice period required by the justice court was satisfied, and by asking the Court to "deem[]" all applicable notice provisions "satisfied or waived" when the justice court held that they were not. (Mot. at 8) Indeed, the Bank ultimately confirms that it is seeking to collaterally attack the judgment of the justice of the peace by conceding that the action it seeks here is "consistent" with a Forcible Entry and Detainer—thereby admitting that the relief it seeks here is *precisely* the relief it that had previously been denied. (Mot. 9)

14.     Moreover, the Bank makes a mockery of Texas law by claiming that the actions it has taken—and asks the Court to take—are "consistent" with Texas forcible entry

7

and detainer law. In a forcible entry and detainer, the defendant is entitled to service of summons and an opportunity to develop evidence. And one of the elements that must be satisfied is that proper "notice" must be given. [CITE] But the Bank here seeks to act *before* the notice period that the justice court demanded had been satisfied. That is a collateral attack on the justice court's determination.

## II. The Bank has not satisfied the requirements to evict Jetall.

15.    Finally, the Bank has not satisfied the very requirements it admits to be necessary to evict Jetall. In claiming that the action it seeks is "consistent" with Texas forcible entry and detainer law, the Bank has bound itself to follow the requirements of Texas forcible entry and detainer law. (Mot. 9) One of those requirements is that "the period of time to vacate has expired." (*Id*.) And in this case, the required period has not expired—because the justice of the peace court said that Jetall must be entitled to 30 days' notice, and the Purchaser claimed to have provided 30-days' notice. But that notice period has not expired.

16.    The Bank also admits that it must demonstrate that Jetall has no right to possess the property in order to obtain possession. But the Bank is incorrect to suggest that Jetall lacks such a possessory right. Because the Trustee never objected to Jetall's lease, that lease has not "expired" or "terminated" (Mot. 9)—it was merely "deemed" rejected under 11 U.S.C. § 365(d)(4). And under Section 365, the fact that a lease has been "deemed" rejected does not mean "that the executory contract or lease has been terminated, but only that a breach has been deemed to occur." *In re Matter of Austin Development Co*., 19 F.3d 1077, 1082 (5th Cir. 1994); *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th

Cir.1993) ("to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached").

17.     Furthermore, the Sale Order's requirement that the Property be sold "free and clear of all interests, including all liens, claims and encumbrances" does not by its terms apply to leases. (Mot. 4) (quoting Sale Order p. 7 ¶ N, p. 13 ¶ 5])

### REQUEST FOR CONTINUANCE

18.     Finally, the Court should grant a continuance of this matter. Neither Ali Choudri nor his counsel in the forcible entry and detainer, Marc Hill, were able to make arrangements to attend the hearing on the three-days notice provided before the hearing date. The Bank's failure to wait the required notice period before attempting to evict Jetall does not constitute an exigency requiring emergency relief.

### CONCLUSION

For these reasons, Jetall Companies, Inc. hereby requests that the Emergency Motion to Enforce Sale Order filed by the National Bank of Kuwait, S.A.K.P., New York Branch be denied.

Respectfully submitted,

*/s/ J. Carl Cecere*

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455

*Counsel for 2425 WL, LLC, Jetall*
*Companies, Inc. and Ali Choudhri*

CERTIFICATE OF SERVICE

The undersigned certifies that on October 30, 2024, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all parties who are deemed to have consented to ECF electronic service, and via email to those listed below..

Charles C. Conrad
Ryan Steinbrunner
Pillsbury Winthrop Shaw Pittman LLC
Main Street Suite 2000
Houston, TX 77002
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com -

Andrew M. Troop
Patrick E. Fitzmaurice
Kwame O. Akuffo
Pillsbury Winthrop Shaw Pittman LLC
31 West 52nd Street New York, NY
10019-6131 Telephone: (212) 858-
1000 Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*/s/ J. Carl Cecere*

**J. Carl Cecere**