IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**NBK'S (RENEWED) EMERGENCY
MOTION TO ENFORCE SALE ORDER (JETALL COMPANIES, INC.)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**RELIEF IS REQUESTED NOT LATER THAN DECEMBER 6, 2024.**

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK"),[1] for itself and its designee Houston 2425 Galleria, LLC ("NBK's Assignee"), files this *Emergency (Renewed) Motion to Enforce Sale Order (Jetall Companies, Inc.)* (the "Motion") and represent follows:

## PRELIMINARY STATEMENT

1. Ali Choudhri is the President of Jetall Companies, Inc. ("Jetall"). Jetall occupies and refuses to vacate suite 1100 (11th floor) of the office building located at 2425 West Loop South, Houston, Texas (the "Property"), trespassing and diminishing the value of the Property that NBK's Assignee acquired, as designee and assignee of NBK, pursuant to the Sale Order.

2. NBK's Assignee commenced an eviction proceeding against Jetall in the Harris County Justice of the Peace Court, Precinct 1, Place 1 (the "JP Court"), styled *Houston 2425 Galleria, LLC v. Jetall Companies, Inc.*, Cause No. 241100353166. The JP Court held a trial on November 12, 2024 and entered an order, attached as **Exhibit A**, dismissing the eviction proceeding "due to lack of jurisdiction." Jetall argued to the JP Court that it lacked jurisdiction. Thus, NBK must return to this Court for relief.

3. Although NBK and NBK's Assignee believe that the JP Court had jurisdiction to evict Jetall, there is no doubt that this Court has jurisdiction to enforce its own orders, and NBK, and on behalf of NBK's Assignee, requests that this Court enforce the Sale Order by entering an order, substantially in the form of the proposed order attached as **Exhibit B**.

4. The Sale Order authorized the sale of the Property "free and clear of all liens, claims, encumbrances, *and other interests*." [Docket No. 608 at p. 7 ¶¶ L and N; p. 14 ¶ 9; p. 26 ¶ 35] (emphasis added).[2] Jetall is deemed to have accepted and cannot challenge the Sale Order

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Order (defined below).

[2] Unless otherwise noted, docket references are references to the docket in this chapter 11 case.

2

4871-3605-5546.v12

because it never objected to or appealed from its entry. Additionally, the fact that the Confirmation Order was appealed is irrelevant. First, Jetall did not appeal the Confirmation Order or any reference it made to a free and clear sale.[3] Second, it cannot piggyback on 2425 WL, LLC's ("2425 WL") appeal which, in any event, was narrowed by 2425 WL such that, 2425 WL contends, even if 2425 WL is successful, that will not result in an unwinding of the "free and clear" sale of the Property. Finally, 2425 WL's appeal of the Confirmation Order was dismissed by the United States District Court for the Southern District of Texas (the "District Court") by a Minute Order entered on November 21, 2024 attached as **Exhibit C** (the "Minute Order") followed by a Final Judgment, also dated November 21, 2024 attached as **Exhibit D**. *See In re Galleria 2425 Owner LLC*, Civil Action No. 4:24-CV-02590, Docket No. 25. Thus, despite Jetall's arguments in JP Court, there is no issue of title, and this Court should enforce the Sale Order.

## BACKGROUND

5. On December 5, 2023, the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtor filed multiple unconfirmable plans of reorganization,[4] the first of which was filed on the eve of the hearing on *National Bank of Kuwait, S.A.K.P, New York Branch's Motion Pursuant to 11 U.S.C. § 1112(b) to Convert Chapter 11 Case to Chapter 7* [Docket No. 72]. On January 31, 2024, the Court entered its *Order Abating Motion to Convert to Chapter 7 and Appointing Chapter 11 Trustee* [Docket No. 99]. On April 5, 2024, the *Chapter 11 Trustee's Motion for Entry of an Order: (I) Approving Procedures for the Sale of the Property Free and Clear of All Liens, Claims and Encumbrances; (II)*

---

[3] The Confirmation Order, in addition to the Sale Order, authorized the sale of the Property "free and clear of any Claims, Liens, Interests, encumbrances, executory contracts *or unexpired leases of real or personal property* . . . ." [Confirmation Order p. 21 (Plan Article VI.A)] (emphasis added).

[4] *See* Docket Nos. 95, 163, 252, 365, 377.

3

*Scheduling an Auction; (III) Authorizing Entry into the Stalking Horse Purchase Agreement; (IV) Approving Assumption and Assignment Procedures; (V) Approving Form of Notice; and (VI) Granting Related Relief* [Docket No. 188] was filed. On April 10, 2024, the *Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait S.A.K.P., New York Branch* [Docket No. 194] was filed.

6. On June 21, 2024, the chapter 11 trustee filed a *Notice of Successful Bidder, Backup Bidder, and Sale Hearing* [Docket No 561], which designated QB Loop Property LP ("QB Loop"), an entity affiliated with Mr. Choudhri, as the successful bidder for the Property and further designated NBK as the "Backup Bidder."

7. On June 22, 2024, the Court entered a *Memorandum Opinion* [Docket No. 565] and *Order Confirming Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait, S.A.K.P. New York Branch* [Docket No. 566] (the "Confirmation Order"), approving a future sale of the Property "free and clear of any Claims, Liens, Interests, encumbrances, executory contracts *or unexpired leases of real or personal property* . . . ." (Plan Article VI.A) (emphasis added).

8. On July 8, 2024, the Court entered its Order (A) Approving Asset Purchase Agreement Between the Trustee and QB Loop Property LP; (B) Approving the Sale of the Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (C) Approving Assumption and Assignment of Executory Contracts and Leases; (D) Determining the amounts necessary to cure such Executory Contracts, and Unexpired Leases; and (E) Granting Related Relief [Docket No. 608] (the "Sale Order"), approving the Asset Purchase Agreement submitted by QB Loop and the Stalking Horse Agreement submitted by NBK for a sale of the Property "free and clear of *and all interests*, including all liens, claims and encumbrances" [Sale Order p. 7 ¶ N, p. 13 ¶ 5] (emphasis added). The Sale Order further required "all persons that are in possession of

some or all of the Purchased Assets as of or after the Closing are hereby directed to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such time thereafter as the Buyer may request." [Sale Order p. 26 ¶ 34].

9. The Sale Order also found that "one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied" [Sale Order pp. 7-8]. The Sale Order also provided that "[e]ach entity with an interest, including any lien, claim, or encumbrance, in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented to the extent that they did not object" [Sale Order p. 8]. Notably, Jetall never objected to the Sale Order.

10. QB Loop failed to close on its purchase of the Property, and on August 9, 2024, the chapter 11 trustee filed a *Notice of Failure to Close Under Successful Bid* [Docket No. 658]. As a result, the rights to purchase the Property went to NBK as the Backup Bidder pursuant to the terms of its Stalking Horse Agreement, with only a change in purchase price [Sale Order p. 24 ¶ 28]. "On or about August 20, 2024, the undersigned chapter 11 trustee in this case sold [the Property] to Houston 2425 Galleria, LLC, as designee and assignee of National Bank of Kuwait, S.A.K.P., for $27 million." *Report of Sale* [Docket No. 675]. Thereafter, the Plan went effective on August 21, 2024. *Notice of Confirmation and Effective Date of Chapter 11 Plan of Liquidation of the Debtor by National Bank of Kuwait S.A.K.P., New York Branch* [Docket No. 676].

11. Shortly after closing, NBK's Assignee provided notice to Jetall for it to surrender possession and vacate the Property.[5] Now, three months after the sale closed, Jetall still refuses to leave the Property. In the JP Court, Jetall made a Plea to the Jurisdiction, contending that issues of

---

[5] On September 3, 2024 and again on September 9, 2024, NBK served Jetall with notice to vacate the Property.

title exist that prevent the JP Court from exercising jurisdiction over the eviction proceeding. The JP Court dismissed the case "due to lack of jurisdiction." Thus, NBK, and on behalf of NBK's Assignee, seeks relief from this Court on an emergency basis.

## THE ORIGINAL EMERGENCY MOTION

12. NBK originally sought the relief requested here by emergency motion filed on November 18, 2024 (the "Original Emergency Motion"). *See* Docket No. 816. The Court scheduled the Original Emergency Motion for hearing on November 20, 2024. *See* Docket N0. 817. Jetall filed its response to the Original Emergency Motion on November 19, 2024 (the "Original Response"). *See* Docket 825.

13. Although none of the arguments made in the Original Response have any merit, NBK, at the hearing on November 20, 2024, withdrew the Original Emergency Motion reporting to the Court that it intended to try to address promptly in the JP Court an argument made by Jetall that the JP Court disqualified the undersigned from representing NBK, including from representing NBK in this Court. While NBK agreed with the Court that it, and not the JP Court, decides whether lawyers are disqualified from appearing before it and that Jetall had not filed a motion to disqualify in this Court, NBK thought it prudent to try first to resolve this issue before the JP Court.[6]

---

[6] Jetall's disqualification argument is based on an October 29, 2024 order of the JP Court. More than a month has passed since the entry of that order and Jetall has not filed a motion in this Court to disqualify undersigned counsel. In an analogous situation, when Jetall's affiliate 2425 WL, LLC raised the JP order and disqualification with Judge Ellison on November 20, 2024, at a hearing on a motion to dismiss 2425 WL, LLC's appeal of the Confirmation Order, Judge Ellison found that by not filing a motion to disqualify within, at that point, three weeks of the JP order, the disqualification argument was waived. Judge Ellison proceeded to decide the motion to dismiss and dismissed the appeal. See Minute Order attached as **Exhibit C**. The same reasoning would apply with even more force if Jetall, Mr. Choudhri or any affiliate were to seek disqualification now given that both this Court and the District Court explained that a disqualification motion is a necessary prerequisite for disqualification and no such motion has been filed. NBK notes that it learned late on the afternoon of December 2, 2024, that Jetall did file an original petition in the Harris County District Court, 2024-83809, on Friday, November 29, 2024, seeking relief related to the JP Court's order. Neither NBK, NBK's Affiliate or their undersigned counsel has been served with this original petition and a citation, but it will be removed to this Court promptly. Regardless, filing a petition in state court is not filing a disqualification motion in this Court. To the contrary, it appears to be a blatant attempt to avoid engaging this Court on the issue of whether the undersigned counsel is disqualified, making the waiver argument for matters
( . . . footnote continued on next page … )

14. On December 2, 2024, in response to a motion filed seeking clarification of the JP Court's order, the Clerk of the JP Court indicated that the JP Court will not take up the motion seeking clarification as it views the case before it as over, although the Clerk also indicated that it might be reaching back out on this issue. NBK disagrees with the JP Clerk's conclusion, but it leaves NBK with no choice but to renew its request for emergency relief now.

## JURISDICTION

15. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

16. This is a core proceeding pursuant to 28 U.S.C. § 157.

## RELIEF REQUESTED

17. NBK and NBK's Assignee respectfully request entry of an order substantially in the form attached hereto as **Exhibit B** requiring Jetall to vacate the premises immediately and instructing the U.S. Marshall to remove Jetall if it fails to vacate within five (5) business days of the entry of the proposed order and confirming that Jetall has no right of occupancy or claim based upon its alleged lease with the Debtor. (the proposed "Order to Vacate Property").

## BASIS FOR RELIEF

**A.  The Court Has Authority to Enforce the Sale Order and Evict Jetall**

18. The Court should order Jetall to vacate the Property and direct the clerk to issue all writs necessary to evict Jetall if it fails to comply within five (5) business days of entry of an order granting the relief requested in this Motion.

19. Pursuant to the Sale Order, NBK's Assignee took the Property free and clear of *any interest* Jetall might assert in the Property whether based on its alleged lease with the Debtor or

---

in this Court all the more compelling. Moreover, the allegations in the petition are false, misleading and inaccurate and primarily unrelated to NBK's Assignee or undersigned counsel. A copy of the petition is attached as **Exhibit E.**

otherwise. Consistent with Fifth Circuit guidance, the Court authorized the free and clear sale, including free and clear of a possessory interest derivative of a lease, finding that one or more statutory prerequisites to selling free and clear existed. *See* Sale Order Docket No. 608 at p. 7 ¶ N.

20. Nevertheless, in its Response, Jetall argues that because the sale closed before its lease was assumed or rejected, it retained a possessory right under section 365(h) of the Bankruptcy Code in property over which the Debtor's estate had no control and in which it had no interest. Jetall makes this argument relying on the Fifth Circuit's decision in *In re Royal Bistro, L.L.C.*, 26 F.4th 326 (5th Cir. 2022). But the argument is misplaced and misapplies *Royal Bistro*.

21. In *Royal Bistro*, the Fifth Circuit refused to change the terms of a free and clear sale to permit a tenant a continuing right to occupy leased premises. The Fifth Circuit held that the question is not whether Jetall's lease was rejected before or after the sale transaction closed; the issue is whether the Court found, as it did here, that the prerequisites for a free and clear sale were present.[7] Finding that the bankruptcy court in *Royal Bistro* found that a free and clear sale was authorized, it refused to provide the "former" tenant any relief.

22. In this case, refusing to give any credence to Jetall's position is even more compelling than in *Royal Bistro*. In *Royal Bistro*, the tenant objected to the proposed sale free of its interest in the property to be sold (its lease) and sought relief from the bankruptcy court's order all the way to the Fifth Circuit, albeit unsuccessfully. In contrast, Jetall never objected to the free

---

[7] Other courts, like the 7th Circuit, engage in a temporal analysis to determine whether a Bankruptcy Code section 363(b) and (f) sale can eliminates a tenant's post-sale right to continue to occupy the property and hold that, as long as a lease has not been rejected before the sale, the property can be sold free of any continuing right of a tenant to occupy the property. *See Precision Indus., Inc. v. Qualitech Steel QBO, LLC,* 327 F. 3d 537 (7th Cir, 2003). Although the Fifth Circuit counsels against a strict adherence to this temporal analysis, and directs instead that the issue is whether the bankruptcy court concluded that Bankruptcy Code section 363(f) applies, here the temporal analysis employed by the Seventh and other Circuits yields the same result. The Property was transferred free and clear of Jetall's alleged lease and any continuing occupancy right under the Bankruptcy Code or otherwise.

and clear Sale Order, nor did it (or any other party) appeal that order. Jetall is bound by the Sale Order. It cannot collaterally attack that order now.

23. Given the clear language of the Sale Order and its specific findings regarding a section 363(f) sale, this Court has ample authority to compel Jetall to vacate the Property.

24. First, section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." There is abundant authority supporting the proposition that a bankruptcy court has inherent core authority under section 105 to enforce its own orders, including confirmation orders and sale orders.[8]

25. Second, the Court's core authority to evict a tenant from real property also stems from the bankruptcy court's authority to issue writs. *See* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). "[T]he legislative history of § 105 reflects congressional intent that the section be 'similar in effect to the

---

[8] *See, e.g., Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders") (citing *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002)); *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("In our view, [sections 524(a) and 105] authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."); *Rosellini v. U.S. Bankruptcy Court (In re Sanchez)*, 941 F.3d 625, 628 (2d Cir. 2019) ("We therefore hold that bankruptcy courts, like Article III courts, possess inherent sanctioning powers."); *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) ("Courts have used § 105 to remedy violations of confirmed plans. A bankruptcy court's authority under § 105 to enforce its own orders cannot be reasonably questioned."); *In re Palmaz Scientific Inc.*, 562 B.R. 331 (Bankr. W.D. Tex. 2016) ("This Court has subject matter jurisdiction to interpret the Plan and determine whether continuation of the Respondent's litigation would violate the Plan, Confirmation Order, and permanent injunction provided therein . . . Further, the Court always has jurisdiction to clarify and enforce its own orders."); *In re Johns Manville Corp.*, 97 B.R. 174, 180 (Bankr. S.D.N.Y. 1989) (holding that a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders in aid of their proper execution"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order."); *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 176 (3d Cir. 2004) ("we hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders").

All Writs Statute, 28 U.S.C. § 1651,' and was included in the Bankruptcy Code 'to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute.'" *In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999) (quoting *In re Earl*, 140 B.R. 728, 741 n.4 (Bankr. N.D. Ind. 1992). Thus, the Court has the authority to issue a writ of assistance, the effect of which is to evict a tenant from real property.

26. Third, the Court also has authority to issue a writ authorizing and directing the eviction of Jetall to effectuate the requirements of the Sale Order. *See In re Searles*, 70 B.R. 266 (D.R.I. 1987). In *In re Searles*, the district court held that the bankruptcy court had the authority to evict persons from a property that belonged to a creditor pursuant to the terms of a consent order entered by the same court. The district court reasoned that because the consent order was a core proceeding, the subsequent eviction order also fell within the bankruptcy court's subject matter jurisdiction. Numerous bankruptcy courts have similarly entered eviction orders.[9]

27. Fourth, where, as here, a tenant refuses to vacate, a bankruptcy court may issue writs of assistance from the U.S. Marshals Service. In *In re Watson*, the district court affirmed the U.S. Bankruptcy Judge Mary F. Walrath's order authorizing eviction assistance from the U.S. Marshal, including use of reasonable force.

> The premises considered, and the Court being fully advised, it is hereby ORDERED:
>
> 1. The Debtors and all persons claiming by or through or on behalf of the Debtors are hereby ORDERED to immediately vacate the Property and to remove their personal property therefrom forthwith; and

---

[9] *See, e.g., In re M.A.S. 284 Parking Corp.*, 201 F.3d 431 (2d Cir. 1999) (referencing order of eviction issued by bankruptcy court and later affirmed by district court); *In re Las Margaritas, Inc.*, 54 B.R. 98, 100 (Bankr. D. Nev. 1985) (bankruptcy court issued eviction order); *In re Stephens*, No. ADV 04-3468 DDO, 2012 WL 1899716, at *7 (D. Minn. May 24, 2012), aff'd (Apr. 2, 2013) (eviction ordered to enforce sale order); *Ragsdale v. Michas (In re Five Star Design & Builders, LLC)*, Adv. Proc. 05-06626 (Bankr. N.D. Ga. 2006), ECF Nos. 22, 33 (eviction stipulated to in consent order granting temporary restraining order and later ordered following failure to comply with temporary restraining order).

2. LPP shall have all writs necessary to evict the Debtors and all persons claiming by or through or on behalf of the Debtors from the Property, including, without limitation, Writs of Assistance, Ejectment, Eviction, and/or Restitution; and

3. Upon the request of LPP the Clerk shall issue such Writs and the United States Marshal shall render such assistance, including the use of reasonable force, as may be necessary to serve and enforce such Writs and to make return thereof.

*In re Watson*, No. 09-BK-10002-MFW, 2011 WL 13492392, at *1 (Bankr. D.V.I. May 12, 2011), *aff'd*, No. 2009-10002, 2016 WL 3349666 (D.V.I. June 15, 2016). Similarly, in *In re Saint Vincents*, another bankruptcy court called upon the U.S. Marshals Service to enforce a sale order, evict a holdover tenant, and arrest "anyone interfering with the execution of this Writ of Assistance." *In re Saint Vincents Catholic Medical Centers of New York*, No. 10-11963 (CGM) (Bankr. E.D.N.Y. July 23, 2010), ECF No. 644.

28. Finally, to preempt the necessity of NBK or NBK's Assignee returning to this Court for relief again, and incurring even more legal fees in the process, NBK and NBK's Assignee should be expressly authorized to present an order granting the relief requested herein to the Harris County Sheriff's Office permitting the immediate removal of any Jetall property remaining at the Property, without any further notice to Jetall, without any recourse against NBK or NBK's Assignee, and without any prejudice to any claims or causes of action NBK or NBK's Assignee holds against Jetall, if Jetall fails to vacate the Property within five (5) business days of the entry of an order granting NBK and NBK's Assignee's requested relief. All notices and stays under applicable state law, including but not limited to those set forth in TEX. PROP. CODE § 24.0061, should be deemed satisfied or waived, as applicable, to allow for immediate relief to NBK and NBK's Assignee.

**B.  The Sale Order Is Consistent with Texas Law Regarding Forcible Detainer**

29. Under Texas law, the sole focus of a forcible-detainer action is the right to immediate possession of real property." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 478

(Tex. 2017). To establish a right to immediate possession, a plaintiff must prove (1) a landlord-tenant relationship exists between the parties,[10] (2) the tenant is an evictable tenant,[11] (3) the landlord made a proper demand for possession,[12] (4) the period of time to vacate has expired,[13] and (5) the tenant has refused to surrender possession to the landlord.[14]

30. An "evictable tenant" is one who is a tenant or a subtenant willfully holding over after the termination of the tenant's right of possession. This includes a tenant at will or by sufferance, including an occupant at the time of foreclosure of a lien superior to the tenant's lease,[15] and by extension, an occupant at the time of a "free and clear" sale, authorized by the Sale Order, to which Jetall neither objected nor appealed.[16]

31. Jetall is an evictable tenant because it asserts an ongoing right to possession based upon a lease with the Debtor providing it with rights to occupy the Property. However, the Sale Order conveyed the property "free and clear" of all interests in the Property; directed those "in possession of some or all of the Purchased Assets as of or after the Closing . . . surrender possession" [Sale Order p. 26 ¶ 34]; and prohibited interference "with Buyer's use and enjoyment of the Purchased Assets" [Sale Order p. 28 ¶ 36].[17]

---

[10] *See Goodman-Delaney v. Grantham*, 484 S.W.3d 171, 174 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A forcible detainer action is dependent on proof of a landlord-tenant relationship.").

[11] *It's the Berrys, Ltd. Liab. Co. v. Edom Corner, Ltd. Liab. Co.*, 271 S.W.3d 765, 769 (Tex. App.—Amarillo 2008, no pet.).

[12] TEX. PROP. CODE §§24.002(b), 24.005; *see also Briones v. Brazos Bend Villa Apts.*, 438 S.W.3d 808, 811 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

[13] TEX. PROP. CODE § 24.005

[14] *Briones v. Brazos Bend Villa Apts.*, 438 S.W.3d 808, 811 (Tex. App.—Houston [14th Dist.] 2104, no pet.).

[15] *It's the Berrys*, 271 S.W.3d at 769.

[16] The Supreme Court has foreclosed the possibility of an after-the-fact attack on a confirmed plan by a party that never objected or appealed. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

[17] Again, the Confirmation Order also confirmed that the Property was to be transferred free and clear of "unexpired leases." [Confirmation Order pp. 2-3 ¶ K; p. 21 (Plan Article VI.A)].

32. Jetall's continued occupation of the Property after it was sold free of any interest asserted by Jetall in the Property, *i.e.*, its lease, in flagrant violation of the Sale Order, constitutes tenancy at sufferance, which is trespass.[18] Nevertheless, NBK's Assignee served Jetall with eviction notices, but it refuses to leave the Property. Therefore, neither the Sale Order nor any of the present facts are inconsistent with Texas law, and the Court may order eviction.[19]

## REQUEST FOR EMERGENCY CONSIDERATION

33. Pursuant to Local Bankruptcy Rule 9013-1(i), NBK, and on behalf of NBK's Assignee, respectfully requests that the Motion be considered on an emergency basis. Jetall continues to occupy the Property, without a lease, trespassing, diminishing the value of the Property, and interfering with NBK's Assignee's use and enjoyment of the Property, all in violation of the Sale Order. Absent emergency consideration, this Motion may not be heard until late in December, unnecessarily prolonging Jetall's unlawful occupancy. Accordingly, NBK, and on behalf of NBK's Assignee, respectfully requests that the Court consider this Motion on an expedited basis.

## RESERVATION OF RIGHTS

34. NBK and NBK's Assignee reserve their rights to seek further relief from the Court pursuant to any of its Orders, including relief with respect to attorneys' fees NBK and NBK's Assignee have incurred in connection with Jetall's actions as described herein. NBK and NBK's Assignee further reserve all rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Motion.

---

[18] *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 919 (Tex. 2013) ("[U]nder the common law a tenant at sufferance has no legal title or right to possession, and is thus a 'trespasser' who possesses the property 'wrongfully.'").

[19] It is irrelevant that NBK's Assignee also has provided Jetall with a 30-day notice of termination under state law as that notice was given as a precautionary measure, was not an admissions that such notice was required, and was given with a complete reservation of rights to come to this Court for immediate relief.

**NOTICE**

35. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

WHEREFORE, NBK and NBK's Assignee respectfully request (a) entry of the proposed Order to Vacate Property granting the relief requested herein and (b) such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: December 2, 2024<br>Houston, Texas | **PILLSBURY WINTHROP SHAW PITTMAN LLP**<br><br>*/s/ Charles C. Conrad*<br>Charles C. Conrad<br>Texas State Bar No. 24040721<br>Ryan Steinbrunner<br>Texas State Bar No. 24093201<br>609 Main Street Suite 2000<br>Houston, TX 77002<br>Telephone: (713) 276-7600<br>Facsimile: (713) 276-7634<br>charles.conrad@pillsburylaw.com<br>ryan.steinbrunner@pillsburylaw.com<br><br>- and -<br><br>Andrew M. Troop (Bar No. MA547179)<br>Patrick E. Fitzmaurice*<br>Kwame O. Akuffo*<br>31 West 52nd Street<br>New York, NY 10019-6131<br>Telephone: (212) 858-1000<br>Facsimile: (212) 858-1500<br>andrew.troop@pillsburylaw.com<br>patrick.fitzmaurice@pillsburylaw.com<br>kwame.akuffo@pillsburylaw.com<br><br>*Admitted *pro hac vice*<br><br>**Counsel for National Bank of Kuwait, S.A.K.P., New York Branch and Houston 2425 Galleria, LLC** |

4871-3605-5546.v12

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                        */s/ Charles C. Conrad*
                                                        Charles C. Conrad

## CERTIFICATE OF SERVICE

I certify that, on December 2, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and to the following party via U.S. first class mail, postage paid and via email:

| | |
|---|---|
| Joseph Carl Cecere, II<br>Cecere PC<br>6035 McCommas Blvd<br>Dallas, TX 75206<br>ccecere@cecerepc.com | Jack Rose<br>Law Offices of Jack J Rose PLLC<br>2001 Palmer Ave Ste 104<br>Larchmont, NY 10538<br>jrose@jrlpllc.com |
| Stephen Wayne Sather<br>Barron Newburger, PC<br>7320 N Mopac Expy Ste 400<br>Austin, TX 78731<br>ssather@bn-lawyers.com | Mark Edwin Smith<br>Barron Newburger, PC<br>7320 N Mopac Expy Ste 400<br>Austin, TX 78731<br>msmith@bn-lawyers.com |
| David Neal Stern<br>Barron Newburger, PC<br>7320 N Mopac Expy Ste 400<br>Austin, TX 78731<br>dstern@bn-lawyers.com | J. Marcus Hill<br>Hill & Hill, P.C.<br>1770 St. James Street, Ste 440<br>Houston, TX 77056<br>marc@hillpclaw.com |
| 2425 WL LLC<br>c/o Ali Choudhri<br>ali@jetallcompanies.com<br>ali@jetallcapital.com | Justin Rayome<br>1606 Caslyn Drive<br>Rosenberg, TX 77471<br>justinrayome3@gmail.com |

                                                        */s/ Charles C. Conrad*
                                                        Charles C. Conrad