# **EXHIBIT 2-B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-34815 |
| **GALLERIA 2425 OWNER, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

      Before the Court is a Chapter 11 Plan of Liquidation (ECF No. 194), filed by National Bank of Kuwait S.A.K.P., New York Branch, ("NBK") Galleria 2425 Owner, LLC (the "Debtor's") largest secured creditor. These parties have been involved in litigation for several years and the confirmation of the Chapter 11 Plan was hotly contested. The plan has drawn several objections and responses as follows:

      An Objection to Confirmation has been filed by City of Houston, Houston Community College System and Houston ISD (ECF No. 286). The objection was withdrawn on June 18, 2024 (ECF No. 547).

      An Objection to Confirmation was filed by 2425 WL, LLC on June 3, 2024 (ECF No. 401). A Supplemental Objection was then filed on June 16, 2024, by 2425 WL, LLC,[1] and a response was filed by NBK on June 16, 2024.[2]

      An Objection to Confirmation was filed by the debtor, Galleria 2425 Owner, LLC on June 3, 2024 (ECF No. 409).

      Arin-Air filed its objection to confirmation on June 3, 2024 (ECF No. 410). The objection was not withdrawn, but Arin Air failed to appear to prosecute its objection at the confirmation hearing. Accordingly, the objection is overruled for want of prosecution.

      An Objection to Confirmation was also filed by CC2 TX, LLC (ECF No. 454), which was withdrawn on June 17, 2024 (ECF No. 532).

      On June 14, 2024, NBK filed a Notice of Plan Supplement to Chapter 11 Plan (ECF No. 516), and 2425 WL, LLC filed a Supplemental Response on June 16, 2024 (ECF No. 526), which drew a response from NBK (ECF No. 529).

---

[1] ECF No. 526.
[2] ECF No. 529.

In its Brief filed on June 14, 2024,[3] NBK advised that there was also an informal objection by the United States Trustee, and by tax lienholders. NBK revised the proposed confirmation order to satisfy these objections.

NBK is seeking confirmation of its plan and requesting that the remaining objection filed by 2425 WL, LLC be overruled. Hearing was held on June 19, 2024. NBK appeared through its corporate representative Michael C. Carter, a Vice Present of NBK who signed the proposed plan and its counsel, Charles Conrad, Andrew Troop, Patrick Fitzmaurice and Kwame Akuffo. The Chapter 11 Trustee, Christopher Murray appeared with his counsel, R.J. Shannon. The objecting parties are all controlled by Ali Choudhri, who also directed the multiple lawyers appearing for his entities in this case. Debtor appeared through its counsel Reese Baker. 2425 WL, LLC appeared through its counsel Gray Burks and Stephen Sather. Ali Choudhri also appeared pro se. The entities are interrelated as follows.

2425 WL, LLC was the owner of the Property in 2018. Galleria 2425 Owner, LLC was formed in 2018. It is 100% owned by Galleria 2425 JV, LLC, which was also formed in 2018. Galleria 2425 JV is owned 97.77% by Galleria West Loop Investments, LLC and 1.23 % by Naissance Capital Real Estate, LLC. Ali Choudhri is the Managing Member of Galleria West Loop Investments II, LLC, Galleria 2425 JV, LLC, and Galleria 2425 Owner, LLC as well as the 100% owner of 2425 WL.

Ali Choudhri has been represented by various counsel at times in this case but appeared pro se at this hearing.

For the following reasons, the Chapter 11 Plan is confirmed. The Court will enter a separate confirmation order.

## PROCEDURAL BACKGROUND AND RELATED LITIGATION

This Chapter 11 case was filed on December 5, 2023, by Galleria 2425 Owner, LLC. Galleria 2425 Owner, LLC and its parent, Galleria 2425 JV, LLC, were both formed on or about April 8, 2018. This case is a single asset real estate case for an office building locates at 2425 W. Loop South, Houston, Texas. This is the second bankruptcy case filed by this Debtor within a year. The previous case[4] was dismissed by the Honorable Christopher M. Lopez on November 1, 2023, for cause on the Court's own motion. An adversary was filed related to that case by the Debtor, its principal, Ali Choudhri ("Choudhri") and Naissance Galleria, LLC against NBK, alleging breach of a Confidential Settlement Agreement ("CSA"), tortious interference with contract, tortious interference with business relations, fraud and fraudulent inducement/lender liability, fraudulent conveyance, estoppel, breach of good faith and fair dealing, and unjust enrichment.[5] This case is still pending.

---

[3] ECF No. 514
[4] Case No. 23-60036
[5] Case No. 23-06009, ECF No. 1.

The Debtor filed a state court action on December 18, 2023[6] then immediately removed it to this Court under Adversary No. 23-34815. The removed case asserts the same causes of action as those in Adversary 23-06009, plus causes of action for conspiracy and federal misrepresentation of services and unfair competition under the Lanham Act. That case remains pending.

On February 9, 2024, this Court appointed Christopher R. Murray ("Murray") to serve as the Chapter 11 Trustee with the duties specified in 11 U.S.C. § 1106(a).[7] This appointment became effective on February 13, 2024 with the notice of the required bond.[8] Upon Murray's appointment, the Debtor's exclusive right to propose a plan terminated, and any party in interest could file and prosecute confirmation of a Chapter 11 plan.[9]

An adversary case related to this bankruptcy was filed by 2425 WL, LLC against NBK on March 22, 2024[10] alleging that NBK's allowed claim should be equitably subordinated to 2425 WL, LLC's allowed claim pursuant to 11 U.S.C. § 510(c) quoting language from that section "under principles of equitable subordination, subordinate for purpose of distribution all or part of an allowed claim to all or part of another allowed claim." There is also a cause of action for fraud in the adversary. That case remains pending, although a motion to dismiss has been filed by NBK.

On April 10, 2024, NBK filed a Disclosure Statement and the Chapter 11 Plan of Liquidation of the Debtor.[11] The same date NBK filed the Motion for Entry of Order (I) Conditionally Approving Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation, (III) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (IV) Approving the Solicitation Procedures, (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief.[12] The Court entered an order on May 3, 2024, approving the disclosure statement and setting NBK's proposed plan for confirmation for June 7, 2024.[13] The order also required the plan proponent to send out a copy of the plan, the disclosure statement and the ballot form be sent out to creditors, equity security holders, and other parties in interest. NBK filed a notice that it complied with this provision of the order.[14]

Choudhri has also filed another state court case[15] that was removed to this Court on June 7, 2024, as Case No. 24-03120, alleging breach of the CSA and requesting a declaratory judgment. A motion to remand is pending in that case.

---

[6] Cause No. 2023-22748, *Galleria 2425 Owner, LLC v. National Bank of Kuwait,* In the 215th Judicial District Court, Harris County, Texas.
[7] ECF No. 116.
[8] ECF No. 121.
[9] 11 U.S.C. § 1121(c)(1).
[10] Case No. 24-03043
[11] ECF Nos. 194 and 195.
[12] ECF No. 196).
[13] ECF No. 276.
[14] ECF No. 290.
[15] Cause No. 2024-27168, *Ali Choudhri v. National Bank of Kuwait, S.A.K.P., New York Branch*, in the 129th Judicial District Court, Harris County, Texas.

Competing plans have been filed by the Debtor, 2425 WL, LLC and Choudhri in this case. Debtor filed its Chapter 11 Plan on January 30, 2024.[16] The Court abated any rulings on matters that were filed prior to February 1, 2024 until after the appointment of a Chapter 11 Trustee.[17] Debtor filed an amended plan on April 1, 2024.[18] Thereafter, 2425 WL, LLC joined the Debtor and they filed a Second Amended Plan on April 29, 2024.[19] The Debtor and 2425 WL, LLC then filed three more amended plans,[20] prior to withdrawing the Fifth Amended Plan prior to its scheduled confirmation hearing of June 17, 2024.[21]

The hearing on the confirmation hearing of NBK's Chapter 11 Plan was continued to June 17, 2024, on June 10, 2024. On June 14, 2024, the Court entered an order stating that confirmation would resume on June 19, 2024, if not reached on June 17, 2024.

In addition, this case has generated three appeals to the United States District Court for the Southern District of Texas. 2425 WL, LLC filed a notice of appeal of orders at ECF Nos. 187 & 223.[22] Sonder USA, Inc. appealed the order at ECF No. 210.[23] The Debtor has appealed the orders at ECF Nos. 276 and 359.[24]

## FACTS

The Debtor's relationship with NBK originated on May 23, 2018, when NBK loaned the Debtor $51,675,000.00 to acquire the Property. The loan was secured by the Property, as well as other things including an assignment of rents.[25] This was an interest only loan with a maturity date of May 23, 2023. It is undisputed that the Debtor failed to make payments on the Note sometime in mid-2020, and a notice of default was sent to the Debtor by NBK in 2021 when the interest reserve was depleted. The default was not cured and NBK attempted to proceed with a foreclosure sale of the Property. Suit was filed in 2021 by the Debtor[26] to stop the foreclosure sale. As part of the temporary injunction entered in that case, the Debtor was required to post bond in the amount of $400,000.00 plus make payments including $80,000.00 monthly payments on which the debtor defaulted. The parties entered into a settlement agreement on August 22, 2022, which included a provision to dismiss this suit with prejudice.[27]

The following provisions of the CSA were discussed at the confirmation hearing:

---

[16] ECF No. 95
[17] ECF No. 102.
[18] ECF No. 163.
[19] ECF No. 252.
[20] Third Amended Plan at ECF No. 302, the Fourth Amended Plan at ECF No. 365 and the Fifth Amended Plan at ECF No. 377.
[21] ECF No. 474.
[22] ECF No. 287.
[23] ECF No. 387.
[24] ECF No. 423.
[25] Proof of Claim No. 14-1 includes a copy of a Loan Agreement, a Promissory Note, a Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture Filing
[26] Cause No. 2021-63370, *Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., a New York Branch, et al;* in the 281st Judicial District Court, Harris County, Texas.
[27] ECF No. 508-7

(a) Acknowledgement of the Indebtedness. As of the Effective Date, Choudhri, Galleria and Naissance acknowledge and agree that NBK is owed $60,212,816.90 under the Loan Documents, **without defenses, setoffs, claims, counterclaims or deductions of any nature whatsoever, all of which are hereby expressly waived;**

(b) Acknowledgment of Existing Defaults. Galleria, Choudhri and Naissance further acknowledges and agrees that: (i) an Event of Default exists under the Loan Documents, (ii) any cure period with respect thereto has expired, (iii) all principal, interest, fees, costs and other charges due under the Loan Documents are fully accelerated and immediately due and owing to NBK **without defenses, setoffs, claims or counterclaims or deductions of any nature whatsoever all of which are hereby expressly waived**, and (iv) that each of Galleria, Choudhri and Naissance waives the right to all notices (including but not limited to notice of default, notice of intent to accelerate, notice of acceleration, and notice of foreclosure) each may otherwise be entitled to under the Loan Documents or otherwise. Galleria, Choudhri and Naissance further acknowledge and agree that all conditions precedent for NBK to post the Property for foreclosure have been fully satisfied;

(d) Settlement Payment. On or before the Payment Date (as defined below), Galleria will pay or cause to be paid to NBK the total sum of $27,000,000 as a settlement for all amounts owed under the Loan Documents, as follows: (i) within five (5) days of the Effective Date, Galleria agrees to request the Court to transfer the amount deposited into the registry of the Court by Choudhri, currently EIGHT HUNDRED AND ONE THOUSAND FIVE HUNDRED AND NINE AND 42/100 US DOLLARS ($801,509.42) (such amount, including any increases thereto or income thereon, the "Down Payment") directly to NBK. To the extent that a Settlement Default (as defined below) occurs, then NBK shall be entitled to retain the Down Payment as liquidated damages and, in addition, shall be entitled to pursue all of its rights and remedies under this Agreement, the Loan Documents or otherwise at law or in equity. If necessary, NBK agrees to join in Galleria's request to the Court where the Lawsuit is pending seeking disbursement of the funds constituting the Down Payment that is currently on file with the registry of the court in the Lawsuit; (ii) within two hundred ten (210) days of the Effective Date (such date, the "Payment Date") Galleria agrees to pay, or cause to be paid to NBK the balance by wire transfer in immediately available funds (the "Settlement Payment"), except to the extent that the Purchase Option is exercised pursuant to Section 3.1(h); and (iii) contemporaneously with NBK's receipt of the Settlement Payment set forth in Section 3.1(d)(ii), NBK will file a release of its lien and deliver proof of such release to Galleria's attorneys establishing that no NBK liens exist or have not been otherwise released by NBK.

The CSA also gives NBK the right to pursue foreclosure of the Property in the event of a Settlement Default.

The Settlement Payment was not made within 210 days, and NBK again advised the Debtor of a default, and that it would proceed with a foreclosure sale set for May 2, 2023. Thereafter, the

5 / 18

debtor instituted new State Court litigation to enjoin the foreclosure sale. A temporary restraining order was entered, and that case was transferred to the 281st Judicial Court, where the prior case was still pending due to an existing counterclaim, although the claims on behalf of the Debtor had been dismissed pursuant to the CSA. NBK then filed a motion to lift the temporary injunction. Hearing was held on the motion on April 12, 2023[28] The Debtor requested additional time to fund the Settlement Payment at that hearing.[29]

> Pertinent portions from the transcript of that hearing are:
>
> MR. WETWISKA:[30] He wouldn't tell them. So, yes, there are two things. Yes, time, 60 to 90 days. Okay? If you want to kick them out after that, then kick them out.[31]
>
> MR. WETWISKA: Your Honor, all of those reasons are critical to just getting this done and keeping this building in the shape it's in. And the reason for the 60 to 90, that gives me the cover -- **the ability to recover from the breach that occurred,** because as soon as Mr. Caldwell backed out, we then moved on, and we are now in negotiations. Like I said, we can talk about it. I can tell the court who they are. I've disclosed it to NBK and made them aware. And they're very serious people working with very serious banks. 60 to 90 days, that's it. If you want to kick them out after that time, kick them out.[32] (emphasis added.).
>
> MR. CONRAD:[33] All those claims, by the way, I think it was inappropriate for him to bring them up as an argument in this case. Those have been dismissed with prejudice. Those were the claims of, like, not approving leases, as he was saying. That was his excuse or reason for, "This is why I need more time. This is why I haven't paid.
>
> THE COURT: No, I get that; but I'm just saying that Caldwell can very well say that he learned about it from NBK. But, I mean, what evidence do we have that he actually -- Let me ask you this. If Caldwell actually found out about it from a third party, then they wouldn't be in breach of the settlement agreement, would they?[34]
>
> THE COURT: -- was that -- I get that Mr. Choudhri wants to keep the property. Right? I have a problem with him continuing to kick it down the can [sic] without paying.[35]

---

[28] Cause No. 2021-63370, *Galleria 2425 Owner, LLC v. National Bank of Kuwait, SAKP, New York Branch, a Banking Corporation Organized under the laws of Kuwait, Acting through its New York Branch, and George M. Lee*, in the 281st Judicial District Court, Harris County Texas, ECF No. 498-1.
[29] ECF No. 498-1, page 22.
[30] Mr. Wetwiska is counsel for the debtor.
[31] ECF No. 498-1, page 44
[32] ECF No. 498-1, page 45.
[33] Mr. Conrad is counsel for NBK.
[34] ECF No. 498-1, page 61
[35] ECF No. 498-1, page 63

THE COURT: So do with that whatever you want to do with; but I'm just saying you've made representations to me that if I scour the petition -- I don't see it.[36]

THE COURT: You can foreclose the first Tuesday in July, so they're getting kind of 60 days from your original –

THE COURT: No. Here's what I'm going to hold Mr. Wetwiska to. Mr. Wetwiska represented to this court that if he had 60 to 90 days, whatever happens after that, y'all can foreclose. I'm going to hold him to that. **You're getting 60 days. If you don't -- there are no more excuses.**[37]

The Court went on to tell the parties numerous times that NBK could foreclose on July 3, 2023,[38] unless the Debtor paid the Settlement Amount. The Court further advised the parties that he would not allow any further temporary restraining orders. Only two of the $80,000.00 payments were made thereafter. As the Settlement Payment was not made, the Property was posted for the July 2023 sale, and the Debtor filed a Chapter 11 bankruptcy, Case No. 23-60036 on July 5, 2023, which stopped the foreclosure sale. This first bankruptcy was dismissed, the Property was then again scheduled for foreclosure and on the eve of the foreclosure sale, this second bankruptcy case was filed.

## JURISDICTION

This Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE CHAPTER 11 PLAN[39]

NBK's Chapter 11 Plan is a liquidating plan that provides for a Liquidating Trust, a Liquidation Trustee, the sale of the Property, the payment of administrative claims in full, the payment of priority tax claims in full, partial payment of unsecured creditors and no payments to insiders or subordinated claims. Some of the provisions of the Chapter 11 plan are contingent on whether or not NBK ultimately purchases the Property.

### Classes of creditors, impairments and voting

Administrative claims and priority tax claims are treated in accordance with 11 U.S.C. § 1129(a)(9)(A) and (C) and are unimpaired. There are eight separate classes of claims, with two sub classes in Class 5.

Class 1 is Other Secured Claims, which is any secured claim against the Debtor that is secured by property of the Estate. It does not include NBK or any secured claim asserted by an

---

[36] ECF No. 498-1, page 73
[37] ECF No. 498-1, page 76
[38] Foreclosure was actually scheduled for July 5th, as the first Tuesday was July 4th in 2023.
[39] All capitalized terms are defined in the Plan at ECF No. 194.

7 / 18

Insider. The Class will receive cash in an amount equal to its secured claim, or at the discretion of the Liquidation Trustee, the property securing its claim in full satisfaction of its debt. It is unimpaired.

Class 2 is Other Priority Claims, claims under 11 U.S.C. 507(a), but does not include any administrative claims, professional fee claims, priority tax claims or any claim asserted by an insider. The class will receive cash in an amount equal to its claim. It is unimpaired.

Class 3 is the NBK Tax Claim, and it will receive $1,696,384.85 if it is not the purchaser of the Property. If it is the purchaser of the Property, it will not receive a distribution. It is impaired.

Class 4 is the NBK Secured Claim, and it will receive $18,600,000.00 or any amount established at the Auction as determined by the successful bid. If NBK is not the purchaser of the property, NBK shall receive in full and final satisfaction of its claim, the Remaining Cash and any excess proceeds after payment of the Distribution Account Claims. NBK shall not receive a distribution if it is the purchaser of the Property. It is impaired. NBK accepts the plan.

Class 5(a) is Trade General Unsecured Claims shall receive in full and final satisfaction of such claim cash equal to 70% of the allowed amount of such claim and a pro-rata share of the Liquidation Trust Assets. It is impaired. NBK's representative testified that these creditors performed work on the Property, and that is why there were separately classified.

Class 5(b) is the Other General Unsecured Claims, and it shall receive in full and final satisfaction of such Claim a pro rata share of the Liquidation Trust Assets; provided that NBK has an Other General Unsecured Claim of 90% of the allowed amount of the NBK Deficiency Claim as determined by the Successful Bid and in accordance with Section 506. The NBK Deficiency Claim is not subject to objection, disallowance, offset, reduction or subordination. It is impaired. NBK accepts the plan.

Class 6 are Insider Claims consisting of the claims of 2425 WL (POC No.7), Ali Choudhri (POC 21), Ali Choudhri (POC 22), Jetall Companies Inc. (POC No. 20) and Jetall Capital, LLC (POC No. 23), and their claims are all extinguished on the Effective Date, and they shall not receive or retain any property under the plan. It is impaired and deemed rejected under Section 1126(g). Class 6 rejects the plan.

Class 7 are Subordinated Claims, claims which are not in any of Classes 1-6 and their claims are all extinguished on the Effective Date, and they shall not receive or retain any property under the plan. It is impaired, and deemed rejected under Section 1126(g)

Class 8 are Interests, which includes any equity security, including any rights arising from the issued and outstanding membership interest or the right to purchase membership interest in Debtor. These claims are all extinguished on the Effective Date, and they shall not receive or retain any property under the plan. It is impaired and deemed rejected under Section 1126(g).

**Executory Contracts**

Executory contracts shall be deemed rejected on the Effective Date unless previously assumed. The plan further provides that any Purchaser shall have the right to amend the Schedule of Contracts/Leases up to thirty days after the Effective Date or to reject any executory contract. If an executory contract or lease is deemed rejected, and there are damages due to the rejection, the Plan provides that the party has thirty days to file a proof of claim and serve that proof of claim on the Chapter 11 Trustee or Liquidation Trustee for those damages. If no proof of claim is filed, the claims are forever barred.

### Implementation of the Plan

The plan provides for the sale of the Property free and clear of liens, claims, Interests, encumbrances, executory contracts, unexpired leases of real or personal property as defined in the Purchas Agreement. The Property will continue to be managed by Jones Lang LaSalle until the Sale is consummated pursuant to the Purchase Agreement. NBK shall contribute case to the Plan if it is the successful purchaser of the Property to pay the Distribution Account Claims in full; initial funding of the Liquidation Trust in the amount of $150,000.00 and payment of $238,307.99 to the Trade General Secured Claims in Class 5(a). The Debtor will then be dissolved, and a Liquidation Trust established.

### Testimony at the hearing on confirmation

The Plan proponent, Michael C. Carter appeared and testified regarding the underlying default of the Loan Agreement with the Debtor, the various litigation between the parties, the provisions of the Plan, especially regarding the various classes, how they were determined, that all leases would be rejected if NBK is the successful buyer of the Property, the releases in the Plan, that the Plan does not provide for any attorneys' fees or expenses of NBK, and that the Plan met the requirements of Sections 1122, 1123 and 1129 for confirmation.

The Chapter 11 Trustee also testified in support of confirmation. It was his testimony that he believed that the Plan was in the best interest of unsecured creditors and the estate, and that it was more likely to be confirmed than the compete plan that had been recently withdrawn. One of the critical aspects that he found was the feasibility of the Plan. In order to determine whether it was feasible, he looked at whether there would be sufficient funds for administrative claims, the final cash collateral order, the recovery to unsecured creditors, whether causes of action were preserved or not and the confirmability of the Plan. He testified that he had reviewed the competing plan of 2425 WL, LLC and the Debtor, and found that it was not feasible, there was a lack of funding and NBK's position as the largest secured creditor.

Murray also testified to the time he spent in investigating claims against NBK, as the Debtor repeatedly stated that these were extremely valuable claims that the Plan was releasing. Murray stated he probably spent at least twelve hours in his investigation. He spoke to Chourdhri, regarding the Debtor's claims, and the Debtor's state court attorneys, Jerry Alexander and James Wetwiska about the state court litigation. He also spoke to representatives of NBK, Paul Caldwell, Azeemeh Zaheer, and Zaheer's counsel, as well as his own counsel. Murray had requested documents from the Debtor pursuant to a request for production but did not receive any documents.

He did receive some informal production from both of the state court attorneys, Alexander and Wetwiska.

It was Murray's opinion that the CSA was likely enforceable and found no factual support or any evidence that NBK had breached the CSA prior to the Debtor's breach. He further testified that it was his opinion that he could not rely on the veracity of Choudhri. It was also his opinion that the Plan contains a compromise of the estate's claims against NBK, that it provides a higher benefit to the estate than pursuing any the potential claims. He testified that he currently has an objection to the proof of claim of 2425 WL, LLC (POC No. 7) and to the claim of Ali Choudhri (POC No. 21), and the two claims by Jetall Companies, Inc.[40] (POC Nos. 23 and 24).

Lastly, Murray testified that there were two qualified bidders and that an auction of the Property would take place on Friday, June 21, 2024 at 1:00 p.m. He stated further that the solicitation package and completed ballots were received.

One of the Property's tenants, Allen Hollimon, testified that he had received the solicitation package sent by NBK.

Choudhri testified regarding his equity interest in the Debtor and 2425 WL, LLC, as well as the fact that the Debtor did not own any furniture in the Property. He testified that he had purchased the Sonder USA, Inc. claim from the estate,[41] and that Plan could not release that claim. The parties stipulated that the Sonder claim was no longer property of the estate and that the Plan does not address that claim.

The United States Trustee's counsel also appeared and announced that the United States Trustee did not oppose confirmation of the Plan with its suggested language entered into the revised Plan Confirmation Order.

## WRITTEN OBJECTIONS TO CONFIRMATION OF THE CHAPTER 11 PLAN

2425 WL, LLC has filed objections to the Plan[42] stating that the exculpation provisions violate Fifth Circuit law, the plan violates Section 1122 by classifying dissimilar claims in a single class, specifying Class 6, the Plan discriminates by providing different treatment to creditors within a class without the consent of the class members, specifying Class 5(b), the Plan denies the claims of insiders without due process, the injunctive language in the Plan is too broad, the Plan fails to provide adequate means for its implementation as required by Section 1123(a)(5), the Plan has not been proposed in good faith, the Plan fails to identify the Liquidation Trustee, the Plan does not satisfy the cramdown provisions of Section 1129(a)(8) and 1129(b), the Plan unfairly discriminates, the Plan is not fair and equitable, and that the Plan was solicitated without adequate information.

---

[40] Jetall Capital Companies, Inc. is also one of Choudhri's entities and he signed both proofs of claim.
[41] ECF No. 337.
[42] ECF No. 401.

The Debtor's Objection[43] also states that there was inadequate information provided for a number of the provisions in the Plan, it further objects for the same reasons as 2425 WL, LLC. The Court will therefore address these objections jointly as the "Objection."

In response to the Objection, NBK points out that it has made changes to the Plan and proposed confirmation order as a result of negotiations with the United States Trustee and other objecting creditors. The first change included the exculpation provisions at Article IX(C) of the Plan. The new language states that "Notwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39 of the Plan, "Exculpated Parties" shall mean only the Chapter 11 Trustee and any Related Parties of the Chapter 11 Trustee."[44] The proposed confirmation order has been amended to include post petition statutory interest on the tax lien claims through the date of payment.

Furthermore, the Liquidation Trustee has now been identified as the Chapter 11 Trustee.

The Court agrees with NBK's response that Class 6 does not contain dissimilar claims, even though some are secured and some are unsecured as all the claims have been asserted by insiders. Moreover, it is not clear that 2425 WL has a secured claim, as the documents attached to Claim 7 are suspect. There was no Note, there was no consideration according to the testimony, only a credit, and the purported Deed of Trust has a date on it stating May 23, 2018, yet the blank notary block has 2021 and it was not filed in the real property records until May 11, 2021. There is also a pending objection to the claim by the Chapter 11 Trustee. Even if it is allowed, it would be junior to NBK's claim and therefore unsecured. The Objection that the Plan unfairly discriminates is overruled.

The Objection states that there is broad injunctive language, where the gatekeeping provision means that no party holding a claim in this case can ever sue NBK for any claim that arose preconfirmation without permission from this Court. The Plan at Article IX(E) contains injunctive language, but the gate keeper provision does not bar third parties from bringing their claims against NBK. Instead, it provides that the Court will (i) determine whether any party seeking to bring a claim against a released party had a "colorable claim" that is not an estate claim, (ii) authorize the party to bring the claim and (iii) adjudicate the claim if the bankruptcy court had jurisdiction over the merit. As pointed out by NBK, NBK only receives a release if the claim or cause of action belongs to and is released under the Plan by the Estate (so-called "derivative claims"). In other words, no non-debtor party is releasing its direct and independent claims, if any, against NBK. This gate keeper provision is consistent with Fifth Circuit law,[45] and the Court overrules the Objection.

The Objection regarding good faith due to the sales process and credit bidding are overruled as the Court has already addressed and allowed credit bidding.[46] The Objection

---

[43] ECF No. 409.
[44] ECF No. 514-4
[45] *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) ("Courts have long recognized bankruptcy courts can perform a gatekeeping function" and "[w]e affirm the inclusion of the injunction and the gatekeeper provisions in the Plan.").
[46] ECF No.

11 / 18

regarding whether the Plan is fair and equitable is also overruled based on the testimony of the parties at the confirmation hearing regarding the potential litigation claims and the minimal value of those claims.

The Objections to Confirmation of the Plan filed by 2425 WL, LLC (ECF Nos. 401 and 526) and the Debtor (ECF No. 409) are overruled. The objecting creditor has properly filed its proof of claim. However, Murray has filed an objection to it at ECF No. 402. The claimant is defined as an insider and is treated in Class 6 of the Plan.

All other objections have been withdrawn.

## FINDINGS

Based on the record before the Court in this Chapter 11 Case, NBK and each of its respective agents, representatives, members, principals, officers, directors, employees, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code because they have complied with the applicable provisions of the Confirmation Hearing Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of or relating to (i) the execution and implementation of the Plan (as further amended, modified or supplemented), (iii) their participation in this Chapter 11 Case, and (iv) the activities described in section 1125 of the Bankruptcy Code.

11 U.S.C. § 1129(a)(1) The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

11 U.S.C. § 1122. The Plan satisfies section 1122 of the Bankruptcy Code because it provides for the separate classification of Claims and Interests, and each Claim and Interest in each Class is substantially similar to other Claims and Interests in such Class. The classification of Claims and Interests under the Plan is fair, reasonable, and appropriate and was not done for any improper purpose. Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under the Plan. The classification complies with applicable law and applicable provisions of the Bankruptcy Code.

11 U.S.C. §§ 1123(a)(1)-(3). The Plan satisfies section 1123(a)(1)-(3) of because Article III of the Plan designates eight Classes of Claims and Interests, specifies the Classes of Claims and Interests that are unimpaired, and specifies the treatment of Claims and Interests that are impaired.

11 U.S.C. § 1123(a)(4). The Plan satisfies section 1123(a)(4) of the Bankruptcy Code because Article III of the Plan provides for the same treatment of all Claims and Interests within each Class.

11 U.S.C. § 1123(a)(5). The Plan and the various documents and agreements set forth in the Plan Supplement and described in the Plan provide adequate and proper means for the Plan's implementation. The Chapter 11 Trustee will serve as the Liquidation Trustee. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

11 U.S.C. § 1123(a)(6). Section 1123(a)(6) of the Bankruptcy Code does not apply because no equity securities will be issued under the Plan.

11 U.S.C. § 1123(a)(7). The Plan satisfies section 1123(a)(7) of the Bankruptcy Code because the Plan Supplement discloses who will serve as the Liquidation Trustee, and the manner and selection of the trustee is consistent with the Bankruptcy Code and the interests of all creditors and with public policy.

11 U.S.C. § 1123(b). The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

11 U.S.C. § 1123(b)(1). As contemplated by section 1123(b)(1) of the Bankruptcy Code, pursuant to the Plan, Class 1 and Class 2 are unimpaired, and Classes 3, 4, 5(a), 5(b), 6, 7 and 8 are impaired.

11 U.S.C. § 1123(b)(2). Article V of the Plan provides for the automatic rejection of certain Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code or the designation for assumption/assignment (and cure) of any Executory Contracts and Unexpired Leases on the Schedule of Contracts/Leases.

11 U.S.C. §§ 1123(b)(3)(A)-(B). Pursuant to sections 1123(b)(3)(A)-(B) of the Bankruptcy Code, Article IX.C and D of the Plan provide for the release and exculpation of certain Claims and Causes of Action owned by the Estate. Article VI.K of the Plan transfers the Causes of Action and Avoidance Actions that have not been released into the Liquidation Trust and allows the Liquidation Trustee to commence, pursue and settle the transferred Causes of Action and Avoidance Actions for the benefit of unsecured creditors.

11 U.S.C. § 1123(b)(5)-(6). The Plan's other provisions are appropriate and consistent with the Bankruptcy Code, including provisions relating to: (i) distributions to Holder of Claims, (ii) resolution of Disputed Claims and Interests, (iii) allowance of Claims, (iv) releases by the Estate of the Released Parties, (v) exculpation of certain parties, (vii) the injunction of certain Claims and Causes of Action to implement the discharge, release and exculpation provisions, and (viii) retention of this Court's jurisdiction. The Plan therefore satisfies the requirements of sections 1123(b)(5) and (6) of the Bankruptcy Code.

11 U.S.C. § 1123(d). Article V of the Plan and this Confirmation Order provide for the cure and assumption or rejection of the Debtor's executory contracts and unexpired leases. If NBK is the Successful Bidder, all executory contracts and unexpired leases will be deemed rejected. If a party other than NBK is the Successful Bidder, that party will determine which executory contracts and unexpired leases will be assumed or rejected. The Court finds that although no evidence was adduced at the hearing regarding the rejection of current leases, and potential damages for those rejections, the Chapter 11 Plan does have provisions that provide for these executory contracts in Article V.

11 U.S.C. § 1129(a)(2)

NBK has complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3016, 3017, and 3018, except as otherwise provided or permitted by orders of the Court, as required by section 1129(a)(2) of the Bankruptcy Code. Specifically:

NBK is a proper proponent of the Plan because it is a creditor and party in interest, and it proposed the Plan after the Debtor's exclusive period to propose and confirm a plan terminated as a result of the Chapter 11 Trustee's appointment pursuant to section 1121(c) of the Bankruptcy Code; and

NBK has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Confirmation Hearing Order in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

11 U.S.C. § 1129(a)(3)

The Plan has been proposed in good faith by NBK and not by any means forbidden by law. The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation Hearing and the Carter Declaration. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estate and to effectuate a distribution to creditors. Thus, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(4)

Any payment made or to be made under the Plan for services or for costs and expenses in, or in connection with, this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, has been or will be disclosed to the Court, and any such payment made before Confirmation is reasonable or is subject to the Court's approval as reasonable if it is to be fixed after Confirmation, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. For avoidance of doubt, except as provided for in the Plan regarding NBK's Allowed Claims in Classes 3, 4 and 5(b), NBK's costs and expenses incurred in connection with this Chapter 11 Case or proposing the Plan will not be paid from the Estate. 11 U.S.C. § 1129(a)(5)

The Plan satisfies section 1129(a)(5) of the Bankruptcy Code because NBK has disclosed the identity of the Liquidation Trustee (the current Chapter 11 Trustee) who will administer the Liquidation Trust and its assets and is empowered to exercise all rights and powers of the Estate. On the Effective Date, all current director and officer positions of the Debtor and the Chapter 11 Trustee's position shall be eliminated and the rights, powers, and duties of Chapter 11 Trustee with respect to the Estate shall vest in the Liquidation Trustee.

11 U.S.C. § 1129(a)(6)

Section 1129(a)(6) of the Bankruptcy Code does not apply to this Chapter 11 Case.

11 U.S.C. § 1129(a)(7)

As set forth in the Liquidation Analysis in the Plan Supplement, each Holder of an Impaired Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Estate were to liquidate under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies the "best interest of the creditors" test under section 1129(a)(7) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(8)

Section 1129(a)(8) of the Bankruptcy Code is satisfied as NBK as the plan proponent and holder of a Class 3 Claim. Holders of Claims in Class 1 and Class 2 are unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code, and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a Claim in Class 5(a) voted with respect to the Plan and so Class 5(a) is disregarded for voting purposes under applicable law. Holders of Claims and Interests in Classes 3, 6, 7 and 8 are impaired and receiving nothing under the Plan; thus, these Classes are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (together, "Rejecting Classes"). Holder of Claims in Classes 4 and 5(b) are impaired and voted to accept the Plan.

11 U.S.C. § 1129(a)(9)

The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims pursuant to Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(10)

The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because at least one Class of Claims that is impaired under the Plan has voted to accept the Plan, excluding any acceptances of the Plan by an insider.

11 U.S.C. § 1129(a)(11)

NBK has met its burden of proving the elements of Section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard. The information contained in the Plan Supplement, the Confirmation Brief, and the Carter Declaration, together with the testimony proffered and other testimony adduced at the Confirmation Hearing, establish that the Plan is feasible and that the Liquidation Trustee will have sufficient resources to meet post-confirmation obligations under the Plan. The feasibility standard of section 1129(a)(11) of the Bankruptcy Code is therefore satisfied.

11 U.S.C. § 1129(a)(12)

The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article XI.J of the Plan provides that all Quarterly Fees, i.e., fees payable pursuant to 28 U.S.C. § 1930(a)(6), together with any interest thereon pursuant to 31 U.S.C. § 3717, shall be paid by the Liquidation Trustee for each quarter until this Chapter 11 Case is converted to a chapter 7 case of the Bankruptcy Code, dismissed, or closed, whichever is earlier. Notwithstanding any provision in the Plan to the contrary, all Quarterly Fees due and payable prior to the Effective Date shall be paid in full on the Effective Date or promptly thereafter by the Liquidation Trustee.

11 U.S.C. §§ 1129(a)(13)-(16)

Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to this Chapter 11 Case because the Debtor has no employees to which it owes retiree benefits, does not owe domestic support obligations, is not an individual, and is a moneyed, business, or commercial corporation. See ECF No. 72-8 at 22:24-25 ("The Debtor itself does not have employees.").

11 U.S.C. § 1129(b)

Notwithstanding that the Plan meets the requirements for confirmation under section 1129(a), the Plan can be confirmed under section 1129(b) because NBK demonstrated in the Confirmation Brief and at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes.

11 U.S.C. § 1129(d)

The principal purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, and there has been no filing by any governmental unit asserting any such attempted avoidance. Therefore, the Plan satisfies section 1129(d) of the Bankruptcy Code.

11 U.S.C. § 1129(e)

Section 1129(e) of the Bankruptcy Code does not apply because this Chapter 11 Case is not a small business case, as that term is defined in the Bankruptcy Code.

## EVIDENTIARY ELEMENTS AND ADDITIONAL FACT FINDINGS

The Chapter 11 Debtor, its principle and NBK have been involved in a long running dispute regarding the singe asset real estate the subject of this Chapter 11. The Court notes that as argued by NBK and agreed to by this Court, this second bankruptcy case needs to come to a conclusion. The Court holds that there are no viable alternatives before this Court other than confirmation of the NBK Chapter 11 Plan.[47]

As shown by the record, the Debtor and its principal have attempted and to this point been very successful in delaying NBK from exercising its rights under its loan documents, deed of trust and the Confidential Settlement Agreement. The Debtor and its principal Choudhri have been involved in a long running scheme to postpone a real estate foreclosure.

This Court has spent over two days June 17 and 19, 2024, hearing specific evidence regarding the disputes between the Debtor, its principal and the NBK. The Court has previously found that the disputes raised by the Debtor, primarily the Debtor's principal, who is also the principal of the other objecting creditor, to be dubious and of limited value that includes primarily nuisance litigation to avoid foreclosure of the subject real estate. The Court finds that is has evaluated the claims raised by the Debtor and its principal based on the evidence presented in this case, especially the documentary evidence. The Courts evaluation finds these claims are not viable.

The Courts evaluation has been bolstered and supported by the testimony of the Trustee who on June 19, 2024 testified that he was in support of the Plan, that he had done extensive investigation into the purported claims against NBK, that he had thoroughly reviewed the Plan and its provisions, that he believed the Plan was in the best interest of the creditors and the estate, that Choudhri had attempted to purchase claims against NBK for $700,000.00, which negated the Debtor's position that the claims were in the tens of millions, and that he had made a well thought out business decision not to pursue those claims. The Court notes that the offer made by Choudhri,

---

[47] While the Court could convert this case to Chapter 7, the Court holds that creditors would be detrimentally affected by conversion and not receive as much as they will under the confirmed Chapter 11 Plan.

in effect tendering a photocopy of a check to the Chapter 11 Trustee for $700,000.00 occurred on June 14, 2024, only three days before the scheduled confirmation hearing. Additionally, the original check was not shown to the Trustee until June 19, 2024, the date the confirmation hearing concluded. Again, evidencing the continuing overall delay by the debtor and Choudhri.

The Court additionally stresses that the Debtor's principal has a large litigation history, not only in this case but various bankruptcy cases scattered throughout the Southern District of Texas.[48]

The Debtor's principal strongly feels that he is a victim of unusual circumstance[49], COVID[50] but mostly the actions of NBK. He strongly complains that the actions of NBK have caused him to default, face foreclosure and that it should pay for its actions [whatever they may be]. However, this totally ignores two distinct facts (1) that the Debtor via his principal has never been able to pay the original note, or his Confidential Settlement Payment or his extended Confidential Settlement Payment which was a sizable discount on the original amount of the Note; (2) the record in this case does not support his sizable but implausible claims. The Court notes two specific allegations. First, the allegation that NBK faces a large lender liability claim based on the CSA and second, that NBK breached that agreement first and therefore the Debtor's breach of the CSA by not paying over $26 million dollars was somehow acceptable. The Court invites the parties to examine the record to find any evidence that either of these facts are true. Yes, the Debtor had lawyers testify that the Debtor had claims but they never explained how or why these claims arose, just that they existed. Additionally, the Court notes that the Chapter 11 Trustee interviewed these attorneys and discounted their claims. Their testimony was incomplete and not believable given the lack of documentary evidence. Just because a lawyer tells this Court or any Court that its client or potential client has a great claim for damages does not make it so or the presentation of evidence in hearings would become superfluous.

This Court having spent considerable time attempting to evaluate the actions and testimony of Ali Choudhri in this case both as a witness and as a pro se litigant [51] The Court, based on this analysis, holds that Choudhri must at times believe what he is telling the Court. Unfortunately, what he has told the Court, often in broad terms, is not supported by rational facts or any

---

[48] Case No. 18-20459 2500 West Loop, Inc., Adversary Case No. 18-2180 *Abdullatif et al v. Jetall Companies, Inc. et al,* Adversary Case No 19-0219 *BDFI LLC et al v. Mokaram-Latif West Loop, Ltd. et al* ; Case No. 22-32998 Houston Real Estate Properties, Adversary Case No. 22-03298 *Abdullatif et al v. Choudhri et al,* Adversary Case No. 23-03141 *Quinlan et al v. Jetall Companies, et al;* Adversary Case No. 03190 *Abdullatif et al v. Choudhri,* Adversary Case No. 03191 *Abdullatif et al v. Choudhri*; Adversary Case No. 03193 *Abdullatif v. Choudhri*; Adversary Case No. 03194 *Abdullatif et al v. Choudhri*; Adversary Case No. 23-03196 *Mokaram Latif West Loop Ltd. v. Choudhri*; Case No. 23-60036 Galleria 2425 Owner LLC, Adversary Case No. 23-06009 *Galleria 2425 Owner, LLC et al v. National Bank of Kuwait, S.A.K.P., New York Branch*; Case No. 23-34815 Galleria 2425 Owner, LLC, Adversary Case No. 24-03120 *Choudhri v. National Bank of Kuwait, S.A.K.P., New York Branch;* Case No. 24-32143 Galleria west Loop Investments, LLC; Case No. 13- 03266 *West Loop Hospitality, LLC et al v. Houston Galleria Lodging Associates, LLC et al,* Case No. 18-00318 *Choudhri v. Wallace et al*; Case No. 18- 02696 *Lee v. BDFI, LLC et al*; Case No. 19-00480 *In re Briar Building Houston LLC*; Case No. 23-03466 *In re Houston Real Estate Properties, LLC,* Case No. 22-00905 *Steadfast 829 Holdings, Inc. v. Ali Choudhri, et al*; Case No. 23-01742 *Choudhri v. Dolcefino et al;* Case No. 24-00404 *829 Yale Holdings, Inc. v. Ali Choudhri, et al;*
[49] One of the debtor's primary tenants was Stage Stores, who filed bankruptcy, liquidated and vacated his building.
[50] COVID has and continues to negatively affect office building occupancy.
[51] The debtor's principal effectively had counsel at the hearing. There were three attorney's present at the hearings on June 17 and 19, 2024 representing the debtor and 2425 WL, LLC both of whom are controlled by Ali Choudhri.

17 / 18

documentary evidence. It additionally often is totally untrue. The Chapter 11 Trustee found that Choudhri's veracity was troubling, the Court strongly agrees with this assessment. Based on the testimony of the Chapter 11 Trustee the Court believes that, in part, Choudhri's reputation in the community for a lack of veracity has damaged his ability to conduct business as a real estate developer. The Court can only look to repeated promises of payment to NBK, that were repeatedly broken to make such a holding.

Lastly, the Court must comment on Choudhri's claims that the process of confirming this Chapter 11 Plan has been unfair, rushed, not transparent, that he and the debtor have not been afforded due process or that this Court is prejudiced against him personally. This debtor has been in two bankruptcies. The first was filed on July 5, 2023, and the second will conclude with the confirmation of the plan in this case. This is a span of almost a year, and his ongoing litigation with NBK spans multiple years. During that time the debtor and Choudhri have failed to propose a viable plan of reorganization for the debtor because they are incapable of proposing one. Additionally, they have been unable to pay what they have promised on multiple occasions. The claims that this process have been rushed or lack due process given the timeline are not credible. That this Court is simply doing what it is constitutionally tasked to do and that Choudhri is by appearance very unhappy with the results does not give rise to his numerous false claims of denial of procedural due process.

## CONCLUSION

For the reasons stated herein, the Court confirms the Plan and will enter a separate Confirmation Order.

**SO ORDERED.**

SIGNED 06/22/2024

_____
Jeffrey Norman
United States Bankruptcy Judge

18 / 18