# **<u>EXHIBIT 12</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 |
| Debtor. | ) |  |
|  | ) |  |

## NOTICE OF PROPOSED STALKING HORSE AGREEMENT

[Re: ECF No. 188]

Christopher R. Murray, the chapter 11 trustee in the above-captioned case (the "Trustee"), hereby provides notice of the following:

1.      On April 5, 2024, the Trustee filed the Chapter 11 Trustee's Motion for Entry of an Order: (I) Approving Procedures for the Sale of Property Free and Clear of All Liens, Claims and Encumbrances; (II) Scheduling an Auction; (III) Authorizing Entry Into the Stalking Horse Purchase Agreement;(IV) Approving Assumption And Assignment Procedures;(V) Approving Form of Notice; and (VI) Granting Related Relief [ECF No. 188] (the "Bid Procedures Motion").

2.      Through the Bid Procedures Motion, the Trustee seeks the entry of an order establishing procedures (the "Bid Procedures") for the marketing and sale of the real property located at 2425 West Loop South, Houston, TX 77027 (the "Property").

3.      The asset purchase agreement attached hereto as **Exhibit A** is the "Stalking Horse Agreement" referenced in the Bid Procedures Motion.

4.      For the avoidance of doubt, any sale of the Property by the Trustee, under the Bidding Procedures or otherwise, will be pursuant to the further order of the U.S. Bankruptcy Court for the Southern District of Texas (the "Court").  The Court has not approved either the contemplated Bid Procedures or a sale of the Property pursuant to the Stalking Horse Agreement.

5.      A copy of the Bid Procedures Motion can be obtained from the Court's CM/ECF system at https://ecf.txsb.uscourts.gov/ or by contacting the undersigned counsel for the Trustee.

Dated: April 10, 2024                          Respectfully submitted,

                                              SHANNON & LEE LLP

                                              /s/R. J. Shannon
                                              Kyung S. Lee (TBA No. 12128400)
                                              R. J. Shannon (TBA No. 24108062)
                                              2100 Travis Street, STE 1525
                                              Houston, TX 77002
                                              Telephone: (713) 714-5770
                                              Email: klee@shannonleellp.com
                                                       rshannon@shannonleellp.com

                                              *Counsel to the Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing and (b) U.S.P.S. first class mail on the parties indicated on the attached service list within 24 hours of the filing.

                                              /s/ R. J. Shannon

2

Label Matrix for local noticing
0541-4
Case 23-34815
Southern District of Texas
Houston
Wed Apr 10 20:17:35 CDT 2024

2425 WL, LLC
2425 West Loop South 11th floor
Houston, TX 77027-4304

CC2 TX, LLC
c/o Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road Suite 850
Dallas, TX 75251-1364

City of Houston
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Galleria 2425 Owner, LLC
1001 West Loop South 700
Houston, TX 77027-9084

(p)HARRIS COUNTY ATTORNEY'S OFFICE
P O BOX 2928
HOUSTON TX 77252-2928

Houston Community College System
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

Houston ISD
Linebarger Goggan Blair & Sampson LLP
c/o Tara L. Grundemeier
PO Box 3064
Houston, TX 77253-3064

National Bank of Kuwait, S.A.K.P., New York

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

2425 WL, LLC
13498 Pond Springs Rd.
Austin, TX 78729-4422

2425 West Loop, LLC
2000 Hughes Landing Blvd., Suite 815
The Woodlands, Texas 77380-4142

ADT
PO Box 382109
Pittsburgh, PA 15251-8109

Ali Choudhry
1001 West Loop South 700
Houston, TX 77027-9084

Arin-Air, Inc.
5710 Brittmoore Rd. #13
Houston, TX 77041-5627

Ash Automated Control Systems, LLC
PO Box 1113
Fulshear, TX 77441-2013

CC2 TX, LLC
14800 Landmark Blvd., Suite 400
Dallas, TX 75254-7598

CFI Mechanical, Inc
6109 Brittmoore Rd
Houston, TX 77041-5610

CNA Insurance Co
PO Box 74007619
Chicago, IL 60674-7619

Caz Creek Lending
118 Vintage Park Blvd No. W
Houston, TX 77070-4095

Cirro Electric
PO Box 60004
Dallas, TX 75266

City of Houston
PO Box 1560
Houston, TX 77251-1560

City of Houston
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson LLP
PO Box 3064
Houston, TX 77253-3064

Comcast
PO Box 60533
City of Industry, CA 91716-0533

Datawatch Systems
4520 East West Highway 200
Bethesda, MD 20814-3382

Environmental Coalition Inc
PO Box 1568
Stafford, TX 77497-1568

Ferguson Facilities Supplies
PO Box 200184
San Antonio, TX 78220-0184

Firetron
PO Box 1604
Stafford, TX 77497-1604

(p)FIRST INSURANCE FUNDING
450 SKOKIE BLVD SUITE 1000
NORTHBROOK IL 60062-7917

Gulfstream Legal Group
1300 Texas St
Houston, TX 77002-3509

| | | |
|---|---|---|
| H.N.B. Construction, LLC<br>c/o Malcolm D. Dishongh<br>PO Box 2347<br>Humble, TX 77347-2347 | HNB Construction, LLC<br>521 Woodhaven<br>Ingleside, TX 78362-4678 | Harris County Tax Assessor<br>PO Box 4622<br>Houston, TX 77210-4622 |
| Hayward PLLC<br>c/o Melissa S. Hayward<br>10501 N. Central Expy., Ste. 106<br>Dallas, TX 75231-2203 | Houston Community College System<br>c/o Tara L. Grundemeier<br>Linebarger Goggan Blair & Sampson LLP<br>PO Box 3064<br>Houston, TX 77253-3064 | Houston ISD<br>c/o Tara L. Grundemeier<br>Linebarger Goggan Blair & Sampson LLP<br>PO Box 3064<br>Houston, TX 77253-3064 |
| Jetall Companies, Inc<br>1001 West Loop South Ste 700<br>Houston, TX 77027-9033 | Kings 111 Emergency Communications<br>751 Canyon Drive, Suite 100<br>Coppell, TX 75019-3857 | Lexitas<br>PO Box Box 734298 Dept 2012<br>Dallas, TX 75373-4298 |
| Lloyd E. Kelley<br>2726 Bissonnet Suite 240<br>Houston, TX 77005-1352 | Logix Fiber Networks<br>PO Box 734120<br>Dallas, TX 75373-4120 | MacGeorge Law Firm<br>2921 E 17th St Blgd D Suite 6<br>Austin, TX 78702-1572 |
| Mueller Water Treatment<br>1500 Sherwood Forest Dr.<br>Houston, TX 77043-3899 | Naissance Galleria, LLC<br>c/o Law Office of Nima Taherian<br>701 N. Post Oak Rd. Ste 216<br>Houston, TX 77024-3868 | National Bank of Kuwait<br>299 Park Ave. 17th Floor<br>New York, NY 10171-0023 |
| Nationwide Security<br>2425 W Loop S 300<br>Houston, TX 77027-4205 | Nichamoff Law Firm<br>2444 Times Blvd 270<br>Houston, TX 77005-3253 | Rodney L. Drinnon<br>2000 West Loop S, Ste. 1850,<br>Houston, Texas 77027-3744 |
| TKE<br>3100 Interstate North Cir SE  500<br>Atlanta, GA 30339-2296 | U.S. Trustee's Office<br>515 Rusk, Suite 3516<br>Houston, Texas 77002-2604 | US Retailers LLC d/b/a Cirro Energy<br>Attention: Bankruptcy Department<br>PO Box 3606<br>Houston, TX 77253-3606 |
| US Trustee<br>Office of the US Trustee<br>515 Rusk Ave<br>Ste 3516<br>Houston, TX 77002-2604 | Waste Management<br>PO Box 660345<br>Dallas, TX 75266-0345 | Zindler Cleaning Service Co<br>2450 Fondren 113<br>Houston, TX 77063-2314 |
| Ali Choudhri<br>24256 West Loop South<br>11th Floor<br>Houston, TX 77027 | Christopher R Murray<br>Jones Murray LLP<br>602 Sawyer St<br>Ste 400<br>Houston, TX 77007-7510 | James Q. Pope<br>The Pope Law Firm<br>6161 Savoy Drive<br>Ste 1125<br>Houston, TX 77036-3343 |
| Reese W Baker<br>Baker & Associates<br>950 Echo Lane<br>Suite 300<br>Houston, TX 77024-2824 | Rodney Drinnon<br>McCathern Houston<br>2000 W Loop S<br>Ste. 1850<br>Houston, TX 77027-3744 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Harris County, ATTN: Property Tax Division<br>Harris County Attorney's Office<br>P.O. Box 2928<br>Houston, TX 77252-2928 United States | First Insurance Funding<br>450 Skokie Blvd<br>Northbrook, IL 60062 | (d)Harris County, et al<br>PO Box 2928<br>Houston, TX 77252 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)2425 West Loop, LLC | (u)Sonder USA Inc. | (d)Arin-Air, LLC<br>5710 Brittmoore Rd. #13<br>Houston, TX 77041-5627 |
| (du)Sonder USA Inc. | (u)Jack Rose | |

End of Label Matrix
Mailable recipients    58
Bypassed recipients     5
Total                  63

# EXHIBIT A

**PROPOSED STALKING HORSE AGREEMENT**

**ASSET PURCHASE AGREEMENT**

**DATED AS OF APRIL 10, 2024**

**BETWEEN**

**Christopher R. Murray, in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, as Seller**

**AND**

**National Bank of Kuwait, S.A.K.P., New York Branch, as Buyer**

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into as of April 10, 2024 (the "**Effective Date**") by and between Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company (the "**Seller**" or the "**Chapter 11 Trustee**") and National Bank of Kuwait, S.A.K.P., New York Branch, or its designees or assignees ("**NBK**" or "**Buyer**" together with Seller, the "**Parties**" and each a "**Party**").

A.      **WHEREAS**, on December 5, 20023 (the "**Petition Date**"), the Galleria 2425 Owner, LLC (the "**Debtor**") filed a voluntary petition for under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**"), initiating Case No. 23-34815 (JPN) (the "**Chapter 11 Case**").

B.      **WHEREAS**, the Real Property and Personal Property are property of the bankruptcy estate pursuant to 11 U.S.C. § 541 (the "**Bankruptcy Estate**").

C.      **WHEREAS**, on February 9, 2024, the Bankruptcy Court entered an order appointing Christopher R. Murray as trustee of the Chapter 11 Case.

D.      **WHEREAS**, the Chapter 11 Trustee is the sole representative of the Bankruptcy Estate.

E.      **WHEREAS**, after the Petition Date, the Chapter 11 Trustee sought authorization from the Bankruptcy Court for approval of his entry into this Agreement and certain other matters pertaining to the sale of the Real Property.

F.      **WHEREAS**, notwithstanding any provisions herein to the contrary, Seller and Buyer both acknowledge and agree that this Agreement is subject to the Bankruptcy Court's final authorization and approval, and upon such terms as the parties have agreed and as authorized by the Bankruptcy Court, Seller desires to sell the Real Property, and Buyer desires to purchase the Real Property and assume certain liabilities of the Bankruptcy Estate, in a sale pursuant to sections 105(a), 363, 1123 and/or 1129 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing premises and the representations, warranties, covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.      ***Terms and Incorporation of Definitions***. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale and Bid Procedures. Except as otherwise specifically provided herein, the following terms shall have the meanings specified below

2.    ***Affiliate(s)*** as to any Person means any Persons (x) directly or indirectly controlling, controlled by or under common control with any of the foregoing or (y) as to which any of the foregoing act as trustee or beneficiary. For purposes of this definition, "control" of a person shall mean the power, direct or indirect, to direct or cause the management and policies of such person, whether by ownership of voting securities, by contract or otherwise.

3.    ***Assigned Contracts*** has the meaning set forth in Article II.

4.    ***Auction*** has the meaning set forth in the Sale and Bid Procedures.

5.    ***Bankruptcy Contingencies*** means the occurrence of each of the following: (a) the Sale and Bid Procedures Order shall have become a Final Order, (b) the Sale Order shall become a Final Order, and (c) the Confirmation Order shall become a Final Order.

6.    ***Business Day*** means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

7.    ***Broker*** means Jones Lang LaSalle or other real estate broker employed by the Chapter 11 Trustee in the Chapter 11 Case.

8.    ***Broker Compensation*** means the compensation earned by the Broker by a sale pursuant to this Agreement and any attendant expenses.

9.    ***Cash Consideration*** means the cash paid by the Buyer at closing.

10.    ***Closing*** has the meaning set forth in Article V.

11.    ***Closing Date*** has the meaning set forth in Article V.

12.    ***Confirmation Order*** means an order confirming a plan of reorganization in the Chapter 11 Case that implements or incorporates by reference the transaction provided for by this Agreement.

13.    ***Cure Costs*** means, to the extent applicable, all Assumed Liabilities that must be paid and obligations that must be satisfied under Sections 365 of the Bankruptcy Code, in connection with the assumption by Seller and assignment to Buyer of any Assigned Contract. For the avoidance of doubt, notwithstanding anything provided herein to the contrary, no provision herein shall be construed as an admission or wavier as to the amount of any potential cure amount, or as a representation that any assumption, rejection, or assignment within the meaning of Section 365 of the Bankruptcy Code has occurred; such assumptions, rejections, or assignments shall be addressed by order of the Bankruptcy Court accordingly, to the extent applicable.

14.    ***Deed*** means the Special Warranty Deed attached hereto as **Exhibit B**.

15.    ***Environmental Audit*** means an environmental audit, review or testing of the Real Property performed any third party or consultant engaged by Buyer to conduct such study.

16.    ***Environmental Law*** means any law, statute, ordinance or regulation pertaining to health, industrial hygiene or the environment, including, without limitation, CERCLA (Comprehensive Environmental Response, Compensation and Liability Act of 1980) and RCRA (Resources Conservation and Recovery Act of 1976).

17.    ***Exhibits*** means the following, each of which is attached hereto and incorporated herein by this reference:

> Exhibit A - Legal Description
> Exhibit B - Form of Deed
> Exhibit C - FIRPTA Affidavit
> Exhibit D - Bill of Sale
> Exhibit E - Assignment and Assumption
> Exhibit F - Schedule of Assigned Contracts

18.    ***Final Order*** means an order or judgment of the Court as entered on the docket in the Chapter 11 Case, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any reversal, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause an order not to be a Final Order.

19.    ***FIRPTA Affidavit*** means the Transferor's Certificate of Non-Foreign Status set forth on **Exhibit C** attached hereto.

20.    ***Governmental Authority*** means any federal, state, or local government, governmental authority, or regulatory or administrative authority or any court, tribunal, or judicial body having jurisdiction, including the Bankruptcy Court.

21.    ***Hazardous Substance*** means any substance, material or waste which is or becomes designated, classified or regulated as being "toxic" or "hazardous" or a "pollutant" or which is or becomes similarly designated, classified or regulated under any Environmental Law.

22.    ***Improvements*** means all improvements, buildings, fixtures, and structures, if any, owned by Seller and situated on the Real Property, including, without limitation, all apparatus, equipment and appliances used in connection with the operation or occupancy of the Real Property, such as heating and air conditioning systems and facilities used to provide any utility, refrigeration, ventilation, garbage disposal, or other services on the Real Property.

23.    ***Knowledge of Seller*** means the actual knowledge of the Chapter 11 Trustee or his counsel in the Chapter 11 Case.

24.    ***Law(s)*** means all applicable federal, state and local statutes, ordinances and codes, including the Bankruptcy Code.

25. ***Leases*** means all leases, lease amendments, lease guaranties, work letter agreements, subleases, assignments, licenses, concessions and similar agreements granting a real property interest to any Person for the use or occupancy of any portion of the Real Property or the Improvements.

26. ***Liability*** means any liability, debt, loss, damage, fine, judgment, penalty, or obligation of any kind or nature, whether known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

27. ***Permits*** means all building permits, certificates of occupancy, and other certificates, permits, licenses and approvals pertaining to the Real Property.

28. ***Person*** means any natural person, corporation, general or limited partnership, limited liability company, association, joint venture, trust, estate, Governmental Authority or other legal entity, in each case whether in its own or a representative capacity.

29. ***Personal Property*** means the equipment, furniture, and other tangible personal property, if any, that are actually owned by Seller, located on the Real Property and used in the operation of the Real Property.

30. ***Plan*** means the Chapter 11 Plan of Liquidation of the Debtor filed by the National Bank of Kuwait, S.A.K.P., New York Branch, dated as of April 10, 2024, as such Plan may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with all addenda, exhibits, schedules, supplements or other attachments thereto.

31. ***Property*** means, collectively, the (i) Real Property, (ii) Improvements, (iii) Personal Property, (iv) Leases, (v) Service Contracts, and (vi) Permits.

32. ***Purchase Price*** has the meaning set forth in Article III.

33. ***Real Property*** means that certain real property located in Harris County, State of Texas and more particularly described in **Exhibit A** attached hereto.

34. ***Sale*** has the meaning set forth in the Sale and Bid Procedures.

35. ***Sale and Bid Procedures*** means the Sale and Bid Procedures approved by the Bankruptcy Court and attached as Exhibit 1 to the Sale and Bid Procedures Order.

36. ***Sale Procedures Motion*** means the Chapter 11 Trustee's motion for entry of an order from the Bankruptcy Court seeking (i) approval of the Sale and Bid Procedures for the sale of the Real Property; (ii) scheduling the Auction; (iii) approving assumption and assignment procedures; (iv) approving the form of notice; and (v) granting related relief.

37. ***Sale and Bid Procedures Order*** means an order of the Bankruptcy Court granting the Sale and Bid Procedures Motion and approving the Sale and Bid Procedures.

38. **_Sale Order_** means an order the Bankruptcy Court authorizing the sale of the Property to the Buyer free and clear of all liens, claims and encumbrances that are not Assumed Liabilities under sections 363(b) and (f) of the Bankruptcy Code and finding that the Buyer is a good faith purchaser of the Property entitled to the protections of section 363(m) of the Bankruptcy Code. The Sale Order may be a standalone order or incorporated into a Confirmation Order, in which case the Confirmation Order shall be the Sale Order for purposes of this Agreement.

39. **_Service Contracts_** means all service contracts and other contracts, agreements or instruments relating to the operation of the Property including equipment leases and those set forth on **Exhibit F** attached hereto.

40. **_Tax Lien Claims_** means claims secured by ad valorem tax liens under Chapter 32 of the Texas Tax Code, other than any such claims held by the Buyer.

41. **_Title Company_** means the entity selected by the Buyer and Seller to perform the role of title company under this Agreement.

# ARTICLE II
# PURCHASE AND SALE

1. **Purchased Assets.** Upon the terms and subject to the conditions of this Agreement, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of all claims, liens, encumbrances to the extent allowed by Sections 105(a), 363, 1123 and/or 1129 of the Bankruptcy Code, all of Seller's right, title and interest in and to:

(a) the Real Property;

(b) all Personal Property;

(c) all Improvements;

(d) all Permits that may be assigned by Seller to Buyer;

(e) to the extent assignable and transferrable and to the extent of any interest of Seller therein, all site plans, architectural renderings, plans and specifications, engineering plans, as-built drawings, floor plans, and other similar plans or diagrams, if any, which relate to the Real Property; and

(f) all rights and interests of Seller in and to the Service Contracts and Leases to which Seller is a party in support or furtherance of the operation of the Real Property indicated by the Buyer (collectively, the "**Assigned Contracts**," and each an "**Assigned Contract**"). The items set for in (a)-(f) above, collectively, the "**Purchased Assets.**"

2. **Retained Assets.** The Purchased Assets shall not include any Service Contracts and Leases that are not Assigned Contracts (collectively, the "**Excluded Assets**").

3. **Allocation of Liabilities.** Upon the terms and subject to the conditions of this Agreement, Buyer shall assume and agree to pay, perform and discharge only the Liabilities under

the Assigned Contracts, including the Cure Costs (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, Buyer will not assume, expressly disclaims, and will not otherwise be responsible for any other Liabilities of Seller.  For the avoidance of doubt, (a) Buyer shall be responsible for any Liabilities newly arising out of the ownership, operation and use of the Purchased Assets by Buyer after the Closing, and (b) Seller shall be responsible for any Liabilities arising out of the ownership, operation and use of the Real Property on or prior to the Closing that are not an Assumed Liability.

    4.    **Designation of Assigned Contracts**. The Buyer will provide the Trustee with a schedule of all Assigned Contracts on or before May 31, 2024.

**ARTICLE III**
**PURCHASE PRICE**

    1.    **Amount**. The total consideration to be paid by Buyer to Seller for the Property (such amount the "Purchase Price") is:

    (a)    a credit bid in an aggregate amount of $18,600,000.00 (the "**Credit Bid Amount**"), subject to the Tax Lien Claims to be paid pursuant to funding provided under the Plan;

    (b)    the Assumed Liabilities assumed by the Buyer at Closing pursuant to Article II(3) of this Agreement; and

    (c)    the Broker Compensation in an amount agreed to by the Broker in an amount not to exceed (i) 1% of the Cash Consideration and Credit Bid Amount plus (ii) expenses of $25,000.00.

    2.    **Allocation**. The Purchase Price shall be allocated among the various Purchased Assets in accordance with Section 1060 of the IRC and the applicable Treasury Regulations promulgated thereunder.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES**

    1.    **Seller.**  As of the Effective Date and the Closing, Seller represents and warrants to Buyer that Seller:

    (a)    has received no written notice of any pending or threatened condemnation or eminent domain proceedings or zoning change proceedings that would affect any party of the Real Property;

    (b)    other than as is set forth in this Agreement, Seller has not entered into any contracts for the sale of, and to the Knowledge of Seller, no person or entity has any option, right of first refusal, right of first offer, or any other rights to purchase, all or any portion of the Real Property;

(c)     to the Knowledge of Seller, there is no land use or zoning action or proceeding, or general or special assessment action or proceeding, or condemnation or eminent domain action or proceeding pending or threatened with respect to the Real Property;

(d)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice that Hazardous Substances are now or have been used or stored on or within any portion of the Real Property except those substances which are or have been used or stored on the Real Property in the normal course of use and operation of the Real Property or the conduct of business by the tenants thereof and in compliance with all applicable Environmental Laws;

(e)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice of federal, state or local enforcement, clean-up, removal, remedial or other governmental or regulatory actions under any Environmental Law instituted or completed affecting the Real Property;

(f)     since the date of Seller's appointment as the Chapter 11 Trustee for the Debtor, Seller has received no written notice of a claim made by any third party against Seller relating to any Hazardous Substances on or within the Real Property Seller shall not make any material alterations to the Property without Buyer's consent, which shall not be unreasonably withheld or delayed.

3.     **Joint Representations and Warranties**. In addition to any express agreements of the Parties contained herein and, subject to the occurrence of the Bankruptcy Contingencies, the Parties jointly represent and warrant to each other that:

(a)     each Party has the legal power, right and authority to enter into this Agreement and the instruments referenced herein, and to consummate this transaction;

(b)     all requisite action has been taken by each Party in connection with the entering into of this Agreement, the instruments referenced herein, and the consummation of this transaction;

(c)     no further consent of any partner, shareholder, creditor, investor, judicial or administrative body, Governmental Authority or other party is required in connection with entering into this Agreement;

(d)     the individuals executing this Agreement and the instruments referenced herein on behalf of each Party have the legal power, right, and actual authority to bind each Party to the terms and conditions of those documents;

(e)     this Agreement and such other documents now or hereafter to be executed and delivered by either Party under this Agreement, when executed and delivered, and subject to the satisfaction of the Bankruptcy Contingencies, will each constitute the legal, valid and binding obligations of the relevant Party enforceable against such Party in accordance with its terms; and

(f)     except for the Broker, neither Party has dealt with any Person who has acted, directly or indirectly, as a broker, finder, financial adviser or in such other capacity for or on behalf

of either Party in connection with the transaction contemplated by this Agreement in any manner which would entitle such Person to any fee or commission in connection with this Agreement or the transaction contemplated in this Agreement.

## ARTICLE V
## CLOSING

1.   **Closing**. The closing (the "**Closing**") of the Sale shall occur remotely via the electronic exchange of documents and signature pages on or within three (3) Business Days after the conditions set forth in <u>Article VI</u> satisfied or, if legally permissible, are waived (other than those conditions that by their nature are to be satisfied (or validly waived) at the Closing, but subject to such satisfaction or waiver) (or such other date as the Parties may agree in writing), or at such other time or place as Buyer and Seller may agree.  The date on which the Closing occurs is referred to as the ("**Closing Date**").

2.   **Title Insurance**. At the Closing, the Title Company shall agree to issue to Buyer an ALTA Owners Title Insurance Policy (2006) with coverage in an amount equal to the Purchase Price showing title to the Real Property and Improvements vested in Buyer subject only to the Permitted Exceptions and the standard printed exceptions, exclusions and conditions in the policy of title insurance (the "**Title Policy**"). Buyer shall pay the premium for the Title Policy and, if the Closing does not occur, costs related to the issuance of the title commitment. If Buyer elects to obtain any additional endorsements or an extended coverage policy, any additional premiums or costs for the extended coverage policy and endorsements shall be at Buyer's sole cost and expense.

3.   **Recording**.  At the Closing, Buyer shall promptly undertake all of the following: (a) cause the Deed to be recorded with the Harris County Clerk's Office, Real Property, in the State of Texas and obtain conformed copies thereof for distribution to Buyer and Seller; and (b) request the Seller to direct the Title Company to issue the Title Policy to Buyer.

## ARTICLE VI
## CLOSING CONDITIONS

1.   **Title Transfer**. At the Closing, fee simple title to the Real Property and the Improvements shall be conveyed to Buyer by Seller by Deed, subject only to the following ("**Permitted Exceptions**"):

(a)   a lien for real property taxes and assessments, water charges, sewer assessments and each other lien or encumbrance of an indefinite or unascertainable amount not then delinquent;

(b)   matters of title described in the preliminary title report;

(c)   matters affecting the condition of title to the Property created by or with the written consent of Buyer;

(d)   any matters which would be shown by an inspection, a survey of the Property or by inquiry of persons in possession of the Property; and

(e)     rights of parties in possession.

2.      The Parties agree that Seller makes no express or implied warranties regarding the condition of title to the Property, and Buyer shall rely on the Title Policy for protection against any title defects.

3.      **Seller Deliveries to Buyer at Closing**. On or prior to the Closing Date, Seller shall deliver or cause to be delivered to Buyer:

(a)     the Deed duly executed and acknowledged by Seller and in recordable form conveying the Real Property and Improvements to Buyer;

(b)     the FIRPTA Affidavit duly executed by Seller;

(c)     the Bill of Sale duly executed by Seller;

(d)     the Assignment and Assumption Agreement executed by Seller;

(e)     possession of the Property to Buyer upon the Closing, subject to the right of parties in possession, if any; and

(f)     to the extent reasonably practicable, all books and records included in the Purchased Assets.

4.      **Buyer Deliveries to Seller at Closing**. On or prior to the Closing Date, Buyer shall deliver or cause to be delivered to Seller:

(a)     to the extent applicable, the Purchase Price in the manner specified in Article III;

(b)     the Bill of Sale duly executed by Buyer; and

(c)     the Assignment and Assumption Agreement executed by Buyer.

5.      **Conditions Precedent**.

(a)     **Seller**.  The Closing and Seller's obligations with respect to this transaction are subject to the following conditions precedent: (a) the satisfaction of each of the Bankruptcy Contingencies, (b) Buyer's delivery to Seller on or before the Closing Date of the items described in Article VI(4), (c)  Buyer shall have performed and complied with all material agreements and covenants to be performed by Buyer hereunder, and Seller shall not have notified Buyer in writing of any breach and such breach has not been remedied within three (3) days thereafter, and (d) Buyer's representations, warranties and covenants set forth in this Agreement shall be true and correct as of the Closing Date.

(b)     **Buyer**.  The Closing and Buyer's obligations with respect to this transaction are subject to the following conditions precedent: (a) the satisfaction of each of the Bankruptcy Contingencies, (b) Seller's delivery to Buyer on or before the Closing Date of the items described

in <u>Article VI(3)</u>, (c) Seller shall have obtained (with the reasonable assistance of NBK) a Final Order authorizing Seller's assumption of the Assigned Contracts and the assignment of same to Buyer, to the extent not otherwise included within the Sale Order, (d) Seller shall have performed and complied with all material agreements and covenants to be performed by Seller hereunder, and Buyer shall not have notified Seller in writing of any breach and such breach has not been remedied within three (3) days thereafter, (e) Seller's representations and warranties set forth in this Agreement shall be true and correct as of the Closing Date, and (f) the Title Company shall have provided an irrevocable commitment to issue the Title Policy.

(c)    **All Parties**. The obligation of each Party to consummate the Sale on the Closing Date is subject to the fulfillment of the following conditions: (a) the Bankruptcy Court shall have entered the Sale and Bid Procedures Order; (b) the Bankruptcy Court shall have entered the Sale Order and such order has become a Final Order; and (c) there shall not be in effect any Law restraining, enjoining, or prohibiting the consummation of the Sale; provided that, notwithstanding anything to the contrary in this Article VI(5), the Buyer, and only the Buyer, may waive the obligation that any order entered by the Bankruptcy Court become a Final Order as a condition to Closing.

6.    **Frustration**. No Party may rely on the failure of any condition set forth in <u>Article VI (3)</u> and <u>(4)</u> as the case may be, to be satisfied to excuse such party's obligation to effect the Closing if such failure was caused by such Party's breach of this Agreement.

## ARTICLE VII
## COVENANTS

Between the Effective Date and the Closing Date, Seller:

(a)    shall not enter into any new contract or other agreement relating to the Property without Buyer's written consent;

(b)    shall refrain from committing any waste upon the Real Property;

(c)    shall keep all insurance policies covering or relating to the Real Property in full force and effect;

(d)    shall not encumber the Real Property or sell or transfer any interest or option in the Real Property other than in accordance with the Sale and Bid Procedures Order;

(e)    shall not sell, assign, or otherwise transfer any development rights in the Real Property other than in accordance with the Sale and Bid Procedures Order;

(f)    shall not submit any application relating to zoning, rezoning or other land use matter for the Real Property without Buyer's written consent; and

(g)    shall not apply for any new permit, license or certificate relating to the Real Property without Buyer's written consent.

(h)    absent written consent of Buyer, shall not convey any interest in the Property and shall not subject the Property to any additional liens, encumbrances, covenants, conditions, easements, rights of way or similar matters after the date of this Agreement, except as may be provided for in this Agreement, which shall not be eliminated or removed prior to the Closing Date;

(i)    shall maintain the Property in substantially the same condition as at the Effective Date, ordinary wear and tear excepted; and

(j)    shall (i) keep and perform all of the obligations to be performed by Seller under any Leases or Service Contracts, (ii) not enter into any contract or agreement providing for the provision of goods or services to or with respect to the Property or the operation thereof unless such contracts or agreements can be terminated upon not more than thirty (30) days' notice and without payment of penalty, and (iii) not enter into any new Leases for any portion of the Property or extend the terms of any existing Leases without Buyer's written consent, which consent shall not be unreasonably withheld or delayed.

## ARTICLE VIII
## BANKRUPTCY PROVISIONS

1.    **Sale and Bid Procedures Order**. The Chapter 11 Trustee promptly shall file the Sale and Bid Procedures Motion seeking entry of the Sale and Bid Procedures Order. The Sale and Bid Procedures Order will provide, among other things, (a) all competing bids shall include additional consideration of not less than the sum of (i) the Purchase Price plus (ii) any successive overbids shall be made in increments of not less than $250,000 in excess of the last submitted, highest qualified bid for the Property; (b) deadlines for the submission of competing bids, the selection of a Qualified Bid (as defined in the Sale and Bid Procedures)] and Auction procedures, all consistent with the provisions of the Sale and Bid Procedures; (c) that proposals for competing bids must be in writing and submitted using this Agreement as a form (a "**Competing Agreement**"); (d) that a Competing Agreement must contain substantially all the material terms and conditions contained in this Agreement, and must be marked to show changes from this Agreement; (e) that Buyer, to the extent an Auction occurs pursuant to the Sale and Bid Procedures, may participate in any competitive bidding as it so elects, but without any obligation to do so; and (f) for any person submitting a competing bid to provide a good faith deposit equal to ten percent (5%) of the cash purchase price to be paid in accordance with the Bid Requirements.

2.    **Bankruptcy Court Approval**. Seller and Buyer acknowledge that this Agreement and the consummation of the transactions contemplated hereby are subject to the Bankruptcy Court's approval. Seller and Buyer acknowledge that (a) each must comply with the Sale and Bid Procedures and Sale and Bid Procedures Order, and (b) Buyer must provide adequate assurance of its future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy Code with respect to the Assigned Contracts. Seller agrees that it will promptly take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing timely requested and factually accurate affidavits, non-confidential financial information, and other documents or information for filing with the Bankruptcy Court and making Buyer's representatives available to testify before the Bankruptcy Court.

11

## ARTICLE IX
## <u>PRORATIONS</u>

Prorations shall be made as of the Closing Date as if Buyer were in title for the entire Closing Date, and the following shall be prorated and adjusted between Seller and Buyer:

(a)    **Utilities**. Buyer shall notify the utility companies that all utility bills for the period commencing on the Closing Date are to be sent to Buyer. In addition to the Purchase Price, Buyer shall pay to Seller an amount equal to the total of all utility deposits held by utility companies and Seller shall assign to Buyer all of Seller's right, title and interest in any such utility deposits; *provided, however*, Seller reserves the right to receive a return of such utility deposits and in such event, Buyer shall arrange for substitute deposits with the utility companies as may be required. If following the Closing Date either Buyer or Seller receives a bill for utilities or other services provided to the Property for the period on which the Closing Date occurred, then Buyer and Seller shall equitably prorate the bill.

(b)    **Rental Income**. Other than amounts covered by subsection (b) below, uncollected rent shall not be prorated at Closing. Buyer shall have the right to collect delinquent rent.

(c)    **Service Contracts**. If after the Closing Date, either Seller or Buyer receives a bill for services provided under the Service Contracts for the period after which the Closing Date occurred, Buyer shall be responsible for such bill.

(d)    **Other Transaction Costs**. All other fees, costs and expenses not expressly addressed in this Article VIII or elsewhere in this Agreement shall be allocated between Seller and Buyer in accordance with applicable local custom for similar transactions.

(e)    **Tenant Deposits**. The amount of all cash security and any other cash tenant deposits actually held by Seller, and any interest due thereon (if required by law or contract to be earned thereon) and not already applied to tenant obligations under the Leases, if any, shall be credited to Buyer. Buyer will indemnify, defend, and hold Seller harmless from and against all demands and claims made by tenants with respect to any security deposits transferred or credited to Buyer at Closing and will reimburse Seller for all attorneys' fees incurred or that may be incurred as a result of any such claims or demands.

(f)    **Method of Proration**. All prorations shall be made as of the Closing Date based on a 365-day year.

## ARTICLE X
## <u>COSTS AND EXPENSES</u>

Except as otherwise expressly provided in this Agreement, whether or not the transactions contemplated by this Agreement are consummated, the Parties shall bear their own costs and expenses (including all compensation and expenses of counsel, financial advisors, consultants, actuaries, independent accountants, and any mortgage brokers) incurred in connection with this Agreement and any transaction contemplated hereby.  All other normal costs and expenses shall be allocated between Buyer and Seller in accordance with the customary practice in the county in

which the Real Property is located, provided that Buyer shall pay: (i) all premiums for the Title Policy, any additional cost of an extended coverage title policy and the cost of any endorsements required by Buyer; and document recording charges.

## ARTICLE XI
## "AS IS"

EXCEPT FOR SELLER'S REPRESENTATIONS AND WARRANTIES SET FORTH IN ARTICLE IV ("**SELLER'S WARRANTIES**"), TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THIS SALE IS MADE AND WILL BE MADE WITHOUT REPRESENTATION, COVENANT, OR WARRANTY OF ANY KIND (WHETHER EXPRESS OR IMPLIED) BY SELLER. AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, BUYER AGREES TO ACCEPT THE PROPERTY ON AN "AS IS", "WHERE IS", "WITH ALL FAULTS" BASIS, AND WITHOUT ANY REPRESENTATION OR WARRANTY RELATING TO THE PROPERTY, ALL OF WHICH SELLER HEREBY DISCLAIMS EXCEPT FOR SELLER'S WARRANTIES. NONE OF SELLER OR ANY OF ITS SHAREHOLDERS, MEMBERS, PARTNERS, TRUSTEES, DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, AGENTS (INCLUDING BROKER) OR REPRESENTATIVES, NOR ANY PERSON PURPORTING TO REPRESENT ANY OF THE FOREGOING, HAVE MADE ANY REPRESENTATION, WARRANTY, GUARANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO THE PROPERTY OR ANY PORTION THEREOF, WRITTEN OR ORAL, EXPRESS OR IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE.

EXCEPT FOR SELLER'S WARRANTIES, NO WARRANTY OR REPRESENTATION IS MADE BY SELLER RELATED TO THE PROPERTY OF ANY KIND, INCLUDING WITHOUT LIMITATION ANY WARRANTY AS TO FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, HABITABILITY, DESIGN, QUALITY, CONDITION, OPERATION OR INCOME, COMPLIANCE WITH DRAWINGS OR SPECIFICATIONS, ABSENCE OF DEFECTS, ABSENCE OF HAZARDOUS OR TOXIC, ABSENCE OF FAULTS, FLOODING, OR COMPLIANCE WITH LAWS AND REGULATIONS (INCLUDING LAWS AND REGULATIONS RELATING TO HEALTH, SAFETY, AND THE ENVIRONMENT). SPECIFICALLY, BUT WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER HEREBY EXPRESSLY DISCLAIMS THE IMPLIED WARRANTY OF HABITABILITY. BUYER ACKNOWLEDGES THAT IT HAS ENTERED INTO THIS AGREEMENT WITH THE INTENTION OF MAKING AND RELYING UPON ITS OWN INVESTIGATION OF THE PHYSICAL, ENVIRONMENTAL, ECONOMIC USE, COMPLIANCE, AND LEGAL CONDITION OF THE PROPERTY AND THAT, EXCEPT FOR SELLER'S WARRANTIES, BUYER IS NOT NOW RELYING, AND WILL NOT LATER RELY, UPON ANY REPRESENTATIONS AND WARRANTIES MADE BY SELLER OR ANYONE ACTING OR CLAIMING TO ACT, BY, THROUGH OR UNDER OR ON SELLER'S BEHALF CONCERNING THE PROPERTY.

The provisions of this Article XI shall survive indefinitely and closing or termination of this Agreement and shall not be merged into the closing documents.

## ARTICLE XII
## CONDEMNATION

Risk of loss resulting from any condemnation or eminent domain proceeding which is commenced or has been threatened before the Closing Date, and risk of loss to the Property due to fire, flood or any other cause before the Closing Date, shall remain with Seller. If before the Closing Date the Property or any portion thereof shall be materially damaged, or if the Property or any material portion thereof shall be subjected to a <u>bona fide</u> threat of condemnation with respect to the taking by eminent domain or condemnation, then Buyer may terminate this Agreement by written notice to Seller given within five (5) days after Seller notifies Buyer of the damage or taking. If the Closing Date is within the aforesaid 5-day period, then the Closing Date shall be extended to the next Business Day following the end of said 5-day period. If no such election is made, and in any if the damage after a casualty is not material or if a non-material portion of the Property is subject to a taking, this Agreement shall remain in full force and effect and the purchase contemplated herein, less any interest taken by eminent domain or condemnation, shall be effected with no further adjustment except as contemplated in this paragraph. If the Property was subject to a taking, at Closing Seller shall assign, transfer and set over to Buyer all of the right, title and interest of Seller in and to any awards that have been or that may thereafter be made for any taking. If the Property was damaged, at Closing Seller shall reduce the Purchase Price by the value reasonably estimated by Seller to repair or restore the damaged portion of the Improvements, less any sums expended by Seller to make emergency repairs to the Improvements or the Property or otherwise protect the physical condition of the Improvements or the Property. In either case, this transaction shall close pursuant to the terms of this Agreement. For the purposes of this paragraph, the phrases "<u>material damage</u>" and "<u>materially damaged</u>" mean damage up to a maximum aggregate amount of $500,000.00.

## ARTICLE XIV
## TERMINATION

1.      **Termination**.  Notwithstanding anything contained in this Agreement to the contrary, this Agreement shall terminate and the Closing shall not occur if:

(a)      either Party is in material breach or default of its covenants or obligations under this Agreement, which breach or default is not caused by a default by Seller or Buyer, as to which Seller or Buyer has provided written notice to either Party and such Party has not remedied such breach within ten (10) Business Days thereafter;

(b)      Seller has not satisfied any one or more the conditions precedent set forth in <u>Article VI(3)</u> at or prior to the Closing Date;

(c)      Buyer has not satisfied any one or more the conditions precedent set forth in <u>Article VI(4)</u> at or prior to the Closing Date;

(d)      if the Bankruptcy Court declines to enter the Sale Order;

(e)      by mutual written consent of Seller and Buyer;

(f)  the Bankruptcy Court enters a Final Order dismissing the Chapter 11 Case or converting it to a case under Chapter 7 of the Bankruptcy Code;

(g)  a Governmental Authority issues a Final Order prohibiting the transactions contemplated hereby where such Final Order was requested, encouraged, or supported by Seller; or

(h)  Buyer is not the Successful Bidder (as defined in the Sale and Bid Procedures) at the Auction and Seller sells the Property pursuant to a Competing Agreement (an "**Alternative Transaction**").

2.  **Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article XIV, (a) this Agreement shall immediately become void and of no force or effect, except for this Article XIV which shall survive termination of this Agreement, (b) the transactions contemplated by this Agreement shall be abandoned without further action by any Party, and (c) all rights and obligations of the Parties hereunder (except for this Article XIV) shall terminate without any liability of any Party to any other Party or their Affiliates; *provided*, *however*, no such termination shall relieve any Party from any liability for any fraud prior to such termination.

## ARTICLE XV
## MISCELLANEOUS

1.  **Assignment.** This Agreement binds and benefits the Parties and their respective successors and assigns. Neither Party may assign this Agreement nor any right or obligation hereunder without the prior written consent of the other Party; *provided*, *however*, that Buyer may assign this Agreement to an affiliate or any entity that controls, is controlled by or is under common control with Buyer without Seller's prior consent. Any such assignment by either Party shall not relieve the assignor of any obligation under this Agreement without the written consent of the other Party to this Agreement and the assignee shall also be bound by the obligations of the assignor pursuant to this Agreement.

2.  **Counterparts.** This Agreement may be executed in counterparts, by either an original signature or signature transmitted by facsimile transmission or other similar process and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

3.  **Severability.** If any term or provision of this Agreement shall be deemed to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each remaining term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

5.  **Waivers; Survival.** No waiver of any breach of any covenant or provision contained herein shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision contained herein. No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act except those of the waiving Party, which shall be extended by a period of time equal to the period of the delay. All covenants and agreements contained herein which by their terms are to be

performed in whole or in part, or which prohibit actions, subsequent to the Closing shall, solely to the extent such covenants and agreements are to be performed, or prohibit actions, subsequent to the Closing, survive the Closing in accordance with their terms. All other covenants and agreements contained herein, and all representations and warranties contained herein or in any certificated deliveries hereunder, shall not survive the Closing and shall thereupon terminate.

6. **Successors and Assigns**. This Agreement is binding upon and inures to the benefit of the permitted successors and assigns of the Parties hereto.

7. **Entire Agreement**. This Agreement, including all Exhibits attached hereto, constitutes the entire contract between the Parties hereto with respect to the subject matter hereof and may not be modified except by an instrument in writing signed by the Party to be charged. Seller and Buyer shall cooperate to create mutually acceptable Exhibits in place of all Exhibits that are not attached hereto as of the Effective Date.

8. **Time of Essence**. Seller and Buyer acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

9. **Construction**. The Parties acknowledge and agree that this Agreement is the result of arms-length negotiations and shall not be construed for or against any Party by virtue of draftsmanship. Unless the context requires otherwise, (a) the words "include," "including" and variations thereof mean without limitation; (b) the words "hereof," "hereby," "herein," "hereunder" and similar terms refer to this Agreement as a whole and not any particular section or article in which such words appear; (c) words in the singular include the plural, and words in the plural include the singular; (d) a term defined as one part of speech (such as a noun) shall have a corresponding meaning when used as another part of speech (such as a verb); and (e) currency amounts referenced herein are in U.S. Dollars.

10. **Governing Law; Jurisdiction**. Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement shall be governed by the laws of the State of Texas without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Texas applicable hereto. Without limitation of any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding; *provided*, *however*, that, if the Chapter 11 Case is closed, all proceedings arising out of or relating to this Agreement shall be heard first by the Bankruptcy Court, but if the Bankruptcy Court determines that it lacks subject matter jurisdiction or abstains or otherwise declines to exercise its jurisdiction, then in any other state or federal court of competent jurisdiction situated in Harris County, Texas, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such proceeding. The Parties consent to service of

process by first class mail at the addresses listed in Article XV(14) or any other manner permitted by law.

      11.    **Waiver of Jury Trial**. THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT OR IN TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF SELLER, BUYER, OR THEIR REPRESENTATIVES IN NEGOTIATION OR PERFORMANCE HEREOF.

      12.    **Integration; Binding Effect; No Third-Party Beneficiaries**. This Agreement constitutes the entire Agreement among the Parties with respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings. All Exhibits called for by this Agreement and delivered to the Parties shall be considered a part hereof with the same force and effect as if the same had been specifically set forth in this Agreement. This Agreement is solely for the benefit of Buyer and Seller, and their respective successors and permitted assigns. This Agreement shall not be deemed to confer upon or give to any third party, including any past or present directors, officers, employees, or agents of Seller, any remedy, claim, cause of action or other right.

      13.    **No Recordation**. Buyer agrees not to record a memorandum or other document relating to this Agreement without the prior written consent of Seller.

      14.    **Notices**. All notices, requests, demands, and other communications to be given under this Agreement shall be in writing and delivered in person, or sent by (i) electronic mail, (ii) certified mail, postage prepaid, or (iii) nationally recognized overnight courier with a reliable tracking service and properly addressed as follows:

Seller:                Chapter 11 Trustee c/o Galleria 2425 Owner, LLC
                         Jones Murray LLP
                         602 Sawyer Street, Suite 400
                         Houston, TX 77007
                         Attn.: Christopher R. Murray
                         Email: christopher.murray@jonesmurray.com

                         With a copy to:

                         Shannon & Lee LLP
                         2100 Travis Street, Suite 1525
                         Houston, TX 77002
                         Attn.: R. J. Shannon; Kyung S. Lee
                         Email: rshannon@shannonleellp.com; klee@shannonleellp.com

Buyer:               National Bank of Kuwait, S.A.K.P., New York Branch
                         299 Park Avenue
                         New York, NY 10171
                         Attn.: Marwan Isbaih; Michael C. Carter

With a copy to:

Pillsbury Winthrop Shaw Pittman LLP
609 Main Street Suite 2000
Houston, TX 77002
Attn.: Charles C. Conrad; Ryan Steinbrunner
Phone: (713) 276-7600
Facsimile: (713) 276-7634
Email: charles.conrad@pillsburylaw.com;
ryan.steinbrunner@pillsburylaw.com

*- and –*

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Phone: (212) 858-1000
Facsimile: (212) 858-1500
Attn.: Andrew M. Troop; Patrick E. Fitzmaurice; Kwame O. Akuffo
Email: andrew.troop@pillsburylaw.com;
patrick.fitzmaurice@pillsburylaw.com; kwame.akuffo@pillsburylaw.com

15.     **Environmental Notices**.  From the Effective Date through the Closing Date, Seller shall promptly notify Buyer if to the Knowledge of Seller there are any threatened or pending investigations by any governmental agency under any law, regulation or ordinance pertaining to any Hazardous Substance.

16.     **Further Assurances**. From the Effective Date until the Closing or termination of this Agreement, Seller and Buyer shall use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable to consummate the transaction contemplated in this Agreement, including, without limitation, (a) obtaining all necessary consents, approvals and authorizations required to be obtained from any Governmental Authority, including, without limitation, the Bankruptcy Court, or other Person under this Agreement or applicable law, and (b) effecting all registrations and filings required under this Agreement or applicable law. After the Closing, Seller and Buyer shall use commercially reasonable efforts (at no cost or expense to such Party, other than any *de minimis* cost or expense or any cost or expense which the requesting Party agrees in writing to reimburse) to further effect the transaction contemplated in this Agreement. This Article XV(16) shall survive the Closing.

**[Signature Page Follows]**

18

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the Effective Date.

"SELLER"

Christopher R. Murray as the Chapter 11
Trustee of Galleria 2425 Owner, LLC

By: _____
Name: Christopher R. Murray
Title:   Chapter 11 Trustee

"BUYER"

National Bank of Kuwait, S.A.K.P., New
York Branch

By: _____
Name: Michael C. Carter
Title:   Vice President

By: _____
Name: Matthew Rickert
Title:   Senior Vice President

[Signature Page to Asset Purchase Agreement]

# EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

**Tract 1: Fee Tract**

BEING 2.4462 ACRES (106,557 SQUARE FEET) OF LAND OUT OF THE WILLIAM WHITE SURVEY, ABSTRACT NO. 836, HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED TO 2425 WEST LOOP, LP UY SPECIAL WARRANTY DEED RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472, SAID TRACT CONVEYED BY DEED TO ONE WEST LOOP PLAZA, LTD. UNDER HCCF' NO. S547896 AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS :

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE WESTHEIMER ROAD (ROW VARIES) BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A OEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST, TO A 1/2 INCH IRON ROD FOUND AT THE NORTHEAST CORNER OF THE 2.3468 ACRE PARCEL BEING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL AND THE POINT OF BEGINNING;

THENCE, WESTERLY ALONG TI IE COMMON LINE OF THE 2.3468 ACRE PARCEL TO THE SOUTH AND THE HEREIN DESCRIBED PARCEL TO THE NORTH, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 464.50 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY (ROW) LINE OF INTERSTATE 610 WEST LOOP AND THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST 2.42 FEET;

THENCE, NORTHERLY ALONG THE EASTERLY RIGHT OF WAY LINE OF INTERSTATE 610 WEST LOOP (ROW 350 FEET} NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 251.27 FEET TO AN "X" SET IN CONCRETE BEING THE SOUTHWEST CORNER OF A 7.8998 ACRE PARCEL AS SHOWN ON THE HOUSTON VENTURE PLAT UNRESTRICTED RESERVE "A" FILED IN THE HARRIS COUNTY MAP RECORDS AS FILM CODE NUMBER 356074, AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED PARCEL;

THENCE, EASTERLY ALONG THE COMMON LINE OF THE ABOVE INDICATED 7.8998 ACRE PARCEL TO THE NORTH AND TI-IE HEREIN DESCRIBED PARCEL TO THE SOUTH NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 406.61 FEET TO AN "X" FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND CONVEYED TO RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST AND THE HEREIN DESCRIBED PARCEL TO THE WEST, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 244.64 FEET TO THE POINT OF BEGINNING CONTAINING 106,557 SQUARE FEET, 2.4462 ACRES MORE OR LESS.

**Tract 2: Easement Tract; 20-Foot Non-Exclusive Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND NORTHERLY OF AND 20 FEET WIDE ALONG THE ENTIRE NORTHERLY BOUNDARY LINE OF TRACT I; SAID EASEMENT CREATED AND GRANTED BY VIVIAN L. SMITH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF R. E. SMITH, DECEASED IN THAT CERTAIN GENERAL WARRANTY DEED DATED JULY 5, 1977 FILED IN HCCF NO. F216562 AND DESCRIBED IN HCCF NO. G743294, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 204.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO A 1/2 INCH IRON ROD FOUND FOR THE SOUTHEAST CORNER OF TRACT 1;

THENCE CONTINUING NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 244.64 FEET ALONG A COMMON LINE OF A PREVIOUSLY NOTED 3.4385 ACRE PARCEL OF LAND TO THE EAST AND TRACT I TO THE WEST TO AN "X" FOUND FOR THE NORTHEAST CORNER OF TRACT I AND THE POINT OF BEGINNING;

THENCE, WESTERLY SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 406.61 FEET ALONG THE NORTHERLY LINE OF TRACT I TO AN "X" SET ON THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP (350 FEET WIDE);

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO A POINT;

THENCE, EASTERLY 20.00 PEET NORTHERLY FROM AND PARALLEL TO THE NORTHERLY LINE OF TRACT I, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 401.88 FEET TO A POINT;

A-2

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST 20.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.1856 ACRES OR 8,085 SQUARE FEET OF LAND MORE OR LESS.

**Tract 3: Easement Tract; 20-Foot Non-Exclusive Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT OVER AND ACROSS A TRACT OF LAND SOUTHERLY OF AND 20.00 FEET WIDE ALONG THE ENTIRE SOUTHERN BOUNDARY LINE OF TRACT I, SAID EASEMENT CREATED AND GRANTED ON FEBRUARY 16, 1979, FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED PILED IN HCCF NO. 0041310, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED RY HARVEY R HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, NORTHERLY NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 184.61 FEET ALONG THE COMMON LINE OF THE AFORESAID 2.3468 ACRE PARCEL TO THE WEST AND 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING, WHENCE THE SOUTHEAST CORNER OF TRACT I BEARS NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 20.02 FEET;

THENCE, WESTERLY 20.00 FEET SOUTHERLY FROM AND PARALLEL TO THE SOUTHERLY LINE OF TRACT I, SOUTH 87 DEGREES 44 MINUTES 46 SECONDS WEST, 469.23 FEET TO A POINT IN THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP;

THENCE, NORTHERLY NORTH 10 DEGREES 55 MINUTES 17 SECONDS EAST, 20.54 FEET ALONG THE EASTERLY LINE OF INTERSTATE 610 WEST LOOP TO THE SOUTHWEST CORNER FOR TRACT I FROM WHICH A FOUND RAILROAD SPIKE BEARS SOUTH 21 DEGREES 43 MINUTES EAST, 2.42 FEET;

THENCE, EAST ERLY NORTH 87 DEGREE S 44 MINUTES 46 SECONDS EAST, 464.50 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A l/2 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF TRACT 1;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 20.02 FEET ALONG THE A COMMON LINE BETWEEN A PREVIOUSLY DESCRIBED 2.3468 ACRES PARCEL TO THE WEST AND A 3.4385 ACRE PARCEL TO THE EAST TO THE POINT OF BEGINNING AND CONTAINING 0.2144 ACRES OR 9,337 SQUARE FEET OF LAND, MORE OR LESS.

A-3

**Tract 4: Easement Tract; 28-Foot Roadway and Pedestrian Easement**

A NON-EXCLUSIVE ROADWAY AND PEDESTRIAN EASEMENT ACROSS EASTERLY 28 FEET OF A 2.3468 ACRE TRACT ADJACENT TO AND SOUTHERLY OF TRACT 1. CREATED AND GRANTED IN THAT CERTAIN ROAD AND PEDESTRIAN EASEMENT DATED FEBRUARY 16, 1979 FROM WEST LOOP HOTEL, LIMITED TO FIN PROPERTIES, LIMITED, FILED IN HCCF NO. G041313, BEING THE SAME PROPERTY EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND ROUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8 INCH IRON ROD IN TI-IE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. S056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR., TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE, WESTERLY SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, 28.00 FEET ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD TO A POINT;

THENCE, NORTHERLY 28.00 FEET WESTERLY OF AND PARALLEL TO THE EASTERLY LINE OF SAID 2.3468 ARE TRACT NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, 205.08 FEET TO A POINT ON THE SOUTHERLY LINE OF TRACT 1;

THENCE, EASTERLY NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST, 28.00 FEET ALONG THE SOUTHERLY LINE OF TRACT I TO A 1/2 INCH IRON ROD FOUND IN THE WESTERLY LINE OF A 3.4385 ACRE PARCEL OF LAND PRESENTLY OWNED BY RESTPROP, LTD AS RECORDED IN THE HCCF NO. R228886;

THENCE, SOUTHERLY SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, 204.61 FEET ALONG A COMMON LINE OF THE ABOVE INDICATED 3.4385 ACRE PARCEL TO THE EAST SAID THE PREVIOUSLY DESCRIBED 2.3468 ACRE PARCEL TO THE WEST, TO THE POINT OF BEGINNING, CONTAINING 0.1317 ACRES OR 5,735 SQUARE FEET (CALLED 5,740) OF LAND MORE OR LESS.

**Tract 5: Easement Tract; 5-Foot Storm Sewer Easement**

A 1,025 SQUARE FOOT TRACT OF LAND, BEING THAT SAME TRACT UN PROPERTIES, LIMITED, RECORDED IN HCCF NUMBER G041311, LOCATED IN THE WILLIAM WHITE SURVEY, ABSTRACT NUMBER 836, CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SAME EASEMENT CONVEYED TO PCCP FULLER 2425 WEST LOOP, LLC BY SPECIAL WARRANTY DEED WITH VENDOR'S LIEN RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20100450007, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING AT A POINT IN THE NORTHERLY RIGHT OF WAY (ROW) OF WESTHEIMER ROAD (ROW VARIES), BEING THE SOUTHEAST CORNER OF A 2.3468 ACRE PARCEL CONVEYED BY LINCOLN NATIONAL LIFE INSURANCE COMPANY TO RED LION HOTELS, INC. IN A DEED RECORDED IN HCCF NO. 5056346 AND THE SOUTHWEST CORNER OF A 3.4385 ACRE PARCEL CONVEYED BY HARVEY R. HOUCK, JR. TO RESTPROP, LTD IN A DEED RECORDED IN HCCF NO. R228886;

THENCE ALONG THE NORTHERLY RIGHT OF WAY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST, A DISTANCE OF 16.00 FEET TO THE SOUTHEAST CORNER OF SAID EASEMENT AND THE HEREIN DESCRIBED TRACT;

THENCE CONTINUING ALONG THE NORTHERLY LINE OF WESTHEIMER ROAD, SOUTH 86 DEGREES 46 MINUTES 52 SECONDS WEST A DISTANCE OF 5.00 FEET, THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING SAID WESTHEIMER ROAD, NORTH 02 DEGREES 23 MINUTES 52 SECONDS WEST, A DISTANCE OF 204.96 FEET, TO A POINT IN THE SOUTHERLY LINE OF A 2.4462 ACRE TRACT CONVEYED BY DEED TO HE 2425 WEST LOOP, LP RECORDED UNDER HARRIS COUNTY CLERK'S FILE NO. 20070732472;

THENCE ALONG THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, NORTH 87 DEGREES 44 MINUTES 46 SECONDS EAST A DISTANCE OF 5.00 FEET TO THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE DEPARTING THE SOUTHERLY LINE OF SAID 2.4462 ACRE TRACT, SOUTH 02 DEGREES 23 MINUTES 52 SECONDS EAST, A DISTANCE OF 204.88 FEET TO THE POINT OF BEGINNING AND CONTAINING 1,025 SQUARE FEET OF LAND, MORE OR LESS.

**EXHIBIT B**

FORM OF DEED

AFTER RECORDING RETURN TO:

_____
_____
_____

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**SPECIAL WARRANTY DEED**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF TRAVIS | § | |

That GALLERIA 2425 OWNER, LLC, a Delaware corporation ("Grantor"), by and through Christopher R. Murray, the chapter 11 trustee appointed in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to it paid by NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH ("Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed by Grantor, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto Grantee the tracts of land lying and being situated in Harris County, Texas, as more particularly described on Exhibit "1" attached hereto and incorporated herein for all purposes (the "Land"), together with (a) all buildings, structures, fixtures and improvements situated on, in or under the Land (the "Improvements"), and (b) all of Grantor's right, title and interest in and to the appurtenances pertaining to the Land (hereinafter collectively referred to as the "Appurtenant Property"), including, but not limited to, all right, title and interest of Grantor in and to adjacent roads, rights-of-way, alleys, drainage facilities, easements and utility facilities and strips and gores between the described Land and abutting properties, if any. The Land, Improvements, and Appurtenant Property are sometimes hereinafter referred to as the "Property".

This conveyance is made and accepted free and clear of all liens, claims, encumbrances, and interests pursuant to that certain "Sale Order" dated _____, 2024, and entered as Docket No. _____ in Case No. 23-34815-JPN in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division, and is subject to the exceptions set forth on Exhibit "2", attached hereto and made a part hereof for all purposes (the "Permitted Exceptions").

TO HAVE AND TO HOLD THE PROPERTY, together with all and singular the rights and appurtenances belonging in any way to the Property, subject to the provisions stated herein, to Grantee, Grantee's successors and assigns forever, and Grantor binds itself and its legal representatives and successors TO WARRANT AND FOREVER DEFEND all and singular the Property to Grantee and Grantee's successors and assigns against every person lawfully claiming or to claim all or any part of the Property by, through, or under Grantor, but not otherwise.

**AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) GRANTEE HAS CONDUCTED ITS OWN INDEPENDENT INVESTIGATION AND INSPECTION OF ALL ASPECTS OF THE PROPERTY, (ii) OTHER THAN AS EXPRESSLY SET OUT HEREIN OR IN THAT CERTAIN ASSET PURCHASE AGREEMENT DATED _____ ____, 2024, BY AND BETWEEN GRANTOR AND GRANTEE ("PURCHASE AGREEMENT"), GRANTEE IS NOT RELYING ON ANY REPRESENTATIONS OR STATEMENTS OF GRANTOR OR ITS AGENTS, (iii) GRANTEE IS RELYING ON SUCH INDEPENDENT INVESTIGATION AND INSPECTION AND IS NOT RELYING ON ANY INFORMATION PROVIDED BY GRANTOR, GRANTOR'S ENGINEERS, OR THE BROKERS IN DETERMINING WHETHER TO PURCHASE THE PROPERTY, (iv) CERTAIN INFORMATION PROVIDED BY GRANTOR TO GRANTEE WITH RESPECT TO THE PROPERTY HAS BEEN OBTAINED FROM A VARIETY OF SOURCES AND THAT GRANTOR HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION, (v) GRANTEE IS FULLY AND COMPLETELY SATISFIED THAT THE PROPERTY IS SATISFACTORY IN ALL RESPECTS FOR GRANTEE'S INTENDED USE AND (vi) GRANTEE HAS NO RECOURSE WHATSOEVER AGAINST GRANTOR OR THE BROKER IN CONNECTION WITH THE PROPERTY OTHER THAN FOR ANY VIOLATIONS AS TO THE WARRANTIES AND COVENANTS OF GRANTOR CONTAINED HEREIN OR IN THE PURCHASE AGREEMENT.**

**AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) EXCEPT FOR THE SPECIAL WARRANTY SET OUT HEREIN OR THE EXPRESS REPRESENTATIONS SET OUT IN THE PURCHASE AGREEMENT, GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO: (A) THE NATURE, QUALITY, OR CONDITION OF THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY; (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY CONDUCT THEREON IN THE FUTURE; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, INCLUDING, BUT NOT LIMITED TO, ANY STATE OR FEDERAL ENVIRONMENTAL LAW, RULE OR REGULATION; (E)THE HABITABILITY, MERCHANTABILITY, OR FITNESS OF THE PROPERTY FOR A PARTICULAR PURPOSE; OR (F) ANY OTHER MATTER**

WITH RESPECT TO THE PROPERTY (COLLECTIVELY, THE "<u>DISCLAIMED MATTERS</u>"). GRANTEE HEREBY WAIVES ANY SUCH OTHER REPRESENTATION, WARRANTY, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT EXCEPT FOR THE SPECIAL WARRANTY CONTAINED HEREIN OR AS EXPRESSLY SET OUT IN THE PURCHASE AGREEMENT, GRANTOR IS CONVEYING THE PROPERTY TO GRANTEE "AS IS", "WHERE IS", AND WITH ALL FAULTS AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF THE GRANTOR.

WITHOUT IN ANY WAY LIMITING ANY PROVISION OF THE FOREGOING, GRANTEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES, RELEASES AND DISCHARGES ANY CLAIM IT HAS, MIGHT HAVE HAD OR MAY HAVE AGAINST GRANTOR AND GRANTOR'S PARTNERS, OFFICERS AND AGENTS WITH RESPECT TO (i) THE DISCLAIMED MATTERS, (ii) THE CONDITION OF THE PROPERTY, EITHER PATENT OR LATENT, (iii) THE PAST, PRESENT OR FUTURE CONDITION OR COMPLIANCE OF THE PROPERTY WITH REGARD TO ANY ENVIRONMENTAL PROTECTION, POLLUTION CONTROL OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 (HEREIN CALLED "<u>CERCLA</u>"), AND (iv) ANY OTHER STATE OF FACTS THAT EXISTS WITH RESPECT TO THE PROPERTY; PROVIDED, HOWEVER, THE FOREGOING WAIVER, RELEASE AND DISCHARGE DOES NOT WAIVE, RELEASE, OR DISCHARGE ANY CLAIM GRANTEE MAY HAVE AGAINST GRANTOR UNDER THE SPECIAL WARRANTY SET FORTH IN THIS DEED OR FOR BREACH OF THE EXPRESS REPRESENTATIONS (DURING THE PERIOD FOR WHICH SUCH EXPRESS REPRESENTATIONS SURVIVE) SET FORTH IN THE PURCHASE AGREEMENT.

Current ad valorem taxes, assessments and fees relating to or pertaining to the Property, having been prorated to the date hereof, the payment thereof is hereby assumed by Grantee.

The mailing address of Grantee is set forth below:

_____
_____

[Signatures Appear on the Following Page]

B-3

IN WITNESS WHEREOF, Grantor has caused this Deed to be executed on this _____ day of _____, 2024.

GRANTOR:

GALLERIA 2425 OWNER, LLC,
a Delaware corporation

By: _____
      Christopher R. Murray
      Chapter 11 Trustee

STATE OF TEXAS        §
                             §
COUNTY OF TRAVIS   §

The foregoing was acknowledged before me on the _____ day of _____, 20__, by CHRISTOPHER R. MURRAY, Chapter 11 Trustee of Galleria 2425 Owner, LLC, in such capacity.

_____
Notary Public, State of Texas

B-4

EXHIBIT "1"

LEGAL DESCRIPTION

[To Be Inserted]

EXHIBIT "2"

PERMITTED EXCEPTIONS


[To Be Inserted]

## EXHIBIT C

### SELLER'S FIRPTA AFFIDAVIT - CERTIFICATION OF NON-FOREIGN STATUS

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC ("**Transferor**"), the undersigned hereby certifies the following on behalf of Transferor:

1.      Transferor is not a foreign corporation, foreign partnership, foreign trust and foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.      Transferor's U.S. employer identification number (EIN) is [●]; and

3.      Transferor's office address is:

> [●]
> [●]
> [●]

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign the document on behalf of the Transferor.

> Christopher R. Murray, in his capacity as the
> Chapter 11 Trustee of Galleria 2425 Owner, LLC
>
> By: _____
> Name: Christopher R. Murray
> Title:   Chapter 11 Trustee

C-1

## EXHIBIT D

### BILL OF SALE

For good and valuable consideration, the receipt of which is hereby acknowledged, Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company ("**Seller**"), does hereby sell, transfer, and convey to National Bank of Kuwait, S.A.K.P., New York Branch ("**Buyer**"): all personal property of Seller, if any, located on and used in connection with the operation of the improvements on the real property located at 2425 West Loop South, Houston, Texas 77027, as more particularly described on Exhibit A attached hereto.

Buyer accepts such personal property in its "AS-IS," "WHERE-IS" condition and "WITH ALL FAULTS". Seller specifically disclaims all express or implied warranties regarding the existence or condition of, or title to, such personal property, including without limitation the implied warranties of merchantability and suitability for a particular purpose.

Date: _____, 2024

**SELLER**

Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC

By: _____
Name: Christopher Murray
Title:  Chapter 11 Trustee

**BUYER**

National Bank of Kuwait, S.A.K.P., New York Branch

By: _____
Name: Michael C. Carter
Title:  Vice President

D-1

EXHIBIT A TO BILL OF SALE

<u>IMPROVEMENTS</u>


[To Be Inserted]

## EXHIBIT E

### ASSIGNMENT AND ASSUMPTION

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Christopher R. Murray in his capacity as the duly appointed Chapter 11 Trustee of Galleria 2425 Owner, LLC, a Delaware limited liability company (herein referred to as "**Assignor**"), hereby assigns, transfers and conveys to National Bank of Kuwait, S.A.K.P., New York Branch (herein referred to as "**Assignee**"), all leases (the "**Leases**") described on Schedule 1 attached and all contracts (the "**Contracts**") described on Schedule 2 attached affecting that certain real property in the City of Houston, Harris County, State of Texas (the "**Property**"), commonly known as 2425 West Loop South, Houston, Texas 77027 and more particularly described in Exhibit A attached hereto.

Assignee hereby assumes and agrees to keep, perform and fulfill all of Assignor's obligations under the Leases and under the Contracts which are required to be kept, performed and fulfilled by Assignor thereunder, effective from and after the date on which a deed of the Property from Assignor to Assignee is delivered (the "**Closing Date**").

The covenants and warranties contained herein shall survive the closing of the purchase and sale of the Property to which this Assignment relates, and such covenants and warranties shall not be deemed merged in the deed delivered by Assignor to Assignee.

This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

IN WITNESS WHEREOF, the undersigned have executed the within instrument as of _____, 2024.

ASSIGNOR:

Christopher R. Murray as the Chapter 11 Trustee of Galleria 2425 Owner, LLC,

By: _____
Name: Christopher R. Murray
Title:   Chpater 11 Trustee

ASSIGNEE:

National Bank of Kuwait, S.A.K.P., New York Branch,

By: _____
Name: Michael C. Carter
Its:     Vice President

E-1

EXHIBIT A TO ASSIGNMENT AND ASSUMPTION

<u>LEGAL DESCRIPTION OF PROPERTY</u>

[To Be Inserted]

SCHEDULE 1 TO ASSIGNMENT AND ASSUMPTION

<u>Leases</u>

[To Be Inserted]

SCHEDULE 2 TO ASSIGNMENT AND ASSUMPTION

<u>Service Contracts</u>

[To Be Inserted]

SCHEDULE 3 TO ASSIGNMENT AND ASSUMPTION

<u>Permits</u>

[To Be Inserted]

**EXHIBIT F**

<u>ASSIGNED CONTRACTS</u>

[To Be Inserted]