**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** ) | |
| ) | **Chapter 11** |
| **GALLERIA 2425 OWNER, LLC,** ) | **Case No. 23-34815** |
| ) | |
| **Debtor.** ) | |

_____

**COMBINED RESPONSE TO NBK'S EMERGENCY MOTIONS TO ENFORCE**
**SALE ORDER AND REQUEST FOR CONTINUANCE**
_____

**To the Honorable Court:**

Jetall Companies, Inc. and 2425 WL, LLC hereby file this combined response to the (1) (Renewed) Emergency Motion to Enforce Sale Order (Jetall Companies, Inc.) (ECF No. 838) and (2) Second Emergency Motion to Enforce Sale Order (2425 WL, LLC) (ECF No. 839) filed by the National Bank of Kuwait, S.A.K.P., New York Branch ("NBK" or the "Bank") and Houston 2425 Galleria, LLC ("the Purchaser"), and subject to Jetall's challenge to this Court's jurisdiction, and without waiving same, would respectfully show as follows:

**BACKGROUND**

The Court should deny this renewed forum-shopping demand by the Bank and the Purchaser to convert this Court into a justice of the peace, over issues that may be subject of the automatic stay in another case, by counsel that has been disqualified from handling the issues in this case.

1.      The Bank and the Purchaser, Houston 2425 Galleria, LLC, are fully aware that this Court is not the appropriate forum to prosecute a forcible entry and detainer action in order to evict Jetall Companies, Inc. from the subject Property. In Texas, justice courts have exclusive jurisdiction to decide the issue of immediate possession of property. Accordingly, this Court lacks the authority, power, and importantly jurisdiction, to have Houston 2425 Galleria, LLC, a non-debtor, evict Jetall Companies, Inc., also a non-debtor, when neither of these non-debtor parties are before this Court. Both Houston 2425 Galleria, LLC (the Purchaser) and Jetall Companies, Inc. (the Tenant) are complete strangers to the proceeding. In fact, the Purchaser did not even exist before this bankruptcy case began. The Purchaser is a separate and distinct entity, incorporated under the laws of the state of Texas as a limited liability company in its own right. It has no affiliation with the debtor in this case, and it is a mere affiliate of the Bank, which itself is only a creditor. Yet, in spite of having no connection with this bankruptcy court or this case, it seeks to obtain an injunction evicting Jetall Companies, Inc, even though Jetall has not appeared in this case, has not been served with citation, has not been provided appropriate notice or an appropriate period to vacate, and has not been provided any of the procedural protections that parties enjoy in forcible entry and detainer actions under Texas law.

2.      Both the Bank and the Purchaser know that an eviction cannot take place in the absence of these protections. After all, that is why the Purchaser started the forcible detainer action in state court, where those protections are provided, and where it *should* have gone for eviction proceedings. A state justice of the peace is the only court with jurisdiction to hear forcible entry and detainer actions in Texas. *See* Tex. Prop. Code

§ 24.004. The Purchaser just brought such a forcible entry and detainer action in state justice court, entitled: *Houston 2425 Galleria, LLC v. Jetall Companies, Inc*., Cause No. 241100353166 (Harris County Justice of the Peace, Precinct 1 Place 1) (*See* **Exhibit 1** [Affidavit of Marc Hill]). But the Purchaser lost in that proceeding. It never appealed from that loss.

3.      Notably, notwithstanding the Movants' insistence that the bankruptcy court is the appropriate forum for a forcible entry and detainer action, and that Houston 2425 Galleria, LLC (the Purchaser) lost the state court eviction case merely because Jetall Companies, Inc. raised issues of "title." (Mot. 5-6), the Purchaser actually lost because Jetall argued, and the justice court determined, that Jetall had not been provided with the appropriate notice required under Texas law in a forcible entry and detainer action.[1] The Purchaser concedes that fact and admits in its motion that it lost due to problems regarding lack of notice—rather than title issues. Thereafter, it hastily tried to correct the error and filed a new notice, purporting to notify Jetall that it had until "December 18, 2024 (30 days from the date of this notice)" to "vacate" the property. (**Exhibit 1-B** [Notice to Vacate dated November 18, 2024] at 2). Unfortunately, instead of waiting for the notice period to expire and then filing a new forcible detainer action in the state justice court, the Purchaser wants the Court to act as a state justice court and adjudicate a matter reserved purely for the state courts.

---

[1] (*See* **Exhibit 1-A** [Defendant Jetall Companies, Inc. First Amended and Supplemental Answer to Plaintiff's Petition]). Marc Hill, Jetall's lawyer who represented Jetall in the forcible entry and detainer action, and who was present at the hearing on that action, confirms that the justice court determined that it lacked jurisdiction because it determined that the Bank had violated Texas eviction law by failing to give Jetall "adequate notice." (*See* Ex. 1).

4.      Now the Bank is compounding the Purchaser's procedural failures in the state court forcible detainer action by turning to this Court and seeking "emergency" relief to evict Jetall before the 30 days provided in the notice has expired. Yet neither the Bank's impatience nor the Purchaser's failure to provide the requisite notice that the justice court deemed to be required under Texas law is a matter deserving of this Court's attention— much less creates an "emergency" necessitating the Court's immediate action.

5.      The Bank is also aware that its current counsel cannot bring this action because it has been disqualified from any matter having to do with Jetall. In the eviction action, the justice of the peace disqualified the Purchaser's counsel, Jackson Walker, LLP because that firm had represented Jetall in previous litigation and thus had a "conflict of interest." (*See* **Exhibit 2)**. That disqualification extended not only to Jackson Walker itself, but also to "its co-counsel" Pillsbury Winthrop Straw Pittman. (*Id.*) And that disqualification went beyond the "the present case" pending before the justice court—the forcible entry and detainer—to include *any* case involving a "party in this case or the matters and issues relating thereto." (*Id.*) Jetall was a party in that case. The Purchaser was also a party in that case. And the matters in this action are identical to those in the forcible entry and detainer. Accordingly, Pillsbury Winthrop's continued representation of the Bank and the Purchaser in this action is in direct, willful violation of the justice court's order.

6.      The Bank is also fully aware that its hasty action may be in violation of the automatic stay in another bankruptcy. That is because there is a bankruptcy proceeding that concerns a different entity affiliated with Ali Choudhri (Jetall's president), which is

pending in the Bankruptcy Court for the Western District of Texas, Austin Division. Cause No.: 24-10120-smr, *In re Texas REIT, LLC*. In that case, Osama Abdullatif, a litigant before this Court, has raised similar claims against Choudhri that he and his affiliates have raised against Choudhri in this case, alleging the debtor in that case is an "alter ego" of Choudhri, and that all of Choudhri's other entities are also alter egos of Choudhri and each other— including "Jetall." (**Exhibit 3** [No. 4:24-cv-3224, Nov. 13, 2024 Hr'g Tr. at 13-14, 15-16]). Just days before the Bank and the Purchaser filed their initial emergency motion in this case, Judge Isgur determined that that the automatic stay protecting Texas REIT, LLC "probably applies" to all of Choudhri's affiliated entities. (*Id.* at 37-38).

7.      But Judge Isgur ultimately "abstain[ed]" from answering that question, referring the question instead to Judge Robinson, who is hearing the *In re Texas REIT, LLC* bankruptcy, making him the most appropriate person to determine the scope of the automatic stay in that action. (*See* **Exhibit 4** [Order Remanding Adversary Proceeding [Dkt. No. 23], No. 24-03224 (Bankr. S.D. Tex.)). It would be inappropriate in this case to authorize any action might violate the automatic stay in that proceeding, especially before Judge Robinson has had a chance to consider the appropriate scope of the automatic stay.

8.      So, at the very least, it would be premature to grant Movants the eviction they through their motion. And that is the very least of the problems with the Bank's overreaching demand.

## ARGUMENT

I.    **The Court lacks jurisdiction over this action and over Jetall.**

9.      To begin with, the Court lacks the substantive power to evict Jetall, because

it does not have jurisdiction over either the parties to, or the subject matter of, any such eviction action. Jetall is not a debtor in this case. It has not been served with any summons or citation. It is not before the Court. And it has made no appearance in this case beyond filing a proof of claim.

10.    But a party must be "properly served" in order to be subjected to eviction. *Coleman v. Williams*, 538 Fed. App'x 513. 514 (5th Cir. 2013). And the mere fact that Jetall filed a proof of claim in the bankruptcy action underlying this action did not subject Jetall to the Court's personal jurisdiction for other purposes. "[B]y submitting a claim against the bankruptcy estate," parties subject themselves to the bankruptcy court's "equitable power to [allow or] *disallow [that] claim[]*." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14 (1989) (emphasis added) (citing *Katchen v. Landy*, 382 U.S. 323, 335 (1966). But they do not subject themselves to the bankruptcy court's power for matters *beyond* adjudicating that claim. Accordingly, Jetall did not submit itself to the Court's personal jurisdiction for any eviction action that is separate and apart from the main bankruptcy action in which its claim was adjudicated. The Court therefore lacks power to compel Jetall to leave the property. The Bank cites no authority suggesting otherwise.

11.    The Court also does not have any jurisdiction over the subject matter of this case under 28 U.S.C. § 1334. This is an action by one non-bankrupt party seeking to evict another non-bankrupt party from a building that—as the result of a foreclosure sale by which the Purchaser has now obtained the Property—is no longer property of the bankruptcy estate. "[B]ankruptcy court jurisdiction covers only property in which the debtor has an interest," and no such interest remains after the debtor loses the property "in

a foreclosure sale." *Coleman*, 538 Fed. App'x at 514. An eviction will have no effect on the bankruptcy estate. That means the Court has no jurisdiction to enter any such eviction.

12.     Movants offer no reason to suggest otherwise. They propose that this action has a connection to the estate because of this Court's Order (A) Approving Asset Purchase Agreement Between the Trustee and QB Loop Property LP; (B) Approving the Sale of the Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (C) Approving Assumption and Assignment of Executory Contracts and Leases; (D) Determining the amounts necessary to cure such Executory Contracts, and Unexpired Leases; and (E) Granting Related Relief [Docket No. 608] (the "Sale Order").

13.     But the present action has absolutely *no* connection to the Sale Order. While that order conveys the Property—the physical building that was purchased in the foreclosure sale—to the Purchaser, it does not purport to transfer any leasehold interests to anyone. Accordingly, the Sale Order's provision demanding that "all persons that are in possession of some or all of the Purchased Assets" turn over those assets to the Purchaser does not apply to Jetall's lease—because its lease is not one of the "Purchased Assets." (Mot. 4) (quoting Sale Order, p. 26 ¶ 34) Furthermore, even if the Sale Order purports to convey the Property "free and clear of all interests, including all liens, claims and encumbrances," (Mot. 4) (quoting Sale Order p. 7 ¶ N, p. 13 ¶ 5), that provision did not actually effectuate a transfer of possession. That is why an eviction was necessary.

14.     Indeed, the only property transfer that the Sale Order effectuates is one from the bankruptcy estate to the Purchaser—with no transfer of property from Jetall to the Bank. And in that sense, the Sale Order *strips* this Court of jurisdiction rather than conveys

it. By transferring the Property out of the bankruptcy estate, that ensures that nothing that happens to the Property will have any effect on the estate. And that means the Sale Order cannot provide the jurisdictional link that is otherwise missing.

**II.     The Court lacks any substantive power to evict Jetall.**

15.     The Court also lacks substantive power to evict Jetall for several reasons.

**A.     The Court is prohibited under the *Rooker Feldman* doctrine from evicting Jetall.**

16.     First, the eviction Movants seek is prohibited by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). And pursuant to that doctrine, federal courts "lack jurisdiction to review state-court judgments by means of a state-court loser's collateral attack"—and bankruptcy courts do too. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994).

17.     The Purchaser is precisely the sort of "state court loser[]" shopping for a new federal forum that this doctrine was meant to address. *Exxon Mobil Corp.*, 544 U.S. at 284. And the present action to evict Jetall is unquestionably a "collateral attack" on the justice court's judgment that the doctrine was meant to prohibit. *Shepherd*, 23 F.3d at 924.

18.     The justice court determined that it lacked jurisdiction to evict Jetall because the Purchaser had not provided proper notice—because Jetall's lease required 30-days' notice, and the Purchaser failed to provide it. The Bank is now trying to overturn that decision by seeking an eviction before the notice period required by the justice court was

satisfied, and it does so by asking the Court to "deem[]" all applicable notice provisions "satisfied or waived" when the justice court held that they were not. (Mot. at 8) Indeed, the Bank ultimately confirms that it is seeking to collaterally attack the judgment of the justice of the peace by conceding that the action it seeks here is "consistent" with a forcible entry and detainer—thereby admitting that the relief it seeks here is *precisely* the relief it previously sought in the justice court—relief that the justice court expressly denied. (Mot. 9)

19.     Moreover, the Bank makes a mockery of Texas law by claiming that the actions it has taken—and asks the Court to take—are "consistent" with Texas forcible entry and detainer law. In a forcible entry and detainer, the defendant is entitled to service of summons and an opportunity to develop evidence. And one of the elements that must be satisfied is that "proper notice" must be given. *Shields L.P. v. Bradberry,* 526 S.W.3d 471 (Tex. 2017).  But the Bank here seeks to act without providing Jetall a summons or an opportunity for discovery. And it seeks to force the Court to act *before* the notice period that the justice court demanded had been satisfied.

20.     The Purchaser is estopped by *Rooker-Feldman* from raising these claims, as a state court loser who never appealed the decision of the justice court to the state district court, from collaterally attacking the judgment in federal court. The Bank has no standing to evict Jetall because it is not the owner of the Property. And the Court is also jurisdictionally prohibited under *Rooker-Feldman* from entering the relief that both of these movants seek.

21.     Numerous courts have rejected exactly this type of effort to side-step state

court rulings in forcible entry and detainer actions by forum-shopping in federal court. *See Coleman v. Williams*, 538 F. App'x at 515 (holding that debtor's due process claim against law enforcement officers, challenging her eviction following foreclosure sale of her former house, was impermissible challenge to state court's judgment); *Wells v. Ali*, 304 F. App'x 292, 294 (5th Cir. 2008) (affirming dismissal of lawsuit seeking to relitigate eviction-related claims in federal court under Rooker-Feldman doctrine); *Wilkerson v. Hoff*, No. 3:21-CV-00136-KC, 2021 WL 3186125, at *4 (W.D. Tex. July 28, 2021) (same); *DeVilbiss v. Jackson*, No. SA-20-CV-00878-OLG-EBC, 2020 WL 5249246, at *3 (W.D. Tex. Sept. 3, 2020) (same), *report and recommendation adopted*, 2020 WL 10054537 (W.D. Tex. Oct. 29, 2020).

22.     Moreover, it does not matter that the Movants do not seek in this proceeding to relitigate exactly the same issues decided against them in the justice court, and instead bring this action under the guise of an attempt to enforce the Sale Order. A party cannot defeat the *Rooker-Feldman* doctrine simply by "asserting claims not raised in the state court proceedings or claims framed as original claims for relief." *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir.1994)) It likewise does not matter if the claims litigated in the state action raise federal questions. *"*The only federal recourse" even "for constitutional questions arising in state court proceedings is application for writ of certiorari to the United States Supreme Court." *Liedtke v. State Bar of Tex*., 18 F.3d 315, 317 (5th Cir. 1994). And for all these reasons, the *Rooker-Feldman* doctrine prohibits the relief that the Bank seeks in this case.

10

**B.      Evicting Jetall would violate the Anti-Injunction Act**

For similar reasons,  evicting Jetall would violate the Anti-Injunction Act, 28 U.S.C.

§ 2283. That Act prohibits courts from issuing injunctive relief that would prohibit one

party from enforcing its rights under a "valid extant judgment of a Texas court*." Knoles v.*

*Wells Fargo Bank*, N.A., 513 Fed. App'x 414 (5th Cir. Feb. 19, 2024) (citing *Parsons Steel,*

*Inc. v. First Ala. Bank*, 474 U.S. 518, 522-25 (1986). And that is exactly what the Court

would do if it gave into the Bank's demand to enter an order evicting Jetall when the justice

court entered judgment allowing it to remain in possession.

**C.      The Bankruptcy Code does not convey power to bankruptcy
          courts to evict one non-debtor for the benefit of another.**

23.      Moreover, nothing in the Code empowers a bankruptcy court to provide the

specific relief that Movants seek in this case: to conduct eviction of one non-bankrupt party

for the benefit of another non-bankrupt party.

24.      Foreclosure and eviction are matters "governed by state, not federal, law."

*Hoffhine v. Turturo*, No. 5:20-CV-713-JKP-RBF, 2021 WL 2878560, at *1 (W.D. Tex.

Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 2878557 (W.D. Tex. Mar.

11, 2021). And the Bank cannot identify any provision of the Code that transfers such

power to bankruptcy courts.

25.      The sole substantive bankruptcy power that the Bank invokes is section

105(a) of the Code, and the Court's power to "enforce its own orders." (Mot. 6) But the

Bank concedes that the power it invokes is limited to "*effectuat[ing]* the requirements of

the Sale Order"—not *expanding* upon them. (*Id*. at 7) (emphasis added) And as explained

above, the Sale Order does not order any transfer of possession from Jetall to the Bank, so

the Court cannot "effectuate" the Sale Order by making a separate order initiating that transfer. The Bank does not cite any authority to the contrary. And thus, the Bank cannot invoke the Sale Order as the basis to transfer property from one non-bankrupt entity to another.

26.     Instead, Movants cite a series of cases that all involved **bankrupt parties**—and did so according to orders that actually demanded changes in possession. Most of these cases, like *In re Searles*, 70 B.R. 266 (D.R.I. 1987) were consent orders, by which the bankrupt debtor *had agreed* that it would turn over the property to a creditor if certain conditions were not met. *See also Ragsdale v. Michas (In re Five Star Design & Builders, LLC)*, Adv. Proc. 05-06626 (Bankr. N.D. Ga. 2006); *In re M.A.S. 284 Parking Corp.*, 201 F.3d 431 (2d Cir. 1999); *In re Stephens*, No. ADV 04-3468 DDO, 2012 WL 1899716, at *7 (D. Minn. May 24, 2012), aff'd (Apr. 2, 2013). These previous orders gave the Bankruptcy Court power to effectuate the promised transfer when those conditions were not satisfied.

27.     As for the cases that actually involved sale orders, these orders gave the bankruptcy court the power to effectuate a transfer of possession only because the sale order itself demanded a change in possession—requiring that the debtor give up the property. None of these cases suggest that bankruptcy courts possess authority under Section 105 to enter transfer orders that had not been previously demanded. And indeed, none of these cases suggest that parties can seek evictions in bankruptcy court after they had been denied a rejection in state court. Accordingly, none of these cases come close to authorizing the relief that the Bank and the Purchaser seek in this case.

**D.     Evicting Jetall would also violate the automatic stay in the Texas REIT bankruptcy.**

28.     Furthermore, evicting Jetall would also violate the automatic stay in the Texas REIT bankruptcy. Judge Isgur determined that that the automatic stay protecting Texas REIT "probably applies" to all of Choudhri's affiliated entities—including Jetall, although it left final determination of that issue for Judge Robinson. *See* Ex. 4**.** And Judge Isgur's instincts are entirely correct. Generally, the automatic stay does not extend to protect non-debtor parties. *Beutel v. Dallas County Flood Control Dist.*, 916 S.W.2d 685, 692 (Tex. App.–Waco 1996, writ denied); *HBA East, Ltd. v. JEA Boxing Co.*, 796 S.W.2d 534, 536 (Tex. App.–Houston [1st Dist.] 1990, writ denied); *Audio Data Corp. v. Monus*, 789 S.W.2d 281, 286 (Tex. App.–Dallas 1990, no writ).

29.     But raising the allegation that one company is an alter ego of another triggers the automatic stay under 11 U.S.C. § 365(a)(3) when one of those entities is a debtor in bankruptcy. The doctrine of alter ego "is one distinct method of piercing the corporate veil." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). Alter ego applies when "there is such unity between corporation and individual" (or such unity between one corporation and another) "that the separate identity of the corporation has ceased, and holding only the corporation liable would result in injustice." *Riquelme Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345 (5th Cir. 1987) (quoting *Castleberry*, 721 S.W.2d at 272). And as a consequence of the doctrine's application, the "assets and liabilities" of one entity become the "assets and liabilities" of the other. *State v. DeSantino*, 899 S.W.2d 787, 790 (Tex. App. 1995).

13

30.     Accordingly, where, as here, numerous entities and individuals are alleged to be alter egos of a bankrupt debtor, that makes the assets and liabilities of the alter egos the assets and liabilities of the estate. *See Pisculli v. T.S. Haulers, Inc.*, 426 B.R. 52, 60 (E.D.N.Y. 2010) ("[A] court may pierce the corporate veil of a business and treat its assets as the debtor's individual property, and, thus, property of the debtor's estate[] under an alter ego theory.").

31.     That means any claim to recover from one of the alter egos is subject to the automatic stay. After all, the automatic stay prohibits not only claims against the debtor itself under section 362(a)(1), but also prohibits any "act" to "obtain possession of property of the estate" under section 362(a)(3). For that reason, numerous cases have held that a non-frivolous allegation of alter ego makes the alleged alter egos subject to the automatic stay. *See, e.g.*, *In re Adler*, 494 B.R. 43, 53 (Bankr. E.D.N.Y. 2013) (holding that claims against alleged alter egos were subject to the automatic stay because the debtor and its alter egos "were at all relevant times one and the same entity"); *Sky Cable, LLC v. DIRECTV, Inc.*, 23 F.4th 313 (4th Cir. 2022) (noting that bankruptcy court had denied a motion for post-judgment attorneys' fees against debtor "and his alter egos because such an award was precluded by the bankruptcy court's automatic stay").[2] This Court should follow these other

---

[2] Indeed, the only cases that have held that alter egos *were not* subject to the automatic stay analyzed only whether the alter egos were actually "the debtor" under section 362(a)(1), rather than considering whether claims against the alter egos fell under section 362(a)(3) because they sought "property of the estate." *See, e.g., In re Meyerland Co.*, 82 B.R. 831 (Bankr. S.D. Tex. 1988); *Pavers & Road Builders Dist. Council Welfare Fund v Core Contracting of N.Y., LLC*, 536

courts' lead and hold that all claims against all individuals and entities that are alleged to be alter egos of Ali Choudhri—including Jetall—are subject to the automatic stay.

32.     At the very least, the Court should not act precipitously to order that Jetall be evicted from the Property before Judge Robinson can determine the extent of the protection provided by the automatic stay in the Texas REIT bankruptcy—because any such order would be a violation of the automatic stay and could be void. *See Howell v. Thompson*, 839 S.W.2d 92, 92 (Tex. 1992); *Continental Casing Corp. v. Samedan Oil Corp*., 751 S.W.2d 499, 501 (Tex. 1988) (per curiam) (citing *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940)).

### III.     The Movants are prohibited from bringing this eviction action because their counsel is disqualified.

33.     To begin with, the Movants are prohibited from bringing their present action to evict Jetall because  their counsel Pillsbury Winthrop has been disqualified by the justice court from handling any case involving Jetall. *See* Ex. 2. Pillsbury Winthrop has tried various means to avoid the effect of that order. But none are availing.

34.     The first time that Pillsbury Winthrop filed this motion to enforce the Sale Order on the Bank's behalf, it withdrew that motion so that it might ask the justice court to reverse its order under the guise of "clarif[ying]" it. (Mot. 7) But despite Pillsbury Winthrop's protest, the justice court refused to reverse the order or exempt the law firm

---

BR 48, 51 (Bankr. E.D.N.Y. 2015). The analysis of these cases is incomplete and therefore unpersuasive.

from the disqualification it imposed. And that means the law firm is disqualified from any

further actions involving Jetall.

36. Having thus failed to get the justice court to reverse its previous order,

Pillsbury Winthrop now urges the Court to ignore that order. (Mot. 6 n. 6) But the Court

cannot do so. On the contrary, this court is bound to give the same respect to the justice of

the peace's judgment as a "state district court" would "in a later suit" concerning the

property. *See Knoles v. Wells Fargo Bank, N.A.*, 513 Fed. App'x 414, 416 (5th Cir. 2013)

And the Movants are barred under the *Rooker-Feldman* doctrine from entering a ruling that

differs from the disqualification ruling of the justice court. Accordingly, the Court is bound

under *Rooker-Feldman* to *honor* the justice court's disqualification, not disregard it.

36. Pillsbury Winthrop also claims that Jetall has "waived" any right to seek its

disqualification in this proceeding by waiting three weeks to raise the issue in response to

its first emergency motion to enforce the Sale Order. (Mot. 6 n.6) But Jetall was not even

a party in this case until Pillsbury Winthrop hailed it into court on an "emergency" basis to

face eviction. And until Pillsbury Winthrop filed that emergency motion, the law firm had

not yet done anything that might contradict the terms of the justice court's order. Jetall

raised the issue of Pillsbury Winthrop's disqualification at the first available opportunity—

in Jetall's response to the Bank's original "emergency" motion. (*See* Dkt. No. 831 at 1)

That makes this case very different from the appellate proceeding before Judge Ellison that

Pillsbury Winthrop emphasizes, in which Judge Ellison deemed the issue of the law firm's

disqualification to be "waived" when it was raised immediately before a hearing on a

motion to dismiss the appeal, which the district court believed gave it inadequate time to

16

consider the motion. (*See* Mot. Ex. C) Jetall raised this issue more than a week before the

present hearing—giving the Court far more notice of the disqualification issue than it

received for Movants' latest eviction effort. Accordingly, Jetall has waived nothing.

**IV.     The Purchaser has not satisfied the requirements to evict Jetall.**

37.     Finally, the Purchaser—which is the only party that might have standing to

evict Jetall in any forum—has not satisfied the very requirements it admits being necessary

to conduct an eviction under applicable state law. In claiming that the action it seeks is

"consistent" with Texas forcible entry and detainer law, the Purchaser has bound itself to

follow the requirements of Texas forcible entry and detainer law. (Mot. 11) One of those

requirements is that the "proper notice" has been given, *Shields L.P. v. Bradberry,* 526

S.W.3d 471 (Tex. 2017), and the "period of time to vacate has expired" (Mot. 12). And in

this case, the proper notice period has not expired—because the justice court held that Jetall

must be entitled to 30 days' notice, and the Purchaser claimed to have provided 30-days'

notice. But that notice period has not expired.

38.     The Purchaser also admits that it must demonstrate that Jetall has no right to

possess the property in order to obtain possession.  But the Bank is incorrect to suggest that

Jetall lacks such a possessory right. Because the Trustee never objected to Jetall's lease,

that lease has not "expired" or "terminated" (Mot. 9)—it was merely "deemed" rejected

under the Plan (Dkt. No. 566 at 2-3) And pursuant to 11 U.S.C. § 365(d)(4), the fact that a

lease has been "deemed" rejected does not mean "that the executory contract or lease has

been terminated, but only that a breach has been deemed to occur." *In re Matter of Austin*

*Development Co.*, 19 F.3d 1077, 1082 (5th Cir. 1994); *In re Continental Airlines*, 981 F.2d

17

1450, 1459 (5th Cir.1993) ("to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"). Thus, far from granting the Bank the power to evict Jetall, the fact that Jetall's lease has been rejected placed the Debtor in breach.

39.     Furthermore, the Sale Order's requirement that the Property be sold "free and clear of all interests, including all liens, claims and encumbrances" does not by its terms apply to leases. (Mot. 4) (quoting Sale Order p. 7 ¶ N, p. 13 ¶ 5])

40.     And in any event, the draconian terms of the eviction relief that Movants seek is entirely inappropriate. Jetall has done nothing to "waive" its right to appropriate notice and the Purchaser has expressly refused to "satisfy" the required notice. (See Dkt. No. 838-2 at 2) Moreover, Jetall has not refused to vacate the Property—because the time period that Purchaser provided to Jetall to vacate has not yet expired, making Movants' demand for a preemptive writ of assistance from the U.S. Marshalls' service be unlawful. And Movants' request for a preemptive injunction prohibiting them from seeking any "recourse in any other court than this Court" is entirely unprecedented and improper. (*Id*. at 3)

### REQUEST FOR CONTINUANCE

41.     Finally, the Court should grant a continuance of this matter. Neither Ali Choudhri nor his counsel in the forcible entry and detainer, Marc Hill, were able to make arrangements to attend the hearing on the two-days' notice provided before the hearing date. The Bank's failure to wait the required notice period before attempting to evict Jetall does not constitute an exigency requiring emergency relief. And the Court should wait until Judge Robinson rules on the scope of the stay in the Texas REIT bankruptcy before taking

action that might violate the stay.

## CONCLUSION

For these reasons, Jetall Companies, Inc. and 2425 WL, LLC hereby request that the Emergency Motion to Enforce Sale Order filed by the National Bank of Kuwait, S.A.K.P., New York Branch be denied.

Respectfully submitted,

*/s/ J. Carl Cecere*

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455

*Counsel for 2425 WL, LLC, Jetall Companies, Inc. and Ali Choudhri*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 4, 2024, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all parties who are deemed to have consented to ECF electronic service, and via email to those listed below..

Charles C. Conrad
Ryan Steinbrunner
Pillsbury Winthrop Shaw Pittman LLC
Main Street Suite 2000
Houston, TX 77002
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com -

Andrew M. Troop
Patrick E. Fitzmaurice
Kwame O. Akuffo
Pillsbury Winthrop Shaw Pittman LLC
31 West 52nd Street New York, NY
10019-6131 Telephone: (212) 858-
1000 Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*/s/ J. Carl Cecere*

**J. Carl Cecere**