### THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **GALLERIA 2425 OWNER, LLC,** | ) | **Case No. 23-34815** |
| **Debtor.** | ) | |

---

### EMERGENCY MOTION OF JETALL COMPANIES, INC. FOR STAY PENDING APPEAL OF ORDER GRANTING NBK'S MOTION TO ENFORCE SALE ORDER REQUIRING JETALL COMPANIES, INC. TO VACATE PROPERTY

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.**

**IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**RELIEF IS REQUESTED NOT LATER THAN DECEMBER 13, 2024.**

**To the Honorable Court:**

Comes now Jetall Companies, Inc., creditor and party-in-interest in this case, and files this Emergency Motion for Stay Pending Appeal of the *Order Granting Emergency (Renewed) Motion to Enforce Sale Order Requiring Jetall Companies. Inc. to Vacate Property* (**Exhibit 1** [Dkt. No. 871]) ("the Eviction Order") and would respectfully show as follows.

### PRELIMINARY STATEMENT

1.      On Friday, December 6, 2024, the Bankruptcy Court granted a motion (**Exhibit 2** [Dkt. No. 838]) (the "Eviction Motion") by the National Bank of Kuwait, S.A.K.P., New York Branch ("NBK" or the "Bank") and its affiliate Houston 2425 Galleria, LLC ("the Purchaser"), to evict Jetall from a commercial building located at One West Loop Plaza, located at 2425 West Loop South in Houston Texas (the "Property"), where Jetall has maintained offices for nearly 10 years. The Eviction Order requires that Jetall leave the Property immediately and allows Appellees to seek assistance from law enforcement if Jetall has not left the premises by **this Friday, December 13, 2024**.

2.      But the Bankruptcy Court possessed neither jurisdiction nor statutory power under the Bankruptcy Code to provide this relief. Neither the Bank nor the Purchaser is a debtor in the underlying bankruptcy action. The Purchaser is a complete stranger to this case. The Purchaser did not even exist before that proceeding began and has no connection with the Debtor. Instead, the Purchaser was created by the Bank, the Debtor's senior creditor, to hold title to the Property after a foreclosure sale.

2

3.     Jetall is a stranger too. It has not appeared in this case, has not been served with citation, has not been provided appropriate notice or an appropriate period to vacate, and has not been provided any of the procedural protections that parties enjoy in forcible entry and detainer actions under Texas law. Indeed, the Bank and the Purchaser obtained their requested order evicting Jetall *after* Jetall entered bankruptcy itself, *after* a state-court justice of the peace *refused* to evict Jetall, *and before* the notice period that the Purchaser had given Jetall to vacate the Property had expired.

4.     No bankruptcy court in the country has ever granted relief anywhere near this broad—allowing one non-debtor to evict another from property that has been sold and is therefore no longer part of the bankruptcy estate. Such matters lie beyond the jurisdiction and statutory powers that Congress has given to the bankruptcy courts, reserved instead for the exclusive jurisdiction of state courts. Jetall therefore respectfully requests a stay of the Eviction Order in order to protect its right to challenge this unprecedented and improper action, and to ensure that if it is successful on appeal, Jetall will be able able to obtain effective relief. Jetall respectfully requests that such as stay issue on or before Friday, December 13, 2024.

5.     All of the factors for obtaining a stay pending appeal favor Jetall in this case. Jetall respectfully submits that it has a substantial likelihood of success on the merits of its appeal of the Eviction Order. This appeal raises serious questions of law—even beyond the question of whether bankruptcy courts can grant one non-debtor's request to evict another non-debtor from property that does not belong to the debtor's estate. These include: (1) whether a non-debtor can obtain such relief after such relief was refused by a justice of the

peace, the court with exclusive jurisdiction in Texas to hear forcible entry and detainer actions; (2) whether the non-debtor Purchaser can do so when Jetall is subject to the automatic stay in two different bankruptcies; (3) whether Purchaser can seek such relief through counsel that has been disqualified from handling these issues; and (4) whether Purchaser had any right to demand that Jetall leave the Property on *December 4* when Jetall's lease had never been terminated (by any order of the Bankruptcy Court or otherwise) and when Purchaser had previously given Jetall until at least *December 18* to vacate the building.

6.      Jetall will suffer irreparable harm in the absence of a stay. The wrongful eviction of a tenant from the leased property constitutes an irreparable injury as a matter of law. And the compressed schedule for Jetall's departure contemplated by the Eviction Order—which demands that Jetall leave immediately or be expelled by force in as little as five days—is impossible to satisfy. It would take weeks for Jetall to leave the Property, even under the best of circumstances. And the circumstances here are not the best. The Purchaser's mismanagement of the Property has left it without a functioning elevator. And taking all of Jetall's personal property down eleven flights of stairs will make the move take even longer. Trying to do it faster will inevitably and irreversibly damage numerous irreplaceable antiques and unique pieces of art—a harm that cannot be undone through a damages award. And working to vacate the property at an *appropriate* speed would subject Jetall to potential sanctions from the Bankruptcy Court. This puts Jetall in an impossible situation that can only be cured by a stay.

4

7.     By contrast to the extreme and irreparable harm that Jetall will face if it is forced to vacate the Property on the Eviction Order's schedule, other parties will suffer little to no harm if a stay goes into effect. It is obvious that neither the Bank nor the Purchaser is planning to immediately occupy the leased premises themselves, since they have not even bothered to keep the elevator functioning. And any risk that the Purchaser does face can be mitigated through an appropriate bond.

8.     The public interest also supports a stay. The District Court should have the chance to consider the serious appellate issues posed by this case without the exigency of an immediate eviction hanging over its head. And it is important for the District Court to have the chance to consider these issues and reverse the practice that the Bankruptcy Court has endorsed. Allowing bankruptcy courts to evict one non-debtor at the request of another from property that lies outside the bankruptcy is an abusive practice that will become the norm if it is allowed to continue.

## BACKGROUND

**A.     Jetall's lease of the Property survives the bankruptcy of its former owner.**

9.     Jetall has held a lease covering the entire Eleventh Floor of the Property since 2015. *See* **Exhibit 3** [Lease, Dkt. No. 847-7]) But on December 5, 2023, the owner of the property, Galleria 2425 Owner, LLC, went into bankruptcy. (*See* **Exhibit 4** [Dkt. No. 1]) After the Bank succeeded in having the bankruptcy converted from a Chapter 11 reorganization to a Chapter 7 liquidation (*See* Eviction Motion at 1-2, and the Bankruptcy Court confirmed the plan of dissolution that the Bank had proposed (*See* **Exhibit 5** [Dkt. No. 846-2] (the "Plan and Confirmation Order"), the Property was sold at foreclosure and

obtained by the Purchaser, an affiliate of the Bank, the Debtor's senior creditor. (*See* Eviction Motion at 5). The Bankruptcy Court then approved the sale and ordered the Property transferred to the Purchaser in its *Order (A) Approving Asset Purchase Agreement Between the Trustee and QB Loop Property LP; (B) Approving the Sale of the Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (C) Approving Assumption and Assignment of Executory Contracts and Leases; (D) Determining the amounts necessary to cure such Executory Contracts, and Unexpired Leases; and (E) Granting Related Relief.* (**Exhibit 6** [Dkt. No. 608] (the "Sale Order"))

10.     The Sale Order was fully consummated. But while that consummation involved conveying the *Property* to the Purchaser, neither the Sale order nor any other order had any effect on Jetall's *lease* on the Property. The Debtor neither assumed nor rejected that lease, and while the lease was "deemed" rejected under the Plan (**Exhibit 7** [Dkt. No. 566] at 2-3), that action merely put *the Debtor* in breach of the lease. It did not destroy Jetall's tenancy. *In re Matter of Austin Development Co*., 19 F.3d 1077, 1082 (5th Cir. 1994) (holding, pursuant to 11 U.S.C. § 365(d)(4), that when a lease has been "deemed" rejected, it does not mean "that the executory contract or lease has been terminated, but only that a breach has been deemed to occur"); *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir.1993) ("[T]to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"). Accordingly, Jetall still had a valid lease on the Property even after the Plan had been confirmed and the Property had been sold.

**B.    A justice of the peace refuses to evict Jetall for insufficient notice, and the Purchaser gives Jetall until December 18 to vacate.**

11.    Yet the Purchaser immediately started trying to evict Jetall from the Property anyway. It began by filing a forcible entry and detainer action before a justice of the peace in state court. *Houston 2425 Galleria, LLC v. Jetall Companies, Inc*., Cause No. 241100353166 (Harris County Justice of the Peace, Precinct 1 Place 1) (*See* **Exhibit 8** [Dkt. No. 848-2, Affidavit of Marc Hill]**).** But the justice court ruled that the Purchaser had provided Jetall insufficient notice. (*See* Eviction Motion at 3 n.1 (citing **Ex. 8** [Dkt. No. 848-2] & Ex. A).

12.    The Purchaser hastily tried to correct the error and filed a new notice purporting to give Jetall until "December 18, 2024 (30 days from the date of this notice)" to "vacate" the Property. (**Exhibit 9** [Dkt. No. 848-3] at 2).

**C.    The Purchaser then prematurely tries to evict Jetall in the Bankruptcy Court after Jetall became subject to the automatic stay in two different bankruptcies, and the Purchaser's counsel is disqualified.**

13.    Yet the Purchaser proved too impatient to challenge the order of the justice of the peace on appeal, or to bring a new forcible entry and detainer action after the promised period to vacate had expired. Instead, on December 4, 2024, less than a week after the Purchaser issued the notice to vacate—and long before the 30-day period to vacate it promised had expired—the Bank and the Purchaser went to the Bankruptcy Court to evict Jetall, thereby asking the Bankruptcy Court to adjudicate a matter that had already been decided against it in the justice court. (*See generally* Eviction Motion).

14.     The Purchaser demanded that this Court evict Jetall despite the fact that its counsel, Pillsbury Winthrop Straw Pittman, LLP, had been disqualified from representation in any matter having to do with Jetall. In the forcible entry and detainer action, the justice of the peace entered an order that disqualified the Purchaser's counsel, Jackson Walker, LLP, because that firm had represented Jetall in previous litigation and thus had a "conflict of interest." (*See* **Exhibit 10** [Dkt. No. 848-4]). That disqualification extended not only to Jackson Walker itself, but also expressly encompassed "its co-counsel" Pillsbury Winthrop. (*Id.*) And that disqualification went beyond the "the present case" pending before the justice court—the forcible entry and detainer—to include *any* case involving a "party in this case or the matters and issues relating thereto." (*Id.*) Jetall was a party in that case. The Purchaser was also a party in that case. And the matters in this action are identical to those in the forcible entry and detainer. Accordingly, Pillsbury Winthrop's continued representation of the Bank and the Purchaser in this action is in direct, willful violation of the justice court's order.[1]

15.     The Bank is also fully aware that its hasty action may be in violation of the automatic stay in at least two bankruptcies. There is a separate bankruptcy proceeding that

---

[1] The day before the hearing on the Purchaser's motion to evict Jetall in the Bankruptcy Court, the state justice court entered an order purporting to clarify that Pillsbury was not among the counsel disqualified. (*See* **Exhibit 12** [Dkt. No. 850-1]). But this order raised more questions than it answered. The order was not signed by the judge but was purportedly signed with permission. *Id.* It was never transmitted to counsel by the justice court. And it was issued more than 30 days after the original order of disqualification and judgment in the eviction action. That put it outside the time period to appeal the disqualification order and outside the court's plenary power, which expired 21 days after entry of judgment. *See* Tex. R. Civ. P. 507.1. Accordingly, this order could not serve to remove Pillsbury Winthrop's disqualification.

concerns a different entity affiliated with Ali Choudhri (Jetall's president), which is pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division, Cause No.: 24-10120-smr, *In re Texas REIT, LLC.* In that case, Osama Abdullatif, a litigant in an adversary proceeding pending in the Southern District that stems from the Texas REIT bankruptcy, alleged that the debtor in that case is an "alter ego" of Choudhri, and that all of Choudhri's other entities are also alter egos of Choudhri and each other—including "Jetall." (**Exhibit 11** [Dkt. No. 848-5] at 13-14, 15-16). Just days before the Bank and the Purchaser filed their initial emergency motion in this case, Judge Marvin Isgur determined that that the automatic stay protecting Texas REIT, LLC "probably applies" to all of Choudhri's affiliated entities. (*Id.* at 37-38)

16.     But Judge Isgur ultimately "abstain[ed]" from answering that question, referring the question instead to Judge Robinson, who is hearing the *In re Texas REIT, LLC* bankruptcy, making him the most appropriate person to determine the scope of the automatic stay in that action. (*See* **Exhibit 13** [Dkt. No. 848-6] Order Remanding Adversary Proceeding No. 24-03224 (Bankr. S.D. Tex.))

17.     Furthermore, on December 4, 2024, the day before the emergency hearing on Appellees' motion to evict Jetall, Jetall itself became the subject of an Involuntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Western District of Texas, Austin Division, Cause No. 24-11544. (*See* **Exhibit 14** [Dkt. 852 & 852-1]).

**D.     The Court orders Jetall to immediately vacate the Property.**

18.     Although Appellees were seeking to evict Jetall on a lease that had not been terminated, before the period to vacate Purchaser had promised to provide was anywhere close to expiring, through counsel that had been disqualified, and Jetall was subject to the automatic stay in two bankruptcies, on Friday, December 6, 2024, the Bankruptcy Court issued an "emergency" order demanding that Jetall "immediately vacate the Property and … remove its personal property" from the premises. (Eviction Order, ¶3) The Bankruptcy Court gave Jetall only "five (5) business days" to leave or the Bank would be empowered to ask the Clerk to issue writs to the "United States Marshall" or to "present" the order to "the Harris County Sheriff's Office" to complete the eviction—including through "the use of reasonable force." (Eviction Order, ¶¶ 5-6).

19.     And importantly, in its *Memorandum Opinion* accompanying the order, the Bankruptcy Court made clear that this action was merely for the bank's convenience, to help "NBK to achieve one of its desired goals of evicting Jetall"—not because either the Bank or the Purchaser actually had the right to evict Jetall from the property.  (**Exhibit 15** [Dkt. No. 870] at 3). The Bankruptcy Court made no finding that Jetall lacked a possessory interest in the Property under a valid lease, nor did it provide any reason to excuse the Purchaser's failure to honor its promise to give Jetall until December 18 to leave the premises. Instead, the Bankruptcy Court merely deemed the lease "terminated" and declared that "[a]ll notices and stays under applicable state law are hereby deemed satisfied." (Eviction Order, ¶7).

## ARGUMENT

### I.      Standard for Stay Pending Appeal.

20.      Bankruptcy Rule 8007 allows a bankruptcy court, in the first instance, to stay a judgment in order to maintain the *status quo* pending appeal. Fed. R. Bank. Pr. 8007(a)(1)(A).

21.      In determining whether to grant a discretionary stay pending appeal under Bankruptcy Rule 8007, courts consider the following criteria:

(1) the likelihood that the movant will prevail on the merits of the appeal;

(2) whether the movant will suffer irreparable injury if the stay is denied;

(3) whether other parties would suffer substantial harmed if the stay is granted; and

(4) whether the public interest will be served by granting the stay.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987).

### II.     Jetall has a substantial likelihood of succeeding on the merits.

22.      With respect to the first element for obtaining a stay—the likelihood of success on the merits of the appeal—the Fifth Circuit has explained that the movant need not always show a "probability" of success on the merits but "need only present a substantial case on the merits when a serious legal question is involved" and the "balance of the equities weighs heavily in favor of granting the stay." *Arnold v. Garlock, Inc*., 278 F.3d 426, 439 (5th Cir. 2001) (internal quotation omitted). And when the appeal turns on "the application of law" that "has not been definitively addressed" by a higher court, the movant … easily satisfies the first element. *In re Texas Equipment Co. Inc*., 283 B.R. 222, 226 (Bankr. N.D. Tex. 2002); *In re Westwood Plaza Apartments Ltd*., 150 B.R. 163, 168

11

(Bankr. E.D. Tex. 1993); *see also First S. Sav. Assoc.*, 820 F.2d at 704 ("[T]he movant need only present a substantial case on the merits when a serious legal question is involved"). That threshold showing is met in this case because Jetall's appeal presents numerous serious legal issues that have never been resolved before.

### A.   The Court lacks jurisdiction over this action and over Jetall.

23.    To begin with, this case raises a vitally important question of the scope of bankruptcy jurisdiction, because there are a variety of reasons that the Bankruptcy Court lacked the substantive power to evict Jetall. The Bankruptcy Court did not have jurisdiction over either the parties to, or the subject matter of, any such eviction action. Jetall is not a debtor in this case. It has not been served with any summons or citation. It was not before the Bankruptcy Court. And it made no appearance in this case beyond filing a proof of claim.

24.    A party must be "properly served" in order to be subjected to eviction. *Coleman v. Williams*, 538 Fed. App'x 513. 514 (5th Cir. 2013). While the Bankruptcy Court found that "Jetall has subjected itself to jurisdiction" because it had filed "two" "proofs of claim" in the subject bankruptcy case (*Memorandum Opinion* at 3), it is settled that merely filing a proof of claim in a bankruptcy case does not subject a creditor to the bankruptcy court's personal jurisdiction for all purposes. "[B]y submitting a claim against the bankruptcy estate," parties subject themselves only to the bankruptcy court's "equitable power to [allow or] *disallow [that] claim[]*." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14 (1989) (emphasis added) (citing *Katchen v. Landy*, 382 U.S. 323, 335 (1966). They do not subject themselves to the bankruptcy court's power for matters *beyond*

adjudicating that claim. Accordingly, Jetall did not submit itself to the Court's personal jurisdiction for any eviction action separate and apart from the main bankruptcy action in which its claim was adjudicated. The Bankruptcy Court therefore lacked power to compel Jetall to leave the property.

25.     The Bankruptcy Court also did not have any jurisdiction over the subject matter of this case under 28 U.S.C. § 1334. This is an action by one non-bankrupt party seeking to evict another non-bankrupt party from a building that—as the result of a foreclosure sale by which the Purchaser has now obtained the Property—is no longer property of the bankruptcy estate. "[B]ankruptcy court jurisdiction covers only property in which the debtor has an interest," and no such interest remains after the debtor loses the property "in a foreclosure sale." *Coleman*, 538 Fed. App'x at 514. An eviction therefore will have no effect on the bankruptcy estate. And that means the Court has no jurisdiction to enter any such eviction.

26.     The Bankruptcy Court concluded otherwise, claiming that its jurisdiction to evict Jetall arose out of its authority to "enforce[]" the "Sale Order." (*See Memorandum Opinion* at 3). But the present action has absolutely *no* connection to the Sale Order. While that order conveys the Property—the physical building that was purchased in the foreclosure sale—to the Purchaser, it does not purport to transfer any leasehold interests. The only provision in the Sale Order that purports to transfer any property to anyone is one stating that "all persons that are in possession of some or all of the Purchased Assets" turn over those assets to the Purchaser. (Sale Order, p. 26 ¶ 34). But that provision has nothing to do with Jetall's lease—because its lease is not one of the "Purchased Assets."

27.     Furthermore, even if the Sale Order purports to convey the Property "free and clear of all interests, including all liens, claims and encumbrances" (Sale Order p. 7 ¶ N, p. 13 ¶ 5), that provision did not actually effectuate a transfer of possession. That is why an eviction was necessary. The Fifth Circuit held in *In re Royal Street Bistro, L.L.C.*, 26 F.4th 326, 327 (5th Cir. 2022) that even a sale in bankruptcy "free and clear of all claims, liens, and interests" under 11 U.S.C. § 363(f) does not actually destroy leasehold interests or transfer them to the purchaser. Rather, "the lessee has the right to remain in the property through its term 'to the extent that such rights are enforceable under applicable nonbankruptcy law.'" *Id.* at 328 (quoting 11 U.S.C. § 365(h)(1)(A)(ii)). The Purchaser has not demonstrated any reason why Jetall might be evicted under nonbankruptcy law. Accordingly, even "sales free and clear" do not "override" or "render nugatory" the "critical lessee protections" available under the Code. *Id.* at 328.

28.     Finally, the Sale Order prohibits interference "with Buyer's use and enjoyment of the Purchased Assets." (Sale Order p. 28 ¶ 36) But that provision had no effect on Jetall's lease because a tenant with a valid lease does not impose any such interference with an owner's enjoyment and use of property. That occurs only when a person trespasses on property or commits a nuisance. *Wavering v. City of Mansfield*, 505 S.W.3d 33, 49 (Tex. App. 2016) (holding that a "trespass invades the possession of a person's land, or destroys the use and enjoyment of the land"); *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011). ("A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities."). A person holding a valid lease is not a trespasser. Accordingly, nothing in this passage is

14

inconsistent with (and certainly does not override) Jetall's valid lease.

29.     Indeed, the only property transfer that the Sale Order effectuates is one from the bankruptcy estate to the Purchaser—with no transfer of property from Jetall to the Bank. And in that sense, the Sale Order *strips* this Court of jurisdiction rather than conveys it. By transferring the Property out of the bankruptcy estate, the Sale Order ensured that nothing that happens to the Property will have any effect on the estate. And that means the Sale Order cannot provide the jurisdictional link that is otherwise missing in this case.

**B.      The Bankruptcy Court lacks any substantive power to evict Jetall.**

30.     The Bankruptcy Court also lacked substantive power to evict Jetall for several reasons.

**1.      The Bankruptcy Code does not convey power to bankruptcy courts to evict one non-debtor for another non-debtor's benefit.**

31.     First, nothing in the Code empowers a bankruptcy court to conduct an eviction of one non-bankrupt party for the benefit of another non-bankrupt party. Foreclosure and eviction are matters "governed by state, not federal, law." *Hoffhine v. Turturo*, No. 5:20-CV-713-JKP-RBF, 2021 WL 2878560, at *1 (W.D. Tex. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 2878557 (W.D. Tex. Mar. 11, 2021). And as the Bankruptcy Court acknowledged, the justice courts have "exclusive jurisdiction for forcible entry and detainer actions, i.e. an eviction." (*Memorandum Opinion* at 3).

32.     Neither the Bankruptcy Court nor the Movants ever identified any substantive provision in the Code that would allow the Bankruptcy Court to provide such relief. The sole substantive bankruptcy power that the Movants invoked was section 105(a)

of the Code, and the Court's power to "enforce its own orders." (Eviction Motion at 6). But the Movants conceded that this power is limited to "*effectuat[ing]* the requirements of the Sale Order"—not *expanding* upon them. (*Id*. at 7) (emphasis added). But as explained above, the Sale Order does not order any transfer of possession from Jetall to the Purchaser, so the Bankruptcy Court cannot "effectuate" the Sale Order by making a separate order initiating that transfer. Neither the Bankruptcy Court nor the Movants cited any authority to the contrary.

33.     Instead, in the Eviction Motion, Movants cited a series of cases that all involved **bankrupt parties**—and did so according to orders that actually did demand changes in possession. Most of these cases, like *In re Searles*, 70 B.R. 266 (D.R.I. 1987) were consent orders, by which the bankrupt debtor *had agreed* that it would turn over the property to a creditor if certain conditions were not met. *See also Ragsdale v. Michas (In re Five Star Design & Builders, LLC)*, Adv. Proc. 05-06626 (Bankr. N.D. Ga. 2006); *In re M.A.S. 284 Parking Corp*., 201 F.3d 431 (2d Cir. 1999); *In re Stephens*, No. ADV 04-3468 DDO, 2012 WL 1899716, at *7 (D. Minn. May 24, 2012), aff'd (Apr. 2, 2013). These previous orders gave the Bankruptcy Court power to effectuate the promised transfer when those conditions were not satisfied.

34.     The remaining cases cited by Movants may have actually involved sale orders, but these orders gave the bankruptcy court the power to effectuate a transfer of possession only because the sale order itself demanded a change in possession—requiring that the debtor give up the property. None of these cases suggest that bankruptcy courts possess authority under Section 105 to enter transfer orders that had not been previously

demanded. And indeed, none of these cases suggest that parties can seek evictions in bankruptcy court after they have been denied an eviction in state court. Accordingly, there is no case that comes close to authorizing the relief that the Movants sought in this case, making the Bankruptcy Court's decision to grant such relief entirely unprecedented.

> ### 2. The Bankruptcy Court was prohibited under the *Rooker Feldman* doctrine from evicting Jetall.

35.     The eviction that Movants sought, and the Bankruptcy Court provided, is also prohibited by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). Pursuant to that doctrine, "federal district courts lack jurisdiction to review state-court judgments by means of a state-court loser's collateral attack"—and bankruptcy courts do too. *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994).

36.     The Purchaser is precisely the sort of "state court loser[]" shopping for a new federal forum that the *Rooker-Feldman* doctrine was meant to address. *Exxon Mobil Corp.*, 544 U.S. at 284. And the action to evict Jetall is unquestionably a "collateral attack" on the justice court's judgment that the doctrine was meant to prohibit. *Shepherd*, 23 F.3d at 924.

37.     The justice court determined that it lacked jurisdiction to evict Jetall because the Purchaser had not provided proper notice—because Jetall's lease required 30-days' notice, and the Purchaser failed to provide it. The Eviction Order overturns that decision by evicting Jetall before the notice period required by the justice court was satisfied, and it

did so by "deem[ing]" all applicable notice provisions "satisfied or waived" when the justice court held that they were not. (Eviction Order ¶7). Indeed, the Movants ultimately confirmed that they were seeking to collaterally attack the judgment of the justice of the peace by conceding that the action they sought was "consistent" with a forcible entry and detainer—thereby admitting that the relief they sought in the Bankruptcy Court was *precisely* the relief they previously sought in the justice court—relief that the justice court expressly denied. (Eviction Motion 9).

38. Indeed, the Eviction Order goes even further than ordering relief "consistent" with a forcible entry and detainer. In a forcible entry and detainer, the defendant is entitled to service of summons and an opportunity to develop evidence. And in a forcible entry and detainer, the plaintiff must prove that it has "superior right of immediate possession of real property" and that the defendant received "proper notice." *Shields L.P. v. Bradberry,* 526 S.W.3d 471, 478 (Tex. 2017). But the Purchaser never served Jetall a summons nor afforded it an opportunity for discovery. And it sought to force the Bankruptcy Court to act *before* the notice period that the justice court demanded had been satisfied—and without demonstrating that Jetall's lease ever terminated.

39. Accordingly, the Purchaser is estopped by *Rooker-Feldman* from raising these claims, as a state court loser who never appealed the decision of the justice court to the state district court, from collaterally attacking the judgment in federal court. The Bank has no standing to evict Jetall because it is not the owner of the Property. And the Bankruptcy Court was jurisdictionally prohibited under *Rooker-Feldman* from entering the relief that both of these movants sought.

40.     Numerous courts have rejected exactly this type of effort to side-step state court rulings in forcible entry and detainer actions by forum-shopping in federal court. *See Coleman v. Williams*, 538 F. App'x at 515 (holding that debtor's due process claim against law enforcement officers, challenging her eviction following foreclosure sale of her former house, was impermissible challenge to state court's judgment); *Wells v. Ali*, 304 F. App'x 292, 294 (5th Cir. 2008) (affirming dismissal of lawsuit seeking to relitigate eviction-related claims in federal court under *Rooker-Feldman* doctrine); *Wilkerson v. Hoff*, No. 3:21-CV-00136-KC, 2021 WL 3186125, at *4 (W.D. Tex. July 28, 2021) (same); *DeVilbiss v. Jackson*, No. SA-20-CV-00878-OLG-EBC, 2020 WL 5249246, at *3 (W.D. Tex. Sept. 3, 2020) (same), *report and recommendation adopted*, 2020 WL 10054537 (W.D. Tex. Oct. 29, 2020).

41.     The Bankruptcy Court concluded it could ignore the judgment of the justice of the peace because that court dismissed for "lack of jurisdiction," and it dismissed the justice court itself as a mere "lower-level State Court" "unknowledgeable about the intricacies of bankruptcy law." (*Memorandum Opinion* at 3). But the justice court made clear that it dismissed the forcible detainer case for lack of *notice*—and that decision cannot be ignored merely because it was made in the guise of a jurisdictional ruling, or by pejoratively labelling state justice courts "lower-level" courts, "unknowledgeable" about the intricacies of bankruptcy law. *Rooker-Feldman* exists precisely to prohibit federal courts from ignoring state-court determinations, including determinations of substantive federal law. *"The only federal recourse"* even "for constitutional questions arising in state court proceedings is application for writ of certiorari to the United States Supreme Court."

19

*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994). And for all these reasons, the *Rooker-Feldman* doctrine prohibits the relief that the Bank seeks in this case.

### 3. The Eviction Action also violates the Anti-Injunction Act.

42.    For similar reasons, the Eviction Order violates the Anti-Injunction Act, 28 U.S.C. § 2283. That Act prohibits courts from issuing injunctive relief that would prohibit one party from enforcing its rights under a "valid extant judgment of a Texas court*." Knoles v. Wells Fargo Bank*, N.A., 513 Fed. App'x 414 (5th Cir. Feb. 19, 2024) (citing *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 522-25 (1986). And that is exactly what the Bankruptcy Court did by giving in to the Movants' demand to enter an order evicting Jetall after the justice court had entered judgment allowing it to remain in possession.

### 4. Evicting Jetall would also violate the automatic stay in the Texas REIT and Jetall bankruptcies.

43.    Evicting Jetall also violates the automatic stay in two separate bankruptcies. The first, of course, is the involuntary bankruptcy of Jetall itself, which was filed in the Western District of Texas, Austin Division. In the *Memorandum Opinion*, the Bankruptcy Court declared its intention to have that case transferred into its court and to "retroactively lift the automatic stay for cause." (*Memorandum Opinion* at 3). On Friday, December 4, 2024, just two days after Jetall's bankruptcy was filed, Judge Bradley of the United States Bankruptcy Court for the Western District of Texas transferred the case to the Southern District, ostensibly "in the interest of justice"—without identifying any reason why justice required the transfer. (*See* **Exhibit 16** (Case No. 24-11544-cgb [Dkt. No. 2]). Once transferred to the Southern District, the Bankruptcy Court retroactively lifted the stay without a hearing, and without demonstrating good cause for lifting the stay. (*See* **Exhibit**

**17** [Dkt. No. 4 in Case No. 24-35761). Jetall respectfully submits that these orders violated Due Process, they should be reversed in Due Course, and they should not serve to authorize the Bankruptcy Court's unlawful eviction of Jetall.

44.     Evicting Jetall also violated the automatic stay in the Texas REIT bankruptcy. Judge Isgur determined that that the automatic stay protecting Texas REIT "probably applies" to all of Choudhri's affiliated entities—including Jetall, although it left final determination of that issue for Judge Robinson. *See* Ex. **4.** And Judge Isgur's instincts are entirely correct. Generally, the automatic stay does not extend to protect non-debtor parties. *Beutel v. Dallas County Flood Control Dist.*, 916 S.W.2d 685, 692 (Tex. App. 1996); *HBA East, Ltd. v. JEA Boxing Co.*, 796 S.W.2d 534, 536 (Tex. App. 1990).

45.     But raising the allegation that one company is an alter ego of another does trigger the automatic stay under 11 U.S.C. § 365(a)(3) when one of those entities is a debtor in bankruptcy. The doctrine of alter ego "is one distinct method of piercing the corporate veil." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). Alter ego applies when "there is such unity between corporation and individual" (or such unity between one corporation and another) "that the separate identity of the corporation has ceased, and holding only the corporation liable would result in injustice." *Riquelme Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345 (5th Cir. 1987) (quoting *Castleberry*, 721 S.W.2d at 272). As a consequence of the doctrine's application, the "assets and liabilities" of one entity become the "assets and liabilities" of the other. *State v. DeSantino*, 899 S.W.2d 787, 790 (Tex. App. 1995).

46.     Accordingly, where, as here, numerous entities and individuals are alleged to be alter egos of a bankrupt debtor, that makes the assets and liabilities of the alter egos the assets and liabilities of the estate. *See Pisculli v. T.S. Haulers, Inc.*, 426 B.R. 52, 60 (E.D.N.Y. 2010) ("[A] court may pierce the corporate veil of a business and treat its assets as the debtor's individual property, and, thus, property of the debtor's estate[] under an alter ego theory.").

47.     That means any claim to recover from one of the alter egos is subject to the automatic stay. After all, the automatic stay prohibits not only claims against the debtor itself under section 362(a)(1), but also prohibits any "act" to "obtain possession of property of the estate" under section 362(a)(3). For that reason, numerous cases have held that a non-frivolous allegation of alter ego makes the alleged alter egos subject to the automatic stay. *See, e.g.*, *In re Adler*, 494 B.R. 43, 53 (Bankr. E.D.N.Y. 2013) (holding that claims against alleged alter egos were subject to the automatic stay because the debtor and its alter egos "were at all relevant times one and the same entity"); *Sky Cable, LLC v. DIRECTV, Inc.*, 23 F.4th 313 (4th Cir. 2022) (noting that bankruptcy court had denied a motion for post-judgment attorneys' fees against debtor "and his alter egos because such an award was precluded by the bankruptcy court's automatic stay").[2] The Bankruptcy Court should have

---

[2] Indeed, the only cases that have held that alter egos *were not* subject to the automatic stay analyzed only whether the alter egos were actually "the debtor" under section 362(a)(1), rather than considering whether claims against the alter egos fell under section 362(a)(3) because they sought "property of the estate." *See, e.g., In re Meyerland Co.*, 82 B.R. 831 (Bankr. S.D. Tex. 1988); *Pavers & Road Builders Dist. Council Welfare Fund v Core Contracting of N.Y., LLC*, 536 BR 48, 51 (Bankr. E.D.N.Y. 2015). The analysis of these cases is incomplete and therefore unpersuasive.

followed these other courts' lead and held that all claims against all individuals and entities that are alleged to be alter egos of Ali Choudhri—including Jetall—are subject to the automatic stay.

48.      But the Bankruptcy Court refused to hold that the stay applied "[a]bsent an order extending the stay in the Texas REIT, LLC [bankruptcy] to this case," even though no such motion is required to trigger operation of the automatic stay—which is why it is called "automatic." (*Memorandum Opinion* 3). The Bankruptcy Court's impulsive decision to order that Jetall be evicted from the Property before Judge Robinson can determine the extent of the protection provided by the automatic stay in the Texas REIT bankruptcy now risks rendering the Eviction Order a nullity—because any such order would be a violation of the automatic stay and could be void. *See Howell v. Thompson*, 839 S.W.2d 92, 92 (Tex. 1992); *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988) (per curiam) (citing *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940)). And that is yet another reason why a stay must issue.

**C.     The Movants were prohibited from bringing this eviction action because their counsel is disqualified.**

49.      The Movants were also prohibited from bringing any action to evict Jetall because their counsel Pillsbury Winthrop has been disqualified by the justice court from handling any case involving Jetall. *See* Ex. 10. The Bankruptcy Court ignored the justice court's order, deeming Jetall's request to disqualify Pillsbury Winthrop on the basis of this order to be waived because the parties had not filed a separate motion to disqualify Pillsbury Winthrop in the Bankruptcy Court. (Memorandum Opinion at 3). But the justice

court's disqualification was automatic—requiring no further order. And the Bankruptcy Court was required to give the same respect to the justice of the peace's order as a "state district court" would "in a later suit" concerning the property. *See Knoles v. Wells Fargo Bank, N.A.*, 513 Fed. App'x 414, 416 (5th Cir. 2013). The Bankruptcy Court was therefore barred under the *Rooker-Feldman* doctrine from entering a ruling that differs from the disqualification ruling of the justice court. Accordingly, the Bankruptcy Court was bound under *Rooker-Feldman* to *honor* the justice court's disqualification, not disregard it.

**D.    The Purchaser has not satisfied the requirements to evict Jetall.**

50.    Finally, the Eviction Order should not have issued because the Purchaser—the only party that might have standing to evict Jetall in any forum—never satisfied the very requirements it admitted being necessary to conduct an eviction under applicable state law. In claiming that the action it seeks is "consistent" with Texas forcible entry and detainer law, the Purchaser has bound itself to follow the requirements of Texas forcible entry and detainer law. (Eviction Motion at 11). One of those requirements is that the plaintiff must establish a "superior right to immediate possession," *Shields L.P. v. Bradberry,* 526 S.W.3d 471, 478 (Tex. 2017), and another is that the "period of time to vacate" must have "expired." (Eviction Motion at 12). In this case, the proper notice period has not expired—because the justice court held that Jetall must be entitled to 30 days' notice, and the Purchaser claimed to have provided 30-days' notice. But that notice period has not expired before the Eviction Order issued—and the Bankruptcy Court could not merely elide the requirement of notice by "deeming" it to be satisfied in spite of the undisputed evidence to the contrary.

24

51.     The Bankruptcy Court also erred in holding that Jetall lacked the superior right to possession of the property because its lease "terminated." (Eviction Order ¶7). On the contrary, that lease has remained in force throughout the entire bankruptcy proceeding. The Debtor neither assumed nor rejected that lease, and it was merely "deemed" rejected under the Plan (Plan and Confirmation Order at 2-3) Pursuant to 11 U.S.C. § 365(d)(4), the fact that a lease has been "deemed" rejected does not mean "that the executory contract or lease has been terminated, but only that a breach has been deemed to occur." *In re Matter of Austin Development Co.*, 19 F.3d 1077, 1082 (5th Cir. 1994); *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993) ("[T]o assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"). Thus, far from granting the Purchaser the power to evict Jetall, the fact that Jetall's lease was deemed rejected placed the Debtor in breach. The Sale Order likewise had no effect on the lease—as explained in more detail above. That means there were never any grounds to evict Jetall. And the Bankruptcy Court's failure to recognize that problem is yet another reason that Jetall has a substantial likelihood of having the Eviction Order overturned on appeal.

## III.     Jetall will suffer irreparable injury in the absence of a stay.

52.     There is also no legitimate question that Jetall will suffer irreparable harm if the order remains in effect pending appeal. The Bankruptcy Court's order demanding that Jetall vacate a property it has the right to possess is very clearly wrongful. And wrongful eviction is an irreparable injury as a matter of law. *See, e.g.*, *Johnson v. United States Department of Agriculture,* 734 F.2d 774, 789 (11th Cir. 1984) (Wrongful eviction, as a

matter of law, constitutes irreparable injury); *Brown v. Artery Organization, Inc.*, 691 F. Supp. 1459 (D.D.C. 1987) (same).

53.     The impossible schedule that the Bankruptcy Court has provided for Jetall to vacate the Property will cause Jetall further irreparable. The Eviction Order gives Jetall only five days to depart a property it has occupied for years before it might be evicted by force.

54.     That is simply not enough time for Jetall to depart the Property—especially given the state of disrepair in which the Purchaser has left it. Jetall occupies the Property's entire Eleventh Floor, which Jetall has filled with "heavy furnishings, valuable art, and antiquities."   (*See* **Exhibit 18** [Declaration of Dward Darjean, ¶4, 5). Eviction on the Bankruptcy Court's accelerated 5-day timetable—which is still well short of the period that the Purchaser gave Jetall to leave the Property—is therefore essentially impossible. (*Id.*, ¶6). According to an estimate provided to Jetall by a company called Smooth Moves Texas, it would take "approximately fourteen to twenty-one days to complete" the move under ideal circumstances—and that would require functioning elevators. *Id*. But at present, none of the Property's elevators are functioning. (*Id.*, ¶5) That will make any move take even longer.

55.     Should Jetall be forced to evict, or be dispossessed of the leased premises under the threat of force by the US Marshals or the Harris County Sheriff, Jetall's property will invariably be destroyed, and Jetall could be subject to sanctions for disobeying a court order due to circumstances that are completely beyond its control. This is yet another reason a stay should issue.

**IV.     Other parties will not suffer substantial harm if the stay is not granted.**

56.     The balance of harms between the parties likewise favors a stay. While Jetall will be forced into an impossible situation if no stay issues, there is no evidence that the Purchaser will suffer any harm at all if a stay is put in place for the limited duration of an appeal. The Purchaser very clearly has no interest in renting the space to a tenant or using it for itself: A property without a functioning elevator is very clearly unusable for habitation—and any potential occupant in the space would have as hard a time coming into the space as Jetall would have trying to leave it. So Jetall is unlikely to suffer any lost rent for the limited time necessary for an appeal.

57.     The Purchaser likewise will not suffer any irreparable injury from being unable to sell the property to someone else. Indeed, the Purchaser claims to have found a willing buyer even with Jetall in the building. But it has offered no evidence to suggest that this buyer actually exists, or that buyer is willing to buy this commercial office space only on the condition that all one of its most important tenants have been kicked out. So the balance of private interests very clearly favors a stay.

**V.     The public interest favors a stay.**

58.     The public interest likewise favors a stay. The Bankruptcy Court's action in this case sets a dangerous precedent. It creates the prospect that bankruptcy courts can and should operate as eviction factories by which one non-debtor can evict another at will— even when the evicted party possesses a valid lease. That is plainly an abuse of the bankruptcy system, which was designed to provide a "fresh start" for the "honest but

unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991), not offer a means for real-estate developers to clear a property of unwanted tenants just because it suits them.

59.    If the Eviction Order stands, it will be used by other bankruptcy courts to evict tenants outside the protections of the forcible entry and detainer procedure in Texas—which is carefully balanced to protect the legitimate interests of landlords and tenants—and the watchful eye of the justice of the peace with exclusive jurisdiction to hear those claims, Accordingly, the abuse endured by Jetall in this case will spawn further abuses for other innocent tenants.

60.    The Supreme Court recently was forced to intervene in a similar case where non debtors attempted to use the bankruptcy system to abuse other non-debtors. *See Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024). At issue in *Harrington* was the practice of including so-called "nonconsensual third-party releases" in bankruptcy reorganization plans—provisions in which certain non-debtors were forced to give up their legal claims against other non-debtors. The Court declared that practice completely unlawful, unauthorized, and abusive. And that abuse of the bankruptcy system is no less serious than this one. The District Court should have the opportunity to rule on its permissibility without having the cloud of an emergent eviction hanging over its head, Accordingly, all of the factors plainly favor a stay. And no factors militate against one. Jetall's request for a stay should therefore be granted.

## SECURITY FOR STAY PENDING APPEAL

The Court may, but need not, condition a stay pending appeal on a bond or other security being posted. And that bond should be limited to the fair market value of the rent

that the Purchaser would reasonably receive from the leased portion of the Property during the pendency of the appeal.

**CONCLUSION**

For these reasons, Jetall Companies, Inc. hereby respectfully requests that the *Order Granting Emergency (Renewed) Motion to Enforce Sale Order Requiring Jetall Companies. Inc. to Vacate Property* (Dkt. No.871) be stayed pending appeal. *See, e.g.*, Tex. Prop. Code § 24.053 (requiring a tenant evicted for nonpayment of rent to post a bond for the estimated rent during the duration of the appeal).

Respectfully submitted,

*/s/ J. Carl Cecere*

J. Carl Cecere
State Bar No. 13268300
(admitted pro hac vice)
**Cecere PC**
6035 McCommas Blvd.
Dallas, TX 75206
Telephone: 469-600-9455

*Counsel for 2425 WL, LLC, Jetall*
*Companies, Inc. and Ali Choudhri*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 9, 2024, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all parties who are deemed to have consented to ECF electronic service, and via email to those listed below.

Charles C. Conrad
Ryan Steinbrunner
Pillsbury Winthrop Shaw Pittman LLC
Main Street Suite 2000
Houston, TX 77002
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com -

Andrew M. Troop
Patrick E. Fitzmaurice
Kwame O. Akuffo
Pillsbury Winthrop Shaw Pittman LLC
31 West 52nd Street New York, NY
10019-6131 Telephone: (212) 858-
1000 Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*/s/ J. Carl Cecere*

**J. Carl Cecere**